**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY, | ) | |
| | ) | |
| | ) | COFC No. 02-1894-C |
| Plaintiff, | ) | (Chief Judge Damich) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CONSUMERS ENERGY COMPANY'S MOTION FOR SUMMARY JUDGMENT ON CONTRACT LIABILITY**

Thomas O. Mason
WILLIAMS MULLEN
8270 Greensboro Drive, Suite 700
McLean, VA 22102
(703) 760-5200 (phone)
(703) 748-0244 (facsimile)

OF COUNSEL:
Harvey J. Messing (P23309)
Jeffrey S. Theuer (P44161)
LOOMIS, EWERT, PARSLEY, DAVIS
& GOTTING, P.C.
232 S. Capitol Avenue, Suite 1000
Lansing, MI 48933
(517) 482-2400

James E. Brunner (P28051)
Arunas T. Udrys (P21660)
Consumers Energy Company
212 West Michigan Avenue
Jackson, MI 49201
(517) 788-2151

Attorneys for Plaintiff Consumers Energy Company

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ..... ii

INDEX TO APPENDIX ..... iv

STATEMENT OF QUESTION INVOLVED ..... v

OVERVIEW/STATEMENT OF THE CASE ..... 1

STATEMENT OF FACTS ..... 7

ARGUMENT ..... 11

CONCLUSION ..... 14

# INDEX OF AUTHORITIES

**Case** **Page No.**

*Connecticut Yankee v United States*
42 Fed. Cl. 448 (1998) ....................13

*Commonwealth Edison Co. v United States*
Docket No. 98-621C ....................13

*Florida Power & Light Co. v United States*
Docket No. 98-483 ....................13

*Florida Power & Light Co. v Westinghouse Elec. Corp.*
826 F.2d 239 (4th Cir. 1987) ....................7

*High Star Toys, Inc. v United States*
32 Fed. Cl. 176 (1994) ....................12

*Indiana Michigan Power Company v Department of Energy*
88 F.3d 1272 (D.C. Cir. 1996) ....................4, 10, 14

*Indiana Michigan Power Co. v United States*
57 Fed. Cl. 88 (2003) ....................13

*Indiana Michigan Power Co. v United States*
60 Fed. Cl. 639 (2004) ....................5, 9, 11

*Maine Yankee Atomic Power Co. v United States*
42 Fed. Cl. 582 (1998), *aff'd*, 225 F.3d 1336 (Fed. Cir. 2000) ....................13

*Northern States Power Co. v United States Department of Energy*
128 F.3d 754, 756 (D.C. Cir. 1997), *reh'g denied*,
1998 U.S. App. Lexis 12919 (1998) .................... passim

*Pure Gold, Inc. v Syntex (U.S.A.)*
739 F.2d 624 (Fed. Cir. 1984) ....................12

*United States v Mendoza*
464 U.S. 154 ....................14

*United States v Moser*
266 U.S. 236 (1924) ....................14

*United States v Winstar Corp.*
116 S. Ct. 2432 (1996) .......... 14

*Winstar Corp v United States*
64 F.3d 1531 (Fed. Cir. 1995) (*in banc*), *aff'd*, 116 S. Ct. 2432 (1996) .......... 12

*Yankee Atomic Electric Co v United States*
42 Fed. Cl. 223 (1998) .......... 13

**Statutes/Misc. Authority** **Page No.**

10.C.F.R. §961.11 .......... 3, 4

48 Fed. Reg. 5458 (Feb. 4, 1983) .......... 8

48 Fed. Reg. 16590 (Apr. 18, 1983) .......... 8

60 Fed. Reg. 21793 (May 31, 1995) .......... 9

Nuclear Waste Policy Act, 42 U.S.C. §§10101-10270 .......... passim

Rule 56(c) of the Rules of the Court of Federal Claims .......... 11, 12

# INDEX TO APPENDIX

**Document** **Page No.**

Exhibit A - Standard Contract ........................................1

Exhibit B - Affidavit of Stephen T. Wawro........................................35

Exhibit C - Letter from Department of Energy dated July 28, 2004 with attached 2004 ACR.....38

## STATEMENT OF QUESTION INVOLVED

I. Did the government breach the standard contract by failing to begin accepting, transporting and disposing of Spent Nuclear Fuel and High Level Radioactive Waste on or before January 31, 1998.

Plaintiff Answers: Yes

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY, | ) | |
| | ) | |
| | ) | COFC No. 02-1894-C |
| Plaintiff, | ) | (Chief Judge Damich) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CONSUMERS ENERGY COMPANY'S MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY ON COUNT I - CONTRACT LIABILITY**

Consumers Energy Company ("Consumers Energy") moves for summary judgment as to liability on Count I of its Complaint alleging breach of contract. As set forth below, the government has breached the Standard Contract by failing to accept, transport and dispose of Consumers Energy's Spent Nuclear Fuel and High Level Radioactive Waste ("SNF/HLW") by January 31, 1998. Consumers Energy has fully performed its obligations. There are no material facts in dispute, and Consumers Energy is entitled to judgment as a matter of law on its breach of contract claim. Accordingly, Consumers Energy respectfully requests that the Court grant its motion for summary judgment on contract liability under Count I of the Complaint.

**OVERVIEW/STATEMENT OF THE CASE**

In 1982, Congress passed the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. §§ 10101-10270, in order to address a "national problem" created by the accumulation of SNF/HLW from domestic sources. *See Northern States Power Co. v. United States Department of Energy*, 128 F.3d 754, 756 (D.C. Cir. 1997). The Act was passed in furtherance of the government's policy that the permanent storage and/or disposal of SNF/HLW should be controlled by the government, and that such storage and/or disposal should occur at a single repository owned and operated by the

government. The NWPA establishes a detailed procedure for disposing of SNF generated by civilian nuclear reactors. Under the Act, the government is responsible for providing for the permanent disposal of SNF/HLW and the cost of that disposal is the responsibility of the generators and owners of such waste and spent fuel. 42 U.S.C. § 10131(a)(4). Such costs are paid by utility companies such as Consumers Energy through payments into the Nuclear Waste Fund ("NWF"). *See* 42 U.S.C. Section 10131 and 10222(c).

After the effective date of the Act, Consumers Energy had by statute and by Contract only one viable option for permanent disposal of SNF/HLW - the government program which it was required to fund along with other utility companies. Further, after January 31, 1998, Consumers Energy was required to fund not only the permanent storage and disposal program operated by the government, but also the cost of interim storage of SNF/HLW which should have been accepted, transported and disposed of by the government beginning January 31, 1998.

Section 302(a)(1) of the NWPA specifically authorizes the Secretary of the Department of Energy ("DOE") to enter into contracts with owners and generators of SNF/HLW under which DOE will accept, transport, and dispose of the SNF/HLW in exchange for the payment of fees. 42 U.S.C. § 10222(a)(1). The fees are outlined in Sections 302(a)(2)-(a)(3) of the NWPA, and they are substantial. These sections require a utility to pay a one-time fee based on the amount of electricity generated by the utility's nuclear power reactor(s) prior to the effective date of the Act, and an ongoing fee based on the amount of power generated thereafter. 42 U.S.C. § 10222(a)(2)-(3). Pursuant to section 302(c) of the NWPA, all fees collected by the Secretary of the DOE are to be deposited into the NWF, to be maintained in an account at the United States Treasury. 42 U.S.C. § 10222(c). Failure by any utility to enter into the contract and make payments of the established fees

would subject the utility to denial of any subsequent request for the issuance or renewal of a license to operate a nuclear power plant. 42 U.S.C. § 10222(b)(1)(A).[1]

Congress left open many terms of the contracts when it delegated the administration of the NWPA to the DOE. However, as noted by the Court in *Northern States Power Co.*, *supra*, the statute itself expressly dictated "the deadline by which DOE must begin disposing of the SNF." *Northern States Power Co.*, *supra*, 128 F.3d at 756. That deadline was not later than January 31, 1998. 42 U.S.C. § 10222(a)(5)(B).[2]

The DOE implemented the requirements of section 302(a) of the NWPA by promulgating on April 18, 1983 a Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste ("Standard Contract") (Exhibit A), through its rulemaking procedures. The Standard Contract is now published in the Federal Register at 10 C.F.R. § 961.11. The Standard Contract includes the statutory requirement that acceptance, transportation and disposal of SNF/HLW must begin by January 31, 1998. Specifically, the Standard Contract states that "[t]he

---

[1] Utilities are not authorized to operate nuclear power plants in the United States without an operating license.

[2] Specifically, Section 302(a)(5) sets forth the contractual obligations which DOE must assume. It states as follows:

> (5) Contracts entered into under this section shall provide that --
> (A) Following commencement of operations of a repository, the Secretary shall take title to a high-level radioactive waste or spent nuclear fuel involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent fuel-and
> (B) In return for the payment of fees established by this section, the Secretary beginning not later than January 31, 1998, will dispose of the high-level radioactive waste or spent nuclear fuel involved as provided in the subchapter.

42 U.S.C. § 10222(a)(5)(5).

services to be provided by DOE . . . shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors. . . has been disposed of." 10 C.F.R. § 961.11, Art. II (1996). The Circuit Court for the District of Columbia in two separate opinions interpreted this obligation as an **unconditional** duty to begin taking the materials by 1998. *See Indiana Michigan Power Company v. Department of Energy,* 88 F.3d 1272, 1277 (D.C. Cir. 1996). The Court stated the rule plainly as follows:

> We held in *Indiana Michigan* that the NWPA imposes an unconditional duty on DOE to take the materials by 1998. Congress, in other words, directed DOE to assume an unqualified obligation to take the materials by the statutory deadline.

*Northern States Power Company v. Department of Energy,* 128 F.3d 754, 760 (D.C. Cir. 1997).

Article II(a) of the Standard Contract entitled "Scope," sets forth the parties' basic responsibilities. The Contract provides as follows:

> This contract applies to the delivery by Purchaser to DOE of SNF and/or HLW of domestic origin from civilian nuclear power reactors, acceptance of title by DOE to such SNF and/or HLW, subsequent transportation, and disposal of such SNF and/or HLW and, with respect to such material, establishes the fees to be paid by the Purchaser for the services to be rendered hereunder by DOE. The SNF and/or HLW shall be specified in a delivery commitment schedule as provided in Article V below. The services to be provided by DOE under this contract shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors specified in Appendix A, annexed hereto and made a part hereof, has been disposed of.

10 C.F.R. § 961.11, Art. II.

On June 3, 1983, following publication of the Standard Contract, Consumers Energy executed a Contract with DOE for the disposal of Consumers Energy's SNF/HLW beginning "not later than January 31, 1998" and continuing thereafter until the disposal of all such materials was

complete. Consumers Energy is the owner of the Big Rock Point Nuclear Plant ("Big Rock") located in Charlevoix, Michigan and the Palisades Nuclear Plant ("Palisades"), located near Covert, Michigan. Both facilities are covered by the same Standard Contract.

The operating licenses for Big Rock and Palisades were issued by the Atomic Energy Commission ("AEC") in 1962 and 1971, respectively. Big Rock was permanently shut down in August, 1997. All of Big Rock's SNF/HLW has been transferred to dry cask storage at the Big Rock site, and the power generation facility has been dismantled. The SNF/HLW generated by Palisades is being stored in a spent fuel pool and in dry cask storage at the Palisades' site. The Palisades plant is operational and continues to generate SNF/HLW.

Pursuant to its Contract with the DOE, Consumers Energy has paid approximately $86 million into the NWF. *See* Affidavit of Stephen T. Wawro, at ¶ 7 (Exhibit B). Further, Consumers Energy is prepared to pay the one-time fee under the Standard Contract, as it is entitled to do, "anytime prior to the first delivery . . ." of SNF/HLW to the government. Standard Contract, Art. VIII.B.2(b). The DOE, however, has not begun the acceptance, transportation and disposal of Consumer Energy's SNF/HLW, and now asserts that it will not do so until at least 2010. *See* Letter from DOE to Nuclear Utilities, dated July 28, 2004 regarding renewed DCS process using 2010 as the beginning acceptance date (Exhibit C). *See also Indiana Michigan Power Co. v. United States,* 60 Fed. Cl. 639 (2004)(Court adopted government's position at trial that permanent repository would be available in 2010). Since January 31, 1998, Consumers Energy has incurred, and will continue to incur interim storage costs for SNF/HLW which should have been accepted, transported and disposed of by the government. Since January 31, 1998, Consumers Energy has also paid and continues to pay fees to the NWF for permanent disposal and other services which are not being

provided by the DOE.

On December 16, 2002, as a result of the DOE's failure to comply with its statutory and contractual obligations, Consumers Energy filed a four-count complaint with this Court. In Count I, Consumers Energy alleges that DOE's failure to begin accepting, transporting and disposing of Consumers Energy's SNF/HLW is a partial material breach of Article II of the Standard Contract, which imposes an unconditional obligation on DOE to begin such activities by January 31, 1998.

Indeed, the D.C. Circuit has squarely held in related litigation that the government, through the United States Department of Energy ("DOE"), has an "unconditional" and "unqualified" obligation, "in return for the payment of fees, to begin disposing of the materials 'not later than January 31, 1998.'" *Northern States Power Co. v DOE*, 128 F.3d 754, 758, 760 (D.C. Cir. 1997), *reh'g denied*, 1998 U.S. App. Lexis 12919 (1998). The D.C. Circuit thus found that Consumers Energy and other utilities "have established. . .a clear right to relief," as "DOE's duty to act could hardly be more clear." *Id*.

The government did not commence performance of its SNF/HLW disposal services obligation by the January 31, 1998 deadline, and there are no material facts in dispute with respect to contract liability. Therefore, Consumers Energy respectfully requests entry of summary judgment in its favor on the government's contract liability.[3]

---

[3]Consumers Energy's Complaint also asserts three other claims: Count II (violation of the government's contractual duty of good faith and fair dealing), Count III (a Fifth Amendment takings claim), and Count IV (illegal exaction). Count IV was dismissed by Order of this Court dated July 1, 2003.

**STATEMENT OF FACTS**

1. Consumers Energy is a utility company headquartered in Jackson, Michigan, which maintains an operational nuclear power facility known as the Palisades Plant near Covert, Michigan, and a shut down nuclear reactor site formerly known as the Big Rock Point Plant near Charlevoix, Michigan. *See* Complaint, ¶¶ 3, 14. The Big Rock Point Plant was permanently shut down in 1997, and has been dismantled. *Id.* ¶ 14. Consumers Energy plans to decommission the Big Rock Point Plant so that the property can be used for non-nuclear purposes. *Id.*; *see* Affidavit of Stephen T. Wawro, ¶ 9 (Exhibit B). Operation of Consumers Energy's plants generated SNF/HLW.[4] *See* Affidavit of Stephen T. Wawro, ¶ 6 (Exhibit B). Consumers Energy currently possesses about 638 Mtu of SNF/HLW. *See* Affidavit of Stephen T. Wawro, ¶ 10 (Exhibit B).

2. The federal government is responsible for the management of commercial spent fuel disposal. *See generally*, *Florida Power & Light Co. v Westinghouse Elec. Corp.*, 826 F.2d 239, 243-53 (4th Cir. 1987). Initially, the government recycled SNF/HLW for reuse through chemical "reprocessing." *Id.* at 245-48. In 1977, however, the government effectively terminated both public and private reprocessing of domestic SNF/HLW. *Id.* at 245, 251.[5] After several years of study, *see id.* at 251-52, the government determined to fulfill its responsibilities for disposition of commercial SNF/HLW by enacting the NWPA, P.L. 97-491, 42 U.S.C. §§ 10130 *et seq*.

3. The NWPA established a program through which the government would be

[4]SNF/HLW is generated as nuclear fuel is irradiated in the operation of a nuclear power plant, and during the decommissioning process. *See* Affidavit of Stephen T. Wawro, ¶ 11 (Exhibit B).

[5]Reprocessing is a chemical process that separates SNF into three parts: reusable uranium, by-product fissionable plutonium and fission product waste (termed "high-level radioactive waste").

responsible for disposing of SNF/HLW and utilities would be responsible for the cost of disposal. *See* 42 U.S.C. § 10131(b). Under the NWPA, DOE was authorized to enter into contracts with domestic generators of SNF/HLW "for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel." *Id*. § 10222(a)(1). The NWPA required such contracts to provide that, "in return for the payment of fees, . . . [DOE], beginning not later than January 31, 1998, will dispose of the . . .spent fuel involved." *Id*. § 10222(a)(5)(B). The NWPA also mandated the SNF/HLW fees payable by utilities. *Id* § 10222(a)(2)(4).

4. In early 1983, DOE created a "Standard Contract" for SNF/HLW acceptance, transportation and disposal. Following notice and comment, DOE revised and finalized its Standard Contract. *See* 48 Fed. Reg. 5458 (Feb. 4, 1983) (proposed Standard Contract); 48 Fed. Reg. 16590 (Apr. 18, 1983) (final version). On June 3, 1983, Consumers Energy and DOE executed and entered into such a contract. *See* Contract No. DE-CR01-83NE44374 "Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste", Exhibit A (the "Standard Contract").

5. Consumers Energy's Standard Contract with DOE sets forth terms and conditions obligating Consumers Energy to deliver SNF/HLW to DOE (at the site of Consumers Energy's SNF/HLW), and obligating DOE to accept title, transport (in DOE-furnished casks), and dispose of the SNF/HLW. *See e.g.*, Standard Contract, Art. IV.A.2. & V.A. (Consumers Energy's delivery obligations), Art. IV.B., V.A. & VI. (DOE's obligations to transport, accept and dispose). The Standard Contract permits DOE to store Consumers Energy's SNF/HLW at any facility operated by or on behalf of DOE. *See Id*., Art I.10. & IV.B.2. The Standard Contract also provides for payment of substantial fees by Consumers Energy. *Id*., Art. VIII. *See generally*, Complaint ¶ 10, 20, 24, 33.

6. As required by the NWPA, Consumers Energy's Standard Contract provides that

DOE "shall begin" performing the required services under the Standard Contract "not later than January 31, 1998." *See* Standard Contract, Art. II. Once DOE's performance obligation begins, the Standard Contract provides that the parties will arrange particular acceptance dates for specific quantities of Consumers Energy's SNF/HLW under a set criteria. *See e.g.*, Standard Contract, Arts. IV.A.1., V.B. & C.[6] For example, DOE acknowledged in the 1983 rulemaking that "Article VI.B.3.(b) gives priority to [spent fuel] from permanently shutdown reactors." 48 Fed. Reg. at 16593 (emphasis added). DOE asserted that "[t]his type of priority is necessary to prevent reactors from waiting 20 or 30 years to be decommissioned after they finish generating electricity." *Id.*

7. DOE did not commence performance of its SNF/HLW disposal obligation under Consumers Energy's Contract by January 31, 1998. Affidavit of Stephen T. Wawro, ¶ 12 (Exhibit B). The government has made definite and unequivocal statements that it will not commence SNF/HLW disposal until 2010 at the earliest. *See* Letter from DOE to Nuclear Utilities, dated July 28, 2004 regarding renewed DCS process using 2010 as the beginning acceptance date (Exhibit C). *See also Indiana Michigan Power Co. v. United States,* 60 Fed. Cl. 639 (2004)(Court adopted government's position at trial that permanent repository would be available in 2010).

8. In 1995, DOE repudiated its Contract obligations, asserting in a published "final interpretation" that it had no authority or obligation to accept SNF/HLW until it constructed a disposal or storage facility. 60 Fed. Reg. 21793 (May 31, 1995).

9. In resulting litigation, the U.S. Court of Appeals for the D.C. Circuit held unequivocally, three times, that under the NWPA, DOE's contractual obligation to commence

[6]This motion focuses on the government's breach of the Contract's performance-commencement date of January 31, 1998. For purposes of this motion, the Court need not address the scheduling for SNF/HLW acceptance after that date.

performance by January 31, 1998 is "unconditional."

Initially, in *Indiana Michigan Power Co v DOE*, 88 F.3d 1272 (D.C. Cir. 1996), the D.C. Circuit held that DOE's obligation to meet the 1998 deadlines is "without qualification or condition." *Id*. at 1276; *see id* at 1275 (specifically rejecting the DOE's argument that its disposal obligation is contingent on the existence of a storage facility). In *Northern States Power*, the Court reaffirmed *Indiana-Michigan*, reiterating that "the NWPA. . . clearly demonstrates a congressional intent that [DOE] assume a contractual obligation to perform by the 1998 deadline, 'without qualification or condition.'" 128 F.3d at 758.[7] The D.C. Circuit issued a writ of mandamus to enforce the NWPA, explaining:

> This necessarily means, of course, that DOE not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of 'acts of Government in either its sovereign or contractual capacity.'. . .Congress, in other words, directed DOE to assume an unqualified obligation to take the material by the statutory deadline.

*Id.* at 760 (emphasis added). The D.C. Circuit declined the utilities' requests for a mandamus order directing DOE to move SNF/HLW, observing that the utilities had a "potentially adequate remedy" in contract. *Id*. at 759.

In rejecting the government's rehearing petition in *Northern States Power*, the D.C. Circuit reconfirmed again that "[o]ur decision in Northern States barred the DOE from interpreting the Contract as imposing only a contingent disposal obligation; such an interpretation, we ruled, would place the DOE in violation of its statutory duties under the [NWPA], which required it to undertake an unconditional obligation." *See* Order of May 5, 1998 at 2, Exhibit 2.

10. Consumers Energy has performed its end of the contractual bargain by paying all fees

---

[7]Consumers Energy was a party to the *Northern States Power* litigation.

required to date by the Contract for disposal of its SNF/HLW. *See* Affidavit of Stephen T. Wawro, ¶¶ 7, 14 (Exhibit B). For SNF/HLW used to generate electricity after April 1983, the Contract imposes a fee per-kilowatt hour. *See* Standard Contract, Art. VIII.A.1. Consumers Energy has paid all such fees, a total of approximately $86 million dollars. Affidavit of Stephen T. Wawro, ¶ 7 (Exhibit B). Consumers Energy is legally obligated to pay DOE certain deferred fees for SNF/HLW used to generate electricity prior to April 1983. *See* Standard Contract, Art. VIII.B.2. (Exhibit A); Affidavit of Stephen T. Wawro, ¶¶ 8, 14 (Exhibit B). This one time fee may be paid "anytime prior to the first delivery . . ." of SNF/HLW to the government. Standard Contract, Art. VIII.B.2(b) (Exhibit A). The DOE, however, has not begun the acceptance, transportation and disposal of Consumer Energy's SNF/HLW, and now asserts that it will not do so until at least 2010 so that the one time fee is not yet due. *See* Letter from DOE to Nuclear Utilities, dated July 28, 2004 regarding renewed DCS process using 2010 as the beginning acceptance date (Exhibit C). *See also Indiana Michigan Power Co. v. United States,* 60 Fed. Cl. 639 (2004)(Court adopted government's position at trial that permanent repository would be available in 2010).

## ARGUMENT

It is uncontested that the government did not commence performance of its SNF/HLW acceptance, transportation and disposal obligations under the Contract by the January 31, 1998 deadline. DOE's failure to commence Contract performance by the January 31, 1998 deadline is a clear breach of a specific Contract term.

Under these circumstances, summary judgment on the government's liability for breach of contract should be entered in favor of Consumers Energy under Rule 56 of the Rules of the Court of Federal Claims. *See* Rule 56(c) (summary judgment "shall be rendered forthwith if [it appears]. .

.there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). Only two facts are material to Consumers Energy's motion: (1) that the government did not commence performance by the contractually-specified deadline of January 31, 1998, and (2) that Consumers Energy is not in breach and has complied with the Standard Contract. There is, and can be, no reasonable dispute as to these facts.[8]

Interpretation of Consumers Energy's Standard Contract with the government is a question of law. Whether the government has breached the Standard Contract is also a question of law. Accordingly, as this Court observed in *High Star Toys, Inc. v United States*, 32 Fed. Cl. 176, 1890 (1994), "[i]n the circumstances, a full trial is unnecessary and would be useless." *Accord Pure Gold, Inv. v Syntex (U.S.A.), Inc.*, 739 F. 2d 624, 625 (Fed. Cir. 1984).[9]

It is black letter law that "failure to perform a contractual duty when it is due is a breach of the contract." *Winstar Corp v United States*, 64 F.3d 1531, 1545 (Fed. Cir. 1995) (*in banc*) (citing *Restatement (Second) of Contracts* § 235(c)), *aff'd*, 116 S. Ct. 2432 (1996). The full weight of authority in other SNF cases stands for the proposition that the government has breached the

---

[8]*See*, *e.g.*, Affidavit of Stephen T. Wawro, ¶ 12 (Exhibit B) (government did not commence SNF/HLW disposal services performance under the Standard Contract by January 31, 1998 and has communicated to Consumers Energy that it will not commence such performance until 2010 at the earliest); Exhibit C. (Consumers Energy has paid all amounts required by the Standard Contract into the NWF, and stands ready to pay the one-time fee prior to acceptance).

[9]The Court explained in *High Star*:

> "Useless" in this context means more evidence than is already available in connection with a motion for summary judgment could not reasonably be expected to change the result.

32 Fed. Cl. at 180. *See Pure Gold, Inc.*, 739 F.2d at 627 n.2 ("The practice of the U.S. Claims Court. . .in routinely disposing of numerous cases on the basis of cross-motions for summary judgment has much to commend it.").

Standard Contract, and liability orders such as the one sought by Consumers Energy here have been entered in at least six other cases. *See Maine Yankee Atomic Power Co. v United States*, 42 Fed. Cl. 582 (1998), *aff'd*, 225 F.3d 1336 (Fed. Cir. 2000); *Commonwealth Edison Co v United States*, Docket No. 98-621C (Order dated August 1, 2001); *Indiana Michigan Power Co. v United States*, 57 Fed. Cl. 88 (2003); *Florida Power & Light Co. v United States*, Docket No. 98-483 (Order dated January 11, 2002); *Connecticut Yankee Atomic Electric Co. v United States*, 42 Fed. Cl. 448 (1998); *Yankee Atomic Electric Co. v United States,* 42 Fed. Cl. 223, 232, n. 4. (1998). It is immaterial when the actual date of first acceptance of Consumers Energy's SNF/HLW would have occurred had DOE begun accepting SNF/HLW in 1998. Moreover, there are no other facts unique to the Consumers Energy Contract that could be the basis for different treatment from the six (6) cases cited above. The terms of Consumers Energy's Contract are clear: "The services to be provided by DOE under this contract shall begin. . .not later than January 31, 1998. . ." *See* Standard Contract, Art. II. As noted above, the D.C. Circuit has equally made clear that this obligation is "without qualification or condition." 88 F.3d at 1276.

Even if it is assumed for the sake of argument here that the government would not begin to pick up Consumers Energy's SNF/HLW until the second or a later year of SNF/HLW disposal services, the government's failure to commence such services by January 31, 1998 is still a breach of an obligation to Consumers Energy because all SNF/HLW for the nuclear industry is to be accepted according to a specified order, favoring oldest fuel first. A breach causing delay at the beginning of the queue will cause a delay all the way down the line. That is why the 1998 date is a term in all the Standard Contracts, not just of those utilities first in line.

The government has no defense for its deliberate breach. The January 31, 1998 deadline is

clear and unqualified. As the D.C. Circuit held in both *Northern States Power* and *Indiana-Michigan*, DOE's "obligation to meet the 1998 deadlines is 'without qualification or condition.'" 128 F.3d at 757 (quoting 88 F.3d 1272 at 1273). Thus, "[DOE] has a clear duty to act," and Consumers Energy "ha[s] a clear right to relief." *Northern States Power*, 128 F.3d at 758-59.

Indeed, the government is under a mandamus order from the D.C. Circuit "precluding DOE from excusing its own delay on the grounds that it has not yet prepared a permanent repository or interim storage facility." *Id*. at 761. As the D.C. Circuit explained, "[t]his necessarily means . . .that DOE not implement <u>any</u> interpretation of the Standard Contract that excuses its failure to perform on the grounds of 'acts of the Government in either its sovereign or contractual capacity.'" *Id*. at 760 (emphasis added). Even without the binding mandamus order, the government is estopped by the D.C. Circuit's holdings from further arguing this issue to this Court. *See United States v Moser*, 266 U.S. 236, 239-43 (1924) (applying mutual offensive collateral estoppel against the government); *see also United States v Mendoza*, 464 U.S. 154, 163-64 (1984) (reaffirming holding in *Moser*).

Finally, even in the absence of the D.C. Circuit's prior adjudications of this issue, the government's deliberate refusal to perform <u>for reasons within its control</u> is an inexcusable and legally indefensible breach of contract under basic contract law principles under the Supreme Court's decision in *United States v Winstar Corp.*, 116 S. Ct. 2432, 2469 (1996).

## <u>CONCLUSION</u>

For the reasons set forth above, Consumers Energy respectfully requests entry of summary judgment in its favor on the government's liability for breach of contract under Count I of the Complaint, consistent with the liability Orders entered in *Indiana Michigan, Florida Power & Light, Commonwealth Edison, Yankee Atomic, Maine Yankee, and Connecticut Yankee,* referenced herein.

Respectfully submitted,

____s/ Thomas O. Mason__________

Thomas O. Mason
WILLIAMS MULLEN
8270 Greensboro Drive, Suite 700
McLean, VA 22102
(703) 760-5200 (phone)
(703) 748-0244 (facsimile)
Attorneys for Plaintiff Consumers Energy Company

OF COUNSEL:

Harvey J. Messing (P23309)
Jeffrey S. Theuer (P44161)
LOOMIS, EWERT, PARSLEY, DAVIS & GOTTING, P.C.
232 S. Capitol Avenue, Suite 1000
Lansing, MI 48933
(517) 482-2400

James E. Brunner (P28051)
Arunas T. Udrys (P21660)
Consumers Energy Company
212 West Michigan Avenue
Jackson, MI 49201
(517) 788-2151

Dated: October 18, 2004