**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY, | ) | |
| | ) | |
| | ) | COFC No. 02-1894-C |
| Plaintiff, | ) | (Chief Judge Damich) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S BRIEF (i) IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT AND, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT UPON DEFENDANT'S RIGHT TO RECOVER UNPAID FEES, AND (ii) CROSS MOTION FOR SUMMARY JUDGMENT TO DISMISS THE GOVERNMENT'S COUNTER CLAIM AND AFFIRMATIVE DEFENSE RELATING TO ONE TIME FEE**

Thomas O. Mason
WILLIAMS MULLEN
8270 Greensboro Drive, Suite 700
McLean, VA 22102
(703) 760-5200 (phone)
(703) 748-0244 (facsimile)

OF COUNSEL:
Harvey J. Messing (P23309)
Jeffrey S. Theuer (P44161)
LOOMIS, EWERT, PARSLEY, DAVIS
& GOTTING, P.C.
232 S. Capitol Avenue, Suite 1000
Lansing, MI 48933
(517) 482-2400

James E. Brunner (P28051)
Arunas T. Udrys (P21660)
Consumers Energy Company
212 West Michigan Avenue
Jackson, MI 49201
(517) 788-2151

Attorneys for Plaintiff Consumers Energy Company

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES ..... ii

INDEX TO APPENDIX ..... v

I. CASE STATUS ..... 1

II. SUMMARY OF ARGUMENT ..... 2

III. STANDARD OF REVIEW ..... 5

IV. ARGUMENT ..... 6

A. Because the DOE has Not Accepted the First Delivery of Consumers Energy's SNF/HLW, Consumers Energy is Not Yet Obligated to Make the One-Time Fee Payment ..... 6

B. The DCS Process Does Not Create a Contractual Obligation for Consumers Energy to Pay the One-Time Fee in 1999 ..... 10

C. The Fee Payment is Not a Condition Precedent to Defendant's Obligation to Begin Accepting Consumers' SNF/HLW ..... 13

D. Defendant's Non-performance Supports Consumers Energy's Claim for Partial Breach ..... 18

E. The Court Should Deny Defendant's Motion for Partial Summary Judgment to Recover the One-Time Fee in this Partial Breach Lawsuit Because Consumers Energy's Obligation to Pay the Fee Has Not Become Due ..... 21

V. CONCLUSION ..... 22

# INDEX OF AUTHORITIES

**Case** **Page No.**

*Anderson v Liberty Lobby, Inc.*
477 U.S. 242 (1986) ........ 6

*Blanton v Anzalone*
813 F.2d 1574 (9th Cir. 1987) ........ 10

*Charron v United States*
200 F.3d 785 (Fed. Cir. 1999) ........ 14

*Cities Service Helex, Inc. v U.S.*
543 F.2d 1306 (Fed. Cl. 1976) ........ 19

*Co-Efficient Foundation v Woods*
171 F.2d 691 (5th Cir. 1949) ........ 21

*Commonwealth Edison Co. v United States*
56 Fed. Cl. 652 (2003) ........ 11

*Connecticut Yankee Atomic Energy Co. v United States*
42 Fed. Cl. 448 (1998) ........ 19

*Detroit Edison Co. v United States*
56 Fed. Cl. 299 (2003) ........ 19

*Favell v United States*
16 Cl. Ct. 700 (Cl. Ct., 1989),
*appeal denied*, 22 Cl. Ct. 132 (Cl. Ct., 1990) ........ 14

*Florida Power & Light Co. v United States*
56 Fed. Cl. 555 (2003) ........ 19

*Helifix, Ltd. V Blok-Lok, Ltd.*
208 F.3d 1339 (Fed. Cir. 2000) ........ 6

*Indiana Michigan Power Co. v United States*
57 Fed. Cl. 88 (2003) ........ 19

*Indiana Michigan Power Co. v United States*
60 Fed. Cl. 639 (2004) ........ 9

*Indiana Michigan Power Co v United States Dep't of Energy*
88 F.3d 1276 (D.C. Cir. 1996) ..... 15, 20, 21

*Kennedy v Silas Mason Co.*
334 U.S. 249 (1948) ..... 6

*Madiera Irrigation District v Hancock*
985 F.2d 1397 (9th Cir. 1993) ..... 11

*Maine Yankee Atomic Power Co. v United States*
42 Fed. Cl. 582 (1998),
*aff'd* 225 F.3d 1336 (Fed. Cir. 2000) ..... 19

*Northern States Power Co. v United States Department of Energy*
125 F.3d 754 (D.C. Cir. 1997) ..... 15, 16, 20

*Specialty Assembling & Packing Co. v United States*
355 F.2d 554 (1966) ..... 19

*Stone Forest Industries v United States*
26 Cl. Ct. 410 (Cl. Ct. 1992) ..... 15, 16

*T.W. Jenkins & Co. v Anahein Sugar Co.*
247 F. 958 (9th Cir. 1918) ..... 17

*Torncello v United States*
681 F.2d 756 (Ct. Cl. 1982) ..... 11

*United States v Diebold, Inc.*
369 U.S. 654 (1962) ..... 6

*United States v Schaeffer*
319 F.2d 907 (9th Cir. 1963) ..... 14

*Windt v Shephard's/McGraw-Hill, Inc.*
1997 WL 698182 (E.D. Pa. 1997) ..... 22

*Woll v United States*
45 Fed. Cl. 475 (1999),
*aff'd*, 251 F.3d 171 (Fed. Cir. 2000) ..... 11

*Yankee Atomic Electric Co. v United States*
42 Fed. Cl. 223 (1998) ..... 19

| **Statutes/Misc. Authority** | **Page No.** |
|---|---|


5 S. Williston, Contracts §§ 683-88 (3d ed. W.Jaeger 1961) ....................................................19

10 C.F.R. §961.11 ....................................................................................................8, 20

17 Am.Jur.2d Contracts ....................................................................................................17

17A Am. Jur.2d Contracts ..................................................................................................17

Nuclear Waste Policy Act, 42 U.S.C. §§10101-10270..............................................4, 15

Restatement (Second) of Contracts § 224 (1981)..............................................................14

Restatement (Second( of Contracts §236 comment.b.........................................................21

Restatement (Second) of Contracts §253 comment.a-b......................................................19

Rule 12(b) of the Rule of the Court of Federal Claims ......................................................21

Rule 56(b) of the Rules of the Court of Federal Claims.......................................................2

Rule 56(c) of the Rules of the Court of Federal Claims .......................................................5

**INDEX TO APPENDIX**

**Document** **Page No.**

Exhibit A - Standard Contract ....................................................1

Exhibit B - Letter from Department of Energy dated July 28, 2004 with attached 2004 ACR.....35

Exhibit C - Letter from Consumers Energy dated May 31, 1985 ................................123

Exhibit D - Affidavit of Stephen T. Wawro ....................................124

Exhibit E - 1995 ACR Report ....................................................127

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY, | ) | |
| | ) | |
| | ) | COFC No. 02-1894-C |
| Plaintiff, | ) | (Chief Judge Damich) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S BRIEF (i) IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT AND, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT UPON DEFENDANT'S RIGHT TO RECOVER UNPAID FEES, AND (ii) CROSS MOTION FOR SUMMARY JUDGMENT TO DISMISS THE GOVERNMENT'S COUNTER CLAIM AND AFFIRMATIVE DEFENSE RELATING TO ONE TIME FEE**

Plaintiff Consumers Energy Company ("Consumers Energy") submits this brief (i) in opposition to the government's motion for summary judgment on Counts I and II of the Complaint or for partial summary judgment upon Defendant's alleged right to recover unpaid fees, and (ii) in support of Plaintiff's cross motion for summary judgment to dismiss the government's counter claim and affirmative defense relating to the one time fee, which are based largely on a common set of facts and legal principles.

## I. CASE STATUS

On June 23, 2004, a status conference was held concerning various discovery issues and anticipated motions. At the status conference, the government for the first time wrongly asserted that Consumers Energy was required to pay a one-time fee under Article VIII.A.2 of the Standard Contract as a condition precedent to the government's obligation to begin accepting SNF/HLW. On June 25, 2004, this Court entered an Order directing the government to file an amended answer asserting this affirmative defense.

On July 9, 2004, Defendant filed its amended answer, and also filed a counter claim and a motion for summary judgment requesting that this Court dismiss Counts I and II of Plaintiff's Complaint, or in the alternative, for partial summary judgment based upon Defendant's alleged right to recover unpaid fees pursuant to Rule 56(b) of the Rules of this Court. Defendant wrongly asserts that Consumers Energy's obligation to pay the one-time fee, discussed below, is a condition precedent to the Department of Energy's ("DOE") obligation under Articles II and IV of the Standard Contract to accept, transport and dispose of Consumers Energy's Spent Nuclear Fuel ("SNF") and High Level Radioactive Waste ("HLW"). Plaintiff opposes Defendant's motion for summary judgment and for partial summary judgment, and requests entry of an order dismissing the government's counter claim and affirmative defense based on the one time fee issue for the reason that: (i) the one time fee is an independent obligation under the Standard Contract which even the government acknowledges is not yet due, (ii) the government's obligation to accept, transport and dispose of Consumers Energy's SNF/HLW has been held to be an unconditional obligation, and (iii) the one-time fee is not a condition precedent.

## II. SUMMARY OF ARGUMENT

Under the Standard Contract, contract holders are required to deliver to DOE, and DOE is required to accept, transport and dispose of SNF/HLW from civilian nuclear reactors. Standard Contract, Art. IV.B(1) (Exhibit A, at 9). The Standard Contract also requires DOE to issue an annual Acceptance Priority Ranking ("APR") and Annual Capacity Report ("ACR"). Standard Contract, Art. IV.B(5)(a & b) (Exhibit A, at 10). The APR provides the order in which DOE will accept SNF/HLW from each nuclear utility. The ACR applies an acceptance rate to the APR and establishes the timeline or "queue" for acceptance of SNF/HLW from all industry sources.

Beginning January 1, 1992, contract holders, called "Purchasers", were required to submit to DOE Delivery Commitment Schedule(s) ("DCSs") based on DOE's proposed industry-wide acceptance priority in the APR. Standard Contract, Art. V.B(1) (Exhibit A, at 11). DOE was to approve or disapprove the submitted DCS's. This process was eventually abandoned by DOE when it became apparent that DOE could not meet its 1998 deadline to begin accepting the material. The DCS process was not renewed until July, 2004 when DOE requested the submission of new DCS's from Consumers Energy, and all other nuclear utilities, based on a 2010 beginning acceptance date. *See* Letter from DOE dated July 28, 2004 with attached 2004 APR/ACR (Exhibit B).

A one-time fee is assessed under the Standard Contract for SNF/HLW used to generate electricity prior to April 7, 1983. Standard Contract, Art. VIII.A.2 (Exhibit A, at 17). Contract holders had two years after contract execution to elect one of the three options for payment of the one-time fee. Option 2, the option that Consumers Energy elected in writing on May 31, 1985, (Exhibit C), requires Consumers Energy to pay the one-time fee **anytime** prior to first delivery of SNF/HLW. Standard Contract, Article VIII.B.(2)(b) (Exhibit A, at 20-21). DOE has not accepted any SNF from Consumers Energy under the Standard Contract. Accordingly, Consumers Energy is not yet required to make the one-time fee payment under Option 2.

Defendant apparently assumes that "first delivery" means the scheduled delivery in the approved DCS that Consumers Energy was required to submit to DOE under the old DCS process beginning in 1995. However, both the plain language of the Standard Contract (Exhibit A, at 20) and the letter sent by Consumers to elect Option 2 (Exhibit C) show that "first delivery" is meant to be the date of first actual delivery. Further, DOE's recent decision in 2004 to renew the DCS process by requesting submission of new DCS's from Consumers Energy based on a 2010 beginning

acceptance date constitutes a clear admission that DOE itself recognizes the one time fee is not yet due, and will not become due until after 2010, when DOE approves Consumers Energy's renewed DCS. Further, the Standard Contract requires that DOE notify Consumers Energy of amounts due but unpaid or underpaid under the one time payment option. *See* Standard Contract, Art. VIII.C(1) (Exhibit A, at 22). The government has never notified Consumers Energy of a late payment or non-payment. The Standard Contract is absolutely clear on its face that the one time fee is not due, and the government has admitted this by requesting new DCS's based on a 2010 beginning acceptance date, and failing to notify Consumers Energy of any non-payment as required. Defendant's counter claim and affirmative defense relating to the one time fee should be dismissed, and the government's motion for summary judgment should be denied.

Even if the one time fee were due, the government's motion is still without merit. Defendant argues that the Court should dismiss Counts I and II of Consumers Energy's Complaint alleging partial breach of contract and breach of the government's duty of good faith and fair dealing because the one-time fee payment is a condition precedent to the DOE's obligation to accept Consumers Energy's SNF/HLW. If true, any utility's failure to make a payment would, according to the government, relieve the government of its obligation to dispose of that utility's SNF/HLW, and leave this material outside the regulatory framework of the NWPA's procedures for safe long-term disposal. That is not what was intended by the NWPA. It would destroy the continuity of the DCS process as non-paying allocations would have to be substituted out and others moved up in the queue. Such an interpretation is contrary to the NWPA's express policy of addressing SNF/HLW disposal on a national basis, particularly given the safety and national security concerns associated with this material. *See* 42 U.S.C. Section 10131(a)(4). Under Article VIII.D of the Standard

Contract, the one time fee payment is Consumers Energy's "financial obligation", and Defendant may levy interest on unpaid or underpaid fees. Therefore, the fee payment is not a condition precedent, but a promise on the part of Consumers Energy, which is independent of the DOE's obligation to accept SNF and/or HLW.

Defendant in the alternative has moved for partial summary judgment upon Defendant's alleged right to recover the unpaid one time fee. As addressed in Plaintiff's Motion for Summary Judgment as to contract liability, filed concurrently, as well as herein, the one time fee is not yet due because the government will not by its own admission begin accepting SNF/HLW from Consumers Energy until sometime after 2010. There is no debt to set off, or to support a judgment in favor of the government. As pointed out repeatedly by the government, Plaintiff's partial breach cause of action does not discharge Defendant or Consumers Energy from their remaining duties under the Standard Contract. Def. Motion, at 10-11. Consumers Energy is obligated to make the fee payment anytime before Defendant accepts Consumers Energy's first delivery of SNF/HLW, which will not take place until after 2010 by the government's own admission. *See* Exhibits A and B.

Consumers Energy respectfully requests that the government's counter claim and affirmative defense relating to the one time fee be dismissed, and that the government's motion for summary judgment be denied. Consumers Energy further requests that the Court enter judgment as to liability in favor of Consumers Energy and against the government on Count I of the Complaint for breach of contract.

## III. STANDARD OF REVIEW

Under Rule 56(c), the Court should properly grant summary judgment only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law, when

the facts are viewed in the light most favorable to the nonmoving party and doubts are resolved against the movant. *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1345-46 (Fed. Cir. 2000). The burden of proving the non-existence of a genuine issue as to any material fact is on the party who moves for summary judgment. Accordingly, any doubt as to either the genuineness of a fact issue appearing on the face of the pleadings, or as to the materiality of the fact in issue, are to be resolved against the moving party, and the evidence presented is to be construed liberally in favor of the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The Supreme Court counsels that a trial court should act with caution in granting summary judgment, and that the trial court may deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Kennedy v. Silas Mason Co.*, 334 U.S. 249 (1948)). In the present case, the language of the Standard Contract is clear and Consumers Energy is entitled to summary judgment on the government's counter claim and affirmative defense relating to the one time fee. Based on the same grounds, Consumers Energy requests that the government's motion for summary judgment be denied.

## IV. ARGUMENT

### A. Because the DOE has Not Accepted the First Delivery of Consumers Energy's SNF/HLW, Consumers Energy is Not Yet Obligated to Make the One-time Fee Payment

The Standard Contract requires contract holders to pay two types of fees to the government. The first is a fee in the amount of 1.0 mill per kilowatt-hour based on electricity generated by the utilities' nuclear power reactors on and after April 7, 1983. Standard Contract, Art. VIII.A(1) (Exhibit A, at 17). That fee is paid quarterly and it is undisputed that Consumers Energy is in compliance with its quarterly payment obligation. The second fee, and the fee at issue in the present

motions, is the one time fee for SNF/HLW used to generate electricity prior to April 7, 1983. The one time fee is assessed "by applying industry-wide average dollar per kilogram charges to four (4) distinct ranges of fuel burnup so that the integrated cost across all discharged (i.e. spent) fuel is equivalent to an industry-wide average charge of 1.0 mill per kilowatt-hour." Standard Contract, Art. VIII.A(2) (Exhibit A, at 17).

The method of payment for the one time fee is set out in paragraph B of Article VIII. The contract holder has three payment options. Option 1 requires payment to be pro rated evenly over 40 quarters, plus interest. Option 2 allows the contract holder to satisfy its financial obligation "in the form of a single payment <u>anytime prior to the first delivery</u>, as reflected in the DOE approved delivery commitment schedule . . . ," plus interest. Standard Contract, Article VIII.B.2(b) (Exhibit A, at 20) (emphasis added). Under Option 3, the contract holder may pay the amount as a single lump sum without interest, prior to June 30, 1985, or two years after contract execution, whichever comes later. Standard Contract, Article VIII.B.2(c) (Exhibit A, at 21). The Standard Contract allows the contract holder to choose its payment option within two years after contract execution. Standard Contract, Article VIII.B.2 (Exhibit A, at 19).

Consumers Energy chose Option 2. On May 31, 1985, Consumers sent a letter to DOE which states: "Consumers Power Company elects as its fee payment, Option 2, the single payment prior to delivery of the spent nuclear fuel." Exhibit C; Def. Motion, Appendix, 1. Defendant does not contest that it received timely notice of the selection by Consumers Energy. Instead, in its motion for summary judgment, Defendant alleges that "in any event, under any of the options for payment of the one-time fee, the contract holder was required to pay the entirety of its one-time fee <u>before</u> DOE began acceptance of that contract holder's SNF and/or HLW. *See* 10 C.F.R. § 961.11,

Art. VIIII.B.2." Def. Motion, at 7. This argument, of course, ignores the fact that DOE has not yet begun acceptance of Consumers Energy's SNF/HLW and therefore, the obligation to pay the one time fee has not come due. Consumers Energy is prepared to pay the one time fee **prior to the first delivery** in accordance with the Standard Contract. *See* Affidavit of Stephen T. Wawro, at 3 (Exhibit D). The one time fee is not due, so there is no debt to collect on the counter claim, and no debt to off set as an affirmative defense. The government's counter claim and the amended affirmative defense should be dismissed.

Defendant attempts to muddy the clear language of the Standard Contract which allows payment anytime prior to acceptance by arguing that Consumers Energy was required to make the payment prior to 1999 (the date of Consumers Energy's first allocation under the abandoned DCS procedure) despite the government's failure to begin acceptance of Consumers Energy's (or any other utilities') SNF/HLW in 1999. The government originally required all contract holders to submit DCS's to DOE based on the assumption that the government would comply with its 1998 deadline. Consumers Energy did so, and based on the government's own self serving Annual Capacity Report ("ACR"), Consumers Energy's first acceptance allocation would have occurred in 1999 **if the government had not breached the Standard Contract**. See 1995 ACR, Exhibit E, at 6 (showing first allocation in year two after beginning acceptance). But the government **did** breach the Standard Contract and acceptance did not occur in 1999. Defendant asserts that Consumers sought to "obtain DOE's commitment to accept SNF from Consumers' Big Rock Point facility beginning in 1999 and from its Palisades facility beginning in 2000." Def. Motion, at 7. According to Defendant, DOE's 1991 ACR established Consumers' 1998 allocation at 0 MTU, 1999 allocation at 2.5 MTU, and 2000 allocation at 87.3 MTU. Def. Motion, at 8. None of these acceptances

actually occurred of course. Defendant argues that Consumers was required to pay the one time fee in 1999 based on a sham acceptance schedule that DOE never planned to follow. The speciousness of the government's argument is best seen by the fact that the government itself now acknowledges that it will begin acceptance no earlier than 2010, and most significantly, DOE has notified nuclear utilities, including Consumers Energy, that it wants new DCS's to be submitted using a new acceptance queue beginning in 2010. *See* Letter from DOE to Nuclear Utilities, dated July 28, 2004 regarding renewed DCS process using 2010 as the beginning acceptance date (Exhibit B); *see also Indiana Michigan Power Co. v. United States,* 60 Fed. Cl. 639 (2004) (Court adopted government's position at trial that permanent repository would be available in 2010).

Defendant's motions for summary judgment and for partial summary judgment are based upon its claim that Consumers Energy was required to, but failed to pay the one time fee before 1999 and the payment was a condition precedent to Defendant's obligation to accept Consumers Energy's SNF/HLW. However, the contract language clearly states that "the Purchaser's financial obligation shall be paid in the form of single payment anytime prior to the first delivery." Standard Contract, Art. VIII.B.2.(b) (Exhibit A, at 20) (emphasis added). Because, to this date, Defendant has not accepted Consumers Energy's SNF, and will not do so until after 2010, Consumers Energy is not yet obligated to make the fee payment. Accordingly, Defendant's motion for summary judgment should be denied.

Defendant apparently also relies upon the second half of the language under Option 2 of the Standard Contract which states that: "the Purchaser's financial obligation shall be paid in the form of a single payment anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule." Standard Contract, Art. VIII.B.2(b) (Exhibit A, at 20) (emphasis added).

Defendant then assumes without any explanation that the first delivery means the delivery as scheduled in the DOE approved DCS based on the 1998 acceptance date which never occurred. The word "reflect" here means: ". . . 4: to give back or exhibit as an image, likeness, or outline: mirror, 5: to bring or cast as a result, 6: to make manifest or apparent: show." Webster's New Collegiate Dictionary (1981). Courts also use the word "reflect" with similar meaning. For example, a judge should "make a judgment reflect the actual intentions of the court." *Blanton v. Anzalone*, 813 F.2d 1574, 1577 (9th Cir.1987). Therefore, "reflect" in this context means to make the actual events manifest or apparent. The language in Option 2 means that the delivery that has actually taken place is reflected or made manifest in the DOE approved DCS. Unfortunately, because the DOE has not accepted any delivery, and will not by DOE's own admission until after 2010, there is no reflection of the first delivery in any DOE approved DCS. Moreover, DOE's recent July 28, 2004 request for new DCS's based on a 2010 beginning acceptance date makes clear that no approved DCS yet exists and the old DCS's and their unrealized delivery dates have been abandoned. Even if a valid approved DCS did exist, as shown below, the DCS process did not create any contractual rights between the parties and the government cannot rely upon a DCS to create any kind of contractual obligation.

**B. The DCS Process Does Not Create a Contractual Obligation for Consumers Energy to Pay the One-Time Fee in 1999**

Consumers Energy requests that the government's motion for summary judgment be denied because the DCS process does not establish a contractually binding obligation for Consumers Energy to pay the one time fee in 1999. Defendant's interpretation of the DCS process is unreasonable and would render the government's performance obligation illusory.

In *Commonwealth Edison Co. v. United States,* 56 Fed. Cl. 652 (2003), the government, in

moving for summary judgment as to the acceptance rate, argued that the DCS process established the rate of acceptance and that January 31, 1998 was not the date of breach. The government argued, as in the present case, that it was not required to accept SNF/HLW except as stated in the approved DCS's. The *Commonwealth Edison* court soundly rejected the government's argument, holding instead that the DCS process was never intended to create contractual obligations under the Standard Contract:

> [T]he DCSs merely "identify all SNF and/or HLW the Purchaser *wishes to deliver* to DOE . . . ." This mechanism does not create a contractually binding obligation for either party. The ACRs are, according to the Standard Contract terms, for "planning purposes" only. The court finds that there is no evidence that the exchange of DCSs was intended to create a contract between the parties.

*Commonwealth Edison*, 56 Fed. Cl. at 663 (citations omitted). The DCS process described in the Standard Contract is just that, a process, and not a contractual obligation to perform. *Id.,* 56 Fed. Cl. at 662. The delivery dates stated in the DCS's submitted by Consumers Energy based on DOE's sham 1995 ACR/APR cannot, therefore, be used as the government suggests to establish a **contractual** date by which Consumers Energy was required to pay the one time fee. Such an interpretation would render the Standard Contract illusory.

A contract that allows a party to "walk away" from its obligations without any resulting consequences is illusory. *See Woll v. United States,* 45 Fed. Cl. 475, 478 (1999), *aff'd*, 251 F.3d 171 (Fed. Cir. 2000). The government "cannot reserve to itself an unlimited right to escape its contractual obligations 'without rendering its promises illusory and the contract void.'" *Madiera Irrigation District v. Hancock*, 985 F.2d 1397, 1405 (9th Cir. 1993) (quoting *Torncello v. United States,* 681 F.2d 756, 760 (Ct. Cl. 1982)). When confronted with conflicting interpretations, courts should construe contracts to avoid rendering them illusory. *See Torncello,* 681 Ct. Cl. at 769.

The government's position that the approved DCS's control such contractual terms as the date of acceptance, the acceptance rate, and the date for payment of the one time fee would effectively allow the government to "walk away" from its acceptance obligations, as it has tried to do in many cases, by producing unrealistic ACR's and APR's, as it did in 1995. In the present case, the DCS's do not provide any binding acceptance obligations, and therefore cannot establish a binding date for payment of the one time fee, which may be paid "anytime" prior to first delivery. Standard Contract, Article VIII.B(2)(b) (Exhibit A, at 20).

The non-binding nature of the DCS's is also reflected in the Instructions provided to utilities when completing the forms. The Preface states:

> The DCS provides the Purchasers with the opportunity to inform DOE of their plans for utilizing their allocations of projected Federal waste management system (FWMS) acceptance capacity. This information will assist DOE in meeting its contractual waste acceptance responsibilities and in developing the FWMS.

Exhibit E, Preface. The Instructions provide that the submissions could be reevaluated if DOE did not remove SNF/HLW at the rate provided in the non-binding ACR. *Id.*

When Congress legislated that DOE should enter into the Standard Contract with civilian electric utilities, Congress could not have predicted whether DOE would be able to make the first delivery according to the DOE approved DCS's. The DOE approved DCS's can therefore only refer to actual deliveries. The only reasonable interpretation of the Standard Contract is that the time of actual first delivery controls the date when Consumers Energy is obligated to pay the one-time fee under the clear language of the Standard Contract. The debt is, therefore, not yet due.

Defendant's Motion is based entirely on the fact that Consumers Energy submitted DCS's seeking to obtain DOE's commitment to accept SNF from Consumers Energy's Big Rock Point facility beginning in 1999 and DOE approved those DCS's. The contract language requiring that the

financial obligation shall be paid "anytime" prior to "the first delivery" is unambiguous. The plain language requires an actual delivery. A delivery that never materialized is not a delivery contemplated under the pertinent section of the Standard Contract.

Consumers Energy has paid and continues to pay fees to the Nuclear Waste Fund ("NWF") for permanent disposal and other services that are not being provided by the DOE. Consumers Energy has fulfilled its obligation under the Standard Contract despite the DOE's repeated failure to begin the acceptance, transportation and disposal of Consumers Energy's SNF/HLW. DOE has the unconditional obligation to begin accepting, transporting and disposing of Consumers Energy's SNF/HLW by January 31, 1998. The one time fee debt is not yet due under the terms of the Standard Contract, and will not become due until after 2010. As a result, Consumers Energy requests that the Court grant its Cross-Motion for Summary Judgment and dismiss the government's counter claim and affirmative defense relating to the one time fee. Consumers Energy further requests that Defendant's Motion for Summary Judgment and Partial Summary Judgment be denied.

### C. The Fee Payment is Not a Condition Precedent to Defendant's Obligation to Begin Accepting Consumers SNF/HLW

Defendant asserts that Consumers Energy's Option 2 fee payment obligation is a condition precedent to Defendant's contractual duty to accept SNF/HLW under the Standard Contract because "Consumers [Energy] elected not to pay its one-time fee in 1985, which it could have done, but instead elected to defer its one-time fee payment, in accordance with Option 2, to satisfy that financial obligation 'in the form of a single payment anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule.'" Def. Motion, at 8-9. As discussed above, the government's interpretation is nothing more than an attempt to re-write the Standard Contract to require Consumers Energy to pay the one time fee prior to the date "it wanted DOE to begin

acceptance of its SNF." Def. Motion, at 9. That is not what the Standard Contract says. The one time fee is tied to first delivery, which has not occurred due to the government's breach.

Even if Consumers was required to make the fee payment prior to the scheduled delivery in 1999 that Defendant never accepted, this Court should reject Defendant's meritless argument that the Option 2 fee payment is a condition precedent to Defendant's obligation to accept delivery. Defendant essentially proposes that any contract which requires action by both parties makes each of those actions a condition precedent to the other party's obligation to perform. Defendant's simplistic argument confuses a condition precedent with a simple contractual obligation.

"A condition is an event not certain to occur, which must occur, unless its nonoccurrence is excused, before performance under a contract becomes due." Restatement (Second) of Contracts § 224 (1981). The Court of Appeals for the Federal Circuit distinguishes a condition from a promise:

> A condition creates no right or duty of and in itself, but is merely a limiting or modifying factor. If it is breached or does not occur, the promisee acquires no right to enforce the promise. A promise raises a duty to perform and its breach subjects the promisor to liability and damages, but does not necessarily excuse performance by the other party.

*Charron v. United States*, 200 F.3d 785, 790-91 (Fed. Cir.1999) (citing *United States v. Schaeffer*, 319 F.2d 907, 911 (9th Cir.1963). This Court also agreed with the Ninth Circuit:

> If a condition does not occur, whether through breach or other cause, the party fails to meet the condition, and acquires no right to enforce the promise. A contractual promise or obligation, on the other hand, raises a duty to perform a service and its breach subjects the promisor to liability and damages, but does not necessarily excuse performance by the other contracting party.

*Favell v. United States*, 16 Cl. Ct. 700, 721 (Cl.Ct.,1989), *appeal denied,* 22 Cl. Ct. 132 (Cl. Ct., 1990) (citing *Schaeffer*, 319 F.2d at 911).

In the present case, the Circuit Court for the District of Columbia has already held on two

separate occasions that the government's obligation to begin accepting SNF/HLW under the Standard Contracts by 1998 is an unconditional duty. *See Indiana Michigan Power Company v Department of Energy*, 88 F.3d 1272, 1277 (D.C. Cir. 1996). In *Northern States Power Company v Department of Energy*, 128 F.3d 754 (D.C. Cir. 1997) the Court explained its holding as follows:

> We held in *Indiana Michigan* that the NWPA imposes an unconditional duty on DOE to take the materials by 1998. Congress, in other words, directed DOE to assume an unqualified obligation to take the materials by the statutory deadline.

*Northern States*, 128 F.3d at 760. These holdings could not be more clear that the government's obligation is not conditioned upon any performance by Consumers Energy. This is also consistent with the Standard Contract's provisions which allow the government to levy interest and late fees on unpaid or underpaid amounts. Standard Contract, Art. VIII.C (Exhibit A, at 22). There would be no need for such fees if the government had no obligation to perform.

The Standard Contract expressly creates an obligation on the part of the purchasers to make certain fee payments including a lengthy description of three payment options, method of payment, interest on late fees, effect of payment and audit. A condition precedent "creates no right or duty in and of itself, but merely acts as a limiting or modifying contract provision." *Stone Forest Industries v United States*, 26 Cl. Ct. 410, 416 (Cl. Ct. 1992). In the instant case, the Standard Contract requires that DOE "shall accept title to all SNF and/or HLW, of domestic origin, generated by the civilian nuclear power reactor(s) . . and dispose of such material in accordance with the terms of this contract." Standard Contract, Art. II.B(1) (Exhibit A, at 9). The government may levy interests for Consumers Energy's failure to make timely payments, but the Standard Contract does not give DOE the right not to perform under the contract if Consumers Energy fails to make any payment. The government's remedy for Consumers Energy's late payment of fees is strictly a financial remedy.

Therefore, the contract term requiring fee payment creates a mutual promise in return for the DOE's obligation to accept the delivery, and is not a condition precedent.

Furthermore, in its motion for summary judgment, Defendant on numerous occasions argues that Consumers Energy has breached the Standard Contract by failing its obligation to make the one time fee payment. At the same time, Defendant characterizes the obligation as a condition precedent. Defendant's argument is self-contradictory. As indicated above, a condition precedent does not create an obligation in itself. If the government is right in its assertion that the fee payment is condition precedent, then the fee payment does not create a duty for Consumers, "but is merely a limiting or modifying provision." *Stone Forest*, 26 Cl. Ct. at 416. "If it is breached or does not occur, the promisee acquires no right to enforce the promise." *Id*. However, the Standard Contract gives the government the right to enforce Consumers Energy's promise to make the correct fee payment. Under Article VIII.C, DOE has the right to levy interest if Consumers Energy does not pay the fees. The DOE also has the right to perform any audits or inspections necessary to determine whether Consumers Energy is paying the correct amount. Further, the Standard Contract uses the term "financial obligations" to describe the one-time fee payment. The language of the Standard Contract itself clearly shows that the government has the right to enforce Consumers Energy's obligation of fee payment. The obligation to make the one time fee payment is not "merely a limiting or modifying factor." Thus, contrary to Defendant's assertion, the fee payment is a promise on the part of Consumers Energy in return for Defendant's promise to begin accepting delivery of Consumer's SNF/HLW. *See e.g. Northern States,* 128 F.3d at 759 ("DOE's interpretation would 'destroy[] the *quid pro quo* created by Congress' and would mean that the payment of fees into the Nuclear Waste Fund 'was for nothing.'").

According to the logic of the government's argument, the government would have no obligation whatsoever if the Option 2 fee payment is a condition precedent to the DOE's obligation because the government would be able to cancel the contract at its own discretion any time before the contract holder makes the fee payment. This would make the Standard Contract illusory since the DOE has the unilateral power to terminate the contract. A promise is illusory when its fails to bind the promisor, who retains the option of discontinuing performance. 17 Am. Jur. 2d Contracts § 130. Such an interpretation would defeat Congress' purpose in requiring DOE to enter into the Standard Contract and address the problem of SNF/HLW on an industry-wide basis. "A contract should be construed in such a way as to make the promises mutually binding upon the parties, unless such construction is wholly negatived by the language used." *Id*. § 129 (citing *T.W. Jenkins & Co. v. Anahein Sugar Co.*, 247 F. 958 (9th Cir. 1918).

The Standard Contract is executory on both sides and the obligation of one of the parties to perform depends on whether the mutual promises are independent. The question of whether contractual provisions are dependent or independent is generally determined from the intent of the parties, as evidenced by the language of the contract, read as a whole. 17A Am. Jur. 2d Contracts § 592. A dependent promise is generally one that is conditioned upon prior performance by the other party. *Id., at* Section 593. Section VIII (D) of the Standard Contract provides: "upon payment of all applicable fees, interest and penalties on <u>unpaid or underpaid</u> amounts, the purchaser shall have no further financial obligation to DOE for the disposal of the <u>accepted</u> SNF and/or HLW." Thus, under the Standard Contract, the contract holder could owe to DOE applicable fees, interest and penalties on unpaid or underpaid amounts even if the DOE had already accepted its SNF/HLW.

Article II of the Standard Contract provides that "the services to be provided by DOE under

this contract shall begin, after commencement of facilities operations, no later than January 31, 1998 and shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors specified in Appendix A, annexed hereto and made a part of, has been disposed of." Exhibit A, at 6. Nowhere does the contract provide that the government's performance of its own promise is conditioned upon, or dependent upon, Consumers Energy's payment of fees. Therefore, the government's promise to accept delivery and Consumer Energy's promise to make the fee payment are independent of each other.

Consumers Energy's obligation to make the one-time fee payment is not condition precedent but a promise in return for the DOE's obligation to accept delivery of its SNF/HLW. Even if Consumers was obligated to make the one-time fee payment before 1999 (which it clearly was not), the non-payment does not excuse performance by the DOE. DOE has an independent obligation to perform its obligation under the Standard Contract.

### D. Defendant's Non-performance Supports Consumers Energy's Claim for Partial Breach

Defendant argues that "the only basis upon which Consumers could attempt to excuse its failure to pay its one-time fee would be its reliance upon DOE's announcement in 1996 that it would not be able to begin SNF acceptance in 1998, viewing DOE's 1996 announcement as some type of anticipatory repudiation of the Standard Contract." Def. Motion, at 2. Defendant here attempts to re-characterize Count I of the Complaint as asserting a cause of action for anticipatory repudiation rather than partial breach of contract, as alleged. Defendant then argues that Consumers Energy can seek damages for a total breach under an anticipatory repudiation theory and may not seek continued performance of the contract. However, the same comment of the Restatement cited by Defendant supports a partial breach cause of action on these undisputed facts: "[A] breach by non-performance,

even if coupled with a repudiation, can generally give rise to either a claim for partial breach or to one for total breach." Restatement (Second) of Contracts, § 253 comment b. "If there is a breach by non-performance, in addition to the repudiation . . . the breach is not one by repudiation alone." *Id*. § 253 comment a.

Defendant does not dispute that DOE failed to begin accepting delivery of SNF in 1998, the date established by the Standard Contract. Where breach of an express, unconditional obligation to perform by a certain date is alleged, the contractor need only prove that the promise has not been fulfilled by the date specified. *See Yankee Atomic Electric Co. v. United States*, 42 Fed. Cl. 223, 232. n. 4. (1998) (citing *Specialty Assembling & Packing Co., v. United States*, 355 F.2d 554, 558-60 (1966). This Court has already held in numerous cases that Defendant has breached the Standard Contract on January 31, 1998. *See Maine Yankee Atomic Power Co. v. United States,* 42 Fed. Cl. 582 (1998), *aff'd*, 225 F.3d 1336 (Fed. Cir. 2000); *Detroit Edison Co. v. United States,* 56 Fed. Cl. 299 (2003); *Indiana Michigan Power Co. v. United States,* 57 Fed. Cl. 88 (2003); *Florida Power & Light Co. v. United States,* 56 Fed. Cl. 555 (2003); *Connecticut Yankee Atomic Electric Co. v. United States,* 42 Fed. Cl. 448 (1998).

"A material breach does not automatically and ipso facto end a contract. It merely gives the injured party the right to end the agreement; the injured party can choose between canceling the contract and continuing it. . . . If he elects instead to continue the contract, the obligations of both parties remain in force and the injured party may retain only a claim for damages for partial breach." *Cities Service Helex, Inc. v. U. S.*, 543 F.2d 1306, 1313 (Fed. Cl. 1976) (citing 5 S. Williston, Contracts §§ 683-88 (3d ed. W. Jaeger 1961)). In this case, Consumers Energy elected to continue the contract and claim partial breach. Under this theory, Defendant's remaining duties under the

Standard Contract are not discharged. In *Indiana Michigan Power Co. v. United States Dep't of Energy*, 88 F.3d 1276 (D.C. Cir. 1996), the court held that Section 302(a)(5)(B) of the NWPA "mandates that DOE assume a contractual obligation to start disposing of the SNF by January 31, 1998." *Northern States Power Co. v. United States Department of Energy*, 128 F.3d, 754, 757 (D.C. Cir. 1997) (explaining the *Indiana Michigan* decision). Article II of the Standard Contract implements Section 302(a)(5)(B) of the NWPA, and states: "The services to be provided by DOE . . . shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors . . . has been disposed of." 10 C.F.R. § 961.11; Standard Contract, Art. II (Exhibit A, at 6). Pursuant to its Standard Contract with the DOE, Consumers Energy has paid approximately $86 million into the NWF. *See* Exhibit D, at 2. Defendant failed to begin accepting SNF by January 31, 1998. While Defendant argues that DOE's 1996 announcement that DOE would not be able to accept delivery in 1998 constitutes anticipatory repudiation by the DOE, it is actually DOE's failure to begin accepting SNF/HLW by January 31, 1998 that breached the Standard Contract by non-performance. Even if the Court were to find that Consumers Energy was required to make the one-time fee payment before 1999, Defendant had already breached the contract in a material way in 1998.

Defendant claims that "[a]bsent an anticipatory breach or repudiation of the Standard Contract, Consumers would have no basis for delaying its payment of its one-time fee until after DOE began accepting its SNF". Def. Motion, at 17. Clearly this is not the case given the government's breach in 1998, and its continuing failure to begin acceptance, transportation and disposal under the Standard Contract. The obligation to pay the one-time fee simply has not yet arisen. Consumers Energy has made the election to claim partial breach of the Standard Contract,

and both parties' independent obligations remain in force. The government retains its own contractual remedies if Consumers Energy does not pay the one time fee when it comes due.

**E. The Court Should Deny Defendant's Motion for Partial Summary Judgment to Recover the One-Time Fee in this Partial Breach Lawsuit Because Consumers Energy's Obligation to Pay the Fee Has Not Become Due**

Rule 12(b) of the Rules of the United States Court of Federal Claims requires that counterclaims be asserted in a responsive pleading. *See also Co-Efficient Foundation v. Woods*, 171 F.2d 691, 694 (5th Cir.1949) ("Counterclaim, setoff, recoupment, and the like are in the nature of affirmative remedies which the defendant has the burden of pleading and proving."). Defendant thus has the burden of pleading and proving its right to offset or recoupment, if any.

Consumers has asserted an action for partial breach of contract. Defendant continues to have an unconditional obligation to perform under the Standard Contract. *See Indiana Michigan Power Co. v. United States*, 88 F.3d 1272, 1276 (D.C. Cir. 1996). At the same time, "the injured party's remaining duties under the contract are not necessarily discharged." Restatement (Second) Contracts § 236 comment b. Defendant claims that "[h]ad DOE begun accepting Consumers' SNF in 1999, in accordance with Consumers' approved DCSs, or at any other time that Consumers alleges, Consumers first would have had to pay the entirety of its one-time fee." Def. Motion, at 18. However, even Defendant admits that DOE has not begun accepting Consumers Energy's SNF/HLW, in 1999 or any other year. By Defendant's own logic, Consumers Energy cannot yet be obligated to pay the one-time fee, and the government cannot prove any debt presently due and owing related to the one time fee. In fact, Defendant admits that DOE would have received the one-time fee from Consumers "had it timely begun SNF acceptance." Def. Motion, at 19.

"The plaintiff--promisee is entitled to the benefit of his or her bargain and should be placed,

as nearly as is possible through an award of money damages, in the position he or she would have been in had the defendant-promisor fully performed the contract. This is done by awarding him or her a sum of money sufficient to enable him or her to obtain the promised performance from another party." *Windt v. Shepard's/McGraw-Hill, Inc.*, 1997 WL 698182 (E.D. Pa. 1997). Consumers Energy seeks money damages in this case which were actually incurred and will be incurred due to Defendant's non-performance under the Standard Contract. At the same time, both parties' remaining duties under the Standard Contract remain in force. Consumers continues to have the financial obligation to make the one time fee payment any time prior to actual acceptance of Consumers Energy's SNF/HLW, in return for Defendant's obligation to accept this material. This Court thus should reject Defendant's claim that by awarding Consumers Energy money damages on its partial breach claim, Consumers would be put in a better position than it would have been in had there been no breach. Def. Motion, 19. Consumers Energy continues to incur storage costs for SNF/HLW made necessary as a direct result of Defendant's breach of the Standard Contract. Consumers Energy continues to be obligated to pay the one time fee prior to first delivery. Therefore, contrary to the government's assertion, it is only by the award of damages for partial breach that Consumers Energy will be put in the same position as if there had been no breach by the government. If Consumers Energy fails to pay the one-time fee when it becomes due, the government may rely upon its contractual remedies.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Consumers Energy respectfully requests that this Court grant the following relief:

A. Grant Consumers Energy's Cross-Motion for Summary Judgment and dismiss the

government's counter claim and affirmative defense relating to the one time fee; and

B. Deny Defendant's Motion for Summary Judgment upon Counts I and II of Plaintiff's Complaint and, in the Alternative, for Partial Summary Judgment upon Defendant's right to Recover Unpaid Fees.

C. Grant such other and further relief as the Court deems just and equitable.

Respectfully submitted,

____s/ Thomas O. Mason__________
Thomas O. Mason
WILLIAMS MULLEN
8270 Greensboro Drive, Suite 700
McLean, VA 22102
(703) 760-5200 (phone)
(703) 748-0244 (facsimile)
Attorneys for Plaintiff Consumers Energy Company

OF COUNSEL:

Harvey J. Messing (P23309)
Jeffrey S. Theuer (P44161)
LOOMIS, EWERT, PARSLEY, DAVIS & GOTTING, P.C.
232 S. Capitol Avenue, Suite 1000
Lansing, MI 48933
(517) 482-2400

James E. Brunner (P28051)
Arunas T. Udrys (P21660)
Consumers Energy Company
212 West Michigan Avenue
Jackson, MI 49201
(517) 788-2151

Dated: October 18, 2004