(Chief Judge Damich)
No. 02-1894C

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CONSUMERS ENERGY COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT AND RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT UPON DEFENDANT'S COUNTERCLAIM AND AFFIRMATIVE DEFENSE

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D. C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

December 17, 2004

TABLE OF CONTENTS

PAGE(S)

ARGUMENT . . . . . . . . . . 2

I. CONSUMERS' OBLIGATION TO PAY ITS ONE-TIME FEE BEFORE DOE BEGINS ACCEPTING CONSUMERS' SNF IS A CONDITION PRECEDENT TO DOE's DUTY . . . . . . . . . . 2

II. DOE'S DELAY IN BEGINNING SNF ACCEPTANCE FROM CONTRACT HOLDERS DOES NOT, IN A PARTIAL BREACH CASE, ELIMINATE THE CONDITION PRECEDENT TO THE ACCRUAL OF A DAMAGES CLAIM . . . . . . . . . . 7

A. Consumers' Election To Pursue A Partial Breach Of Contract Claim, Rather Than A Total Breach Claim, Means That, To Recover Partial Breach Damages, It Must Timely Perform Its Own Contract Duties . . . . . . . . . . 7

B. Consumers' Contorted Interpretation Of The Meaning Of The Fee Payment Provision Does Not Alter The Timing Requirements Of The Fee Payment . . . . . . . . . . 10

III. CONSUMERS' ASSERTION THAT THE D.C. CIRCUIT HAS FOUND DOE'S OBLIGATION TO ACCEPT CONSUMERS' SNF TO BE WHOLLY INDEPENDENT OF ANY OBLIGATION TO PAY FEES IS MERITLESS . . 12

IV. CONSUMERS' REFERENCES TO OTHER POSSIBLE REMEDIES FOR CONSUMERS' NON-PAYMENT OF ITS ONE-TIME FEE DOES NOT ELIMINATE THE NATURE OF THE CONDITION PRECEDENT . . . . 14

V. IF THE COURT DECLINES TO FIND THAT THE ONE-TIME FEE PAYMENT IS A CONDITION PRECEDENT, IT SHOULD ALLOW THE GOVERNMENT TO RECOVER THE ONE-TIME FEE PAYMENT IN CONJUNCTION WITH ANY DAMAGES AWARD . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . 16

# TABLE OF AUTHORITIES

CASES PAGE(S)

B-B Co. v. Piper Jaffray & Hopwood, Inc.,
931 F.2d 675 (10th Cir. 1991) . . . . . 4

Beauchamp Construction Co. v. United States,
14 Cl. Ct. 430 (1988) . . . . . 3

Bettis v. Islamic Republic of Iran,
315 F.3d 325 (D.C. Cir. 2003) . . . . . 11

Bluebonnet Savings Bank, F.S.B. v. United States,
339 F.3d 1341 (Fed. Cir. 2003) . . . . . 15

Brazos Electric Power Cooperative, Inc. v. United States,
49 Fed. Cl. 398 (2001) . . . . . 3

Christopher Village, LP v. United States,
53 Fed. Cl. 182 (2002), aff'd, 360 F.3d 1319 (Fed. Cir. 2004) . . . . . 1

Cities Service Helex, Inc. v. United States,
211 Ct. Cl. 222, 543 F.2d 1306 (1976) . . . . . 9

City of Fairfax, Va. v. Washington Metropolitan Area Transit Authority,
582 F.2d 1321 (4th Cir. 1978), cert. denied, 440 U.S. 914 (1979) . . . . . 8

Columbia Gas System, Inc. v. United States,
50 F.3d 233 (3d Cir. 1995) . . . . . 9

Conley v. Pitney Bowes,
34 F.3d 714 (8th Cir. 1994) . . . . . 5

DPJ Co. v. FDIC,
30 F.3d 247, 250 (1st Cir.1994) . . . . . 15

In re Enron Corp. Securities, Derivatives & ERISA Litigation,
284 F. Supp. 511 (S.D. Tex. 2003) . . . . . 11

Ferguson Propellor, Inc. v. United States,
59 Fed. Cl. 51 (2003) . . . . . 1

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

Honeywell International, Inc. v. Universal Avionics System Corp., No. 03-242, 2004 WL 2700019 (D. Del. Nov. 18, 2004) . . . . . . . . . . . . . . . . . . . . . . . . 11

Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639 (2004), appeal pending, No. 04-5122 (Fed. Cir.) . . . . . . . . . . . . . . . . . . . . 8

Kingston v. Preston, 99 Eng. Rep. 437 (K.B. 1773) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Loud v. Pomona Land & Water Co., 153 U.S. 564 (1894) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Northern States Power Co. v. Department of Energy, 128 F.3d 754 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

S&R Corp. v. Jiffy Lube International, Inc., 968 F.2d 371 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Schneider National, Inc. v. Bridgestone/Firestone, Inc., 200 F. Supp. 1006 (E.D. Wis. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Skagen v. Sears, Roebuck & Co., 910 F.2d 1498 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Southeastern Airways Corp. v. United States, 230 Ct. Cl. 47, 673 F.2d 368 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Southern California Edison v. United States, 58 Fed. Cl. 313 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

United States v. Munsey Trust Co., 332 U.S. 234 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

White v. Delta Construction International, Inc., 285 F.3d 1040 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TABLE OF AUTHORITIES (cont'd)


STATUTES AND REGULATIONS PAGE(S)

42 U.S.C. §§ 10101-10270 . . . . . . . . . . 12

42 U.S.C. § 10222(a)(1) . . . . . . . . . . 13

10 C.F.R. § 961.11 . . . . . . . . . . passim

MISCELLANEOUS

2 E. Farnsworth, Farnsworth on Contracts § 8.11 (3d ed. 2004) . . . . . . . . . . 4, 6

13 R. Lord, Williston on Contracts § 38.8, at 405 (4th ed. 2000) . . . . . . . . . . 9

8 C. McCauliff, Corbin on Contracts § 30.7 (rev. ed. 1999) . . . . . . . . . . 3, 4, 6

L. Simpson, Handbook of the Law of Contracts § 152 (1965) . . . . . . . . . . 5

Black's Law Dictionary 1233 (5th ed. 1979) . . . . . . . . . . 3

Restatement (Second) of Contracts § 225(3) (1981) . . . . . . . . . . 9

Restatement (Second) of Contracts § 237 (1981) . . . . . . . . . . 3, 5

Webster's New Collegiate Dictionary (1981) . . . . . . . . . . 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) | No. 02-1894C<br>(Chief Judge Damich) |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT AND RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT UPON DEFENDANT'S COUNTERCLAIM AND AFFIRMATIVE DEFENSE

Defendant, the United States, respectfully submits this reply to "Plaintiff's Brief (i) In Opposition To Defendant's Motion For Summary Judgment Upon Counts I And II Of Plaintiff's Complaint And, In The Alternative, For Partial Summary Judgment Upon Defendant's Right To Recover Unpaid Fees, And (ii) Cross Motion For Summary Judgment To Dismiss The Government's Counter Claim And Affirmative Defense Relating To One Time Fee," which plaintiff, Consumers Energy Company ("Consumers"), filed on October 18, 2004.[1]

[1] Consumers did not file a response to the proposed findings of uncontroverted fact that accompanied the Government's motion for summary judgment. Pursuant to RCFC 56(h)(2), Consumers was required to file, "together with its opposition, a response to the requested findings by indicating, immediately below each finding, whether it agrees or disagrees with the finding as stated." Because Consumers did not respond to our proposed findings of uncontroverted fact, they should be deemed admitted. Ferguson Propellor, Inc. v. United States, 59 Fed. Cl. 51, 58 (2003); Christopher Village, LP v. United States, 53 Fed. Cl. 182, 186 n.3 (2002), aff'd, 360 F.3d 1319 (Fed. Cir. 2004); see RCFC 56(h)(3) ("[i]n determining any motion for summary judgment, the court will, absent persuasive reason to the contrary, deem the material facts claimed and adequately supported by the moving party to be established, except to the extent that such material facts are controverted by affidavit or other written or oral evidence"); see also Skagen v. Sears, Roebuck & Co., 910 F.2d 1498, 1500 (7th Cir. 1990); Schneider National, Inc. v. Bridgestone/Firestone, Inc., 200 F.Supp. 1006, 1008 n. 2 (E.D. Wis. 2001).

## ARGUMENT

### I. CONSUMERS' OBLIGATION TO PAY ITS ONE-TIME FEE BEFORE DOE BEGINS ACCEPTING CONSUMERS' SNF IS A CONDITION PRECEDENT TO DOE's DUTY

In our motion for summary judgment upon Counts I and II of Consumers' complaint, we established that Consumers has not yet paid the one-time fee that it is obligated to pay before the Department of Energy ("DOE") begins accepting the spent nuclear fuel ("SNF") and/or high-level radioactive waste ("HLW") covered by the Standard Contract to which Consumers is a party. As we explained in our motion, the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. § 10101-10270, expressly provides that DOE's obligation to accept any SNF or HLW from a nuclear utility is "[i]n return for the payment of fees" required by the NWPA. 42 U.S.C. § 10222(a)(5)(B). The plain language of the Standard Contract specifies that the method of payment of the one-time fee which Consumers selected requires that Consumers' "financial obligation shall be paid in the form of a single payment anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule . . .," plus interest. 10 C.F.R. § 961.11, Art. VIII.B.2(b) (emphasis added). As we further explained in our motion, the scheduling of DOE's acceptance of any SNF from an individual contract holder is wholly dependent upon the existence of an approved delivery commitment schedule ("DCS"). Accordingly, Consumers is obligated under the terms of the Standard Contract to pay its one-time fee before DOE's obligation to accept Consumers' SNF arises. Because Consumers has not satisfied this condition precedent to DOE's obligation to accept Consumers' SNF, Consumers has no basis for maintaining its claim.

In its response to the Government's motion for summary judgment, Consumers asserts that "[n]owhere does the contract provide that the government's performance of its own promise

is conditioned upon, or dependent upon, Consumers Energy's payment of fees" and that "the government's promise to accept delivery and Consumer[s] Energy's promise to make the fee payment are independent of each other." Pl. Opp. 18.[2] Consumers' interpretation of the Standard Contract is clearly at odds with the plain language of the agreement. Article VIII.B.2(b) of the Standard Contract expressly provides that the contract holder "shall" pay its one-time fee before DOE begins accepting any of that contract holder's SNF. 10 C.F.R. § 961.11, Art. VIII.B.2(b). It is hornbook law that the use of the term "shall" connotes a mandatory obligation under a contract. Southern California Edison v. United States, 58 Fed. Cl. 313, 322 (2003); see Black's Law Dictionary 1233 (5th ed. 1979) ("the term 'shall' is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation . . . . It has the invariable significance of excluding the idea of discretion."); see Beauchamp Const. Co. v. United States, 14 Cl. Ct. 430, 436 (1988) (word "shall" imposes mandatory obligation). Accordingly, the plain language of Article VIII.B.2(b) establishes that Consumers' one-time fee payment is due and owing before DOE begins accepting Consumers' SNF.

This contract language creates a condition precedent, making DOE's duty to accept Consumers' SNF conditional upon Consumers' prior payment of its one-time fee. Conditions precedent "are those *facts and events*, occurring *after the making of a valid contract*, that must exist or occur before there is a right to immediate performance, before there is a breach of a contract duty and before the usual judicial remedies become available." 8 C. McCauliff, Corbin on Contracts § 30.7, at 14 (rev. ed. 1999) (italics in original); see Brazos Elec. Power Coop., Inc.

[2] "Pl. Opp. __" refers to Consumers' opposition to our motion for summary judgment, which Consumers filed on October 18, 2004. "Pl. App. __" refers to the appendix to that opposition. "DPFUF ¶ __" refers to defendant's proposed findings of uncontroverted fact, dated July 9, 2004, which accompanied our motion for summary judgment, dated July 9, 2004.

v. United States, 49 Fed. Cl. 398, 405 (2001); B-B Co. v. Piper Jaffray & Hopwood, Inc., 931 F.2d 675, 678 (10th Cir. 1991). A fact or event becomes a condition of a duty "by agreement of the parties, expressed in definite language when the contract is made" as an "express" condition. 8 C. McCauliff, supra, § 30.10, at 19. However, "contractors can 'express' their intentions otherwise than by the use of specific words." Id. Indeed, "[a] fact or event may be made a condition of a contract right and duty by any form of words capable of interpretation." Id. § 31.1, at 41 (emphasis added). Further, "[j]ust as parties can make promises without using words to do so, they can also express an intention that a fact or event shall be a condition of legal duty without putting it into words." Id. § 30.10, at 19. Nevertheless, "[i]f a condition is found by the processes of interpretation of language, it is called an express condition; if otherwise, the condition" may be a "constructive" condition or an "implied" condition. Id. § 31.1, at 49. "In specific cases it is not always possible to classify the condition involved in the case as being an express condition or a constructive one." Id. § 31.1, at 48.

Here, the language of the Standard Contract is quite clear. DOE is to begin acceptance of SNF from an individual contract holder at some point after January 31, 1998, as identified in an approved DCS. 10 C.F.R. § 961.11, Art. VI.B.1(b) ("DOE will first accept from Purchaser the oldest SNF and/or HLW for disposal in the DOE facility, except as otherwise provided for in paragraphs B [the DCS provision], D and E of Article V"). However, Article VIII.B.2(b) expressly provides that, before DOE accepts any SNF from the contract holder under an approved DCS, the contract holder "shall" pay its one-time fee. Id., Art. VIII.B.2(b). In establishing conditions to the duty of subsequent performance, "[s]ometimes the parties themselves fix the order of performance by the language of their agreement." 2 E. Farnsworth, Farnsworth on Contracts § 8.11 (3d ed. 2004). In this case, the language of the agreement

expressly places upon the contract holder the obligation (or condition) to pay its one-time fee before DOE's duty to begin SNF acceptance arises, creating an express condition under the specific language of the Standard Contract. Accordingly, DOE's duty to begin accepting Consumers' SNF has not yet arisen, and Consumers is not entitled to damages for DOE's failure to satisfy that duty.

Even if the language of the Standard Contract itself did not create an express condition, the contractual requirement that the contract holder pay its one-time fee before DOE began SNF acceptance clearly was intended to condition DOE"s obligation to accept and dispose of SNF upon the contract holder's prior payment of its fees, creating a "constructive" condition. "One well-established rule of contract construction is that '[i]n bilateral contracts for an agreed exchange of performances, . . . where one party's performance is to be rendered prior in time to that of the other, it is a constructive condition precedent to the latter's duty." Conley v. Pitney Bowes, 34 F.3d 714, 717 (8th Cir. 1994) (quoting L. Simpson, Handbook of the Law of Contracts § 152 (1965)); see Restatement (Second) of Contracts § 237 (1981) ("it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no material failure by the other party to render any such performance due at an earlier time"). "Such a 'performance is as much a condition precedent to the other's duty as though expressly made so.'" Conley, 34 F.3d at 714 (quoting L. Simpson, supra, § 152, and citing Loud v. Pomona Land & Water Co., 153 U.S. 564, 577 (1894) (agreement to convey land "after the making of the payment and full performance" rendered such payment and performance a condition precedent to the duty to convey)).

Various treatises on contracts law uniformly refer to a decision from the Court of King's Bench issued in 1773, Kingston v. Preston, 99 Eng. Rep. 437 (K.B. 1773), as establishing the

parameters of the constructive condition doctrine. In that case, Mr. Preston, the defendant, "promised to transfer his silk business and stock in trade to the plaintiff, John Kingston, who promised that 'at and before' the transfer, he would give sufficient security for the payment of [250 pounds] monthly until the inventory was drawn down to" 4000 pounds." 8 C. McCauliff, supra, § 32.5, at 147 (describing Kingston decision). In Mr. Kingston's action against Mr. Preston for refusing to execute the transfer, Mr. Preston asserted that Mr. Kingston had not tendered sufficient security. Although Mr. Preston argued that the promises to transfer the business and to provide sufficient security were "mutual and independent" obligations, the court disagreed, finding that Mr. Kingston's tender of the security "was clearly a condition precedent" to the duty to transfer the silk business. Id. § 32.5, at 148; see 2 E. Farnsworth, supra, § 8.9, at 473-74 (discussing Kingston decision). As the Kingston court found, the "precedency [of promises] must depend on the order of time in which the intent of the transaction requires their performance." Kingston, 99 Eng. Rep. at 438 (quoted in 2 E. Farnsworth, supra, § 8.11, at 483).

Here, again, the Standard Contract expressly provided that the contract holder "shall" pay its one-time fee before DOE began accepting its SNF. Whether viewed as an express or a constructive condition, it is, under traditional contract interpretation principles, a condition precedent to DOE's obligation to begin accepting Consumers' SNF. Because Consumers has not satisfied that condition, DOE is not yet obligated to begin accepting Consumers' SNF, and Consumers cannot maintain a suit for damages for DOE's failure to begin that acceptance.

## II. DOE'S DELAY IN BEGINNING SNF ACCEPTANCE FROM CONTRACT HOLDERS DOES NOT, IN A PARTIAL BREACH CASE, ELIMINATE THE CONDITION PRECEDENT TO THE ACCRUAL OF A DAMAGES CLAIM

### A. Consumers' Election To Pursue A Partial Breach Of Contract Claim, Rather Than A Total Breach Claim, Means That, To Recover Partial Breach Damages, It Must Timely Perform Its Own Contract Duties

To overcome the plain language of the Standard Contract, Consumers asserts that, because DOE has deferred the time at which it will begin SNF acceptance from the Standard Contract holders, the time for its one-time fee payment has not yet arisen. See, e.g., Pl. Opp. 7-10. It argues extensively that, because DOE has not yet begun accepting its SNF, its failure to have paid its one-time fee prior to the date from which it now seeks damages is irrelevant and that, until DOE arrives to begin accepting its SNF, the one-time fee is not due. See id. Yet, Consumers' lawsuit is based upon the premise that DOE was obligated to begin SNF acceptance from the contract holders by January 31, 1998, and that DOE was obligated to accept Consumers' SNF at some point soon thereafter (presumably by the date established in its 1999 earliest-approved DCS). However, as we established above, before DOE would have had any duty to accept Consumers' SNF, Consumers would first have to have paid its one-time fee. As a result, before Consumers can complain that DOE's performance to Consumers is or was "due," it must satisfy its own condition precedent to DOE's duty to perform. Although it promises that, once DOE comes to accept its SNF, it will pay the one-time fee to DOE, see Pl. Opp. 8 & Pl. App. 125-26 ¶ 13, it is unlikely that DOE will have any ability to recover previously paid damages that DOE paid in response to a court judgment if Consumers does not subsequently satisfy this promise. In fact, the Standard Contract itself establishes the order of performances: payment of the one-time fee by the contract holder first, followed by SNF acceptance by DOE. To the extent that Consumers seeks an award of damages for DOE's failure to accept Consumers' SNF at an

earlier date than that by which DOE actually performs, Consumers must satisfy its condition precedent to that duty before its damages claim can accrue.

Consumers further complains that, because DOE had announced prior to January 31, 1998, that it would not be able to begin SNF acceptance by that date, DOE excused the condition precedent when it failed to begin accepting SNF from the nuclear utility contract holders on January 31, 1998, which Consumers apparently believes was itself a condition to Consumers' obligation to pay the one-time fee. Pl. Opp. 8-9. In essence, Consumers is claiming that DOE anticipatorily breached the Standard Contract and that Consumers was, therefore, not required to satisfy any of its condition precedents to DOE's further duty to perform. However, Consumers' decision to pursue a claim for only a partial breach of contract, and not for a total breach of contract, affects its ability to claim that DOE's anticipatory breaches excuse or defer its own performance obligations. As we explained in our motion for summary judgment, in response to an anticipatory breach or repudiation of a contract, the non-breaching party must make an affirmative election: either (1) declare the contract in total breach and sue for all damages under the contract, or (2) await the contract performance due date and seek partial breach damages if that performance is not forthcoming.[3] S&R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 376 (3d Cir. 1992). Further, even when the actual performance date arrives and is not satisfied, the non-breaching party, to the extent that it elects to view the breach as only partial, must continue to perform its continuing contractual obligations and seek damages for the delay in performance.

[3] As we explained in our motion for summary judgment, no legal theory of an "anticipatory partial breach" exists. See City of Fairfax, Va. v. Washington Metro. Area Transit Auth., 582 F.2d 1321, 1331 (4th Cir. 1978) ("an anticipatory breach cannot be predicated on a partial breach of the contract . . ." (emphasis added)), cert. denied, 440 U.S. 914 (1979); see Indiana Michigan Power Co. v. United States, 60 Fed. Cl. 639, 648 (2004) (finding in SNF case that "[a]nticipatory repudiation does not apply in a partial breach situation"), appeal pending, No. 04-5122 (Fed. Cir.).

Cities Serv. Helex, Inc. v. United States, 211 Ct. Cl. 222, 234, 543 F.2d 1306, 1313 (1976). Here, Consumers elected to treat the Standard Contract as continuing, not to declare it at an end, and to pursue only a partial breach of contract claim in this Court. "If [the non-breaching party] elects . . . to continue the contract" in response to a breach and to treat the breach as only partial, "the obligations of both parties remain in force and the injured party may retain only a claim for damages for partial breach." Id. at 234, 543 F.2d at 1313. Accordingly, having elected to continue the contract, Consumers was obligated to continue its own contract performance, including the timely payment of its fees. See id. With Consumers having made this election, DOE's duty to accept Consumers' SNF has not yet arisen because Consumers, which was obligated to continue its own contract performance, has never satisfied its condition precedent to DOE's duty: payment of its one-time fee. The non-occurrence of this condition "excuses performance by the party whose performance is conditioned . . . ." 13 R. Lord, Williston on Contracts § 38.8, at 405 (4th ed. 2000); see Columbia Gas System, Inc. v. United States, 50 F.3d 233, 240 (3d Cir. 1995).

Consumers complains that the Government has argued that Consumers' failure to pay the one-time fee is a "breach" by Consumers of the Standard Contract. Pl. Opp. 16. Consumers has misunderstood our argument. We have not intended to argue that Consumers' failure to pay its one-time fee is an actionable "breach" of the Standard Contract by Consumers. Instead, we have argued only that Consumers' decision to defer satisfying its condition to DOE's duty to begin accepting Consumers' SNF also defers DOE's duty to begin accepting Consumers' SNF. The "[n]on-occurrence of a condition is not a breach by [Consumers] unless he is under a duty that the condition occur." Restatement (Second) of Contracts § 225(3) (1981). It merely means that Consumers' claim for damages for DOE's failure to perform its duties to Consumers cannot

accrue until Consumers pays its one-time fee. Because Consumers has not paid that fee, it cannot seek damages here.[4]

B. Consumers' Contorted Interpretation Of The Meaning Of The Fee Payment Provision Does Not Alter The Timing Requirements Of The Fee Payment

Consumers argues that the language of the Standard Contract evidences that Consumers only has to pay its one-time fee if and when DOE actually arrives to accept Consumers' SNF while, at the same time, Consumers may recover damages based upon an assumption that, even without the one-time fee payment, DOE was obligated to begin SNF acceptance at an earlier date. However, as previously established, DOE's obligation to begin accepting Consumers' SNF does not commence until Consumers has paid its one-time fee. The Standard Contract expressly provides that Consumers' "financial obligation" to pay the one-time fee "shall be paid in the form of a single payment anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule." 10 C.F.R. § 961.11, Art. VIII.B.2(b) (emphasis added). Consumers' first approved DCS identified an initial SNF acceptance date of 1999. DPFUF ¶ 6. Accordingly, because a 1999 acceptance date was "reflected in the DOE approved" DCS, Consumers was obligated, to the extent that it wanted DOE to accept its SNF beginning in 1999 or to recover damages for DOE's failure to begin that SNF acceptance by that date, to pay its one-time fee before then.

---

[4] Consumers also argues that, under the Government's theory of condition precedent, "the government would be able to cancel the contract at its own discretion any time before the contract holder makes the fee payment," rendering the Standard Contract (as interpreted by the Government) illusory. Pl. Opp. 17. We do not understand the basis for this statement. The Standard Contract imposes a duty upon DOE's party to accept Consumers' SNF as reflected in approved DCSs, conditioned upon prior payment of the one-time fee (and other fees) by Consumers. Rather than making the Standard Contract illusory, Consumers' decision to defer paying its one-time fee defers DOE's duty to begin SNF acceptance until the one-time fee is paid.

To overcome the plain language of Article VIII.B.2(b), Consumers refers to Webster's New Collegiate Dictionary (1981), to define the word "reflect," as used in the contractual phrase "as reflected in the DOE approved delivery commitment schedule," to mean that the one-time fee payment is not due until "the delivery [of SNF to DOE] . . . has actually taken place . . . ." Pl. Opp. 10. In essence, Consumers is arguing that, even though Article VIII.B.2(b) expressly requires that the contract holder "shall" pay its one-time fee before the date "reflected in" the earliest-approved DCS, the language of Article VIII.B.2(b) actually means that the one-time fee is due after DOE actually accepts Consumers' SNF. Consumers' contorted definition of the word "reflect" – rather than the phrase "as reflected in" that is actually used in Article VIII.B.2(b) – contorts the meaning of that provision. Clearly, the phrase "as reflected in" means "as identified in" or "as established by." See, e.g., Bettis v. Islamic Republic of Iran, 315 F.3d 325, 337 (D.C. Cir. 2003) ("[t]here is a commonly understood meaning of the term, as reflected in State and common law" (emphasis added)); Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp., No. 03-242, 2004 WL 2700019, at *14 (D. Del. Nov. 18, 2004) ("proposed constructions are consistent with the ordinary meaning of those terms as reflected in common usage dictionaries . . ." (emphasis added)); In re Enron Corp. Secs., Derivatives & ERISA Litig., 284 F. Supp. 511, 625 (S.D. Tex. 2003) ("express preemption occurs by express statutory term, as reflected in § 514(a) of ERISA" (emphasis added)). Here, to the extent that Consumers wishes to recover damages for DOE's failure to begin accepting its SNF by 1999, it was required to pay its one-time fee prior to 1999, the date "reflected in" its earliest-approved DCS. Its failure to do so precludes a suit based upon DOE's failure to satisfy that duty.[5]

---

[5] Consumers also argues that the DCS process is "unreasonable" and that the Government's interpretation of the DCS process is "illusory." Pl. Opp. 10-11. We do not understand the relevance of Consumers' position to the issues in our motion for summary judgment. The issue

## III. CONSUMERS' ASSERTION THAT THE D.C. CIRCUIT HAS FOUND DOE'S OBLIGATION TO ACCEPT CONSUMERS' SNF TO BE WHOLLY INDEPENDENT OF ANY OBLIGATION TO PAY FEES IS MERITLESS

In its opposition to our motion for summary judgment, Consumers asserts that DOE has an "unconditional duty" to accept Consumers' SNF, regardless of whether Consumers ever pays any of its fees. Pl. Opp. 14-15; see Pl. Opp. 17-18. Specifically, Consumers cites to decisions of the United States Court of Appeals for the District of Columbia Circuit for the proposition that "the [Nuclear Waste Policy Act ("NWPA")] imposes an unconditional duty on DOE to take the materials by 1998" and that "Congress, in other words, directed DOE to assume an unqualified obligation to take the materials by the statutory deadline." Pl. Opp. 15 (quoting Northern States Power Co. v. Department of Energy, 128 F.3d 754, 760 (D.C. Cir. 1997)). Consumers is confusing DOE's general statutory obligation under the NWPA, 42 U.S.C. §§ 10101-10270, to begin its program of accepting SNF from nuclear utilities by January 31, 1998, with DOE's obligation to accept SNF from a particular nuclear utility.

Contrary to Consumers' suggestion that DOE's obligation to accept Consumers' SNF "is not conditioned upon any performance by Consumers Energy," Pl. Opp. 15 (emphasis in original), the NWPA clearly establishes that any obligation by DOE to accept any particular

---

in our motion is whether Consumers can recover damages for DOE's failure to accept its SNF before Consumers has ever paid its required one-time fee. Regardless of whether the DCS process is enforceable, Consumers clearly is required under the terms of the Standard Contract to pay its one-time fee before DOE's duty to begin accepting its SNF arises, rendering Consumers' discussion of the DCS process irrelevant here. Nevertheless, absent the DCS process, Consumers has not identified any other mechanism through which the Standard Contract can operate. Outside of the DCS process, the Standard Contract does not establish any other mechanism through which either DOE or the individual contract holders could ever know when the contract holder would be obligated to have SNF prepared for delivery to DOE or when DOE would be obligated to arrive at a particular nuclear reactor site to accept SNF, rendering the Standard Contract impossible to perform.

nuclear utility's SNF is wholly conditioned upon that particular nuclear utility entering into a contract with the Secretary of Energy and paying its fees. Specifically, section 302(a)(1) of the NWPA authorizes the Secretary of Energy to enter into contracts with the owners and generators of SNF of domestic origin for the acceptance and disposal of that SNF, 42 U.S.C. § 10222(a)(1), and requires that "[s]uch contracts shall provide for payment to the Secretary of fees pursuant to paragraphs (2) and (3) sufficient to offset expenditures described in subsection (d)." Id. The statute also provides that, "[i]n return for the payment of fees established by this section, the Secretary, beginning not later than January 31, 1998, will dispose of the high-level radioactive waste and spent nuclear fuel involved as provided in this subtitle." Id. § 10222(a)(5)(B) (emphasis added). In fact, in the statute's express "Findings and Purposes," Congress mandated that "the costs of such disposal should be the responsibility of the generators and owners of such waste and spent fuel" and created a Nuclear Waste Fund "that will ensure that the costs of carrying out activities relating to the disposal of such waste and spent fuel will be borne by the persons responsible for generating such waste and spent fuel." Id. § 10131(b)(4). Finally, "except as provided in paragraph (1) [of section 302(b)], no spent nuclear fuel . . . may be disposed of by the Secretary in any repository constructed under this Act unless the generator or owner of such spent fuel or waste has entered into a contract with the Secretary under this section . . . ." Id. § 10222(b)(2).

As evidenced by these statutory provisions, Consumers' assertion that DOE's obligation to accept Consumers' SNF is independent of any obligation upon Consumers' part to pay fees is completely unsupported. To the contrary, DOE's obligation to accept any SNF from Consumers is dependent upon Consumers' entry into a contract with DOE and is only "[i]n return for [Consumers'] payment of fees." 42 U.S.C. § 10222(a)(5)(B). Like the statute, the Standard

Contract, as previously discussed, makes payment of the one-time fee a prerequisite to DOE's duty to begin accepting that contract holder's SNF. 10 C.F.R. § 961.11, Art. VIII.B.2(b). Consumers' reference to out-of-context language from decisions from the D.C. Circuit does not alter the plain language of the NWPA or of the Standard Contract itself.

## IV. CONSUMERS' REFERENCES TO OTHER POSSIBLE REMEDIES FOR CONSUMERS' NON-PAYMENT OF ITS ONE-TIME FEE DOES NOT ELIMINATE THE NATURE OF THE CONDITION PRECEDENT

Consumers argues that the pre-payment obligation in Article VIII.B.2(b) was not a condition precedent, but, instead, that DOE's only remedy for Consumers' failure to pay its one-time fee before DOE accepted Consumers' SNF was through the accrual of interest at the low interest rates specified in the Standard Contract. Pl. Opp. 15 (citing 10 C.F.R. § 961.11, Art. VIII.C).[6] While we agree that the contract contains a provision allowing for the accrual of interest upon late payments, the Standard Contract also contains a "Remedies" provision, which expressly provides that "[n]othing in this contract shall be construed to preclude either party from asserting its rights and remedies under the contract or at law." 10 C.F.R. § 961.11, Art. XI. Consumers' assertion that DOE's only remedy for a contract holder's non-payment of its one-time fee is through the continuing accrual of interest both renders it impossible to determine when, if ever, a contract holder would be obligated to pay its fees and, further, deletes the prior payment

---

[6] Pursuant to Article VIII.B.2(b) of the Standard Contract, interest accrues on the one-time fee "from April 7, 1983, to the date of the payment based upon the 13-week Treasury bill rate, as reported on the first such issuance following April 7, 1983, and compounded quarterly thereafter by the 13-week Treasury bill rates as reported on the first such issuance of each succeeding assigned three-month period until payment." 10 C.F.R. § 961.11, Art. VIII.B.2(b). "DOE will notify the Purchaser of amounts due only when unpaid or underpaid by the dates specified in paragraph b . . .," at which the interest rate increases. Id. Art. VIII.C. Because Consumers is obligated to pay its one-time fee only prior to the date upon which it wants DOE to begin accepting its SNF, its election to defer its one-time fee payment does not make that payment late, but merely defers DOE's duty to begin SNF acceptance.

obligation from the Standard Contract. The interest provision upon which Consumers relies does not somehow eliminate the condition that the Standard Contract places upon DOE's duty to begin accepting an individual contract holder's SNF.

## V. IF THE COURT DECLINES TO FIND THAT THE ONE-TIME FEE PAYMENT IS A CONDITION PRECEDENT, IT SHOULD ALLOW THE GOVERNMENT TO RECOVER THE ONE-TIME FEE PAYMENT IN CONJUNCTION WITH ANY DAMAGES AWARD

In our motion for summary judgment, we requested that, if the Court declines to find that Consumers' payment of the one-time fee was a condition precedent to DOE's duty to perform, it require Consumers to pay the one-time fee either directly or as an offset against any damages award. In response, Consumers asserts only that the fee is not yet due. Pl. Opp. 22. However, as we explained in our motion for summary judgment, if DOE had accepted Consumers' SNF at a particular date, Consumers would have been obligated to pay the one-time fee prior to that acceptance. Absent any requirement that Consumers pay that fee at the same time that it obtains a damages award, Consumers will improperly be placed in a better position than it "would have been in, had the breaching party fully performed its obligation," Bluebonnet Sav. Bank, F.S.B. v. United States, 339 F.3d 1341, 1344-45 (Fed. Cir. 2003), given that it will be able to retain and invest its one-time fee monies for a potentially extensive period of time when, had DOE timely begun SNF acceptance, that money would have been paid to DOE. See White v. Delta Constr. Int'l, Inc., 285 F.3d 1040, 1043 (Fed. Cir. 2002) ("[t]he non-breaching party 'should on no account get more than would have accrued if the contract had been performed'" (quoting DPJ Co. v. FDIC, 30 F.3d 247, 250 (1st Cir.1994)). Accordingly, assuming that Consumers is entitled to

damages arising from DOE's delay, Consumers should be required to pay the fee that it would have had to have paid had DOE timely performed.[7]

CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court grant summary judgment in the Government's favor upon Counts I and II of Consumers' complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

[7] In any event, the Government has a common-law right to offset or recoup debts owed to the Government against contract payments and damages due to the debtor. United States v. Munsey Trust Co., 332 U.S. 234, 239 (1947). This Court's predecessor, the Court of Claims, recognized that the debt need not even be formally "determined, liquidated, or assessed" when the Government withholds monies from the contractor's payments. Southeastern Airways Corp. v. United States, 230 Ct. Cl. 47, 65, 673 F.2d 368, 379 (1982). Here, to the extent that Consumers is awarded damages based upon DOE's failure to begin SNF acceptance from Consumers in 1999 or at any other time, that damages award would have to be based upon an assumption that DOE was required to begin SNF acceptance from Consumers at that time. Assuming that DOE is paying damages based upon its failure to satisfy an obligation to begin SNF acceptance from Consumers in 1999 or at any specific date, it should be entitled to recoup the monies that it would have obtained before it would have accepted that SNF.

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

December 17, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 17th day of December 2004, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT AND RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT UPON DEFENDANT'S COUNTERCLAIM AND AFFIRMATIVE DEFENSE" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Harold D. Lester, Jr.