IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-1894C |
| v. | ) | (Chief Judge Damich) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO
PLAINTIFF'S PROPOSED FINDINGS OF FACT

Pursuant to Rule 56 of the Rules of this Court ("RCFC"), defendant, the United States, respectfully files this response to the "Statement of Facts" contained in "Consumer Energy Company's Motion For Summary Judgment On Contract Liability," dated October 18, 2004. As explained in our motion for leave to file this response, pursuant to 56(h)(1), plaintiff, Consumers Energy Company ("Consumers"), was required to file, "together with its motion, a separate document titled Proposed Findings Of Uncontroverted Fact," which was to "contain concise, separately numbered paragraphs setting forth all of the material facts upon which the party bases its motion and as to which the party believes there is no genuine material dispute." Consumers did not file that separate document. However, it included at pages 7 through 11 of its motion for summary judgment a statement of facts that was numbered from paragraphs 1 through 10. Pursuant to the request in our motion for leave to respond to that statement of facts, we respectfully respond below to each of the paragraphs at pages 7 through 11 of Consumers' motion for summary judgment.

RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS

1. Consumers Energy is a utility company headquartered in Jackson, Michigan, which maintains an operational nuclear power facility known as the Palisades Plant near Covert, Michigan, and a shut down reactor site formerly known as the Big Rock Point Plant near

Charlevoix, Michigan. *See* Complaint, ¶¶ 3, 14. The Big Rock Point Plant was permanently shut down in 1997, and has been dismantled. *Id.* ¶ 14. Consumers Energy plans to decommission the Big Rock Point Plant so that the property can be used for non-nuclear purposes. *Id.*; *see* Affidavit of Stephen T. Wawro, ¶ 9 (Exhibit B). Operation of Consumers Energy's plants generated SNF/HLW.[4] *See* Affidavit of Stephen T. Wawro, ¶ 6 (Exhibit B). Consumers Energy currently possesses about 638 Mtu of SNF/HLW. *See* Affidavit of Stephen T. Wawro, ¶ 10 (Exhibit B).

RESPONSE: Defendant denies the allegations contained in the first sentence of paragraph 1 for lack of knowledge or information sufficient to form a belief as to their truth; defendant has not yet been afforded any discovery regarding the allegations contained in Consumers' complaint and, therefore, cannot confirm the allegations contained in the first sentence of paragraph 1; nevertheless, it appears that the allegations contained in the first sentence of paragraph 1 are not necessary to resolution of Consumers' motion. Defendant agrees with the allegation contained in the second sentence of paragraph 1 that the Big Rock Point

---

[4] In its Statement of Facts, Consumers included the following representation in footnote number 4: "SNF/HLW is generated as nuclear fuel is irradiated in the operation of a nuclear power plant, and during the decommissioning process. *See* Affidavit of Stephen T. Wawro, ¶ 11 (Exhibit B)." In response to the representation contained in footnote number 4, defendant disagrees with Consumers' definition. The Standard Contract defines both "spent nuclear fuel" and "high-level radioactive waste." It defines "spent nuclear fuel" as "fuel that has been withdrawn from a nuclear reactor following irradiation, the constituent elements of which have not been separated by reprocessing." 10 C.F.R. § 961.11, Art. I(18). It defines "high-level radioactive waste" as "(a) the highly radioactive material resulting from the reprocessing of spent nuclear fuel, including liquid waste produced directly in reprocessing and any solid material derived from such liquid waste that contains fission products in sufficient concentrations; and (b) other highly radioactive material that the Commission, consistent with existing law, determines by rule requires permanent isolation." Id. Art. I(12). To the extent that Consumers' proposed definitions of these terms differs from those contained in the Standard Contract, they are irrelevant to the issues in this case.

nuclear reactor was permanently shut down in 1997, but denies the remaining allegation contained in the second sentence of paragraph 1 that the reactor has been completely dismantled for lack of knowledge or information sufficient to form a belief as to its truth; however, defendant avers that the only information located on Consumers' website indicated that Consumers was continuing to decommission its nuclear reactor, Appendix to Defendant's Response Brief ("Def. App.") 503; nevertheless, it does appear that resolution of whether the Big Rock Point nuclear reactor has been completely dismantled is necessary to Consumers' pending motion. Having not yet been afforded any discovery in this case, defendant denies the allegations contained in the third sentence of paragraph 1 for lack of knowledge or information sufficient to form a belief as to their truth. Defendant admits the allegations contained in the fourth sentence of paragraph 1. Having not yet been afforded any discovery in this case, defendant denies the allegations contained in the fifth sentence of paragraph 1 for lack of knowledge or information sufficient to form a belief as to their truth.

2. The federal government is responsible for the management of commercial spent fuel disposal. *See generally, Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 826 F.2d 239, 243-53 (4th Cir. 1987). Initially, the government recycled SNF/HLW for reuse through chemical "reprocessing." *Id.* at 245-48. In 1977, however, the government effectively terminated both public and private reprocessing of domestic SNF/HLW. *Id.* at 245, 251.[5] After

---

[5] In its Statement of Facts, Consumers included the following representation in footnote number 5: "Reprocessing is a chemical process that separates SNF into three parts: reusable uranium, by-product fissionable plutonium and fission product waste (termed 'high-level radioactive waste')." In response to the representation contained in footnote 5, defendant states that the American Nuclear Society defines the term "reprocessing" as follows: "The mechanical and chemical processing of spent nuclear fuel to separate useable products (*i.e.*, uranium and plutonium) from waste material (*i.e.*, fission products). As time progresses, much of what is currently defined as 'waste' will likely find commercial applications." Def. App. 507 (from the

several years of study, *see id.* at 251-52, the government determined to fulfill its responsibilities for disposition of commercial SNF/HLW by enacting the NWPA, P.L. 97-491, 42 U.S.C. §§ 10130 *et seq.*

RESPONSE: Defendant objects to this proposed finding of fact because it states a conclusion of law, given that the issue of whether DOE assumed a statutory obligation to accept spent nuclear fuel from the nuclear industry requires identification and interpretation of a statute. Without waiving this objection, defendant denies the allegations contained in paragraph 2 to the extent that they are intended to imply that, prior to the execution of a contract pursuant to the requirements of the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. § 10222, the Federal Government had assumed any obligation to accept and dispose of the nuclear utility industry's spent nuclear fuel and high-level radioactive waste. Plaintiff has identified no statutory or other basis for asserting that, prior to the enactment of the NWPA, the Department of Energy was obligated to accept Consumers' SNF or HLW. Although Consumers alleges that, "[a]fter several years of study, . . . the government determined to fulfill its [pre-existing] responsibilities for disposition of commercial SNF/HLW by enacting the NWPA," the NWPA expressly states that one of the purposes of the enactment of the NWPA was "to establish," for the first time, "the Federal responsibility, and a definite Federal policy, for the disposal of [high-level radioactive] waste and spent fuel." 42 U.S.C. § 10131(b)(4). Consumers' assertions to the contrary are devoid of any reference to a statutory or other basis.

3. The NWPA established a program through which the government would be responsible for disposing of SNF/HLW and utilities would be responsible for the cost of disposal. *See* 42 U.S.C. § 10131(b). Under the NWPA, DOE was authorized to enter into

---

American Nuclear Society website (http://www.ans.org/pi/resources/glossary/)).

contracts with domestic generators of SNF/HLW "for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel." *Id.* § 10222(a)(1). The NWPA required such contracts to provide that, "in return for the payment of fees, . . . [DOE], beginning not later than January 31, 1998, will dispose of the . . . spent fuel involved." *Id.* § 10222(a)(5)(B). The NWPA also mandated the SNF/HLW fees payable by utilities.

RESPONSE: Defendant objects to this proposed finding of fact because it states a conclusion of law. The proper interpretation of the Nuclear Waste Policy Act, 42 U.S.C. §§ 10101-10270, is a matter of statutory interpretation for this Court, rather than a matter of fact. Without waiving this objection, defendant admits the allegations contained in paragraph 3 to the extent supported by the cited statute, which is the best evidence of its contents, and otherwise denies the allegations contained in paragraph 3.

4. In early 1983, DOE created a "Standard Contract" for SNF/HLW acceptance, transportation and disposal. Following notice and comment, DOE revised and finalized its Standard Contract. *See* 48 Fed. Reg. 5458 (Feb. 4, 1983) (proposed Standard Contract); 48 Fed. Reg. 16590 (Apr. 18, 1983) (final version). On June 3, 1983, Consumers Energy and DOE executed and entered into such a contract. *See* Contract No. DE-CR01-83NE44374 "Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste", Exhibit A (the "Standard Contract").

RESPONSE: Defendant objects to the first and second sentences of paragraph 4 because they represent conclusions of law, rather than allegations of fact; without waiving this objection, defendant admits the allegations contained in the first and second sentences of paragraph 4 to the extent supported by the cited Federal Register notices, which are the best evidence of their

contents, and otherwise denies the allegations contained in the first and second sentences of paragraph 4. Defendant admits the allegations contained in the third sentence of paragraph 4.

5. Consumers Energy's Standard Contract with DOE sets forth terms and conditions obligating Consumers Energy to deliver SNF/HLW to DOE (at the site of Consumers Energy's SNF/HLW), and obligating DOE to accept title, transport (in DOE-furnished casks), and dispose of the SNF/HLW. *See e.g.,* Standard Contract, Art. IV.A.2. & V.a. (Consumers Energy's delivery obligations), Art. IV.B., V.A. & VI. (DOE's obligations to transport, accept and dispose). The Standard Contract permits DOE to store Consumers Energy's SNF/HLW at any facility operated by or on behalf of DOE. *See Id.*, Art. I.10. & IV.B.2. The Standard Contract also provides for payment of substantial fees by Consumers Energy. *Id.*, Art. VIII. *See generally*, Complaint ¶ 10, 20, 24, 33.

RESPONSE: Defendant admits the allegations contained in paragraph 5 to the extent supported by the cited Standard Contract, the terms of which are published at 10 C.F.R. § 961.11, which is the best evidence of its contents, and otherwise denies the allegations contained in paragraph 5. Defendant further avers that the NWPA restricts the locations at which DOE may store commercial domestic SNF and HLW.

6. As required by the NWPA, Consumers Energy's Standard Contract provides that DOE "shall begin" performing the required services under the Standard Contract "not later than January 31, 1998." *See* Standard Contract, Art. II. Once DOE's performance obligation begins, the Standard Contract provides that the parties will arrange particular acceptance dates for specific quantities of Consumers Energy's SNF/HLW under a set criteria. *See e.g.*, Standard

Contract, Arts. IV.A.1., V.B. & C.[6] For example, DOE acknowledged in the 1983 rulemaking that "article VI.B.3.(b) gives priority to [spent fuel] from permanently shutdown reactors." 48 Fed. Reg. at 16593 (emphasis added). DOE asserted that "[t]his type of priority is necessary to prevent reactors from waiting 20 or 30 years to be decommissioned after they finish generating electricity." *Id.*

RESPONSE: Defendant admits the allegations contained in the first and second sentences of paragraph 6 to the extent supported by the cited Standard Contract, the terms of which are published at 10 C.F.R. § 961.11, which is the best evidence of its contents, and otherwise denies the allegations contained in the first and second sentences of paragraph 6.

Defendant admits the allegations contained in the third and fourth sentences of paragraph 6 to the extent supported by the cited Federal Register notice, which is the best evidence of its contents, and otherwise denies the allegations contained in the third and fourth sentences of paragraph 6. However, defendant avers that, to the extent that Consumers is attempting to suggest in the third and fourth sentences of paragraph 6 that the Standard Contract obligates the Department of Energy to provide priority in SNF acceptance to shutdown reactors, Consumers' interpretation of the Standard Contract conflicts with the plain language of the contract. Specifically, Article VI.B.1 of the Standard Contract provides that, except as authorized elsewhere in the contract, "acceptance priority shall be based upon the age of the SNF and/or HLW as calculated from the date of discharge of such material from the civilian nuclear power

[6] In its Statement of Facts, Consumers included the following representation in footnote number 6: "This motion focuses on the government's breach of the Contract's performance-commencement date of January 31, 1998. For purposes of this motion, the Court need not address the scheduling for SNf/HLW acceptance after that date." In response, defendant states that, as we explain in our response to Consumers' motion, the Court needs to resolve the basis for any liability ruling, which, as explained in our response brief, implicates the delivery commitment schedule provisions of the Standard Contract.

reactor" and that "DOE will first accept from Purchaser the oldest SNF and/or HLW for disposal in the DOE facility, except as otherwise provided for in paragraphs B, D and E of Article V." 10 C.F.R. § 961.11, Art. VI.B.1(a). It further provides that, "[n]otwithstanding the age of the SNF and/or HLW, priority may be accorded any SNF and/or HLW removed from a civilian nuclear power reactor that has reached the end of its useful life or has been shut down permanently for whatever reason." Id., Art. VI.B.1(b). To the extent that Consumers suggests that priority for shutdown reactors is mandatory, its suggestion conflicts with the plain language of the Standard Contract, which provides DOE with the discretion, but not the obligation, to grant priority in appropriate circumstances.

7. DOE did not commence performance of its SNF/HLW disposal obligation under Consumers Energy's contract by January 31, 1998. Affidavit of Stephen T. Wawro, ¶ 12 (Exhibit B). The government has made definite and unequivocal statements that it will not commence SNF/HLW disposal until 2010 at the earliest. *See* Letter from DOE to Nuclear Utilities, dated July 28, 2004 regarding renewed DCS process using 2010 as the beginning acceptance date (Exhibit C). *See also Indiana Michigan Power Co. v. United States*, 60 Fed. Cl. 639 (2004) (Court adopted government's position at trial that permanent repository would be available in 2010).

RESPONSE: Defendant admits the allegation contained in the first sentence of paragraph 7 that the Department of Energy did not begin accepting SNF and/or HLW from the various contract holders by January 31, 1998, but avers that it did not have any obligation to begin accepting SNF directly from Consumers by January 31, 1998. Defendant denies the allegations contained in the second sentence of paragraph 7 and avers that, although DOE has announced that it does not "currently anticipate" being able to begin SNF and/or HLW acceptance until at

least 2010, it is not at all certain that no action will be taken with regard to utility SNF prior to that date, given national security and other cost considerations, or that Congress or the Nuclear Regulatory Commission will not take any action prior to 2010 that could affect DOE's ability to begin SNF and/or HLW acceptance. As Mr. Kouts, the director of the office responsible for the waste acceptance function within the Office of Civilian Radioactive Waste Management, has testified, circumstances could change that would allow or require DOE to perform prior to 2010. Specifically, Congress could enact legislation requiring DOE to construct and accept waste at a centralized interim storage facility in advance of the completion of Yucca Mountain and, in fact, has considered similar legislation that would have provided for these actions in the past. Def. App. 510, 514. Alternatively, Congress or the Nuclear Regulatory Commission could mandate that Federal funds be expended to purchase casks for utilities to store all of their spent fuel for national security reasons. Def. App. 511. Accordingly, Consumers' allegation that DOE has definitively stated that it will not begin any SNF acceptance prior to 2010 is unsupported.

8. In 1995, DOE repudiated its Contract obligations, asserting in a published "final interpretation" that it had no authority or obligation to accept SNF/HLW until it constructed a disposal or storage facility. 60 Fed. Reg. 21793 (May 31, 1995).

RESPONSE: Defendant objects to the allegations contained in paragraph 8 because they represent conclusions of law, rather than allegations of fact. Without waiving this objection, defendant admits the allegations contained in paragraph 8 to the extent supported by the cited Federal Register notice, which is the best evidence of its contents; otherwise denies the allegations contained in paragraph 8.

9. In resulting litigation, the U.S. Court of Appeals for the D.C. Circuit held unequivocally, three times, that under the NWPA, DOE's contractual obligation to commence performance by January 31, 1998 is "unconditional."

Initially, in *Indiana Michigan Power Co. v. DOE*, 88 F.3d 1272 (D.C. Cir. 1996), the D.C. Circuit held that DOE's obligation to meet the 1998 deadlines is "without qualification or condition." *Id.* at 1276; *see id.* at 1275 (specifically rejecting the DOE's argument that its disposal obligation is contingent on the existence of a storage facility). In *Northern States Power*, the Court reaffirmed *Indiana-Michigan*, reiterating that "the NWPA . . . clearly demonstrates a congressional intent that [DOE] assume a contractual obligation to perform by the 1998 deadline, 'without qualification or condition.'" 128 F.3d at 758.[7] The D.C. Circuit issued a writ of mandamus to enforce the NWPA, explaining:

> This necessarily means, of course, that DOE not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of 'acts of Government in either its sovereign or contractual capacity.' . . . Congress, in other words, directed DOE to assume an unconditional obligation to take the material by the statutory deadline.

*Id.* at 760 (emphasis added). The D.C. Circuit declined the utilities' requests for a mandamus order directing DOE to move SNF/HLW, observing that the utilities had a "potentially adequate remedy" in contract. *Id.* at 759.

In rejecting the government's rehearing petition in *Northern States Power*, the D.C. Circuit reconfirmed again that "[o]ur decision in Northern States barred the DOE from interpreting the Contract as imposing only a contingent disposal obligation; such an

[7] In its Statement of Facts, Consumers included the following representation in footnote number 7: "Consumers Energy was a party to the *Northern States Power* litigation." In response, defendant does not contest this allegation.

interpretation, we ruled, would place the DOE in violation of its statutory duties under the [NWPA], which required it to undertake an unconditional obligation." *See* Order of May 5, 1998 at 2, Exhibit 2.

RESPONSE: Defendant objects to the allegations contained in paragraph 9 because they represent conclusions of law, rather than allegations of fact. Without waiving this objection, defendant admits the allegations contained in paragraph 9 to the extent supported by the cited court decisions, which are the best evidence of their contents; otherwise denies the allegations contained in paragraph 9. Defendant further avers that Consumers has overstated the meaning of the decisions of the United States Court of Appeals for the District of Columbia Circuit. Although the NWPA provides that DOE is to begin SNF and/or HLW acceptance from the contract holders by January 31, 1998, the NWPA also makes clear that, with regard to DOE's acceptance of any particular contract holder's SNF, the Secretary's obligation to accept any of that contract holder's SNF is "in return for the payment of fees established by this section" of the NWPA. 42 U.S.C. § 10222(a)(5). Accordingly, DOE's obligation to accept Consumers' SNF is expressly conditioned upon Consumers' payment of its required fees.

10. Consumers Energy has performed its end of the contractual bargain by paying all fees required to date by the Contract for disposal of SNF/HLW. *See* Affidavit of Stephen T. Wawro, ¶¶ 7, 14 (Exhibit B). For SNF/HLW used to generate electricity after April 1983, the Contract imposes a fee per-kilowatt hour. *See* Standard Contract, Art. VIII.A.1. Consumers Energy has paid all such fees, a total of approximately $86 million dollars. Affidavit of Stephen T. Wawro, ¶ 7 (Exhibit B). Consumers Energy is legally obligated to pay DOE certain deferred fees for SNF/HLW used to generate electricity prior to April 1983. *See* Standard Contract, Art. VIII.B.2(b) (Exhibit A). The DOE, however, has not begun the acceptance, transportation and

disposal of Consumer Energy's SNF/HLW, and now asserts that it will not do so until at least 2010 so that the one time fee is not yet due. *See* Letter from DOE to Nuclear Utilities, dated July 28, 2004 regarding renewed DCS process using 2010 as the beginning acceptance date (Exhibit C). *See also Indiana Michigan Power Co. v. United States*, 60 Fed. Cl. 639 (2004) (Court adopted government's position at trial that permanent repository would be available in 2010).

RESPONSE: Defendant denies the allegations contained in the first sentence of paragraph 10, for the reasons set forth in "Defendant's Motion For Summary Judgment Upon Counts I and II Of Plaintiff's Complaint And, In The Alternative, For Partial Summary Judgment Upon Defendant's Right To Recover Unpaid Fees," dated July 9, 2004, and based upon the evidence contained in its accompanying appendix. Defendant admits the allegations contained in the second sentence of paragraph 10 to the extent supported by the Standard Contract cited, which is the best evidence of its contents; otherwise denies the allegations contained in the second sentence of paragraph 10. Defendant admits the allegations contained in the third sentence of paragraph 10. Defendant denies the allegations contained in the fourth and fifth sentences of paragraph 10, for the reasons set forth in "Defendant's Motion For Summary Judgment Upon Counts I and II Of Plaintiff's Complaint And, In The Alternative, For Partial Summary Judgment Upon Defendant's Right To Recover Unpaid Fees," dated July 9, 2004, and based upon the evidence contained in its accompanying appendix.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

December 20, 2004

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 20th day of December 2004, a copy of foregoing "DEFENDANT'S RESPONSE TO CONSUMER ENERGY COMPANY'S MOTION FOR SUMMARY JUDGMENT ON CONTRACT LIABILITY" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Harold D. Lester, Jr.