ARTICLE III - TERM

1. The term of the contract expires when DOE has accepted SNF and/or HLW from the civilian nuclear power reactors specified in Appendix "A". Under Article VI.B.1, the SNF/HLW would still be at Purchaser's site when acceptance takes place. The contract should remain in effect at least until all SNF/HLW has left Purchaser's site. The provision should be reworded as follows:

> "The term of this contract shall be from the date of execution until such time as DOE has accepted delivery of and transported from Purchaser's Site(s), all SNF and/or HLW from the Civilian Nuclear Power Reactors specified in Appendix 'A'."

Article IV - Delivery of SNF and/or HLW

1. The term "receive" in the third line of paragraph A should be changed to "accept delivery of" to be consistent with wording of Articles III and V.B.3.

2. Under Article IV.B, if DOE disapproves a delivery commitment schedule, Purchaser shall resubmit a revised schedule within 30 days. No time limit is provided for DOE's response to the resubmitted schedule. Presumably a period of not more than 30 days would be adequate. If DOE were also to disapprove the resubmitted schedule, it should propose an alternate schedule. If Purchaser does not accept DOE's alternate, the contract could provide for mandatory negotiation among the parties to arrive at an acceptable schedule. Appropriate language should be inserted before the last sentence in the first paragraph of Section IV.B as follows:

> "DOE shall approve or disapprove such revised schedule(s) within thirty (30) days after receipt. In the event of disapproval, DOE shall advise the Purchaser in writing of

7. Paragraph V.B.3 should be reworded to read, "DOE shall accept delivery at the Purchaser's Site of all SNF and/or HLW meeting the Acceptance Criteria set forth in Article VI of this contract."

8. Article V.B.6 describes DOE's annual priority ranking of SNF/HLW eligible for receipt at the DOE facility. Consistent with Article VI.B.3, the ranking scheme is based solely on the age of the SNF/HLW. Our comments on Article VI.B.3 recommend a somewhat different allocation system, partially based on age and partially on inventory share. To allow Purchasers to plan for spent fuel storage, the annual report should provide DOE's projected annual receiving capacity and the annual acceptance allocation for all purchasers. The report should present data by fiscal year, extending 10 years in the future. The ten-year period would be consistent with the annual reports filed by purchasers pursuant to Article V.A.1. Article V.B.6 should be changed accordingly:

> "Beginning not later than April 1, 1991, DOE shall issue an annual acceptance allocation report. The report shall set forth the projected annual receiving capacity for each DOE Facility and the annual acceptance allocation for each Purchaser under a DOE contract for the disposal of SNF and/or HLW. The report shall provide such capacity and allocation information for each of the immediately succeeding ten fiscal years."

9. If Purchaser has failed fuel which requires encapsulation prior to loading in the cask, DOE should provide the canisters, to assure that they are compatible with the cask. A new paragraph V.B.7 should be added:

> "In the event that SNF must be encapsulated prior to shipment, DOE, on a mutually acceptable schedule, shall provide Purchaser with canisters suitable for use at Purchaser's Site and compatible with the Cask furnished pursuant to paragraph B.2 above, together with the specifications of such canisters."

MI0283-0033A-FS02

Article VI - Criteria For Disposal

1. Article VI.A.1 states that DOE will accept only SNF/HLW which "has been approved for delivery in advance by DOE..." The nature of the approval process is detailed in VI.B.1 and the specifications are outlined in Appendix "E". The reference to approval "in advance" is confusing. Also, the necessity for meeting Appendix E and having DOE verification is covered under "Acceptance Criteria" in VI.B, and V.B.3 requires DOE to accept SNF/HLW meeting the acceptance criteria. It is therefore unclear what VI.A.1 adds. We suggest that it be deleted.

2. The second sentence of VI.B.1 should be clarified as follows:

> "DOE shall accept delivery of, for disposal, all SNF and/or HLW that (1) meets the General Specifications set forth in Appendix 'E' annexed hereto, (2) it verifies to be consistent with the required description pursuant to Appendix 'F' and (3) it determines is properly loaded (etc) for transportation f.o.b. carrier at the Purchaser's Site."

3. The Acceptance Priority Ranking system established by the contract (Article VI.B.3) could be improved in several respects. It does not unambiguously authorize Purchaser exchange of delivery dates (see Comment 4 to Article IV), it does not provide explicit priority to keep reactors operating, it does not provide priority based upon the size of Purchaser's total SNF inventory, and it might remove Purchaser's flexibility as to which SNF/HLW it will ship ("DOE will first accept from Purchaser the oldest SNF and/or HLW"). To remedy these shortcomings, the contract should provide for the exchange system proposed above. In addition, it should allocate a portion -- perhaps one-half -- of DOE's annual receiving capacity based on SNF/HLW age, the remainder to be based upon the

Appendix "B"

1. To be consistent with Article IV.B, the second sentence in Appendix "B" should be changed to read:

   "This Delivery Commitment Schedule shall be submitted by Purchaser to DOE for approval not later than sixty-three (63) months prior to the estimated date of delivery."

2. "Reactor Name" should be changed to "Reactor/Facility Name." The delivery point may be a reprocessing plant, storage facility, etc.

3. The final paragraph should be deleted and replaced by the following statement: "The Purchaser hereby certifies that the SNF to be delivered pursuant to this Delivery Commitment Schedule has been discharged from a Civilian Nuclear Power Reactor and that Purchaser has the legal right to deliver such SNF to DOE for disposal." Proof of ownership could be difficult to produce in some cases, unnecessarily increases the paperwork required, or may change between the time the Delivery Commitment Schedule is executed and actual delivery occurs. DOE is required, in any event, to take all SNF and HLW derived from Civilian Nuclear Power Reactors (as that term is defined in Article I(3)). The proposed certification assures DOE that Purchaser has the legal right to deliver the SNF to DOE and that the SNF is eligible for delivery to DOE pursuant to the Contract.

Appendix "C"

1. "Reactor Name" should be changed to "Reactor/Facility Name." See Comment 2 with respect to Appendix "B" above.

2. It is unclear what information DOE has requested in the blank designated "Delivery to be Made to DOE from Purchaser's Site."

Attachment to
P-83088

PUBLIC SERVICE COMPANY OF COLORADO
COMMENTS ON PROPOSED RULE 10 CFR PART 961
STANDARD CONTRACT FOR DISPOSAL OF SPENT NUCLEAR FUEL
AND/OR HIGH LEVEL RADIOACTIVE WASTE

General Comment

On July 1, 1965, PSC entered into a contract (No. AT(04-3)-633) with the U. S. Atomic Energy Commission (now DOE) and General Dynamics Corporation (now Valley Pines Associates) under which each of the parties undertook to perform certain specified obligations associated with the development, design, construction and operation of a commercial-sized prototype high temperature, gas-cooled reactor (HTGR). Under Modification M010 (Supplement Agreement to Contract No. AT(04-3)-633), entered into and effective April 1, 1980, PSC is authorized to deliver to DOE and DOE is obligated to accept a total of eight discharged fuel segments from the plant. DOE is obligated to accept this material without any payments from PSC. In PSC's view, it is very important that DOE's existing contractual obligations be recognized in the standard contract in a way that preserves PSC's rights with regard to the disposal of spent nuclear fuel and/or high level radioactive waste.

The final rule should recognize and preserve these contractual arrangements and adopt only those portions of the standard contract not covered by said contractual arrangements.

Article I - Definitions

Disposal--The phrase "...with no foreseeable intent of recovery" is not compatible with the design intent of the fuel used in the Fort St. Vrain Nuclear Generating Station. The standard contract should provide for utilities to receive a credit for the recovery of fissionable materials in the event reprocessing of spent nuclear fuel is ever allowed and becomes economically viable. The amount of the credit for recovery of fissionable materials would have to be determined after deducting all costs for reprocessing the material and disposing of the associated high level radioactive wastes.

High Level Radioactive Waste--The phrase "...that contains fission products in sufficient concentrations" is too vague and should be redefined with greater preciseness.

Article II - Scope

Even though the Scope alludes to it, the standard contract should contain a specific provision (under DOE Responsibilities) obligating DOE to accept all spent fuel from civilian nuclear power reactors that utilities wish to deliver to DOE. This DOE obligation should recognize no exceptions provided that the utilities pay the required fees and submit the proper descriptions and notices. In addition, the standard contract should specify in detail DOE's responsibility for: (1) accepting initial spent nuclear fuel shipments from each utility by January 31, 1998 (or some other mutually agreeable earlier date), and (2) accepting ongoing spent nuclear fuel shipments from each utility at a rate not less than the rate at which each utility is producing

spent nuclear fuel. The contract spent fuel acceptance rate should further require DOE to accept each utility's total inventory of spent nuclear fuel within a reasonable period of time following the end of the useful life of that utility's nuclear power plants. If DOE fails to meet these responsibilities, the contract should contain provisions obligating DOE to provide or pay for interim storage of the spent nuclear fuel DOE fails to accept, regardless of any good faith efforts by DOE to avoid delays in accepting the spent nuclear fuel.

Article IV - Delivery of SNF and HLW

Delivery Commitment Schedule--The standard contract requires utilities to commit to spent nuclear fuel delivery schedules more than five years in advance of delivery, with the option of extending the delivery commitment date by only two months. Such a restriction on delivery scheduling is entirely unwarranted, especially considering that utility funding of all DOE waste disposal efforts will be forthcoming regardless of waste disposal shipping dates. Long term waste delivery schedules (5 to 8 year advance projections) should specify waste deliveries only to the nearest year, with the option of shifting waste deliveries to later years as actual plant operations become known. (Utilities cannot be expected to commit to deliveries of spent nuclear fuel if plant operations are delayed and the fuel has not been discharged from the reactor in time to support the committed delivery date.) Identification of a projected delivery month 12 to 30 months in advance of delivery, with the option of postponing delivery to a later month selected by mutual agreement, should satisfy the scheduling requirements of both DOE and utilities. The standard contract should provide for this degree of scheduling flexibility.

Article V - Responsibilities of the Parties

Purchaser's Responsibilities--The standard contract should stipulate that if the as-received spent fuel shipping equipment furnished by DOE or DOE's contractors requires maintenance and/or repairs prior to use, any costs incurred by a utility for this purpose should be subject to reimbursement from the Nuclear Waste Fund. The cost of necessary cask maintenance repairs or decontamination work should not be borne by the utility.

DOE's Responsibilities--Some utilities such as PSC own spent fuel shipping casks and other spent fuel shipping equipment which may be of considerable value to DOE in fulfilling its spent fuel transporting obligations. The standard contract should require DOE to utilize such equipment whenever possible and to provide utilities with an equitable credit for the use by DOE or DOE's contractors of utility-owned spent fuel shipping equipment.

The standard contract should require that DOE obtain utility approval of the spent fuel shipping equipment designs which are proposed to be furnished by DOE or DOE's contractors. DOE should have the obligation to provide a design that is compatible with the utility's spent fuel configuration and shipping facilities.

CLEVELAND ELECTRIC ILLUMINATING COMPANY

COMMENTS ON DOE WASTE DISPOSAL CONTRACT

IDENTIFICATION OF PARTIES

The Company strongly recommends modification of the first paragraph of the draft contract to identify as parties to the contract all the companies which are owners of the nuclear unit specified in Appendix A and are, therefore, owners or generators of the SNF or HLW. The Company advocates a stronger identification of these parties than that suggested by EEI, making all such owners signatories to the contract, with the unit's Operating Company acting for itself and as agent for the other companies. A suitable model for such language is that contained in the contracts for enriching services between the Companies and DOE.

ARTICLE I - DEFINITIONS

1. If Article I-7 is not deleted as recommended by EEI, the Company proposes that it be changed to read:

"The term 'Delivery Commitment' means a promise by the Purchaser to have spent nuclear fuel and/or high level radioactive waste available for delivery to DOE." The reason for this change is that Purchaser's obligation is to make the SNF or HLW available for transportation by DOE.

ARTICLE IV - DELIVERY OF SNF AND/OR HLW

1. The title of Article IV.B. should be changed for the sake of additional clarification to "Preliminary Delivery Commitment Schedule," and the word "preliminary" appended before the words "delivery commitment schedule(s)" in the paragraph.

2. In Article IV.B., Delivery Commitment Schedule, the Company concurs in EEI's comments, but recommends that, for clarity, the last sentence in the first paragraph should read, "Purchaser shall have the right to adjust the quantities of SNF and/or HLW by up to ±20% and the delivery schedule by up to ±2 months, exercisable up to the submission of the final delivery schedule."

3. To establish a streamlined procedure covering the case in which DOE and Purchaser do not agree on schedule, the last two sentences of Article IV.C. should be replaced by "DOE shall approve or propose an alternate delivery schedule within forty-five (45) days after receipt. If the final delivery schedule submitted by Purchaser falls within the limits set forth in the Preliminary Delivery Commitment Schedule, then approval shall be automatic unless DOE expects to experience a substantial change in its ability to accept delivery of SNF or HLW. If the alternate delivery schedule proposed by DOE is not acceptable to Purchaser, the parties shall promptly seek to negotiate mutually acceptable schedule."

ARTICLE V - RESPONSIBILITIES OF THE PARTIES

1. Since DOE is required to make all arrangements for shipment off-site, the first sentence in Article V.A.2(a) should be changed to read "The Purchaser shall arrange for all preparation, packaging, required inspections and loading activities necessary for loading the cask(s) with SNF or HLW."

2. In Article V.B.2., the Company agrees with EEI's comments. However, to clarify the responsibility for cask maintenance, EEI's third recommended sentence should read:

> "Such casks shall be suitable for use at Purchaser's site, and DOE shall provide routine maintenance on them."

3. In order to define minimal DOE responsibilties, a new paragraph should be added to Article V.B., DOE Responsibilities, as follows:

> "DOE shall have a repository in operation by January 31, 1998 capable of receiving SNF and/or HLW at a rate at least equivalent to the rate at which such material is being discharged in the year 1998 by all civilian nuclear power reactors covered by contracts."

CLEVELAND ELECTRIC ILLUMINATING COMPANY

COMMENTS ON APPENDICES TO

DOE DISPOSAL CONTRACT

Appendix A, two (or more) nuclear units at the same site, and with the same Operating Company (agent Company) may have different ownerships. This situation in fact exists for CAPCO's two Beaver Valley units. Therefore, we recommend that separate contracts be permitted (but not required) for each of two or more Civilian Nuclear Power Reactors operated by a single utility.

Appendix B, the Company supports EEI's suggestion to delete the language in Article IV.B. tying the submission of Delivery Commitment Schedules to DOE's acceptance rankings. However, if that change is not adopted, the language in Appendix B should conform with the terms of the paragraph. Appendix B should say, "This Preliminary Delivery Commitment Schedule shall be submitted by Purchaser at least sixty-three (63) months prior to the delivery date specified in DOE's most recent proposed acceptance ranking." Note deletion of the words "and approved."

APPENDIX E - ACCEPTANCE CRITERIA AND GENERAL SPECIFICATIONS

1. In Appendix E, Paragrpah B.1, it is not clear whether the dimensions refer to unirradiated fuel. If the reference is to irradiated fuel, then the unchanneled fuel bundle requires a storage module square cross-section of 6.050 inches or greater for GE BWR/6 fuel because of bowing.

83-1.15

GULF STATES UTILITIES COMMENTS
ON 10 CFR 961:

STANDARD CONTRACT FOR DISPOSAL OF

SPENT NUCLEAR FUEL AND/OR

HIGH LEVEL RADIOACTIVE WASTE

PROPOSED 10 CFR 961.5

This paragraph should more directly state its content will only apply to non-defense, commercial-equivalent spent fuel and/or HLW.

TEXT OF CONTRACT

PROPOSED 10 CFR 961.11

Preamble

First Paragraph

Appropriate blank space should be provided for identification of lead utility acting on behalf of itself and other participants by adding "acting on behalf of itself and ________________________."

Third "Whereas" clause: Change to "Whereas, DOE is required to collect a fuel cost recovery fee from owners and/or generators delivering to the DOE such spent nuclear fuel and/or high level radioactive waste."

Add: new "Whereas" clause: "Whereas, DOE recognizes that its ability to take delivery of spent nuclear fuel and/or high level radioactive waste must be commensurate with the amount of such fuel and waste then being generated together with the amount of such fuel and waste previously generated, and consistent with its obligation to take title to such fuel and waste as expeditiously as practicable upon the request of the owner or generator of such fuel and waste."

ARTICLE I

General

Terms which are defined should be capitalized throughout the contract.

1. "Assigned Three-Month Period": Change to "the period specified in Article VIII.B.1 by mutual consent for purposes of reporting kilowatt hours generated and sold and for establishing fees due and payable to DOE."

4. "The term 'Commission' means the U.S. Nuclear Regulatory Commission or its successor agencies."
7. Delete definition of 'Delivery Commitment".
8. "'Delivery" means the transfer of custody f.o.b. carrier . . . . . . as may be designated by the Purchaser and approved by DOE, whose approval will not unreasonably be withheld."
10. 'DOE" Add "or its successor agencies."
11. 'DOE Facility" Add "and such other DOE facility to which spent nuclear fuel and/or high level radioactive waste may be shipped prior to its transportation to a disposal facility."
12. "Full Cost Recovery" Add "interest earned by investments from the nuclear waste fund and net proceeds from any by-product recovery from spent fuel and high level radioactive waste to the aforesaid fund" after "through Purchaser fees" in first sentence.
    Change the second sentence to read "As used herein, the term 'Cost' means the application of fees to those uses expressly authorized in sections 302(d) and (e) of the said Act."
14. "Kilowatt Hours Generated" Change to "The term 'Kilowatt Hours Generated and Sold' means electricity generated by nuclear fuel at civilian nuclear power reactors specified in Appendix 'A' hereto, as measured at the station busbar, net of all station uses, including the electricity equivalent of any process heat generated by the reactors and used other than at the reactors."
17. "Shipping Lot" Change to "The term 'Shipping Lot' means a specified quantity of spent nuclear fuel or high-level radioactive waste designated by Purchaser for delivery to DOE beginning on a specified date."
18. "Spent Nuclear Fuel" Change to "The term 'Spent Nuclear Fuel' (SNF) means fuel that has been withdrawn from a nuclear reactor following irradiation, without the intent to reinsert it in the reactor, and whose constituent elements have not been separated by reprocessing."

19. "Spent Nuclear Fuel of Domestic Origin" Change to "The term 'SNF and/or HLW of Domestic Origin' means SNF and/or HLW from civilian nuclear power reactors."

ARTICLE II

Change first part of first sentence to read "This contract applies to the delivery by Purchaser to DOE of SNF and/or HLW from civilian nuclear power reactors, acceptance of title by DOE to such SNF and/or HLW, subsequent transportation, and disposal of such SNF and/or HLW, and with respect to such material, establishes the fees to be paid ...."

Change third sentence to begin to read "The services to be provided by DOE under this contract shall be made available not later than January 31, 1998 ..."

Add new last sentence "Following commencement of operation of a DOE facility for the disposal of SNF and HLW, DOE shall take title to such material as expeditiously as practicable upon Purchaser's request."

ARTICLE III

Change to "The term of this contract shall be from the date of execution until such time as DOE has accepted and transported from Purchaser's site (s) all SNF and/or HLW from the civilian nuclear power reactors specified in Appendix 'A'."

ARTICLE IV

A. Change "receive" in first sentence to "accept".

B. Delete the initial dependent clause of the second sentence. Add this sentence before the last sentence of first paragraph: "DOE shall approve or disapprove such revised schedule(s) within thirty (30) days after receipt. In the event of disapproval, DOE shall advise the Purchaser in writing of the reasons for such disapproval and shall submit its proposed schedule(s). If these are not acceptable to Purchaser, the parties shall promptly seek to negotiate mutually acceptable schedule(s)."

Change "+ 2 months" in last sentence of first paragraph to " ± 2 months."

Delete 2nd paragraph.

C. Ditto major change noted in "B".

E. Add new "E" as follows:

"E. Exchanges

Purchaser shall have the right to determine which SNF and/or HLW is delivered to DOE, provided that Purchaser complies with the requirements of Article V.A.2(b) as to such SNF and/or HLW. Purchaser shall have the right to exchange approved delivery commitment schedules with parties to other contracts with DOE for disposal of SNF and/or HLW, provided that DOE shall have the right to approve such exchanges, based upon the feasibility of necessary transportation arrangements, which approval shall not be unreasonably withheld."

ARTICLE V

A.1.a. Add at end "The information provided will include estimates and projections and is not Purchaser's firm commitment with respect to discharges or deliveries."

A.1.b. Delete all of this section.

A.2(a) Change second sentence to:

Add "reasonable" between "afford" and "access" in last sentence.

A.2(c) Change first sentence to:

"The Purchaser shall be responsible for incidental maintenance, protection and preservation of any and all casks furnished to the Purchaser by DOE for the performance of this contract while such casks are in Purchaser's possession and control."

Change second sentence to:

"Purchaser shall not be liable for any loss of or damage to such casks while such casks are in the possession and control of Purchaser, except for loss or damage caused by Purchaser's negligence."

B.1 Delete present section and substitute this one:

"DOE shall accept title to all SNF and/or HLW generated by the civilian nuclear power reactors specified in Appendix 'A',

B.6 Change to: "Beginning not later than April 1, 1991, DOE shall issue an annual acceptance allocation report. The report shall set forth the projected annual receiving capacity for the DOE facility or facilities and the annual acceptance allocation for each party to a DOE contract for the disposal of SNF and/or HLW. The report shall provide such capacity and allocation information for each of the following ten fiscal years."

B.7 Add this new section: "In the event that SNF must be encapsulated prior to shipment, DOE on a mutually acceptable schedule shall provide Purchaser with cannisters suitable for use at Purchaser's site and compatible with the cask furnished pursuant to paragraph B.2 above, and appropriate information and documentation."

ARTICLE VI

A.4 Delete this section.

B.1 Change to: "Prior to acceptance by DOE of SNF and/or HLW for transportation to the DOE facility, DOE shall have the right to verify the description of such SNF and/or HLW, and to determine that the material is properly loaded, packaged, marked, labeled and ready for transportation. DOE shall accept all SNF and/or HLW properly described loaded, packaged, marked and labeled pursuant to applicable regulations."

B.2(a) Delete last sentence and add: "Once such SNF and/or HLW has been properly described, DOE shall accept such material in accordance with the previously approved schedule unless it was not technically feasible to transport or dispose of such material on that schedule. Where that schedule is not technically feasible, the parties shall negotiate a mutually acceptable alternate schedule."

B.3 Change "Priority" to "Allocation". Delete all of B3(b) and substitute this for all of B.3. "Delivery commitment schedules for SNF and/or HLW may request the delivery to DOE of more material than can be accommodated by the annual receiving capacity of the DOE facility (or facilities). In this event, one-half of such annual receiving capacity shall be allocated based on annual