**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY, | ) | |
| | ) | |
| | ) | COFC No. 02-1894-C |
| Plaintiff, | ) | (Chief Judge Damich) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CONSUMERS ENERGY COMPANY'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CONTRACT LIABILITY**

Thomas O. Mason
WILLIAMS MULLEN
8270 Greensboro Drive, Suite 700
McLean, VA 22102
(703) 760-5200 (phone)
(703) 748-0244 (facsimile)

OF COUNSEL:
Harvey J. Messing (P23309)
Jeffrey S. Theuer (P44161)
LOOMIS, EWERT, PARSLEY, DAVIS
& GOTTING, P.C.
232 S. Capitol Avenue, Suite 1000
Lansing, MI 48933
(517) 482-2400

James E. Brunner (P28051)
Arunas T. Udrys (P21660)
Consumers Energy Company
212 West Michigan Avenue
Jackson, MI 49201
(517) 788-2151

Attorneys for Plaintiff Consumers Energy Company

**TABLE OF CONTENTS**


INDEX OF AUTHORITIES ..... ii

INDEX TO APPENDIX ..... iii

ARGUMENT ..... 3

A. THERE IS NO CONDITION PRECEDENT TO DOE'S OBLIGATION TO ACCEPT CONSUMERS ENERGY'S SNF/HLW ..... 3

B. THE GOVERNMENT HAS BREACHED THE STANDARD CONTRACT AND CONSUMERS ENERGY HAS SUFFERED DAMAGES ..... 5

C. FURTHER DISCOVERY IS NOT NECESSARY ON THE ISSUE OF CONTRACT LIABILITY ..... 8

CONCLUSION ..... 10

# INDEX OF AUTHORITIES

**STATUTES** **Page No.**

10 C.F.R. §961.11, Art. II. .......... 9

**CASES**

*Barron Bancshares, Inc. v. United States*
366 F.3d 1360, 1375 (Fed. Cir. 2004) .......... 9

*Commonwealth Edison Co. v. United States*
Docket No. 98-621C .......... 1, 10
56 Fed. Cl. 652 (2003) .......... 6, 7

*Connecticut Yankee Atomic Electric Co. v. United States*
42 Fed. Cl. 448 (1998) .......... 1, 10

*Florida Power & Light Co. v. United States*
Docket No. 98-483 .......... 1, 10

*Indiana Michigan Power Co. v. United States*
57 Fed. Cl. 88 (2003) .......... 1, 10
Docket No. 98-486C .......... 2

*Maine Yankee Atomic Power Co. v. United States*
42 Fed. Cl. 582 (1998) .......... 1, 10
*aff'd*, 225 F.3d 1336 (Fed. Cir. 2000) .......... 2, 6, 9

*Northern States Power Co. v. United States Department of Energy*
128 F.3d 754 (D.C. Cir. 1997) .......... 2, 7, 8, 9

*Perry v. Martin Marietta Corp.*
47 F.3d 1134 (Fed. Cir. 1995) .......... 9

*Yankee Atomic Electric Co. v. United States*
42 Fed. Cl. 223 (1998) .......... 1, 10

# INDEX TO APPENDIX

**Document** **Page No.**

Appendix A - January 17, 2003 Order in *Indiana Michigan Power Company* ............................. 1

Appendix B - Defendant's Response to Indiana Michigan Power Company's Motion regarding Contract Liability ..........................................................................................................2

Appendix C - Standard Contract.........................................................................................11

Appendix D - Letter from Consumers Energy selecting Option 2 ...............................................45

Appendix E - Appendix to Consumers Energy's August 20, 1993 DCS .....................................46

Appendix F - 2004 APR/ACR ..........................................................................................47

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | COFC No. 02-1894-C<br>(Chief Judge Damich) |

**CONSUMERS ENERGY COMPANY'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON CONTRACT LIABILITY**

Consumers Energy Company ("Consumers Energy") respectfully submits this Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment on Contract Liability ("Defendant's Response"). Defendant's Response fails to raise any meritorious defenses to Plaintiff's Motion, and completely fails to credibly address the overwhelming weight of binding and persuasive authority holding that the Government's failure to begin accepting Spent Nuclear Fuel and High Level Radioactive Waste ("SNF/HLW") by January 31, 1998 constituted a breach of the Standard Contract. *See Maine Yankee Atomic Power Co. v. United States*, 42 Fed. Cl. 582 (1998), *aff'd*, 225 F.3d 1336 (Fed. Cir. 2000); *Commonwealth Edison Co v. United States*, Docket No. 98-621C (Order dated August 1, 2001); *Indiana Michigan Power Co. v. United States*, 57 Fed. Cl. 88 (2003); *Florida Power & Light Co. v. United States*, Docket No. 98-483 (Order dated January 11, 2002); *Connecticut Yankee Atomic Electric Co. v. United States*, 42 Fed. Cl. 448 (1998); *Yankee Atomic Electric Co. v. United States,* 42 Fed. Cl. 223, 232, n. 4. (1998).

It cannot be reasonably contested that the Government has breached its Standard Contract with Consumers Energy. The Federal Circuit has already ruled that "[t]he breach involved all the utilities that had signed the contract-the entire nuclear electric industry." *Maine Yankee Atomic*

*Power Co. v. United States*, 225 F.3d 1336, 1342 (Fed. Cir. 2000). This decision alone is dispositive of the liability issue in this case. In entering a similar judgment on the issue of liability for breach of contract against the government in *Indiana Michigan Power Company v. United States*, Docket No. 98-486C (Hodges, Robert H., Jr.) the Court ruled that "it seems clear that decisions by the Federal Circuit establish liability against the United States. Therefore, we direct that the Clerk enter judgment for plaintiff on the issue of liability." *Indiana Michigan Power Co. v. United States*, Docket No. 98-486C (Order dated January 17, 2003), attached as Appendix A (App. 1).

In *Northern States Power Co. v. United States Department of Energy*, 128 F.3d 754 (D.C. Cir. 1997), the D.C. Circuit held as follows:

> The contractual obligations created consistently with the statutory contemplation leave no room for DOE to argue that it does not have a clear duty to take the SNF from the owners and generators by the deadline imposed by Congress.

*Northern States*, 128 F.3d at 758-59.

Despite this overwhelming authority, the Government raises two defenses based on an unsupported misinterpretation of the Standard Contract. First, beginning at page 4 of Defendant's Response, the Government argues that Consumers Energy has failed to satisfy a condition precedent to DOE's obligation to accept Consumers Energy's SNF/HLW.

Second, also beginning at page 4 of Defendant's Response, the Government recycles its argument which was soundly rejected in previous cases that Consumers Energy did not suffer any injury in 1998 because Consumers Energy's first acceptance allocation would have occurred in 1999 in the absence of a breach by the Government.[1] Consumers Energy will discuss each of these non-

---

[1]The Government itself has acknowledged that the Department of Energy's failure to begin accepting SNF/HLW by January 31, 1998 constitutes a breach of the standard contract. *See* Defendant's Response to Indiana Michigan Power Company's Renewed Motion for the Government to Acknowledge its Liability on the Issue of Partial Breach of Contract, at 2, attached hereto as Appendix B (App. 3) ("Based upon the D.C. and Federal Circuits'

meritorious defenses in order.

## ARGUMENT

### A. THERE IS NO CONDITION PRECEDENT TO DOE'S OBLIGATION TO ACCEPT CONSUMERS ENERGY'S SNF/HLW

The Government has asserted, based on a wholly unsupported misinterpretation of the Standard Contract, that Consumers Energy "has failed to satisfy a condition to DOE's obligation to accept any of Consumers' SNF." Defendant's Response, at 4. This issue is the subject of a motion for partial summary judgment filed with the Court on July 9, 2004. As more thoroughly discussed in Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment Upon Counts I and II of Plaintiff's Complaint,[2] a one-time fee was assessed under the Standard Contract for SNF/HLW used to generate electricity prior to April 7, 1983. Standard Contract Art. VIII.A.2, page 17 (App. 27). Contract holders had two years after contract execution to elect one of the three options for payment of the one-time fee. Option 2, the Option that Consumers Energy elected in writing on May 31, 1985 (App. 45), requires Consumers Energy to pay the one-time fee any time prior to first delivery of SNF/HLW. Standard Contract, Art. VIII.B(2)(b), page 20-21 (App. 30-31). DOE has not accepted any SNF/HLW from Consumers Energy under the Standard Contract, and has never scheduled a delivery date for this material.[3] Accordingly, under the plain language of the Standard

---

published decisions, and as we have previously informed the Court in our July 27, 2001 filing, **we acknowledge that the Department of Energy's delay in beginning SNF and/or HLW acceptance by January 31, 1998 constitutes a breach of the Standard Contract.")** (emphasis added).

[2]The full title of this document is Plaintiff's Brief (i) in Opposition to Defendant's Motion for Summary Judgment Upon Counts I and II of Plaintiff's Complaint, and in the Alternative, for Partial Summary Judgment Upon Defendant's Right to Recover Unpaid Fees and (ii) Cross-Motion for Summary Judgment to Dismiss the Government's Counterclaim and Affirmative Defense Relating to One-Time Fee. For the sake of brevity, this document will be referred to hereafter as "Plaintiff's Brief Relating to One-Time Fee."

[3]The Government was to assign a delivery commitment date under the original DCS process. The Appendix to Consumers Energy's DCS dated August 20, 1993 is a form prepared by the Department of Energy. *See* App. 55. Section 2.5 of the DOE-prepared form provides that completion of "DOE Assigned Delivery Commitment

Contract, Consumers Energy is not yet required to make the one-time fee payment under Option 2.

The Government apparently assumes that "first delivery" means the scheduled delivery in the approved DCS that Consumers Energy was required to submit to DOE under the old DCS process beginning in 1995. However, both the plain language of the Standard Contract, page 20 (App. 30), and the letter sent by Consumers Energy to elect Option 2 (App. 45) show that "first delivery" is meant to be the date of actual first delivery by Consumers Energy. **Further, DOE's recent decision in 2004 to renew the DCS process by requesting submission of new DCSs from Consumers Energy and all other nuclear utilities based on a 2010 beginning acceptance date constitutes a clear admission that DOE itself recognizes the one-time fee is not yet due, and will not become due until after 2010, when DOE approves Consumers Energy's renewed DCS and assigns a delivery date**. In addition, the Standard Contract requires that DOE notify Consumers Energy of amounts due but unpaid or underpaid under the one-time payment option. *See* Standard Contract Art. VIII.C(1), page 22 (App. 32). The Government has never notified Consumers Energy of a late payment or non-payment under that provision, establishing that the Government has never viewed the one-time payment as currently due. The Standard Contract is absolutely clear on its face that the one-time fee is not yet due, and the Government has admitted this by requesting new DCSs based on a 2010 beginning acceptance date and failing to notify Consumers Energy of any non-payment of the one-time fee as would be required under the Standard Contract.

DOE acknowledges in its 2004 APR/ACR that the first actual delivery of SNF/HLW will not occur prior to 2010.[4] Consumers Energy's allocation delivery date has not even been established by

---

Date" line was "Not Required" of Consumers Energy because the date was to be "Assigned by DOE." App. 55. Until a delivery date is scheduled by DOE, Consumers Energy is entitled to make the one-time fee payment at any time. Standard Contract, Art. VIII.B(2)(b).

[4]Consumers Energy does not concede the 2010 beginning acceptance date proposed by the DOE.

the Department of Energy. Therefore, under the clear and unambiguous language of the Standard Contract, Consumers Energy may pay the one-time fee "any time" prior to that first delivery. The Government's argument based on the one-time fee payment should therefore be disregarded for purposes of this Motion on Contract Liability.

## B. THE GOVERNMENT HAS BREACHED THE STANDARD CONTRACT AND CONSUMERS ENERGY HAS SUFFERED DAMAGES

The Government argues that Consumers Energy is not entitled to a liability ruling because the first acceptance allocation for Consumers Energy's SNF/HLW would have occurred in 1999 absent the Government's breach. This is a nonsensical argument, particularly in 2005 when it is undisputed that we are several years past Consumers Energy's initial allocation delivery year even under the old Acceptance Priority Ranking. Consumers Energy acknowledges that its first acceptance allocation under the 1995 APR/ACR would have resulted in a first delivery in 1999. However, the plain terms of the Standard Contract required DOE to begin accepting SNF/HLW from the industry beginning January 31, 1998. Because the Standard Contract creates a priority for DOE to accept the oldest fuel first,[5] this of necessity creates an acceptance queue for the entire nuclear utility industry. As a result, a failure by DOE to begin accepting SNF/HLW under the first allocation from any utility pushes back and affects the acceptance date for every other utility in the queue, including Consumers Energy. That is why the January 31, 1998 date was included in every Standard Contract, rather than a utility specific acceptance date. As a result, DOE's failure to begin

---

Consumers Energy believes that the actual beginning acceptance date will be substantially after 2010.

[5]The Standard Contract (Appendix C) provides that "acceptance priority shall be based upon the age of the SNF and/or HLW as calculated from the date of discharge of such material from the civilian nuclear power reactor. DOE will first accept from Purchaser the oldest SNF and/or HLW for disposal in the DOE facility. . . ." Art. VI.B(1)(a), p 14-15 (App. 24-25). The Government acknowledges this oldest fuel first rule in Defendant's Response, at 4.

accepting SNF/HLW by January 31, 1998 did, in fact, breach each and every Standard Contract and damaged each and every utility, including Consumers Energy, holding one of the Standard Contracts. Again, this fact was recognized by the Federal Circuit when it ruled that "[t]he breach involved all the utilities that had signed the contract-the entire nuclear electric industry." *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1342 (Fed. Cir. 2000).

Even more compelling is the fact that the Government has abandoned the 1995 DCS system and the Acceptance Priority Ranking which would have resulted in a first allocation to Consumers Energy in 1999, if the Government had not breached the Contract. As indicated above, in 2004, DOE issued a new APR/ACR which requested submission of new DCS forms from nuclear utilities based on a 2010 beginning acceptance date. To suggest, as the Government does in Defendant's Response, that the 1995 APR/ACR somehow provides a defense to liability defies logic and ignores DOE's abandonment of the old DCS process and its replacement in 2004. *See* Appendix F (App. 47). Further, the Court of Federal Claims has already ruled that the submission and acceptance of DCS forms did not create any contractual rights between the parties, and that DOE's use of its 1991 ACR to limit the amount of SNF requested by utilities may be a breach of the duty of good faith and fair dealing. *See Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 665, 666 (2003) ("plaintiff's submission and defendant's acceptance of the proposed DCSs did not create a contractually binding obligation for either party.").

The Government argues, at page 7 of Defendant's Response, that the DCS process under the Standard Contract required Consumers Energy to submit a final delivery schedule for its SNF not less than 12 months before the delivery date. The Government does not contest that Consumers Energy submitted DCSs for its SNF/HLW, but argues that Consumers Energy did not submit the final delivery schedule. Aside from the fact that, as discussed above, the DCS process was

abandoned by the Government, this also ignores the fact that DOE admits that it notified the industry prior to 1998 that it would not accept SNF/HLW by the Contract deadline. The *Commonwealth Edison* Court ruled that based on facts conceded by the Government "[i]n 1997, DOE notified the utilities that it was waiving until further notice the utilities' obligation to submit revised DCSs because DOE was unable either to approve or disapprove the submissions." *Commonwealth Edison*, 56 Fed. Cl. at 665; *see also Northern States*, 128 F.3d at 757 (DOE notified utilities in 1996 that it would not comply with its January 31, 1998 deadline). Thus, the Government advised utilities that it would not accept delivery of SNF/HLW in 1998, 1999, or thereafter, until further notice. That notice has only recently come in the form of the 2004 APR/ACR. Consumers Energy could not have scheduled an actual delivery in 1998 or 1999 because the Government was not accepting DCSs until the 2004 APR/ACR was issued. The Government cannot now hide behind the DCS process it abandoned, or reasonably contest that Consumers Energy has suffered some measure of damages. Entry of judgment as to liability on Count I is therefore appropriate.

The Standard Contract required DOE to begin accepting SNF/HLW on January 31, 1998. Whether or not Consumers Energy's first allocation would have occurred in 1999 under the old, abandoned DCS process, it cannot be reasonably contested that Consumers Energy has incurred some measure of damages associated with the storage of SNF/HLW, and that it will continue to suffer such damages until the Government fulfills its "unqualified obligation to take the materials by the statutory deadline." *Northern States Power Co. v. Department of Energy*, 128 F.3d at 760. Consumers Energy requests entry of judgment of liability for partial breach of contract against the Government under Count I of the Complaint. For purposes of this Motion, Consumers Energy does not seek to quantify the amount of its damages. The Government has previously conceded that its failure to begin accepting SNF/HLW by January 31, 1998 constituted a partial breach of the

Standard Contract. Consumers Energy merely requests entry of a judgment in accordance with that admission.

## C. FURTHER DISCOVERY IS NOT NECESSARY ON THE ISSUE OF CONTRACT LIABILITY

In Defendant's Response, the Government requests additional discovery "[i]n the event that the Court finds that there is not ample evidence to rebut Consumers' allegations regarding a liability ruling. . . ." Defendant's Response, at 21. Initially, it should be noted that no additional discovery was required in any of the six cases in which a liability ruling has already been issued under the Standard Contract. Despite the Government's protestations to the contrary, this Motion involves a simple matter of contract interpretation, and the Contract language is clear and unambiguous on its face. No further discovery on this issue should be required in order to enter a judgment as to liability.

Consumers Energy simply requests entry of judgment as to liability based on the unambiguous language of the Standard Contract, which requires that DOE shall begin disposing of SNF/HLW "not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors specified in Appendix A, annexed hereto and made a part hereof, has been disposed of." Standard Contract, Appendix C, Art. II (App. 16); 10 C.F.R. § 961.11, Art. II. This language has already been interpreted by the D.C. Circuit Court to impose on DOE "an unqualified obligation to take the material by the statutory deadline." *Northern States Power Co. v. Department of Energy*, 128 F.3d at 760. The Federal Circuit has also ruled that the Government breached the Standard Contract by failing to begin accepting SNF/HLW by January 31, 1998. *See Maine Yankee Atomic Power Co. v. United States*, 225 F.3d at 1342 ("The breach involved all the utilities that had signed the contract-the entire nuclear electric industry").

These appellate opinions are dispositive of the contract interpretation issue in the present Motion. It is hornbook law that where a contract is clear and unambiguous on its face, the Court will not look beyond the four corners of the document to interpret its meaning. *See Barron Bancshares, Inc. v. United States,* 366 F.3d 1360, 1375 (Fed. Cir. 2004). Therefore, the subjective understanding of the parties is irrelevant for purposes of this Motion, and discovery will not produce any evidence relevant to this Court's interpretation of the Contract. Contract interpretation is decided as a matter of law. *See, e.g., Perry v. Martin Marietta Corp.,* 47 F.3d 1134, 1137 (Fed. Cir. 1995) ("The interpretation of regulations incorporated into a contract is purely a legal question."). Additionally, the Government has failed to identify a single relevant issue requiring discovery for purposes of this Motion. Instead, the Government seeks authorization to engage in unspecified and undirected discovery "[i]n the event that the Court finds that there is not ample evidence to rebut Consumer's allegations regarding a liability ruling. . . ." Defendant's Response, at 21. None of the issues discussed in Defendant's Response concerning the acceptance rate or the DCS process are relevant to the issue of whether the Government has breached the Standard Contract. Those issues are relevant only in the damages phase of this case. Additional discovery is neither necessary or appropriate in order to enter judgment as to liability under Count I of the Complaint for partial breach of contract.

**CONCLUSION**

For the foregoing reasons, as well as those stated in Plaintiff's Motion on Contract Liability, Consumers Energy respectfully requests entry of judgment in its favor on the Government's liability for partial breach of contract under Count I of the Complaint, consistent with the liability orders entered in *Indiana Michigan*, *Florida Power & Light, Commonwealth Edison*, *Yankee Atomic*, *Maine Yankee*, and *Connecticut Yankee*, referenced herein.

Respectfully submitted,

s/ Thomas O. Mason

Thomas O. Mason
WILLIAMS MULLEN
8270 Greensboro Drive, Suite 700
McLean, VA 22102
(703) 760-5200 (phone)
(703) 748-0244 (facsimile)
Attorneys for Plaintiff Consumers Energy Company

OF COUNSEL:

Harvey J. Messing (P23309)
Jeffrey S. Theuer (P44161)
LOOMIS, EWERT, PARSLEY, DAVIS & GOTTING, P.C.
232 S. Capitol Avenue, Suite 1000
Lansing, MI 48933
(517) 482-2400

James E. Brunner (P28051)
Arunas T. Udrys (P21660)
Consumers Energy Company
212 West Michigan Avenue
Jackson, MI 49201
(517) 788-2151

Dated: January 13, 2005