IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
DEC 12 2002
U.S. COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INDIANA MICHIGAN POWER COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 98-486C |
| | ) | (Judge Hodges) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO INDIANA MICHIGAN POWER COMPANY'S RENEWED MOTION FOR THE GOVERNMENT TO ACKNOWLEDGE ITS LIABILITY ON THE ISSUE OF PARTIAL BREACH OF CONTRACT

Defendant, the United States, respectfully responds to "Indiana Michigan Power Company's Renewed Motion For The Government To Acknowledge Its Liability On The Issue Of Partial Breach Of Contract," dated November 21, 2002.[1]

In support of this response, we respectfully refer the Court to "Defendant's Motion For Partial Summary Judgment Regarding The Rate Of Spent Nuclear Fuel Acceptance," filed November 28, 2001. To determine whether the Department of Energy ("DOE") is liable to any particular utility for contract damages, and to determine the scope of that liability, the Court must first resolve the issues presented in our motion for partial summary judgment regarding the rate of spent nuclear fuel acceptance. In its motion for a liability ruling, plaintiff, Indiana Michigan Power Company ("IM"), argues that it has "shown the necessary prerequisites for a liability

[1] Although plaintiff refers to its motion as a "renewed motion," we are unaware of any prior motion in this case seeking a ruling on liability. Although the Court issued an order on July 20, 2001, ordering the Government to "show cause . . . why a liability determination against the Government should not be entered in this case," and although the Government responded to that order on July 27, 2001, plaintiff did not previously file any motion regarding liability or any response to the Government's July 27, 2001 filing.

determination against the Government." IM Motion, at 2.[2] It asserts that it has satisfied the "four factors" necessary for a party "to recover contract damages," which it identifies as follows: "(1) a valid contract between the parties; (2) a duty or obligation arising out of the contract; (3) a breach of that duty; and (4) damages caused by that breach." IM Motion, at 2 (citing factors from San Carlos Irrigation & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1987)). IM states that "[t]he first three elements establishing a breach are clearly met and the Government has conceded that its motion for partial summary judgment on the acceptance rate serves the purpose of addressing the fourth." IM Motion, at 2.

Although IM insists that the Court should issue a ruling on liability immediately, before considering the Government's rate of SNF and/or HLW acceptance motion or the Government's summary judgment motion regarding Greater Than Class C ("GTCC") radioactive waste, it is impossible for the Court to determine the Government's liability, or the scope of that liability, without resolving the issues set forth in the Government's rate of SNF acceptance motion. Based upon the D.C. and Federal Circuits' published decisions, and as we have previously informed the Court in our July 27, 2001 filing, we acknowledge that the Department of Energy's delay in beginning SNF and/or HLW acceptance by January 31, 1998 constitutes a breach of the Standard Contract. However, the January 31, 1998 deadline for beginning SNF and/or HLW acceptance was not a deadline that required DOE to begin accepting some SNF and/or HLW from each and every contract holder by January 31, 1998. Instead, that January 31, 1998 deadline was a

[2] "IM Motion, at __" refers to Indiana Michigan Power Company's Renewed Motion For The Government To Acknowledge Its Liability On The Issue Of Partial Breach Of Contract, dated November 21, 2002.

statutory deadline by which DOE was required to begin its program of accepting SNF and/or HLW from the contract holders as a collective whole.

As we explain in our motion for partial summary judgment regarding the rate of SNF acceptance, the Standard Contract created a mechanism by which contract holders would obtain commitments from DOE that would define the specific dates – on or after January 31, 1998 -- upon which DOE would accept specific SNF, and specific amounts of SNF, from specific contract holders. As we establish in our partial summary judgment motion, that contractual mechanism contemplated that each contract holder, to the extent that it wanted DOE to accept any SNF and/or HLW at any particular time and place, would timely submit a delivery commitment schedule ("DCS") at least 63 months prior to the desired SNF acceptance date, followed by a final delivery schedule ("FDS"). See 10 C.F.R. § 961.11, Art. V.B. Submission of a DCS, followed by the actions necessary to obtain DOE's approval of that DCS, constituted a condition upon DOE's obligation to accept any SNF and/or HLW from any particular contract holder at any particular place and time. See Defendant's Motion, at 15-22.[3] Accordingly, if a contract holder did not submit (by late 1992) a DCS for acceptance of any particular SNF in 1998, and did not perform the necessary acts to obtain approval of that DCS by DOE, that contract holder did not obligate DOE to accept any of its SNF in 1998.

Although IM asserts that it is clear that the Government's delay in beginning SNF and/or HLW acceptance by January 31, 1998, constitutes a breach of the Standard Contract, that breach, in and of itself, does not create liability to any particular contract holder or establish that any

---

[3] "Defendant's Motion, at __" refers to Defendant's Motion For Partial Summary Judgment Regarding The Rate Of Spent Nuclear Fuel Acceptance, dated November 28, 2001.

particular contract holder has incurred any damages as a result of the Government's breach of contract. Instead, as we explain in our partial summary judgment motion, it is DOE's inability to accept SNF identified in approved DCSs that creates and defines DOE's liability. The existence of a breach of contract is but one component of the issue of liability. See The Pantry, Inc. v. Stop-N-Go Foods, Inc., 796 F. Supp. 1164, 1166 (S.D. Ind. 1992) (plaintiff "requested a judgment finding in Plaintiff's favor on the *issue* of liability and not merely a component *element* of that issue (whether there was a breach)" (italics in original)); see also Winstar Corp. v. United States, 21 Cl. Ct. 112, 117 (1990) ("court requires further briefing on several elements of plaintiffs' contract claim which are necessary to determine liability," including "whether a breach occurred" and, "if so, whether it resulted in injury"), aff'd, 64 F.3d 1531 (Fed. Cir. 1995) (en banc), aff'd, 518 U.S. 839 (1996). Further, the Court of Claims has recognized that, before a contractor is entitled to judgment as to entitlement, it must establish as part of its proof that it suffered some damage, beyond mere speculation, because of the Government's actions:

> Even if, as here, the assessment of damages is reserved for the quantum phase of the case, the plaintiff as part of its proof of entitlement, must show it was damaged to some extent, by defendant's derelictions, and it has failed to do so . . .

Puritan Assocs. v. United States, 215 Ct. Cl. 976, 978 (1977). "A wrong done, but from which no loss or damage results, . . . will not sustain an action." Cosmo Constr. Co. v. United States, 196 Ct. Cl. 463, 469 n.3, 451 F.2d 602, 605 n.3 (1971) (quoting Black's Law Dictionary (4th ed.)). In an action bifurcated as to entitlement and quantum issues, "evidence on damages or quantum is not totally excluded [from consideration of the entitlement phase of the case], because there must be some evidence of damage to support a finding on liability" that is

"sufficient to demonstrate that the issue of liability is not purely academic." Id. at 469-70, 451 F.2d at 605-06 (emphasis in original).

Here, IM could not have suffered any injury as a result of DOE's failure to begin SNF acceptance from the commercial nuclear utility contract holders by January 31, 1998, under the Nuclear Waste Policy Act program. Instead, any injury that IM incurred would result from DOE's failure to accept IM's SNF as identified in IM's approved DCSs. As established in our partial summary judgment, IM had approved DCSs for SNF acceptance in 2001, 2002, 2004, 2005, and 2006. However, it did not have any approved DCSs for 1998 and, in fact, did not request, through the submission of an appropriate and timely DCS, acceptance of any SNF or HLW in 1998. Accordingly, IM has no basis for arguing that DOE's delay on January 31, 1998 caused IM itself to incur any damages. Instead, based upon the arguments in our partial summary judgment motion, any damages to IM would be based solely upon DOE's breach of its obligations with regard to IM's approved DCSs. Although the Court could simply issue an order finding the Government liable for some failure to accept IM's SNF, that liability ruling would be meaningless without an identification of whether the liability created any resulting injury. A more appropriate analysis would be for the Court to identify the basis of the Government's liability to IM and to issue an order that focuses upon, identifies, and defines the basis and scope of that liability. This order could be issued in ruling upon the Government rate of SNF acceptance summary judgment motion, which in turn could provide a basis upon which the parties could attempt to evaluate potential damages.

The Government's motion for partial summary judgment identifies the proper method upon which to identify and define the basis and scope of the Government's liability for breach.

That motion presents the issue of DCSs to the Court, as the contractually required method of determining the rate and order of SNF and/or HLW acceptance. Only after the Court has determined the rate and order of SNF and/or HLW acceptance mandated by the Standard Contract, as well as the additional and alternative issues raised in the Government's partial summary judgment motion, will it be appropriate, and indeed possible, accurately to determine whether the Government is liable to any given utility and to identify the basis and scope of that liability. Further, absent a decision upon the Government's partial summary judgment motion, the Court cannot identify the specific "breach" or actions that create the basis for a liability ruling and cannot identify the scope of any liability ruling. Accordingly, any decision regarding liability in this case must be made by reference to the issues identified in the Government's pending summary judgment motions. For IM to assert otherwise would be to confuse the concept of breach with the concept of liability for damages.

IM also asserts, in support of its motion, that our motion for partial summary judgment is "for purposes of assessing damages for the Department of Energy's breach of the Standard Contract at issue in this case." IM Motion, at 3. IM is incorrect. Indeed, IM has quoted an incomplete sentence out of context, thus changing its meaning entirely. In fact, the Government's motion for partial summary judgment presents as an issue for this Court's resolution of whether the DCSs constitute binding commitments that establish the rate and order of acceptance of SNF and/or HLW, for purposes of then evaluating and assessing damages, as we stated in that motion itself:

> Whether the Delivery Commitment Schedules ("DCSs") that the nuclear utility plaintiffs submitted to the Department of Energy ("DOE") pursuant to Article IV.B of the "Standard Contract For

> The Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste" ("Standard Contract"), published at 10 C.F.R. § 961.11, constitute binding commitments that establish the rate and order of SNF and/or HLW acceptance for purposes of assessing damages for DOE's delay in beginning SNF and/or HLW acceptance under the Standard Contract.

Defendant's Motion, at 1-2. In other words, the Government does not attempt, through its motion for partial summary judgment, to put forth a method of assessing damages. Rather, we put forth a method of determining, according to the terms of the contract, the rate and order of SNF and/or HLW acceptance, by which both the basis of liability, the scope of liability, and the basis for assessing damages resulting from that liability may be determined. This determination must be made before the Court can determine liability for damages, if there be any liability in a particular case at all. IM's apparent theory that an acknowledged breach of contract automatically creates liability directly conflicts with the traditional requirement that a plaintiff must show some resulting injury from the identified breach before obtaining a ruling on liability. See Puritan Assocs., 215 Ct. Cl. at 978.

For the foregoing reasons, the Government respectfully requests that the Court deny IM's motion for the Government to acknowledge liability prior to consideration of the Government's motions for partial summary judgment and order IM to respond to those partial summary judgment motions.

Respectfully submitted,

ROBERT D. McCALLUM, Jr.
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-6288
Fax: (202) 514-8640

OF COUNSEL:

JANE K. TAYLOR
L. DOW DAVIS, IV
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

HEIDE L. HERRMANN
Attorney
Department of Justice
Commercial Litigation Branch
Washington, D.C. 20530

December 12, 2002

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 12th day of December 2002, I caused to be served by telecopy and by United States mail (postage prepaid, first-class mail) a copy of "DEFENDANT'S RESPONSE INDIANA MICHIGAN POWER COMPANY'S RENEWED MOTION FOR THE GOVERNMENT TO ACKNOWLEDGE ITS LIABILITY ON THE ISSUE OF PARTIAL BREACH OF CONTRACT," addressed as follows:

ALEX D. TOMASZCZUK
Shaw Pittman
1650 Tysons Boulevard
McLean, VA 22102

Rosa M. Robinson