IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY, Plaintiff, | ) | |
| v. | ) | No. 02-1894C (Chief Judge Damich) |
| THE UNITED STATES, Defendant. | ) | |

# DEFENDANT'S NOTICE OF FILING IN ACCORDANCE WITH THE COURT'S FEBRUARY 22, 2005 ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT AND DEFENDANT'S COUNTERCLAIM

In accordance with the parties' discussion with the Court during oral argument on February 16, 2005, and pursuant to this Court's order dated February 22, 2005, defendant, the United States, respectfully submits a copy of the letter from the Department of Energy ("DOE") to Tennessee Valley Authority ("TVA") that counsel for defendant identified during the February 16, 2005 hearing. That letter is dated November 3, 2004. This document is submitted as a supplement to the appendices relating to defendant's motion for summary judgment upon Counts I and II of plaintiff's complaint and defendant's response to plaintiff's cross-motion for summary judgment upon defendant's counterclaim and affirmative defenses relating to the one-time fee.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

March 1, 2005

Attorneys for Defendant

# ATTACHMENT

**Department of Energy**
Washington, DC 20585

NOV 0 3 2004

QA: N/A

John B. Carden III
Contract Manager
Procurement – TVAN Contracts
Tennessee Valley Authority
1101 Market Street
Chattanooga, Tennessee 37402-2801

Dear Mr. Carden:

This letter responds to your August 24, 2004 letter that replied to my July 28, 2004 letter announcing the resumption of the Delivery Commitment Schedule (DCS) process. Your letter indicates that Tennessee Valley Authority (TVA) will not be submitting DCSs for allocations accorded it by the 2004 Acceptance Priority Ranking/Annual Capacity Report (APR/ACR) until required by the schedule set forth in the disposal contract between TVA and the Department of Energy (DOE).

Your letter states that "TVA understands that DOE has abandoned the March 1995 APR/ACR waste acceptance allocation schedule." As an initial point of clarification, the method of allocating acceptance positions prior to the submission and approval of DCSs used in the 2004 APR/ACR is precisely the same as the method used in the 1995 APR/ACR. Specifically, both the 1995 APR/ACR and the 2004 APR/ACR utilize an "oldest fuel first" method of allocating acceptance positions in the acceptance queue as provided by the Standard Contract. That method of allocation has not changed and is not expected to change, absent some future amendment to the Standard Contract.

With regard to the acceptance schedule identified in the 2004 APR/ACR, that schedule reflects DOE's current planning for acceptance of SNF at the Yucca Mountain repository once operations begin in 2010, assuming that various factors upon which DOE's planning is based remain unchanged.

With regard to your suggestion that DOE has "abandoned" the 1995 APR/ACR "schedule," it is unclear whether you are referring to the rates at which DOE now anticipates it will be able to accept SNF from Purchasers under the Standard Contract beginning in 2010 or whether, instead, you are referring to an abandonment of the DCSs that were approved in conjunction with the 1991 ACR, the 1992 ACR, and the 1995 APR/ACR. Because TVA has never obtained any approved DCSs, we presume that TVA wants to ensure that DOE anticipates its ability to approve DCSs to be submitted in the future based upon the allocations identified in the 2004 APR/ACR. To the extent that TVA's concern relates to DOE's ability to approve future-submitted DCSs, we anticipate that, based upon current progress at the Yucca Mountain site, we will approve DCSs submitted in accordance with the allocations identified in the 2004 APR/ACR. Although Purchasers are certainly entitled to submit DCSs requesting acceptance of

Printed with soy ink on recycled paper

SNF under different allocation scenarios, DOE does not anticipate that it will be able to approve those requests in light of its obligations to allocate SNF acceptance positions to all Purchasers on an "oldest fuel first" basis and in light of the limitations upon the amount of SNF that DOE can accept in any given year. However, Articles V.B, V.C, and XVI of the Standard Contract provide a mechanism for resolving any disputes about acceptance allocations and disapprovals of DCS submissions.

To the extent that TVA has concerns about the interrelationship between previously approved DCSs and any new DCSs that DOE receives, the DCS approval process should eliminate those concerns. DOE understands that, when it approved DCSs from 1992 through 1997, it created commitments to accept specific amounts of SNF from specific Purchasers during specific periods of time, and, as you know, DOE's delay in accepting SNF in accordance with those DCSs is now the subject of litigation in the United States Court of Federal Claims. Although DOE had hoped when the earlier DCSs were being reviewed beginning in 1992 that it would be able to begin SNF acceptance in 1998 for storage in a monitored retrievable storage facility and based its acceptance rates upon that scenario, DOE currently anticipates being able to begin SNF acceptance at the Yucca Mountain repository in 2010. Because of the different types of facilities contemplated for acceptance in 1998 and in 2010, DOE believes that, once it begins accepting SNF, it will be in a position to accept SNF at a different rate at a repository than it had anticipated when it previously reviewed and approved DCSs for acceptance at a monitored retrievable storage facility. Accordingly, in the 2004 APR/ACR, we have identified new allocations based upon anticipated acceptance rates that are higher than those in the 1991, 1992, and 1995 ACRs.

Because of the increased anticipated acceptance rates and the currently anticipated acceptance dates, it will be difficult to plan for acceptance of SNF based upon the previously approved DCSs, which contain allocations that do not conform to the current anticipated rates. In addition, Purchasers may now wish to change the location from which the SNF is to be accepted or the dates of discharge identified in the original DCS submissions. Accordingly, any new DCSs that Purchasers submit may reflect these changes or request acceptance of the additional SNF covered by the new allocations granted. We anticipate that any new DCSs that are approved will replace, rather than supplement, the previously approved DCSs. To eliminate any potential confusion regarding the relationship between previously approved DCSs and new DCSs, we will seek, prior to approving new DCSs from any Purchasers with previously approved DCSs, an agreement in writing that any new DCSs that are approved actually replace, rather than supplement, the previously approved DCSs. That agreement will be reflected in any future DCS approvals.

Please contact me if you have any questions.

Sincerely,

David Zabransky
Contracting Officer
Office of System Analysis & Strategy Development

HQR341 0002

CERTIFICATE OF FILING

I hereby certify that on this 1st day of March, 2005, a copy of foregoing "DEFENDANT'S NOTICE OF FILING IN ACCORDANCE WITH THE COURT'S FEBRUARY 22, 2005 ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT UPON COUNTS I AND II OF PLAINTIFF'S COMPLAINT AND DEFENDANT'S COUNTERCLAIM" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Harold D. Lester, Jr.