IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-1894C |
| v. | ) | (Chief Judge Damich) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RENEWED MOTION TO
DISMISS COUNT III OF PLAINTIFF'S COMPLAINT

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

SCOTT R. DAMELIN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-2312
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

STEPHEN FINN
JOSHUA E. GARDNER
Trial Attorneys
Department of Justice
Washington, D.C. 20530

August 9, 2007

Attorneys for Defendant

**TABLE OF CONTENTS**

STATEMENT OF ISSUE . . . . . 2

STATEMENT OF FACTS . . . . . 2

SUMMARY OF THE ARGUMENT . . . . . 5

ARGUMENT . . . . . 5

I. THE STANDARD OF REVIEW . . . . . 5

II. THE ALLEGATIONS IN CONSUMERS' COMPLAINT FAIL TO STATE A VIABLE CLAIM FOR A TAKING UNDER THE FIFTH AMENDMENT . . . 6

A. Consumers' Rights Are Created Solely By Contract, And, Therefore, Its Remedies Are Limited Exclusively To Contract Remedies . . . . . 6

B. Consumers May Not Retain Its Takings Claim As An "Alternative" To Its Breach Of Contract Claim . . . . . 10

III. CONSUMERS CANNOT ASSERT A PHYSICAL TAKING OF ITS PROPERTY . . . . . 13

IV. CONSUMERS HAS NOT IDENTIFIED ANY VIABLE REGULATORY TAKING OF ITS PROPERTY . . . . . 14

CONCLUSION . . . . . 18

## TABLE OF AUTHORITIES

### CASES

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
No. 05-5132-CV, 2007 WL 1989336 (2d Cir. July 11, 2007) . . . . . . 6

Adams v. United States,
391 F.3d 1212 (Fed. Cir. 2004) . . . . . . 16

Ambase Corp. v. United States,
58 Fed. Cl. 32 (2003) . . . . . . 15

B&F Trawlers Inc. v. United States,
27 Fed. Cl. 299 (1992) . . . . . . 6

Bailey v. United States,
53 Fed. Cl. 251 (2002), aff'd, 341 F.3d 1342 (Fed. Cir. 2003) . . . . . . 8

Bell Atl. Corp. v. Twombly,
127 S. Ct. 1955 (2007) . . . . . . 5, 6

Boston Edison Co. v. United States,
64 Fed. Cl. 167 (2005) . . . . . . 11, 12

Branch v. United States,
69 F. 3d 1571 (Fed. Cir. 1995) . . . . . . 6, 16

Canal Electric Co. v. United States,
65 Fed. Cl. 650 (2005) . . . . . . 10

Castle v. United States,
48 Fed. Cl. 187 (2000) . . . . . . 7

Castle v. United States,
301 F.3d 1328 (Fed. Cir. 2002) . . . . . . 7, 8, 11

Cermak v. Babbitt,
234 F.3d 1356 (Fed. Cir. 2000) . . . . . . 12

Coast Indian Cmty. v. United States,
213 Ct. Cl. 550 F.2d 639 (1977) . . . . . . 12

Commonwealth Edison v. United States,
56 Fed. Cl. 652 (Fed. Cl. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Consumers Energy Co. v. United States,
57 Fed. Cl. 278 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Detroit Edison Co. v. United States,
56 Fed. Cl. 299 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fern v. United States,
908 F.2d 955 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Hughes Commc'ns Galaxy, Inc. v. United States,
271 F.3d 1060 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Indiana Michigan Power Co. v. Department of Energy,
88 F.3d 1272 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Integrated Logistics Support Sys. Int'l, Inc. v. United States,
42 Fed. Cl. 30 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Klamath Irrigation District v. United States,
67 Fed. Cl. 504 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

LaVan v. United States,
382 F.3d 1340 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Lingle v. Chevron USA, Inc,,
125 S. Ct. 2074 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

M&J Coal Co. v. United States,
47 F.3d 1148 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995) . . . . . . . . . . . . . . . . . . . . . 14

Maine Yankee Atomic Power Co. v. United States,
225 F.3d 1336 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Members of the Peanut Quota Holders Ass'n, Inc. v. United States,
421 F.3d 1323 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Northwest Airlines, Inc. v. United States Dep't of Transp.,
15 F.3d 1112 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pacific Gas & Elec. v. United States ,
70 Fed. Cl. 766 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Papasan v. Allain,
478 U.S. 265 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Penn Central Transp. Co. v. City of New York,
438 U.S. 104 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Pittman v. Chicago Bd. of Educ.,
64 F.3d 1098 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Plaintiffs in Winstar-Related Cases v. United States,
37 Fed. Cl. 174 (1997), aff'd, 133 F.3d 874 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 7

Rochman v. United States,
27 Fed. Cl. 162 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Sacramento Mun. Util. Dist. v. United States,
61 Fed. Cl. 438 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Smith v. United States,
58 Fed. Cl. 374 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Southern Nuclear Operating Co. v. United States,
No. 98-614C (Fed. Cl. Apr. 7, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Strickland v. United States,
423 F.3d 1335 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

System Fuels, Inc. v. United States,
65 Fed. Cl. 163 (Fed. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency,
535 U.S. 302 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Texas State Bank v. United States,
423 F.3d 1370 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

The Sterns Co. Ltd. v. United States,
396 F.3d 1394 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tuthill Ranch, Inc. v. United States,
381 F.3d 1132 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tyler House Apartments, Ltd. v. United States,
38 Fed. Cl. 1 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Zoeller v. United States,
65 Fed. Cl. 449 (2005) . . . . . . . . . . 9

**STATUTES AND REGULATIONS**

10 C.F.R. § 961.11 . . . . . . . . . . 3

Nuclear Waste Policy Act of 1982, 42 U.S.C. §§ 10101-10270 . . . . . . . . . . *passim*

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 02-1894C<br>(Chief Judge Damich) |

DEFENDANT'S RENEWED MOTION TO
DISMISS COUNT III OF PLAINTIFF'S COMPLAINT

Pursuant to Rule 12(b)(6) of the Rules of this Court ("RCFC"), defendant, the United States, respectfully renews its motion to dismiss Count III of plaintiff's complaint for failure to state a claim upon which relief can be granted.[1] In Count III of its complaint, plaintiff, Consumers Energy Company ("Consumers"), claims that the Government has taken its property and is liable for just compensation. In support of our motion, we rely upon the plaintiff's complaint and the following brief.

---

[1/] On January 3, 2003, the Government moved to dismiss Counts III and IV of Consumers Energy Company's complaint, which alleged an uncompensated taking (Count III) and a claim for illegal exaction (Count IV). On July 1, 2003, the Court dismissed Consumers' illegal exaction claim, but did not address the Government's motion to dismiss the takings claim. Consumers Energy Co. v. United States, 57 Fed. Cl. 278, 279 (2003). Consequently, the Government's motion to dismiss Count III is still pending. See Court Docket No. 3 (modified on March 26, 2004, to reflect that motion to dismiss takings claim is still pending). Because additional legal support for our motion to dismiss Consumers' takings claim has developed since we filed our original motion and because the parties are moving forward with discovery, we are renewing, and supplementing, our original motion to dismiss. In addition, consideration of our motion is more than an academic exercise, as Consumers has identified as one of its experts an individual who has endeavored to quantify the alleged "taking" of its property. To the extent that the Court dismisses Count III of Consumers' complaint, that will obviate the need for time- and cost-intensive discovery on this issue, including the potential that the Government would have to prepare responsive expert reports.

DEFENDANT'S BRIEF

STATEMENT OF ISSUE

Whether Consumers may bring a takings claim predicated upon a breach of the Standard Contract between Consumers and the Government.

STATEMENT OF FACTS

Prior to 1983, the Department of Energy ("DOE") had no statutory, regulatory, or other legal obligation to accept or dispose of the spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW") that nuclear utilities generated through their production of nuclear power. To the contrary, prior to 1983, Consumers was responsible for the storage and protection of that SNF that it had generated and that it would continue to generate. In 1983, however, Congress enacted the Nuclear Waste Policy Act of 1982 ("NWPA"), 42 U.S.C. §§ 10101-10270. Compl. ¶ 8.[2] One of the purposes of the NWPA was "to establish the Federal responsibility, and a definite Federal policy, for the disposal of such waste and spent fuel." 42 U.S.C. § 10131(b)(2). According to Consumers, the passage of NWPA represented the Government's acceptance of responsibility for the disposal of SNF. Compl. ¶ 9. In passing the NWPA, Congress included statutory findings that the public health and safety necessitated that the Government provide a solution for the permanent storage and disposal of SNF and HLW, although Congress also found that the costs of the interim and permanent storage and disposal of SNF and HLW were the responsibility of those entities that created the SNF and HLW:

> [W]hile the Federal Government has the responsibility to provide for the permanent disposal of high-level radioactive waste and such spent nuclear fuel as may be disposed of in order to protect

[2/] "Compl." refers to the complaint that Consumers Energy filed on December 16, 2002.

> the public health and safety and the environment, the costs of such disposal should be the responsibility of the generators and owners of such waste and spent fuel;
>
> * * *
>
> [T]he generators and owners of high-level radioactive waste and spent nuclear fuel have the primary responsibility to provide for, and the responsibility to pay the costs of, the interim storage of such waste and spent fuel until such waste and spent fuel is accepted by the Secretary of Energy in accordance with the provisions of this chapter . . . .

42 U.S.C. §§ 10131(a)(4) & (a)(5).

Pursuant to section 302(a) of the NWPA, the Secretary of Energy was "authorized to enter into contracts with any person who generates or holds title to [SNF] of domestic origin for the acceptance of title, subsequent transportation, and disposal of such [SNF]." 42 U.S.C. § 10222(a)(1). Further, the Secretary of Energy was barred from disposing of any SNF or HLW under the NWPA "unless the generator or owner of such [SNF] has entered into a contract with the Secretary under this section by not later than . . . June 30, 1983; or . . . the date on which such generator or owner commences generation of, or takes title to, such [SNF]; whichever occurs later." 42 U.S.C. § 10222(b)(2). As a result, DOE's obligation to dispose of a generator's or owner's SNF was conditioned upon the existence of a contract between the generator (or owner) and DOE. DOE implemented the requirements of section 302(a) of the NWPA by promulgating, through notice-and-comment rule making in the Federal Register, the Standard Contract now published at 10 C.F.R. § 961.11. The Standard Contract required DOE to begin "[t]he services to be provided by DOE" under the Standard Contract "not later than January 31, 1998." 10 C.F.R. § 961.11, Art. II. On June 3, 1983, Consumers Energy entered into a Standard Contract with DOE for the disposal of SNF and HLW produced by its nuclear facilities. Compl. ¶ 15.

On January 31, 1998, DOE was unable to begin accepting SNF as required by the Standard Contract. Compl. ¶ 25. Thereafter, the United States Court of Appeals for the Federal Circuit ruled that DOE's delay in beginning acceptance of SNF by January 31, 1998, constituted a breach of the Standard Contract. See Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000))

On December 13, 2002, Consumers filed its complaint in this Court alleging a single taking claims based upon the Government breach of the Standard Contract. In its complaint, plaintiff made the following allegations:

> 41. In complying with its obligation under the Contract, Consumers Energy obtained a vested contract right to have DOE accept, transport and dispose of SNF from Consumers Energy in accordance with the Contract.
>
> 42. DOE's failure to begin accepting, transporting, and disposing of SNF beginning on January 31, 1998 , and its further representations that it will not begin to dispose of such SNF until at least 2010 constitute a taking of Consumers Energy's real property and vested contract rights under the Contract.
>
> 43. Consumers Energy is entitled to just compensation for the taking of its vested contract rights in an amount to be determined at trial.
>
> 44. DOE's failure to comply with its obligations under the Contract and NWPA will prevent Consumers Energy from making use of its real property in and around the locations on which SNF is being stored.
>
> 45. DOE's continuing failure to comply with the Contract and NWPA has and continues to deprive Consumers Energy of the valuable economic use of those sites, from which SNF cannot lawfully be removed until DOE meets its obligations.

> 46. Consumers Energy is entitled to just compensation for [the] taking of Consumers Energy's real property in an amount to be determined at trial.

Compl. ¶¶ 41-46 (emphasis added).

## SUMMARY OF THE ARGUMENT

In Count III of its compliant, Consumers seeks recovery pursuant to the Takings Clause of the Fifth Amendment of the United States Constitution. However, Consumers' alleged property rights are grounded solely in the Standard Contract. Absent its execution of the Standard Contract, Consumers would be wholly responsible for the storage and disposal of its SNF. Accordingly, any rights that Consumers has regarding the Government's acceptance of its SNF are derived through its contract, and any delays in that acceptance, therefore, are remediable only pursuant to its contract. Moreover, the Government has in no way limited Consumers' ability to seek any remedies for breach that existed at the time of contract formation. Additionally, the Federal Circuit has rejected the notion that a takings claim may be brought as an alternative to a breach of contract claim. Because Consumers can prove neither a physical nor regulatory taking of its real property, its takings claim should be dismissed as matter of law.

## ARGUMENT

### I. THE STANDARD OF REVIEW

In considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, this Court should determine whether plaintiff has alleged "enough facts to state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). To survive a motion to dismiss, a plaintiff must "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the

speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., No. 05-5132-CV, 2007 WL 1989336, at *5 (2d Cir. July 11, 2007) (citing Bell Atl. Corp., 127 S. Ct. at 1965). Further, "[o]nce a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp., 127 S. Ct. at 1969. In making this decision, the Court will accept the factual allegations alleged in the complaint as true. Papasan v. Allain, 478 U.S. 265, 268 (1968); B&F Trawlers Inc. v. United States, 27 Fed. Cl. 299, 302 (1992). However, the Court should not place any weight upon any assertions in the complaint other than allegations of fact, because "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." Rochman v. United States, 27 Fed. Cl. 162, 168 (1992) (citing 2A Jeremy C. Moore, Moore's Federal Practice, ¶ 12.07[2.-5] (2d ed. 1992)).

## II. THE ALLEGATIONS IN CONSUMERS' COMPLAINT FAIL TO STATE A VIABLE CLAIM FOR A TAKING UNDER THE FIFTH AMENDMENT

### A. Consumers' Rights Are Created Solely By Contract, And, Therefore, Its Remedies Are Limited Exclusively To Contract Remedies

When analyzing a takings claims, "a court must first determine what was taken." Branch v. United States, 69 F. 3d 1571, 1575 (Fed. Cir. 1995). Consumers' complaint alleges that the Government's failure to accept SNF on January 31, 1998, and the Government's continued delay in accepting that SNF, "constitute a taking of Consumers Energy's real property and vested contract rights under the Contract." Compl. ¶ 42 (emphasis added). Moreover, Consumers alleges that the Government's "failure to comply with the Contract and the NWPA" will deprive Consumers of the economic use of its property. Compl. ¶ 45. Consumers' complaint reveals its own deficiency, as its claim does not arise from any independent right separate from the

Standard Contract. Because the only right that Consumers has regarding the acceptance of SNF derives solely from the Standard Contract, Consumers' takings claims should be dismissed as a matter of law.

Where a party's rights are created by contract with the Government, a party cannot state a takings claim against the Government founded upon a breach of that contract. Castle v. United States, 301 F.3d 1328, 1342 (Fed. Cir. 2002); Smith v. United States, 58 Fed. Cl. 374, 389 (2003); Tyler House Apartments, Ltd. v. United States, 38 Fed. Cl. 1, 10 (1997) (citing J.J. Henry Co. v. United States, 188 Ct. Cl. 39, 46, 411 F.2d 1246, 1249 (1969)). This Court has held that, when a party enters into a contract, that party has either the right to receive performance or, if a breach occurs, the right to receive damages pursuant to contract law. Plaintiffs in Winstar-Related Cases v. United States, 37 Fed. Cl. 174, 187 n.9 (1997), aff'd, 133 F.3d 874 (Fed. Cir. 1998); see Northwest Airlines, Inc. v. United States Dep't of Transp., 15 F.3d 1112, 1121 n.5 (D.C. Cir. 1994). That is why "the concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract." Hughes Commc'ns Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001) (quoting Sun Oil Co. v. United States, 572 F.2d 786, 818 (1978)).

In Castle v. United States, 48 Fed. Cl. 187 (2000), aff'd in relevant part, 301 F.3d 1328 (Fed. Cir. 2002), this Court rejected a takings claim based upon rights created by contract. In Castle, the plaintiffs alleged that the Government had effected a taking of "their contractual agreement with the government" because the Government had not performed in strict accordance with the terms of the contract. Id. at 217. This Court recognized that "the formation of a

contract does not entitle its signatories to absolute performance, but rather gives rise to the expectation either that the contract will be performed or that the non-breaching party will have available to it a contract-based remedy." Id. at 218 (citing Winstar v. United States, 518 U.S. 839, 919 (1996) (Scalia, J., concurring)). "The duty to keep a contract at common law means a prediction that you must pay damages if you do not keep it, and nothing else." Id. Thus, a contract provides a party the right to performance or to damages. In its review of this Court's decision in Castle, the Federal Circuit reiterated that, because the Government did not deprive the plaintiffs of their previously existing contract remedies, the Government had not effected a taking of the plaintiffs' contract:

> The plaintiffs received no contractual guarantee that the government would refrain from regulating Western Empire. At most, the contract promised either to regulate Western Empire consistently with the contract's terms, or to pay damages for breach. *Cf. Winstar*, 518 U.S. at 919, 116 S. Ct. at 2432 (Scalia, J., concurring in judgment) ("Virtually *every* contract operates, not as a guarantee of particular future conduct, but as an assumption of liability in the event of nonperformance . . . ."). Thus, by enacting FIRREA, the government did not deprive the plaintiffs from a contractual remedy – injunctive relief – to which they otherwise might have been entitled against a private defendant. Nor did FIRREA remove the plaintiffs' cause of action for damages. We agree with the Court of Federal Claims that the plaintiffs retained the full range of remedies associated with any contractual property right they possessed. Consequently, we hold that even assuming the enactment and enforcement of FIRREA breached a contract the government had with Castle and Harlan, it did not constitute a taking of the contract.

Castle v. United States, 301 F.3d 1328, 1342 (Fed. Cir. 2002); see Bailey v. United States, 53 Fed. Cl. 251, 256-57 (2002) (no taking of contract rights exist unless Government "takes" range of remedies associated with vindication of contract), aff'd, 341 F.3d 1342 (Fed. Cir. 2003); Zoeller v. United States, 65 Fed. Cl. 449, 461 (2005) (same); Integrated Logistics Support Sys.

Int'l, Inc. v. United States, 42 Fed. Cl. 30, 34 (1998) (plaintiff "cannot exploit the Fifth Amendment to amend unilaterally a contract in an effort to rectify what hindsight reveals as an unappealing bargain").

Additionally, in the SNF context, this Court repeatedly has rejected takings claims that are, in reality, disguised contract claims. This Court's holding in Commonwealth Edison v. United States, 56 Fed. Cl. 652 (Fed. Cl. 2002), relates to an identical takings claim as that asserted in this case. Just as in this case, the takings claim in Commonwealth was predicated upon the allegation that the Government's breach of the Standard Contract had prevented the utility from making commercial use of its real property. When granting the Government's motion to dismiss, the Court reasoned that, prior to the Standard Contract, the responsibility for the storage and disposal of SNF and HLW rested solely with the utility company. Id. at 656. Further, absent the Standard Contract, DOE had no obligation to accept SNF from the utility's facilities, and the utility would have been forced "to conduct the same or similar storage activities that it now asserts create a taking claim." Id. Therefore, the Court held that the utility did not possess a takings claim absent the rights and obligations formed under the Standard Contract. Like the utility company in Commonwealth, because the Standard Contract remains the sole origin of rights for Consumers, its recourse is limited to contractual remedies.

The Court's decision in Commonwealth is consistent with other decisions in the SNF context. This Court has repeatedly rejected the notion of takings claims arising from the Standard Contract. See Pacific Gas & Elec. v. United States , 70 Fed. Cl. 766, 778 (2006) (dismissing takings claim, as "plaintiff [did] not have a takings claim absent the rights and obligations granted to the parties by the Standard Contract") (quoting Commonwealth, 56 Fed.

Cl. at 656): Canal Electric Co. v. United States, 65 Fed. Cl. 650, 656 (2005) (rejecting both physical invasion and regulatory takings claims in SNF case, and noting that "[p]laintiff has not shown that it is entitled to damages under a theory independent of the rights accorded Canal Electric under the Standard Contract"); Southern Nuclear Operating Co. v. United States, No. 98-614C, slip op. at 5 (Fed. Cl. Apr. 7, 2004) (unpublished opinion) (dismissing Standard Contract holders' takings claim because it "is grounded on the SNF contracts that [two of the plaintiffs] executed with the United States.").

As in Commonwealth Edison, Canal, and Southern Nuclear, here, the only right that Consumers has to obligate the Government to accept and dispose of SNF stems solely from the Standard Contract. Further, Consumers has not, and indeed cannot, allege that the Government has taken Consumers' contractual remedies as a result of the Government's delay in performance. In fact, Consumers has asserted its entitlement to contractual remedies in the form of damages based upon the Government's delay in the acceptance of Consumers' SNF. Compl. ¶¶ 32-35. Therefore, the Government has not taken Consumers' vested contract rights or Consumers' real property, and Consumers may not maintain a takings claim as a matter of law.

### B. Consumers May Not Retain Its Takings Claim As An "Alternative" To Its Breach Of Contract Claim

In several decisions in the SNF cases, the Court has deferred dismissal of the plaintiff"s takings claim to await further development of the contract claims and as potential alternative claims to a contract action. See, e.g., System Fuels, Inc. v. United States, 65 Fed. Cl. 163, 172-73 (Fed. 2005); Sacramento Mun. Util. Dist. v. United States, 61 Fed. Cl. 438, 443 (2004); Detroit Edison Co. v. United States, 56 Fed. Cl. 299, 303 (2003); Boston Edison Co. v. United States, 64 Fed. Cl. 167, 187-88 (2005).

With all due respect to the Court in those cases, the Federal Circuit's decisions in cases such as Castle and LaVan v. United States, 382 F.3d 1340, 1351-52 (Fed. Cir. 2004), plainly establish that Consumers's takings claim here is not viable, making resolution of this motion appropriate. As discussed above, in Castle, the Federal Circuit expressly rejected the notion that a takings claim may be brought as an alternative to a breach of contract claim, holding that, where, as in this case, a plaintiff retains its contractual remedies, it may not maintain a takings claim based upon a breach of a Government contract. Castle, 301 F.3d at 1341-42.

Further, this Court in Klamath Irrigation District v. United States, 67 Fed. Cl. 504 (2005), rejected the notion of "alternative" breach of contract and takings claims, explaining that it is inconsistent with the nature of rights created by a contract with the Government:

> To be sure, some cases suggest that, under this rule, a takings claim is resurrected if a breach of contract is not found, see Systems Fuels, Inc. v. United States, 65 Fed. Cl. 163, 172-73 (2005). But such suggestions reflect a misunderstanding of the rationale for this rule. At least as described in Winstar and Castle, the rule favoring contract remedies depends upon there being symmetry between the contract rights to be enforced and the contract damages that are potentially available. Once this symmetry is established, a finding on the merits that no breach occurred does not break that relationship, but merely reflects that the contract rights that were asserted either never existed or were not adversely affected by the government's actions. Under either scenario, those same contract rights cannot provide the predicate for a takings because the government cannot take what the claimant does not have.

Id. at 432 n.31 (citations omitted). In this case, there can be no "alternative" takings claim as a matter of fact or law. As the Court explained in Klamath, to the extent the Court determines that Consumers' contract claim is not viable, that does not lead to the conclusion that Consumers may assert a takings claim. Rather, that simply means that Consumers either did not have the

rights that it claimed or that such rights had not been adversely affected by the Government. In this case, where there is no allegation that the Government has taken Consumers' contract remedies, Consumers may not, as a matter of law, maintain a takings claim – whether as an alternative to its breach claim or otherwise.

Finally, contrary to the holding in Boston Edison, it is appropriate for this Court to dismiss Consumers' takings claim as a matter of law. In Boston Edison, when denying the Government's motion for summary judgment on the takings claim, the Court held that a genuine issue of material fact existed because "the origin of plaintiff's rights is in dispute." Boston, 64 Fed. Cl. at 187-88. However, as the Federal Circuit recently reaffirmed, the nature of a plaintiff's property interest is a question of law rather than fact. See Texas State Bank v. United States, 423 F.3d 1370, 1379 (Fed. Cir. 2005) (citing Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980)); Cermak v. Babbitt, 234 F.3d 1356, 1361 (Fed. Cir. 2000); Coast Indian Cmty. v. United States, 213 Ct. Cl.129, 550 F.2d 639, 649 (1977)). The Federal Circuit's decisions are binding precedent in this Court. See Strickland v. United States, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005). Because the determination of the nature of Consumers' property interest is a matter of law, this Court can and should dismiss Consumers' takings claim.

## III. CONSUMERS CANNOT ASSERT A PHYSICAL TAKING OF ITS PROPERTY

Even if Consumers could assert a takings claim predicated upon a breach of the Standard Contract, Consumers has failed to establish a physical invasion of its property. In its complaint, Consumers alleges that DOE's delay in performance under the Standard Contract "will prevent Consumers Energy from making productive use of its real property in and around the location on which SNF is being stored" and that the Government "continues to deprive Consumers Energy

of the valuable economic use of those sites." Compl. ¶¶ 44, 45. To the extent that Consumers is asserting a physical (as opposed to regulatory) taking of its property, its claim fails.

The Federal Circuit has expressly rejected the argument that anything less than a physical invasion of property by the Government could constitute a physical taking. In The Sterns Co. Ltd. v. United States, 396 F.3d 1394 (Fed. Cir. 2005), the Federal Circuit was confronted with an allegation that a physical taking had occurred based upon the enactment of a regulation that affected the appellee's ability to engage in surface mining. Id. at 1346. The appellee argued that the denial of its "valid existing rights" application ("VER"), which would have allowed it to engage in mining, effected a physical taking because it unilaterally transferred the appellee's surface easement to the United States. Id. at 1357. In overturning the trial court's determination that the denial of the appellee's VER constituted a physical taking of the surface easement, the Federal Circuit reiterated long-standing precedent, noting that a physical taking occurs only "when the government itself occupies the property or 'requires the landowner to submit to physical occupation of its land.'" Id. (quoting Forest Props., Inc. v. United States, 177 F.3d 1360, 1364 (Fed. Cir. 1999), and Yee v. City of Escondido, 503 U.S. 519, 527 (1992)); see Lingle v. Chevron USA, Inc,, 125 S. Ct. 2074, 2081 (2005) (noting that the "paradigmatic taking requiring just compensation is a direct appropriation or physical invasion of private property"); Tuthill Ranch, Inc. v. United States, 381 F.3d 1132, 1135 (Fed. Cir. 2004) (explaining that physical takings require physical possession). The Court then held that the Government had neither (1) occupied appellee's mineral property or the accompanying implied appurtenant easement, nor (2) required appellee to accept the physical presence of a third party on any of the property. Stearns, 396 F.3d at 1357.

Here, Consumers has not alleged either a physical occupation by the Government of Consumers' facilities, or that the Government required Consumers to accept the presence of a third party upon its property. Further, Consumers has not alleged that the Government federalized its facility or the generation of nuclear power at that facility. Nor can Consumers allege that the Government owns the SNF that its reactors generated. See Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272, 1276 (D.C. Cir. 1996) (finding that DOE does not hold and has not taken title to utilities' SNF). Consumers merely alleges that it was required to continue storing its own SNF as a result of the Government's failure to perform under the Standard Contract. Even assuming the truth of all of Consumers' limited assertions, they simply do not constitute a physical taking of Consumers' property.

## IV. CONSUMERS HAS NOT IDENTIFIED ANY VIABLE REGULATORY TAKING OF ITS PROPERTY

To the extent that Consumers is claiming a regulatory taking, this argument also fails as a matter of law. Before the Court analyzes whether Government action constituted a regulatory taking, the plaintiff must identify whether a protected property interest exists, or, in other words, whether "the use interest proscribed by the government's action was part of the owner's title to begin with." M&J Coal Co. v. United States, 47 F.3d 1148, 1154 (Fed. Cir.), cert. denied, 516 U.S. 808 (1995). This Court has recognized that an "investment-backed expectation is not property." Ambase Corp. v. United States, 58 Fed. Cl. 32, 51 (2003). In this case, the only "property right" to have DOE accept Consumers' SNF and to do so by any particular date arises from the Standard Contract, the mere breach of which, as previously discussed, cannot constitute the basis for a takings action. In Ambase, the plaintiff alleged that, "as the sole shareholder of [the contracting party], it had a reasonable investment-backed expectation that the government

would honor the goodwill contracts with [the contracting party], and that the enforcement of FIRREA confiscated that expectation . . . .' Id. at 50. The Court rejected this argument, finding that, because the "right" at issue was created through a contract with the Government, the only remedy was a contract-based remedy by the contract holder:

> In light of these general concepts, the issue in this case is whether an action by the government against the corporation, that destroys the corporation's value, can be the legal cause of the shareholder's loss in value. The answer seems to the Court to depend on what the character of the government action was. If the government's action is legally compensable under some remedial system then the answer appears to be that there is no legal cause that would justify a takings claim. In this case that is clearly the situation. The government's breach of contract creates in the corporation, here Carteret, a cause of action against the government. If Carteret prevailed in the breach of contract action, the corporation would be restored to the position it would have been in and the shareholder would have lost nothing by the government's action. Therefore, the takings claim can only exist if there is no remedy other than a takings claim for the government's breach of contract. But clearly there is a contract remedy.

Id. at 52 (emphasis added; citations omitted). Consumers has potential contract remedies and has availed itself of those contract remedies by filing suit. No valid regulatory taking claim exists.

Additionally, Consumers has not identified any regulation by the Government that allegedly took its property. Nor can it. To the extent that Consumers attempts to identify the NWPA as the basis for a regulatory taking, this claim fails as a matter of law. The Federal Circuit recently has held that statutes like the NWPA generally may not form the basis for a protected property interest for purposes of a takings claim. In Members of the Peanut Quota Holders Ass'n, Inc. v. United States, 421 F.3d 1323 (Fed. Cir. 2005), the Federal Circuit held that the Government was not responsible for paying the holders of peanut quotas just

compensation when the Government made the quotas less valuable. Id. at 1334. The Federal Circuit explained that the plaintiffs were not entitled to compensation "because the property interest represented by the peanut quota is entirely the product of a government program unilaterally extending benefits to the quota holders, and nothing in the terms of the statute indicated that the benefits could not be altered or extinguished at the government's election." Id. The Federal Circuit further explained that, although the quotas were a form of property, they were subject to alteration or elimination by changes in the Federal program and that such changes did not give rise to a takings claim. Id. As in Peanut Quota, Consumers may not assert a protected property interest in the NWPA, as a matter of law, for purposes of compensation under the Fifth Amendment.[3]

Even if the NWPA could, as a matter of law, create a protected property interest that is compensable under the Fifth Amendment, Consumers has cited to no specific provision of the NWPA that would confer such a protected property interest. The NWPA is not self-executing. Rather, pursuant to section 302(a) of the NWPA, the Secretary of Energy was "authorized to

---

[3] Peanut Quota is entirely consistent with other decisions from the Federal Circuit and other courts of appeals that have held that statutes may not confer upon a plaintiff a protected property interest compensable under the Fifth Amendment. See Adams v. United States, 391 F.3d 1212, 1220 (Fed. Cir. 2004) (holding that statutory right to be paid money could not constitute a protected property interest for purposes of the takings clause); Branch v. United States, 69 F.3d 1571, 1577-78 (Fed. Cir. 1995) ("[i]f every time a man relied on the existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever") (quoting L. Fuller, The Morality of Law 60 (1964)); Fern v. United States, 908 F.2d 955, 959 (Fed. Cir. 1990) ("[T]he law itself, as a rule of conduct, may be changed at the will or even the whim, of the legislature, unless prevented by constitutional limitations."); Pittman v. Chicago Bd. of Educ., 64 F.3d 1098, 1104-05 (7th Cir. 1995) ("A statute is not a commitment by the legislature never to repeal the statute . . . Statutes would be ratchets, creating rights that could never be retracted or even modified without buying off the groups upon which the rights had been conferred.")

enter into contracts with any person who generates or holds title to [SNF] of domestic origin for the acceptance of title, subsequent transportation, and disposal of such [SNF]." 42 U.S.C. § 10222(a)(1). Further, the Secretary of Energy was barred from disposing of any SNF or HLW under the NWPA "unless the generator or owner of such [SNF] has entered into a contract with the Secretary under this section by not later than . . . June 30, 1983; or . . . the date on which such generator or owner commences generation of, or takes title to, such [SNF]; whichever occurs later." 42 U.S.C. § 10222(b)(2). As a result, DOE's obligation to dispose of a generator's or owner's SNF was conditioned upon the existence of a contract between the generator (or owner) and DOE. Indeed, if Consumers was to retain a cognizable property right under the NWPA, the Standard Contract would be rendered superfluous, as the Standard Contract would not provide any rights separate from those rights allegedly conferred by the NWPA.

Finally, the Supreme Court has held that, in considering whether a regulatory taking has occurred, courts must look at the totality of the claimant's property rights, not specific segments of those rights:

> "Taking" jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole – here, the city tax block designated as the "landmark site."

Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 327 (2002) (quoting Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 130-31 (1978)). "Where an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking." Id. (quoting Andrus v. Allard, 444 U.S. 51, 65-66 (1979)). In this case, Consumers

does not even allege the "destruction of one 'strand' of the bundle." Instead, it alleges that the Government's delay in accepting SNF resulted in the storage of certain SNF assemblies for longer than contractually mandated. Consequently, Consumers' regulatory takings claims fails.

## CONCLUSION

For the foregoing reason, the Government respectfully requests that the Court grant the Government's renewed motion to dismiss Count III of Consumers' complaint for failure to state a claim upon which relief may be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Scott R. Damelin by Joshua E. Gardner
SCOTT R. DAMELIN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-2312
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

STEPHEN FINN
JOSHUA E. GARDNER
Trial Attorneys
Department of Justice
Washington, D.C. 20530

August 9, 2007

CERTIFICATE OF FILING

I hereby certify that on this 9th day of August 2007, a copy of foregoing "DEFENDANT'S RENEWED MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Joshua E. Gardner