**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY, | ) | |
| | ) | |
| | ) | COFC No. 02-1894-C |
| Plaintiff, | ) | (Chief Judge Damich) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RENEWED MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT**

Thomas O. Mason
Williams, Mullen, Clark & Dobbins
8270 Greensboro Drive, Suite 700
McLean, VA 22102
(703) 760-5200

Jeffrey S. Theuer (P44161)
Loomis, Ewert, Parsley, Davis & Gotting, P.C.
124 West Allegan, Suite 700
Lansing, MI 48933
(517) 482-2400

OF COUNSEL:
James E. Brunner (P28051)
Arunas T. Udrys (P21660)
Consumers Energy Company
212 West Michigan Avenue
Jackson, MI 49201
(517) 788-2151

Harvey J. Messing (P23309)
Miller, Canfield, Paddock & Stone, PLLC
One Michigan Avenue, Suite 900
Lansing, MI 48933
(517) 483-4963
Attorneys for Plaintiff

September 10, 2007

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ ii

I. COUNTER-STATEMENT OF ISSUES ........................................................ 1

II. COUNTER-STATEMENT OF FACTS ........................................................ 2

III. STANDARD OF REVIEW ........................................................ 7

IV. ARGUMENT ........................................................ 8

A. DOE's Failure to Comply with its Obligations Under the Contract and NWPA Has Resulted in a Taking of Consumers Energy's Property Rights Without Just Compensation in Violation of the Fifth Amendment of the United States Constitution ........................................................ 8

B. Summary Dismissal of a Takings Claim is Inappropriate at this Stage in the Litigation ........................................................ 17

V. CONCLUSION ........................................................ 21

# TABLE OF AUTHORITIES

**Cases** **Page Number(s)**

A&S Council Oil Co. v. Lader, 56 F.3d 234, 241 (D.C. Cir. 1995) ....................15

Alameda Gateway, Ltd. v. United States, 45 Fed. Cl. 757, 762 (1999) ....................9

Babbitt v. Youpee, 519 U.S. 234 (1997) ....................11

Boston Edison Co. v. United States, 64 Fed. Cl. 167, 187-88 (2005) ....................17, 18, 19, 20

Branch v. United States, 69 F.3d 1571, 1575 (Fed. Cir. 1995) ....................20

Castle v. United States, 301 F.3d 1328 (Fed. Cir. 2002) ....................14, 18, 21

Canal Electric Co. v. United States, 65 Fed. Cl. 650 (2005) ....................18

City of Monterey v. Del Monte Dunes, Ltd., 526 U.S. 687; 119 S. Ct. 1624; 143 L.Ed.2d 882 (1999) ....................11

Coast Fed. Bank, FSB v. United States, 48 Fed. Cl. 402, 443 (2000), rev'd in part, 309 F.3d 1353 (Fed. Cir. 2002) ....................15

Commonwealth Edison Co. v. United States Dept. of Energy, 877 F.2d 1042, 1045 (D.C. Cir. 1989) ....................12, 16

Commonwealth Edison Company v. United States, 46 Fed. Cl. 29, 35 (2000) ....................8

Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ....................7

Consumers Energy Co. v United States, 57 Fed. Cl. 278, 280 (2003) ....................6, 7

Consumers Energy Co. v. United States, 65 Fed. Cl. 364 (2005) ....................7, 14, 15

Data Transformation Corp. v. United States, 13 Ct. Cl. 594, 618-24 (1987) ....................15

Delmarva Power and Light Co. v. United States, Case No. 04-34C and 04-36C (unpublished opinion, July 1, 2005) ....................20, 21

Detroit Edison Co. v. United States, 56 Fed. Cl. 299, 303 (2003) ....................17, 18, 21

Dolan v. City of Tigard, 512 U.S. 374; 114 S. Ct. 2309; 129 L.Ed.2d 304 (1994)....................10

Eastern Enterprises v. Apfel, 524 U.S. 498 (1998)....................11

First English Evangelical Lutheran Church of Glendale v. Los Angeles County, 482 U.S. 304; 107 S. Ct. 2378; 96 L.Ed.2d 250 (1987) ....................10, 11

Florida Power & Light Co. v. Westinghouse Elec. Corp., 826 F.2d 239, 244, 246-47 (4th Cir. 1987), cert denied, 485 U.S. 1021 (1988) ....................13

Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989) ....................8

Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)....................8

Heydt v. United States, 38 Fed. Cl. 286, 305 (1997)....................9

Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001)..15

Keystone Bituminous Coal Ass'n v. De Benedictis, 480 U.S. 470; 107 S. Ct. 1232; 94 L.Ed.2d 472 (1987)....................11

Klamath Irrigation District v. United States, 67 Fed. Cl. 504 (2005)....................21

Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419; 102 S. Ct. 3164; 73 L.Ed.2d 868 (1982)....................12

Lucas v. South Carolina Coastal Counsel, 505 U.S. 1003, 1014; 112 S. Ct. 2886; 120 L.Ed.2d 798 (1992)....................9, 10, 11, 12, 13

Lynch v. United States, 292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434 (1934) .........................13

Marathon Oil Co. v. United States, 16 Ct. Cl. 332, 338-39 (1989) .............................................15

Miree v. DeKalb County, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) .................8

Nebraska Public Power District v. United States, 73 Fed. Cl. 650 (2006) ........................16, 17, 20

Nebraska Public Power District v. United States, Case No. 01-116C (Fed Cl.) (Order dated December 19, 2006) ...........................................................................................................20

New Valley Corp. v. United States, 119 F.3d 1576, 1579 (Fed. Cir. 1997) ...................................8

Nollan v. California Coastal Comm'n, 483 U.S. 825; 107 S. Ct. 3141; 97 L.Ed.2d 677 (1987)...11

Northern States Power Co. v. United States Department of Energy, 128 F.3d 754, 756 (D.C. Cir. 1997) ...........................................................................................................2, 3, 15, 16

Papasan v. Allain, 478 U.S. 265, 268; 106 S. Ct. 2932; 92 L.Ed.2d 209 (1986) ...........................7

Penn Central Trans. Co. v. New York, 438 U.S. 104, 124; 98 S. Ct. 2646; 57 L.Ed.2d 631 (1978) ...........................................................................................................13, 19, 20

Pennsylvania Coal Co. v. Mahon, 260 U.S. 393; 43 S. Ct. 158; 67 L.Ed.2d 322 (1922).............10

Prudential Ins. Co. v. United States, 801 F.2d 1295 (Fed. Cir. 1986) ..........................................16

Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747(Fed. Cir. 1988) ...........................8

Sacramento Municipal Utility District v. United States, 61 Fed. Cl. 438, 443 (2004)...........17, 20

Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ................................8

Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725 (1997) .............................................11

Systems Fuels, Inc. v. United States, 65 Fed. Cl. 163, 172-73 (2005) ...................................17, 18

Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302, 122 S.Ct. 1465; 152 L.Ed.2d 517 (2002) .........................................................................11, 13

Transpace Carriers, Inc. v. United States, 27 Fed. Cl. 269, 274 (1992) .......................................15

Yuba Goldfields, Inc. v. United States, 723 F.2d 884, 884 (Fed. Cir. 1983) .................................8

**Statutes/Regulations** **Page Number(s)**

10 C.F.R. § 961.11, Art. II (1996) .........................................................................3, 4, 5, 13

Atomic Energy Act of 1954, 42 U.S.C. Section 2011-2297g-4 ...................................................19

Nuclear Waste Policy Act of 1982, 42 U.S.C. Section 10222(a)(5)(B) .....................................3, 4

42 U.S.C. §§ 10101-10270 .........................................................................................................2

Rule 12(b)(6)..........................................................................................................................1, 7

U.S. Const. Amend. V ...........................................................................1, 2, 7, 8, 9, 10, 13, 16, 17

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY, | ) | |
| | ) | |
| | ) | COFC No. 02-1894-C |
| Plaintiff, | ) | (Chief Judge Damich) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RENEWED MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT**

On August 9, 2007, Defendant United States of America, Department of Energy ("DOE" or the "Government") filed a Renewed Motion to Dismiss Count III of Plaintiff's Complaint ("Defendant's Motion") pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims. Defendant erroneously contends that Counts III fails to state a claim upon which relief may be granted. Accordingly, Plaintiff Consumers Energy Company ("Consumers Energy") files this Response to Defendant's Motion and respectfully requests that this Court deny Defendant's Motion with prejudice.

## I. COUNTER-STATEMENT OF ISSUES

1. Whether Defendant DOE's failure to begin accepting, transporting and disposing of spent nuclear fuel and high-level radioactive waste (collectively "SNF") states a cause of action for a taking of Consumers Energy's real property in and around the locations on which SNF is stored in violation of the Fifth Amendment to the United States Constitution?

2. Whether Defendant DOE's failure to begin accepting, transporting and disposing of SNF on or before January 31, 1998, states a cause of action for a taking of

Consumers Energy's vested contract rights under the Fifth Amendment to the United States Constitution?

## II. COUNTER-STATEMENT OF FACTS

In 1982, Congress passed the NWPA, 42 U.S.C. §§ 10101-10270, in order address a "national problem" created by the accumulation of SNF from domestic sources. See Northern States Power Co. v. United States Department of Energy, 128 F.3d 754, 756 (D.C. Cir. 1997). The Act was passed in furtherance of the Government's policy that the permanent storage and/or disposal of SNF should be controlled by the Federal Government, and that such storage and/or disposal should occur at a repository owned and operated by the Government. Id., 128 F.3d at 756. The NWPA establishes a detailed procedure for disposing of SNF generated by civilian nuclear reactors. Under the Act, the Government is responsible for providing for the permanent disposal of SNF and the cost of such disposal is the responsibility of the generators and owners of such waste and spent fuel. 42 U.S.C. § 10131(a)(4). The cost of the program is paid by utility companies such as Consumers Energy through payments into the Nuclear Waste Fund ("NWF"). See 42 U.S.C. Section 10131 and 10222(c).

After the effective date of the Act, Consumers Energy had by statute and by Contract only one viable option for permanent disposal of SNF - the Government program which it was required to fund along with other utility companies. Further, after January 31, 1998, Consumers Energy was required to fund not only the permanent storage and disposal program operated by the Government, but also the cost of interim storage of SNF which should have been accepted, transported and disposed of by the Government beginning January 31, 1998. Consumers Energy was also required to store the SNF on real property owned by Consumers Energy, precluding alternative uses for the

real property, and reducing its value.

Section 302(a)(1) of the NWPA specifically authorizes the Secretary of the Department of Energy ("DOE") to enter into contracts with owners and generators of SNF under which DOE will accept, transport, and dispose of the SNF in exchange for the payment of fees. 42 U.S.C. § 10222(a)(1). See also Northern States Power Co., supra, 128 F.3d at 757 ("DOE's duty to dispose of the SNF in a timely manner is 'in return for' the payment of fees into the Nuclear Waste Fund"). The fees are outlined in Sections 302(a)(2)-(a)(3) of the NWPA, and they are substantial. These sections require a utility to pay a one-time fee based on the amount of electricity generated by a nuclear power reactor prior to the effective date of the Act and an ongoing fee based on the amount of power generated thereafter. 42 U.S.C. § 10222(a)(2)-(3). Pursuant to section 302(c) of the NWPA, all fees collected by the Secretary of the DOE are to be deposited into the NWF, to be maintained in an account at the United States Treasury. 42 U.S.C. § 10222(c). Failure by any utility to enter into the contract and make payments of the established fees would subject the utility to denial of any subsequent request for the issuance or renewal of a license to operate a nuclear power plant. 42 U.S.C. § 10222(b)(1)(A).[1]

Congress left open many terms of the contracts when it delegated the administration of the NWPA to the DOE. However, as noted by the Court in Northern States Power Co., supra, the statute itself expressly dictated "the deadline by which DOE must begin disposing of the SNF." Northern States Power Co., supra, 128 F.3d at 756. That deadline was not later than January 31, 1998. 42

[1] This is of course a substantial penalty since utilities are not authorized to operate nuclear power plants in the United States without an operating license. See e.g. 42 U.S.C. §10222(b).

U.S.C. § 10222(a)(5)(B).[2]

DOE implemented the requirements of section 302(a) of the NWPA by promulgating on April 18, 1983 a Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste ("Standard Contract"), through its rulemaking procedures. The Standard Contract is now published in the Federal Register at 10 C.F.R. § 961.11. The Standard Contract includes the statutory requirement that acceptance, transportation and disposal of SNF must begin by January 31, 1998. Specifically, the Standard Contract states that "[t]he services to be provided by DOE . . . shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors. . . has been disposed of." 10 C.F.R. § 961.11, Art. II (1996).

Article II(a) of the Standard Contract entitled "Scope," sets forth the parties' basic responsibilities. The Contract provides as follows:

> This contract applies to the delivery by Purchaser to DOE of SNF and/or HLW of domestic origin from civilian nuclear power reactors, acceptance of title by DOE to such SNF and/or HLW, subsequent transportation, and disposal of such SNF and/or HLW and, with respect to such material, establishes the fees to be paid by the Purchaser for the services to be rendered hereunder by DOE. The SNF and/or HLW

---

[2] Specifically, Section 302(a)(5) sets forth the contractual obligations which DOE must assume. It states as follows:

> (5) Contracts entered into under this section shall provide that --
> (A) following commencement of operation of a repository, the Secretary shall take title to the high-level radioactive waste or spent nuclear fuel involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent fuel; and
> (B) in return for the payment of fees established by this section, the Secretary, beginning not later than January 31, 1998, will dispose of the high-level radioactive waste or spent nuclear fuel involved as provided in the subtitle.

42 U.S.C. § 10222(a)(5).

> shall be specified in a delivery commitment schedule as provided in Article V below. The services to be provided by DOE under this contract shall begin, after commencement of facility operations, not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors specified in Appendix A, annexed hereto and made a part hereof, has been disposed of.

10 C.F.R. § 961.11, Art. II.

On June 3, 1983, following publication of the Standard Contract, Consumers Energy executed its own version of the Standard Contract with DOE for the disposal of Consumers Energy's SNF beginning "not later than January 31, 1998" and continuing thereafter until the disposal of all such materials was complete. Consumers Energy was the owner of the Big Rock Point Nuclear Plant ("Big Rock") located in Charlevoix, Michigan and the Palisades Nuclear Plant ("Palisades"), located near Covert, Michigan, until April 11, 2007, when those assets were sold.

The operating licenses for Big Rock and Palisades were issued by the Atomic Energy Commission ("AEC") in 1962 and 1971, respectively. Big Rock was permanently shut down in August, 1997. All of Big Rock's SNF has been transferred to dry cask storage at the Big Rock site and the power generation facility has been dismantled and removed. The ISFSI holding the SNF and a few support buildings are all that is left on the 500-plus acre site, which sits on valuable Lake Michigan waterfront. The SNF generated by Palisades is being stored in a spent fuel pool and in dry cask storage at the Palisades site. The Palisades plant is operational and continues to generate SNF, although the purchaser is now responsible for costs incurred after April 11, 2007. On that date, Consumers Energy sold its nuclear assets to Entergy. The sold assets included the operational Palisades Nuclear Plant, and approximately 100 acres of the Big Rock site on which the ISFSI and all SNF are located. The SNF located at the Big Rock and Palisades plants up to the date of the Asset Sale on April 11, 2007 are the material subject to the Standard Contract in this case.

Pursuant to its Contract with the DOE, Consumers Energy has paid in excess of $70 million into the NWF. See Consumers Energy Co. v. United States, 57 Fed. Cl. 278, 280 (2003). The DOE, however, did not begin the acceptance, transportation and disposal of Consumer Energy's SNF prior to the Asset Sale date. Since the Government's default became known, Consumers Energy incurred, interim storage costs for SNF which should have been accepted, transported and disposed of by the Government prior to the date of the Asset Sale. Consumers Energy was also unable to make use of its real property on which interim storage facilities were located, and the value of the unsold Big Rock real property was substantially reduced by the continuing existence of SNF at and near the site.

On December 16, 2002, as a result of the DOE's failure to comply with its statutory and contractual obligations, Consumers Energy filed a four-count complaint with this Court. In Count I, Consumers Energy alleged that DOE's failure to begin accepting, transporting and disposing of Consumers Energy's SNF is a partial material breach of Article II of the Standard Contract, which imposes an unconditional obligation on DOE to begin such activities by January 31, 1998. Count II asserted a breach by DOE of its implied contractual duty of good faith and fair dealing by failing and refusing to make a good faith effort to meet its contractual deadline to begin accepting, transporting and disposing of SNF, and by consistently attempting to avoid its obligations under the Contract and failing to comply with judicial directives related to those obligations, including failing to provide interim storage for SNF, failing to provide realistic acceptance schedules or capacity estimates, failing to provide a firm date for disposal of SNF, and by requiring Consumers Energy to continue to pay fees into the NWF despite DOE's failure to perform. Count III consisted of an allegation that DOE's failure to begin disposal services amounted to a taking of Consumers Energy's real property and vested contract rights for which just compensation is due under the Fifth Amendment to the

United States Constitution. Finally, Count IV alleged that DOE's failure to begin acceptance, transportation and disposal services violated the NWPA and effected an illegal exaction of SNF storage costs from Consumers Energy. Count IV was dismissed by Opinion and Order of this Court dated July 1, 2003. See Consumers Energy Co. v. United States, 57 Fed. Cl. 278 (2003). In a later Opinion, this Court granted summary judgment in favor of Consumers Energy on liability for partial breach of contract under Count I. See Consumers Energy Co. v. United States, 65 Fed. Cl. 364 (2005).

Defendant's original Motion with respect to Count III was filed on January 3, 2003, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"). That Motion was stayed and was never resolved. Defendant contends in its Renewed Motion that Count III fails to state a claim upon which relief may be granted. Plaintiff files this Response to Defendant's Motion and respectfully requests that Defendant's Motion be denied with prejudice.

## III. STANDARD OF REVIEW

The scope of review on a motion to dismiss is limited to whether the Plaintiff is entitled to present evidence in support of its claims, accepting all factual allegations of the Complaint as true. See Papasan v. Allain, 478 U.S. 265, 268; 106 S. Ct. 2932; 92 L.Ed.2d 209 (1986). Dismissal is proper only in the narrow circumstance where “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In addition to accepting all well-pled facts in the Complaint as true, all reasonable inferences from those facts must be construed in favor of the Plaintiff. See New Valley Corp. v. United States, 119 F.3d 1576, 1579 (Fed. Cir. 1997).

The Court of Federal Claims has defined the standard as follows:

> When a federal court reviews the sufficiency of the complaint pursuant to a motion to dismiss, "its task is necessarily a limited one." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* Toward this end, "the allegations of the complaint should be construed favorably to the pleader." *Id.* *See also* Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989). In rendering a decision, the court must presume that the undisputed factual allegations included in the complaint by a plaintiff are true. *See* Miree v. DeKalb County, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747(Fed. Cir. 1988).

Commonwealth Edison Company v. United States, 46 Fed. Cl. 29, 35 (2000).

Finally, a trial on damages will take place regardless of the disposition of this motion to dismiss. Since takings presents a question of fact, it should not be resolved except on a complete record of trial. See Yuba Goldfields, Inc. v United States, 723 F.2d 884, 884 (Fed. Cir. 1983). Because Plaintiff's takings claim raises issues of material fact to be determined at trial, Plaintiff respectfully requests that Defendant's Motion be denied.

## IV. ARGUMENT

### A. DOE's Failure to Comply with its Obligations Under the Contract and NWPA Has Resulted a Taking of Consumers Energy's Property Rights Without Just Compensation in Violation of the Fifth Amendment of the United States Constitution

Count III of the Complaint alleges that DOE's failure to begin accepting, transporting and disposing of SNF on or before January 31, 1998, and its then-current representations that such activity would not begin prior to 2010, resulted in a taking of Consumers Energy's vested contract rights and its real property on which SNF has been stored since January 31, 1998. Consumers Energy obtained a vested contract right to have DOE accept, transport and dispose of SNF in accordance with the terms of the Contract. That right included the obligation for the Government to take title to the SNF. Standard Contract, Art. IV (B)(1). Consumers Energy also has a property

interest in the value and use of its real property which has been impaired by the actions of the Government. DOE's failure to begin accepting, transporting and disposing of SNF beginning on January 31, 1998 and its continuing failure to dispose of SNF prior to the Asset Sale on April 11, 2007 has resulted in a taking of Consumers Energy's real property, and its vested contract rights under the Contract.

The Takings Clause of the Fifth Amendment to the United States Constitution prohibits the taking of private property for public use without just compensation. U.S. Const. amend. V. "A taking occurs when the rightful property, contract, or regulatory powers of the Government are employed to control rights of property which have not been purchased." Alameda Gateway, Ltd. v. United States, 45 Fed. Cl. 757, 762 (1999) (citing Heydt v. United States, 38 Fed. Cl. 286, 305 (1997)). As outlined below, Consumers Energy's right to use the property in question was not created by the Standard Contract. Moreover, as demonstrated by the pleadings and in this opposition, the Government continues to ignore the fact that Consumers Energy has been denied the use and enjoyment of its property as a result of the Government's actions.

There are two types of takings -- physical and regulatory. This case involves a regulatory taking which occurs when the Government imposes a condition on private property that limits or prohibits any beneficial use of the property by the private owner. Alameda, supra 45 Fed. Cl. at 762. It is well established that if a regulation of private property goes too far it will be recognized as a taking. See Lucas v South Carolina Coastal Counsel, 505 U.S. 1003, 1014; 112 S. Ct. 2886; 120 L.Ed.2d 798 (1992). In the present action, the requirement that Consumers Energy continue to store the SNF on its property, thereby denying it the use and enjoyment of that property, gives rise to Consumers Energy's takings claim.

In this case, Consumers Energy has been forced to continue storing SNF which should have been removed by the DOE beginning not later than January 31, 1998. Pursuant to DOE's regulations and the NWPA, Consumers cannot move the SNF from its property without the DOE's permission, and Consumers Energy is at the mercy of the Government as to when, if ever, the Government will meet its contractual obligations. See e.g., 42 U.S.C. §10151, et seq (Interim Storage Program). The regulatory requirements that forced Consumers Energy to continue storing SNF on its private property between the statutory and contractual deadline of January 31, 1998 and the Asset Sale date denied Consumers Energy "all economically beneficial or productive use of the land." Such regulatory action constitutes a taking in violation of the Fifth Amendment. See Lucas, supra, 505 U.S. at 1015, 112 S. Ct. 2886; 120 L.Ed.2d 798. Further, the continuing presence of SNF on real property which is now adjacent to the remaining Big Rock real property also constitutes a taking for the same reason.

The constitutional requirement of just compensation for regulatory takings of property was first recognized in 1922. In Pennsylvania Coal Co. v. Mahon, 260 U.S. 393; 43 S. Ct. 158; 67 L.Ed.2d 322 (1922), the Supreme Court indicated that regulation of land use might be a taking, reasoning that "if regulation goes too far it will be recognized as a taking." Id., 260 U.S. at 413, 415. The Court provided guidance on this issue in a 1987 trilogy and two other cases decided in 1992 and 1994. See Dolan v. City of Tigard, 512 U.S. 374; 114 S. Ct. 2309; 129 L.Ed.2d 304 (1994); Lucas v. South Carolina Coastal Council, supra; First English Evangelical Lutheran Church of Glendale v. Los Angeles County, 482 U.S. 304; 107 S. Ct. 2378; 96 L.Ed.2d 250 (1987); Nollan v. California Coastal Comm'n, 483 U.S. 825; 107 S. Ct. 3141; 97 L.Ed.2d 677 (1987); Keystone Bituminous Coal Ass'n v. De Benedictis, 480 U.S. 470; 107 S. Ct. 1232; 94 L.Ed.2d 472 (1987). The Supreme Court

further addressed taking issues in Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302, 122 S.Ct. 1465; 152 L.Ed.2d 517 (2002); City of Monterey v. Del Monte Dunes, Ltd., 526 U.S. 687; 119 S. Ct. 1624; 143 L.Ed.2d 882 (1999); Eastern Enterprises v. Apfel, 524 U.S. 498 (1998); Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725 (1997); and Babbitt v. Youpee, 519 U.S. 234 (1997).

The regulatory taking doctrine has two branches: (i) regulation that denies the right to exclusive possession, known as "categorical" or "per se" takings; and (ii) regulation that restricts the permissible use of property. This case involves both forms of regulatory taking. Under the second branch, when a Government regulation limits use, there is a taking if property value is greatly reduced. See, e.g., Lucas, supra, 535 U.S. at 1015-16 and Keystone Bituminous Coal, supra 480 U.S. at 495. In its Complaint, Consumers Energy has alleged that the statutory scheme for SNF disposal under the NWPA, its Contract with DOE, and the Government's failure to comply with those obligations will prevent Consumers Energy "from making productive use of its real property in and around the locations on which SNF is being stored." Complaint, ¶ 44. Consumers Energy has further alleged that the Government's actions and inaction "has and continues to deprive Consumers Energy of the valuable economic use of those sites, from which SNF cannot be lawfully removed until DOE meets its obligations." Complaint, ¶ 45.

Under the first branch of regulatory taking, regulations that deny exclusive possession or other fundamental attributes of property are per se takings, no matter how trivial and technical the denial of the right to exclude others. For example, in the case of Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419; 102 S. Ct. 3164; 73 L.Ed.2d 868 (1982), a regulatory requirement that the owner of an apartment building allow a few wires and a small box on the roof of the building

was held to be a taking, as a permanent interference with exclusive possession. In the present case, the applicable regulatory requirements since 1983 prevented Consumers Energy from removing SNF from its facilities except under the procedures contained in the NWPA. See e.g. Commonwealth Edison Co. v. United States, 877 F.2d 1042, 1045 (1989) ("Commonwealth Edison was not free to dispose of its waste in whatever manner it desired. . ."). This is not a simple breach of contract case where the parties' rights are defined solely by the contract. Consumers Energy was effectively required to keep the SNF in approved storage facilities on property owned by Consumers Energy until an unspecified future date, much like the wires and small box which were held to constitute a taking in Loretto, supra. Part of the acceptance process under the Standard Contract requires the Government to take title to the SNF. Therefore, Consumers Energy has incurred costs to store some portion of SNF to which the Government should have taken title after January 31, 1998.

It is well established that if all economic use is denied so that no "beneficial" or "productive" use remains, there is a taking under Lucas, supra. In Lucas, the Court stressed that the importance of the public interest served by the regulation, even if characterized as prevention of public harm, does not preclude a taking. In the present case, the Complaint alleges that the existence of SNF on its property which should have been removed beginning in 1998 has prevented and continued to prevent Consumers Energy from making valuable economic use of its real property, Complaint, ¶¶ 44 and 45, until the Asset Sale in 2007.

The Government's assertions that the NWPA required that Consumers Energy retain title to the SNF and that the Government does not have any responsibility for the SNF lacks merit. The Government historically has been responsible for the permanent disposal of SNF, a policy which predated the enactment of the NWPA. See 10 C.F.R. Part 50, App. F ("Disposal of high-level

radioactive fission product waste material will not be permitted on any land other than that owned and controlled by the Federal Government."). The Government's acknowledgment of this obligation for the disposition of SNF gave rise to Consumers Energy's expectation that the Government would honor this obligation by removing the SNF pursuant to the NWPA. See Florida Power & Light Co. v. Westinghouse Elec. Corp., 826 F.2d 239, 244, 246-47 (4th Cir. 1987), cert. denied, 485 U.S. 1021 (1988). By effectively deciding to store the SNF indefinitely on Consumers Energy's property, the Government has violated Consumers Energy's expectation and has deprived Consumers Energy of the use of that property.

Even if it were assumed that some marginal economic use remained for the real property presently occupied by SNF, the economic impact and interference with reasonable investment-backed expectations resulting from the regulatory scheme imposed by the NWPA supports a takings claim. See Penn Central Trans. Co. v. New York, 438 U.S. 104, 124; 98 S. Ct. 2646; 57 L.Ed.2d 631 (1978). In Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, supra, the Court held that a development moratorium that precluded all development, but only for a limited period of time, was not a Lucas taking, but could support a taking claim under the Penn Central analysis. Tahoe Sierra Preservation Council, 122 S. Ct. at 483-84.

Contract rights have long been held to be a property right subject to protection under the Fifth Amendment. See Lynch v. United States, 292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434 (1934) ("Rights against the United States arising out of a contract with it are protected by the Fifth Amendment."). The cases cited by the Government in support of its theory that Consumers Energy should be limited to its contractual remedies are distinguishable and almost uniformly involve

situations in which the Government was acting strictly in a contracting or proprietary capacity. Unlike the present case (which involves real property, expectation and other interests within an overall regulatory framework), the contract right was the only right impaired in those cases. For example, in Castle v. United States, 301 F.3d 1328 (Fed. Cir. 2002), certain shareholders and subordinated debt holders of a financially troubled savings and loan association asserted breach of contract and takings claims against the Government when the passage of a new law regulating savings and loans directly contravened an alleged contract which afforded favorable regulatory treatment for capital contributions. In that case, the court held that a breach of contract-based taking claim failed because "the plaintiffs retained the full range of remedies associated with any contractual property right they possessed." Id., 301 F.3d at 1342. In other words, the remedies under the contract were coextensive with any alleged remedy based on a taking.

The present case is significantly different from Castle. In this case, the Government can be expected to argue that any contractual remedy will not necessarily address the interference with and loss of economically beneficial use of Consumers Energy's real property. Further, Consumers Energy's contractual remedies themselves are directly impaired in this case. Unlike an ordinary contract case, Consumers Energy could not have, prior to the Asset Sale, declared the contract in breach and found an alternative permanent storage site for its SNF. See Consumers Energy Co. v. United States, 65 Fed. Cl. 364, 365 (Federal Government has responsibility to provide for disposal of SNF in order to protect public health and safety). Nor could Consumers Energy have declared the contract in breach and discontinued further payments into the NWF. To do so would have risked the non-renewal of its operating license. See Id., 65 Fed. Cl. at 366 n.5. The cases cited by the Government are distinguishable in that they involve cases where the Government was not acting in a

sovereign capacity, and the rights at issue were grounded in the contract, rather than other interests. See Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1070 (Fed. Cir. 2001); A&S Council Oil Co. v. Lader, 56 F.3d 234, 241 (D.C. Cir. 1995)(if damages are due and measured by reference to performance of the contract and are exclusively money damages, the case is contractual in nature); Coast Fed. Bank, FSB v. United States, 48 Fed. Cl. 402, 443 (2000) ("[w]hen the Government acts as a contractor, its breaches of contract are governed by contract law"), rev'd in part, 309 F.3d 1353 (Fed. Cir. 2002); Transpace Carriers, Inc. v. United States, 27 Fed. Cl. 269, 274 (1992); Marathon Oil Co. v. United States, 16 Ct. Cl. 332, 338-39 (1989); Data Transformation Corp. v. United States, 13 Ct. Cl. 594, 618-24 (1987) (when the Government acts in proprietary capacity rather than in sovereign capacity, Government's dealings are contractually oriented);

The very nature of the Government's role in the storage and disposal of SNF in this case distinguishes and makes inapplicable those cases involving the Government as a mere contracting party.

In enacting the NWPA, in 1982 Congress expressly cited the "national problem" posed by the accumulation of radioactive materials from domestic sources. See 42 U.S.C. Section 10131(a)(2). Congress further enacted a comprehensive plan for the permanent storage and disposal of such material. See e.g. 42 U.S.C. Sections 10131 and 10222. With respect to SNF the Government is understandably acting in its sovereign capacity to control the means by which such storage and disposal will occur. The Court in Northern States Power Company v. United States Department of Energy, 128 F.3d 754, 756 (D.C. Cir. 1997), referred to the NWPA as a "regulatory program." Far from a voluntary contract, utilities were required to sign a version of the Standard Contract or they would be ineligible for renewal of their operating licenses. See Commonwealth

Edison Co. v United States Dept. of Energy, 877 F.2d 1042, 1045 (D.C. Cir. 1989) (noting that utilities had "no real choice" but to accept the Standard Contract). This case is wholly unlike a typical contract dispute where the Government breaches a contract and the other contracting party sues, asserting breach of contract and a takings claim. In such a case, the Government acts in its contracting or proprietary capacity and a plaintiff may, under appropriate facts, be limited to its contractual remedies. Here, the Government is acting as sovereign.

Even if this were a purely contractual case, the nature of the property interest at issue supports a takings claim. In Prudential Ins. Co. v. United States, 801 F.2d 1295 (Fed. Cir. 1986), the Government was holding over and failed to vacate certain leased premises at the expiration of the lease term, and the landlord sued for breach of the lease. The court noted that the landlord "may have an alternate avenue of relief under the Takings Clause of the Fifth Amendment." Id., 801 F.2d at 1300 n. 13. The Government in this case is effectively holding over its obligation to remove SNF from real property owned by Consumers Energy, and this interferes with Consumers Energy's use of its property in same manner as it interfered with the landlord's use of its proerty in Prudential, supra. In both cases, the property owners' interest is impaired until the Government complies with its obligation.

Additionally, the Government has recently renewed its assertion of a contract defense under the "unavoidable delays" clause of the Standard Contract. See e.g., Nebraska Public Power District v. United States, 73 Fed. Cl. 650 (2006) (holding that the D.C. Circuit did not have jurisdictional authority to issue a writ of mandamus prohibiting the Government from arguing that the "unavoidable delays" clause limited or eliminated the Government's liability.). That ruling has been appealed to the Federal Circuit Court. See Nebraska Public Power District v. United States, Federal

Circuit Court, Misc. Docket No. 843, Order granting petition for permission to appeal, dated March 1, 2007. If the Government were to prevail in the Federal Circuit on this or some other contractually-based defense to the partial breach of contract claim, the takings claim may be the only remaining cause of action available to provide relief. The Government cannot have it both ways. In light of the Nebraska Public Power appeal, it is premature to argue that the Court may not award damages on a takings claim where a partial breach of contract cause of action has been pled, even when a liability order has entered on the contract claim. Consumers Energy has stated valid and independent causes of action for breach of contract and Fifth Amendment Takings. Consumers Energy therefore requests that Defendant's Motion be dismissed with prejudice.

**B. Summary Dismissal of a Takings Claim is Inappropriate at this Stage in the Litigation.**

Even the Government grudgingly acknowledges that Government motions to dismiss takings claims have been denied in several SNF cases. These include System Fuels, Inc. v. United States, 65 Fed. Cl. 163, 172-73 (2005); Sacramento Municipal Utility District v. United States, 61 Fed. Cl. 438, 443 (2004); Detroit Edison Co. v. United States, 56 Fed. Cl. 299, 303 (2003); and Boston Edison Co. v. United States, 64 Fed. Cl. 167, 187-88 (2005). See Defendant's Motion, at 10.

Although the Government describes the decisions in these cases somewhat artfully as a "deferred dismissal" of the takings claims, a fair reading of these opinions is that takings claims are fact intensive, and in some cases dependent on determinations made with regard to the respective plaintiff's partial breach of contract claims. As a result, summary dismissal of takings claims in SNF cases was deemed inappropriate in these cases. Cf. Canal Electric Co. v. United States, 65 Fed. Cl. 650 (2005).

In Boston Edison, the Court ruled that issues of material fact precluded summary judgment

on the plaintiff's takings claim. See Boston Edison, 64 Fed. Cl. At 187. These issues, all of which are also present in this case, were identified as follows:

> First, the origin of plaintiff's rights is in dispute. Plaintiff argues that the right to removal of its SNF by the government existed prior to the Standard Contract, while the government argues those rights derived from the Standard Contract itself.
>
> * * *
>
> Second, the parties dispute whether the right allegedly taken was a property right or a contractual right.
>
> * * *
>
> Third, the voluntariness of the contract is in dispute.
>
> * * *
>
> Fourth, the parties dispute the reasonableness of the parties' expectations at issue under the legal framework for a regulatory taking claim.
>
> * * *
>
> Given that the standard for determining whether a regulatory taking has occurred is both case-specific and fact-intensive, developing a more comprehensive record is particularly important to resolve this dispute.

Id.

In Detroit Edison, supra, the Court determined that an SNF claimant could maintain a takings claim as an alternate remedy, and further that the takings claim could be simultaneously maintained with a breach claim so long as the takings claim was not predicated upon rights emanating from the Standard Contract. See Detroit Edison, supra, 56 Fed. Cl. at 302-03.

The Systems Fuels Court rejected the Government's argument that under Castle, contract and takings claims may not be pursued concurrently. Systems Fuels, 65 Fed. Cl. at 172-73 ("this court nonetheless holds that maintaining both claims is a more appropriate course prior to the time judgment is rendered on the contract claim.").

Both the nature of the right subject to the taking, and the acts which constitute the taking, are factual and material, and may not be resolved on summary judgment. See Boston Edison, supra, 64 Fed. Cl. at 187-88. In the present case, Consumers Energy has identified several distinct property

interests in support of its takings claim including: (1) its real property interest in the approximate 100 acre parcel at the Big Rock Facility used for storage of SNF which the Government was required to remove beginning in 1998; (2) its real property interest in the remaining approximately 400 acres of Big Rock real property immediately adjacent to the location of the Big Rock ISFSI; and (3) its interest in the use of its facilities prior to the Asset Sale. Additionally, Consumers Energy's right to expect SNF to be taken and disposed of by the Government does not derive entirely from the Standard Contract, but is also grounded in the Atomic Energy Act of 1954, 42 U.S.C. section 2011-2297g-4. See Boston Edison, 64 Fed. Cl. at 187.

Although discovery remains ongoing in this case, Plaintiff asserts that an analysis of the applicable acceptance queue and acceptance rate for the Big Rock SNF would have resulted in Big Rock being clear of SNF by approximately the year 2000. Consumers Energy lost the use and benefit of the Big Rock property from 2000 through the date of the Asset Sale in April of 2007. Further, Consumers Energy lost the market value of the property itself at the time of the Asset Sale. According to Consumers Energy's experts, as referenced in footnote 1 of Defendant's Motion, the existence of SNF at the Big Rock property reduced the value of the adjacent acreage, and the existence of the liability associated with the SNF reduced the value of the 100 acre parcel containing the ISFSI to a negative $30 million by the time of the Asset Sale. These real property interests and beneficial use interests are rights which exist independently of the Standard Contract. It is the impairment of these rights which make summary dismissal inappropriate in this case. See Penn Central Trans. Co. v. New York City, 438 U.S. 104 (1978); Boston Edison, supra, 64 Fed. Cl. 167; Sacramento Municipal Utility District v. United States, 61 Fed. Cl. 438, 441-43 (2004); Delmarva Power and Light Co. v. United States, Case No. 04-34C and 04-36C (unpublished opinion, July 1,

2005), at 5. The Government points out at p. 6 of its Motion that "[w]hen analyzing a takings claims [sic], a court must first determine what was taken." Defendant's Motion, at 6, citing Branch v. United States, 69 F.3d 1571, 1575 (Fed. Cir. 1995). In this case, what was taken were rights existing independent of the Standard Contract. The Government incorrectly focuses on how the rights were taken rather than what was taken.

Further, in Nebraska Public Power District v. United States, 73 Fed. Cl. 650 (2006), the Government successfully argued that it was entitled to assert a contract defense under the "unavoidable delays" clause of the Standard Contract. That case is currently on appeal, and if ultimately successful, could potentially limit or eliminate the Government's contract liability in SNF cases. See Nebraska Public Power District v. United States, Case No. 01-116C (Fed. Cl.) (Order, dated December 19, 2006), at 3 ("In the court's view, resolution of the issue presented potentially impacts all of the dozens of spent nuclear fuel cases pending before this court.").

In this case, the Government argues that Consumers Energy may not assert its takings claim as an alternative to its breach of contract claim. Defendant's Motion, at 10. However, a takings claim may be Plaintiff's primary claim in this case, and there may be no issue with respect to overlap of damages. The resolution of this issue must await further proceedings, making summary dismissal inappropriate.

The cases cited by the Government for the proposition that alternative breach of contract and takings claims may not be maintained do not apply because the takings claims at issue here involve rights existing wholly independent of the Standard Contract. The takings claims asserted by Consumers Energy include the taking of real property rights and the right of use and enjoyment of real property. Those rights existed before the Standard Contract was signed. Consumers Energy's

takings claims are not merely an enforcement of contractual remedies disguised as another cause of action. The rights taken exist independently of the Standard Contract, and the potential damages are not necessarily identical. Therefore, the Government's citation of Castle, supra, and Klamath Irrigation District v. United States, 67 Fed. Cl. 504 (2005) are unavailing since those cases stand only for the proposition that contract rights cannot provide the predicate for a takings claim. Instead, the Court should undertake a factual analysis of the rights which are impaired, and to the extent those rights are independent of the Standard Contract, a takings claim is an appropriate cause of action. See Detroit Edison, 56 Fed. Cl. at 302-03; Delmarva Power & Light Co. v United States, supra, slip op, at 5. Finally, the Government will not be prejudiced if the takings claim remains. Discovery is ongoing and the Government already has started its discovery on the takings claim and other claims. However, dismissal of the takings claim will greatly prejudice Consumers Energy.

## V. CONCLUSION

For the foregoing reasons, Consumers Energy respectfully requests that this Court deny Defendant's Renewed Motion to Dismiss Count III of Plaintiff's Complaint with prejudice.

Respectfully submitted,

s/ Thomas O. Mason
Thomas O. Mason
Williams, Mullen, Clark & Dobbins
8270 Greensboro Drive, Suite 700
McLean, VA 22102
(703) 760-5200 (telephone)
(703) 748-0244 (facsimile)

Jeffrey S. Theuer (P44161)
Loomis, Ewert, Parsley, Davis & Gotting, P.C.
124 West Allegan, Suite 700
Lansing, MI 48933

(517) 482-2400
Attorneys for Plaintiff

OF COUNSEL:

James E. Brunner (P28051)
Arunas T. Udrys (P21660)
Consumers Energy Company
212 West Michigan Avenue
Jackson, MI 49201

Harvey J. Messing (P23309)
Miller, Canfield, Paddock & Stone, PLLC
One Michigan Avenue, Suite 900
Lansing, MI 48933
(517) 483-4963
Attorneys for Plaintiff

Dated: September 10, 2007

**CERTIFICATE OF FILING**

I hereby certify that on this 10th day of September, 2007, a copy of the foregoing "PLAINTIFF'S RESPONSE TO DEFENDANT'S RENEWED MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Francis E. Purcell, Jr.

1500007v1