IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-1894C |
| v. | ) | (Chief Judge Damich) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S
RENEWED MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

SCOTT R. DAMELIN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-2312
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

STEPHEN FINN
JOSHUA E. GARDNER
Trial Attorneys
Department of Justice
Washington, D.C. 20530

September 26, 2007

Attorneys for Defendant

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . 2

I. CONSUMERS HAS FAILED TO PLEAD A COGNIZABLE TAKINGS CLAIM . . . . . . . . . . 2

A. Consumers Has Failed To Establish Any Property Interest In Spent Nuclear Fuel Acceptance Separate From The Standard Contract . . . . . . 2

1. This Court Already Has Held That The Only Right To SNF Removal That Consumers Possesses Derives Exclusively From The Standard Contract . . . . . . . . . . 2

2. Consumers Cannot Establish A Takings Claim Based Upon Its Claimed Real Property Interests . . . . . . . . . . 5

3. Consumers May Not Assert A Property Interest In The NWPA Or The Atomic Energy Act . . . . . . . . . . 8

4. Consumers' Claimed Vested Contract Rights Fails As A Matter Of Law . . . . . . . . . . 12

B. Consumers Cannot Identify Any Regulation That Has "Taken" Its Alleged Property Interests . . . . . . . . . . 13

II. DISMISSAL OF PLAINTIFF'S TAKINGS CLAIM IS APPROPRIATE . . . . . 16

A. The Ultimate Resolution Of The Application Of The "Unavoidable Delays" Clause In The Standard Contract Is Irrelevant In Determining Whether Consumers Has A Takings Claim As A Matter of Law . . . . . . 16

B. This Court Routinely Has Dismissed Takings Claims As A Matter Of Law For Failure To State A Claim . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . 19

## TABLE OF AUTHORITIES

### CASES

Adams v. United States,
391 F.3d 1212 (Fed. Cir. 2004) . . . . . . . . . . 8

Ambase Corp. v. United States,
58 Fed. Cl. 32 (2003) . . . . . . . . . . 11

Boston Edison Co. v. United States,
64 Fed. Cl. 167 (2005) . . . . . . . . . . 18, 19

Branch v. United States,
69 F.3d 1571 (Fed. Cir. 1995) . . . . . . . . . . 8, 15

Canal Electric Co. v. United States,
65 Fed. Cl. 650 (2005) . . . . . . . . . . *passim*

Castle v. United States,
48 Fed. Cl. 187 (2000), aff'd in relevant part,
301 F.3d 1328 (Fed. Cir. 2002) . . . . . . . . . . 17

Castle v. United States,
301 F.3d 1328 (Fed. Cir. 2002) . . . . . . . . . . *passim*

Cermak v. Babbitt,
234 F.3d 1356 (Fed. Cir. 2000) . . . . . . . . . . 19

Coast Indian Cmty. v. United States,
213 Ct. Cl. 129, 550 F.2d 639 (1977) . . . . . . . . . . 19

Commonwealth Edison Co. v. United States,
56 Fed. Cl. 652 (2002) . . . . . . . . . . *passim*

Commonwealth Edison Co. v. United States,
271 F.3d 1327 (Fed. Cir. 2001) . . . . . . . . . . 8

Connolly v. Pension Ben. Guar. Corp.,
475 U.S. 211 (1986) . . . . . . . . . . 15

Consumers Energy Co. v. United States,
57 Fed. Cl. 278 (2003) . . . . . . . . . . 2, 3

Detroit Edison Company v. United States,
56 Fed. Cl. 299 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 16

Fern v. United States,
908 F.2d 955 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Franklin Sav. Corp. v. United States,
46 Fed. Cl. 533 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Granite Mgmt. Corp. v. United States,
55 Fed. Cl. 164 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Home Sav. of Am., FSB v. United States,
51 Fed. Cl. 487 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Honeywell, Inc. v. United States,
228 Ct. Cl. 591, 661 F.2d 182 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Klamath Irrigation District v. United States,
67 Fed. Cl. 504 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Loretto v. Telepromter Manhattan CATV Corp.,
458 U.S. 419 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Members of the Peanut Quota Holders Ass'n, Inc. v. United States,
421 F.3d 1323 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Nicholson v. United States,
77 Fed. Cl. 605 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Northern States Power Co. v. United States,
1998 WL 276581 (D.C. Cir. May 5, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Nuclear Energy Inst., Inc. v. Environmental Prot. Agency,
373 F.3d 1251 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Omaha Public Power District v. United States,
69 Fed. Cl. 237 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Pacific Gas & Electric Company v. United States,
73 Fed. Cl. 333 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Pacific Gas & Electric Company v. United States,
70 Fed. Cl. 766 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Pittman v. Chicago Bd. of Educ.,
64 F.3d 1098 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Prudential Ins. Co. v. United States,
801 F.2d 1295 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Rushton v. Nebraska Public Power Dist.,
844 F.2d 562 (8th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

State of Idaho v. U.S. Dep't of Energy,
945 F.2d 295 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Steel Improvement & Forge Co. v. United States,
174 Ct. Cl. 24, 355 F.2d 627 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Texas State Bank v. United States,
423 F.3d 1370 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Westfed Holdings, Inc. v. United States,
52 Fed. Cl. 135 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Wisconsin Electric Power Co. v. United States,
No. 00-697C, slip op. (Fed. Cl. Oct. 8, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 14

Yuba Goldfields, Inc. v.United States,
723 F.2d 884 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATUTES & REGULATIONS**

48 Fed. Reg. 16,590 (Apr. 18, 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

48 Fed. Reg. 5458, 5458 (Feb. 4, 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. §§ 10101-10270 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

10 C.F.R. Part 50, App. F . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-1894C |
| v. | ) | (Chief Judge Damich) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S
RENEWED MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT

Defendant, the United States, respectfully submits this reply to "Plaintiff's Response to Defendant's Renewed Motion To Dismiss Count III Of Plaintiff's Complaint," filed by plaintiff, Consumers Energy Company ("Consumers"), on September 10, 2007.

SUMMARY OF ARGUMENT

Despite its protestations to the contrary, Consumers' response makes evident that its takings claim is predicated upon the Standard Contract. Indeed, it frames the issues in this case as "[w]hether Defendant DOE's failure to begin accepting, transporting, and disposing of spent nuclear fuel . . . states a causation of action for a taking" of its real property and its "vested contract rights." Pl. Resp. 2 (emphasis added).[1] Yet, as we explained in our renewed motion to dismiss, and which Consumers does not dispute, the only basis for Consumers' claimed obligation on the part of the Government to accept, transport, and dispose of Consumers' spent nuclear fuel ("SNF") derives from the Standard Contract. Absent any allegation that the Government took Consumers' contract remedies, Consumers has no basis for asserting a takings

[1/] "Pl. Resp. ___" refers to Consumers' response to the Government's renewed motion to dismiss, filed on September 10, 2007.

claims under the facts as pled in Consumers' complaint. Consequently, Consumers' takings claim should be dismissed.

DISCUSSION

I. CONSUMERS HAS FAILED TO PLEAD A COGNIZABLE TAKINGS CLAIM

A. Consumers Has Failed To Establish Any Property Interest In Spent Nuclear Fuel Acceptance Separate From The Standard Contract

1. This Court Already Has Held That The Only Right To SNF Removal That Consumers Possesses Derives Exclusively From The Standard Contract

Consumers concedes that the sole basis for its takings claim is "DOE's failure to begin accepting, transporting and disposing of spent nuclear fuel . . . ." Pl. Resp. 1-2. Yet, the Government's obligation to accept, transport, and dispose of SNF derives exclusively from the Standard Contract. See Consumers Energy Co. v. United States, 57 Fed. Cl. 278, 282 (2003) ("absent the execution of the Standard Contract, there is no provision of the NWPA establishing January 31, 1998, as the deadline for the Government's assumption of the obligation to accept, store and dispose of SNF") (emphasis in original).

Indeed, this Court recognized that the sole basis for the Government's obligation to accept, transport, and dispose of SNF derives from the Standard Contract when it dismissed Consumers' illegal exaction claim:

> While the Court recognizes that the NWPA stipulated the essential terms of the Standard Contract, nevertheless the Act is explicit that the Government's obligation to assume responsibility for storage and disposal of SNF "beginning not later than January 31, 1998," was pursuant to "Contracts entered into under this section . . ." § 10222(a)(5) (emphasis added). Plaintiff thus has it backwards; rather than the Standard Contract being a recitation of a statutory duty, the statute is a prescription to undertake a contractual duty.

Id. at 280-81. The conclusion has equal force with respect to Consumers' takings claim.

Prior to 1983, the Department of Energy ("DOE") had no statutory, regulatory, or other legal obligation to accept or dispose of the SNF that nuclear utilities generated through their production of nuclear power. In 1983, however, Congress enacted the Nuclear Waste Policy Act of 1982 ("NWPA"), 42 U.S.C. §§ 10101-10270. In section 302 of the NWPA, 42 U.S.C. § 10222(a)(5), which is contained in Title III of the Act, Congress authorized the Secretary of Energy to enter into contracts with generators of SNF and HLW for the acceptance and disposal of their SNF and HLW. The statute provided that any contracts that DOE entered shall provide as follows:

> Contracts entered into under this section shall provide that —
>
> (A) following commencement of operation of a repository, the Secretary shall take title to the high-level radioactive waste or spent nuclear fuel involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent fuel; and
>
> (B) in return for the payment of fees established by this section, the Secretary, beginning not later than January 31, 1998, will dispose of the high-level radioactive waste or spent nuclear fuel involved as provided in this subtitle.

Id.

Although Title III of the NWPA required DOE to include in contracts language providing for SNF acceptance to begin by January 31, 1998, Congress did not identify or mention the January 31, 1998 date anywhere else in the statute. Instead, the only requirement relating to the January 31, 1998 date was the requirement that DOE include it in the contracts that DOE entered.

Pursuant to the statutory authority in section 302(a), DOE promulgated standardized contracts through notice and comment rulemaking. On February 4, 1983, DOE published "for public comment a proposed standard contract to be used by the Department of Energy (DOE) in furnishing disposal services to the owners of generators of [SNF] and/or [HLW] and DOE's proposed procedures designed to implement section 302 of the ["NWPA"]. 48 Fed. Reg. 5458, 5458 (Feb. 4, 1983). In accordance with section 302(a)(5)(B) of the NWPA, DOE included a clause providing that "[t]he disposal services to be provided by DOE under this contract shall commence not later than January 31, 1998 and shall continue until such time as all SNF and/or HLW from the civilian nuclear power reactors specified in Appendix 'A' . . . has been disposed of as provided for in this contract." Id. at 5463. After receiving public comments, DOE published a final rule on April 18, 1983, containing the final draft of the Standard Contract terms. 48 Fed. Reg. 16,590 (Apr. 18, 1983). In June 1983, DOE entered into Standard Contracts with numerous nuclear utilities, including Consumers. See Consumers Compl. ¶1.

Consequently, absent the Standard Contract, the Government has no obligation to accept, transport, and dispose of Consumers' SNF by any particular date or pursuant to any particular schedule. Any right that Consumers has to the acceptance of SNF by the Government derives exclusively from the Standard Contract, and, absent the Government taking Consumers' contractual remedies, Consumers may not base its takings claim upon the Government's failure to perform its obligations under that contract. See Castle v. United States, 301 F.3d 1328, 1341-42 (Fed. Cir. 2002); Pacific Gas & Electric Co. v. United States, 70 Fed. Cl. 766, 778-79 (2006);

Canal Electric Co. v. United States, 65 Fed. Cl. 650, 656 (2005); Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 656 (2002).[2]

2. Consumers Cannot Establish A Takings Claim Based Upon Its Claimed Real Property Interests

In its response to the Government's renewed motion to dismiss, Consumers alleges that it possesses a vested contract right in the Standard Contract as well as a property interest in the "value and use" of its real property, and that Consumers' "right to use the property in question was not created by the Standard Contract." Pl. Resp. 8-9. Although we do not dispute for the purposes of the pending motion that Consumers possessed a property interest in its formerly-

---

[2/] Consumers contends, without any legal support, that the Federal Circuit's decision in Castle, as well as the many other cases cited by the Government that support the proposition that a takings claim may not be based upon a breach of contract, are distinguishable because, in this case, the Government is acting in its sovereign capacity rather than in its proprietary capacity. Pl. Resp. 13-16. Consumers' claimed distinction is unpersuasive. The Court in Castle did not even mention some distinction between sovereign and proprietary capacities in analyzing the taking issue there. Instead, it focused its analysis upon the source of the alleged property right: a contract. Consumers' discussion of the Government's sovereign and proprietary capacities does not advance its position that it may base a takings claim upon rights created by the Standard Contract. Cf. Yuba Goldfields, Inc. v.United States, 723 F.2d 884, 889 (Fed. Cir. 1983) ("[i]n whatever other context it may be useful, . . . determination of whether the United States has acted in a proprietary or governmental-sovereign capacity is of little, if any, use in Fifth Amendment-just compensation analysis.").

Further, Consumers' reliance upon the Federal Circuit's decision in Prudential Ins. Co. v. United States, 801 F.2d 1295 (Fed. Cir. 1986), is misplaced. Pl. Resp. 16. In Prudential, the issue before the Court was whether foreseeability of damages for breach of a lease agreement should be measured as of the date of contract execution or the date that the lease was breached. Id. at 1300. Concluding that foreseeability of damages for breach of a lease agreement should be measured as of the date of contract execution, the Court noted in dicta that, "[a]lthough this may place a more difficult burden on a lessor seeking consequential damages against the government as a holdover tenant, lessors may have an alternative avenue of relief under the Takings Clause of the Fifth Amendment." Id. at 1300 n.13. Indeed, the plaintiff in Prudential had not brought a takings claim based upon the Government's hold-over of the lease. Any doubt as to the viability of the Federal Circuit's dicta in Prudential has been laid to rest in its more recent decision in Castle.

owned real property, it is clear that, as a matter of law, Consumers did not possess a property interest outside the Standard Contract to have DOE either remove Consumers' SNF or to do so at any particular point in time, and that DOE's breach of the Standard Contract could not constitute a taking of Consumers' interests in its real property rather than a simple breach of contract. Indeed, Consumers' contention that it has a property interest in its real property is a red herring, and Consumers does not address, much less distinguish, this Court's opinions in Pacific Gas & Electric Company v. United States, 70 Fed. Cl. 766 (2006), or Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652 (2002), which were addressed in our renewed motion to dismiss, Def. Mot. 9-10,[3] and which are directly relevant to Consumers' contention that its property interest in its physical property is sufficient to assert a takings claim in the SNF context.

In PG&E, this Court recently rejected a takings claim raised by another SNF plaintiff alleging substantially similar property interests as those raised by Consumers in this case. PG&E. 70 Fed. Cl. at 778-80. Specifically, like Consumers, the plaintiff in PG&E claimed that, because it had to store its own SNF on its property for the indefinite future, PG&E "has been and will be derived of the effective use and value of [its] property." Id. at 776.[4] The Court in PG&E, referring to its prior decision in Commonwealth Edison, 56 Fed. Cl. at 656, explained as follows:

> Plaintiff alone was responsible for the storage and disposal of its SNF and HLW prior to the Standard Contract. Therefore, absent the contract, plaintiff would have been obligated to conduct the same or similar storage activities that it now asserts create a

---

3/ "Def. Mot. __" refers to the Government's renewed motion to dismiss, filed on August 9, 2007.

4/ Like Consumers' Big Rock Point facility, which is shut down, see Consumers Compl. ¶3, PG&E's Humboldt Bay plant also was shut down. See Pacific Gas & Electric Co. v. United States, 73 Fed. Cl. 333, 353 (2006).

> takings claim . . . [P]laintiff's claim for a taking is dependent upon the existence of the Standard Contract and therefore plaintiff's rights are enforceable through a contract remedy.

Id. at 778.

The Court also rejected the same argument that Consumers makes in this case regarding its interests in real property, holding that, "[w]hile it may be true that plaintiff 'ha[s] real property interests that are separate from its interests under the Standard Contract, plaintiff does not have a takings claim absent the rights and obligations granted to the parties by the Standard Contract.'" Id. (emphasis added) (citing Commonwealth Edison, 56 Fed. Cl. at 656). The Court further rejected PG&E's claim that a taking had occurred because it had to continue storing SNF on its site and explained "that plaintiff's unilateral decision to build an ISFSI to continue to store this SNF cannot amount to the accrual of a taking of plaintiff's property by the government any more than can its storage activities to date. Indeed, the costs associated with the construction of such a facility, if they are found to be reasonably foreseeable by the government, caused by the government's breach, and proved to a reasonable certainty, may be fully vindicated through a breach of contract remedy." Id. at 779 (citation omitted); see also Wisconsin Electric Power Co. v. United States, No. 00-697C, slip op. at 4 (Fed. Cl. Oct. 8, 2004) (unpublished decision) ("While plaintiff argues that its taking count is based on restrictions on its Point Beach real estate, it is clear that these asserted restrictions stem from the failure of DOE to dispose of SNF and/or HLW as required by contract. Accordingly the Circuit Court's decision in Castle . . . precludes the existence of a viable taking claim when the rights involved are enforceable through a contract remedy."). Consequently, the fact that Consumers may have to continue to store its SNF on its own property cannot be the basis for a takings claim, and the Court's reasoning in

PG&E, Commonwealth Edison, Canal and other similar cases should apply with equal force in this case.

3. Consumers May Not Assert A Property Interest In The NWPA Or The Atomic Energy Act

In its response, Consumers suggests that it has a protected property interest in the NWPA and the Atomic Energy Act ("AEA"), which pre-date the property interests that it may have in the Standard Contract. Pl. Resp. 12-13. As we explained in our renewed motion to dismiss, Consumers cannot allege a property interest in a statute for purposes of a takings claim. See Members of the Peanut Quota Holders Ass'n, Inc. v. United States, 421 F.3d 1323, 1334 (Fed. Cir. 2005); Adams v. United States, 391 F.3d 1212, 1220 (Fed. Cir. 2004) (holding that statutory right to be paid money could not constitute a protected property interest for purposes of the takings clause); Branch v. United States, 69 F.3d 1571, 1577-78 (Fed. Cir. 1995) ("[i]f every time a man relied on the existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever") (quoting L. Fuller, The Morality of Law 60 (1964)); Fern v. United States, 908 F.2d 955, 959 (Fed. Cir. 1990) ("[T]he law itself, as a rule of conduct, may be changed at the will or even the whim, of the legislature, unless prevented by constitutional limitations."); Pittman v. Chicago Bd. of Educ., 64 F.3d 1098, 1104-05 (7th Cir. 1995) ("A statute is not a commitment by the legislature never to repeal the statute . . . Statutes would be ratchets, creating rights that could never be retracted or even modified without buying off the groups upon which the rights had been conferred."); see also Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1340 (Fed. Cir. 2001) (provision of Energy Policy Act requiring domestic utilities that had entered into contracts with the Government for processing uranium to pay for costs of cleanup of environmentally

contaminated uranium processing facilities could not provide basis for a Fifth Amendment taking). Consumers does not address these cases, much less explain why they do not preclude reliance upon statutes such as the NWPA and the AEA as the basis for its alleged property interest.

Second, even if a statute could create a property right, the NWPA, in and of itself, could not create a "property right" requiring DOE to accept and dispose of Consumers' SNF. As we explained above, the NWPA is not self-executing and does not independently obligate DOE to accept any individual utility's SNF, but, instead, only authorizes DOE to enter into a contract with a utility through which DOE will accept that utility's SNF. See 42 U.S.C. § 10222(a)(5). As the United States Court of Appeals for the District of Columbia Circuit expressly acknowledged in Northern States Power Co. v. United States, 1998 WL 276581 (D.C. Cir. May 5, 1998), the NWPA merely "requires the DOE to include an unconditional obligation in the Standard Contract [and] does not itself require performance. Breach by the DOE does not violate a statutory duty . . . ." Northern States, 1998 WL 276581, at *2. The only relevant statutory duty with which DOE was charged was to ensure that, with regard to "[c]ontracts entered into under this section," those contracts would "provide that . . . in return for the payment of fees . . ., the Secretary, beginning not later than January 31, 1998, will dispose" of the SNF." 42 U.S.C. § 10222(a)(5)(B).[5]

[5] As discussed above, the January 31, 1998 date appears nowhere else in the NWPA. That is, the only provision in the NWPA regarding a January 31, 1998 acceptance date is one that instructs DOE to include that date in any contracts that it enters. DOE complied with this duty by promulgating contract terms in April 1983, which formed the basis of contracts that nuclear power owners and generators entered in June 1983.

Third, Consumers' citation to the AEA, 10 C.F.R. Part 50, Appendix F, for the proposition that the "Government historically has been responsible for the permanent disposal of SNF, a policy which predated the enactment of the NWPA," is equally misplaced. Pl. Resp. 12. Appendix F of 10 C.F.R. Part 50, which was first promulgated in 1970, relates to the "Policy Relating To The Siting Of Fuel Reprocessing Plants And Related Waste Management Facilities." 10 C.F.R. Part 50, App. F (emphasis added). As evidenced by Appendix F, the regulation relating to disposal of "high-level radioactive fission product waste" only applied to waste generated during reprocessing, not through the operation of commercial nuclear reactors. See American Nuclear Society website (http://www.ans.org/pi/resources/glossary/) (defining "high level waste" as "[h]ighly radioactive solid material that results from chemical reprocessing of spent fuel from a nuclear fission reactor." (Emphasis added)). Reprocessing involves taking the spent nuclear fuel already generated during the production of nuclear power and reprocessing it into other forms. Id. (defining "spent nuclear fuel" as follows: "Nuclear fuel elements removed from a nuclear reactor after they have been used to produce power. Spent fuel has great potential for use as a fuel after reprocessing; thus "used fuel" is a more accurate term."). Accordingly, 10 C.F.R. Part 50 provides no promise of SNF disposal in general or by a date certain.[6] In short,

[6] To the extent that Consumers had some right under the AEA, 10 C.F.R. Part 50, or some other unidentified statute to DOE acceptance of SNF by a date certain, the NWPA clearly abrogated that right. The NWPA requires DOE to accept commercial SNF solely pursuant to the terms of the NWPA and requires commercial utilities, to the extent that they enter into contracts for disposal, to pay for that disposal. See 42 U.S.C. § 10222; State of Idaho v. United States Dep't of Energy, 945 F.2d 295, 297-99 (9th Cir. 1991). Because the NWPA was enacted in 1983, Consumers' claim for a taking based upon rights purportedly abrogated by the NWPA are time-barred. Steel Improvement & Forge Co. v. United States, 174 Ct. Cl. 24, 29-30, 355 F.2d 627, 631 (1966) ("cause of action for an unconstitutional taking accrues at the time the taking occurs.").

Consumers may not allege a protected property interest based upon the NWPA, the AEA, or any other statute.

Finally, to the extent that Consumers asserts that it had some general expectation of SNF acceptance, this Court has recognized that an "investment-backed expectation is not property." Ambase Corp. v. United States, 58 Fed. Cl. 32, 51 (2003). In Ambase, the plaintiff had alleged that, "as the sole shareholder of [the contracting party], it had a reasonable investment-backed expectation that the government would honor the goodwill contracts with [the contracting party], and that the enforcement of FIRREA confiscated that expectation . . . ." Id. at 50. The Court rejected this argument, finding that, because the "right" at issue was created through a contract with the Government, the only remedy was a contract-based remedy by the contract holder:

> In light of these general concepts, the issue in this case is whether an action by the government against the corporation, that destroys the corporation's value, can be the legal cause of the shareholder's loss in value. The answer seems to the Court to depend on what the character of the government action was. If the government's action is legally compensable under some remedial system then the answer appears to be that there is no legal cause that would justify a takings claim. In this case that is clearly the situation. The government's breach of contract creates in the corporation, here Carteret, a cause of action against the government. If Carteret prevailed in the breach of contract action, the corporation would be restored to the position it would have been in and the shareholder would have lost nothing by the government's action. Therefore, the takings claim can only exist if there is no remedy other than a takings claim for the government's breach of contract. But clearly there is a contract remedy.

Id. at 52 (emphasis added; citations omitted). Similarly, in this case, because Consumers possesses contract remedies – and has availed itself of those contract remedies by filing suit against the Government for breach of contract in this Court – no basis for a regulatory takings claim exists.

4. Consumers' Claimed Vested Contract Rights Fails As A Matter Of Law

In addition to its claim that it has a cognizable interest in its real property, Consumers also contends that it may pursue a takings claim because it has a vested property interest in the Standard Contract itself. Pl. Resp. 8. However, both the Federal Circuit and this Court have expressly rejected this argument, and the reasoning of these courts should apply with equal force here.

In Castle, the plaintiffs asserted that the passage of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") took plaintiffs' contract. 301 F.3d at 1341-42. The Federal Circuit affirmed the Court's rejection of this argument and agreed with the Court's conclusion that, "despite breaching the contract, the government did not take the plaintiffs' property because they retained 'the range of remedies associated with the vindication of a contract.'" Id. at 1342. The Federal Circuit explained that the passage of FIRREA did not deprive plaintiffs of their contractual remedies or remove a cause of action for contract damages. Id. Consequently, the Federal Circuit held that, even had the passage of FIRREA constituted a breach of contract, such a breach did not constitute a taking of the contract. Id.

This Court has applied the holding in Castle in the SNF cases to dismiss plaintiffs' claims that the failure on the part of the Government to perform beginning on January 31, 1998 constituted a "taking" of plaintiffs' "vested contract rights." In Detroit Edison Company v. United States, 56 Fed. Cl. 299 (2003), the plaintiff alleged two takings theories – a taking of its vested contract rights, and the forced storage of SNF on the plaintiff's property, resulting in the deprivation of the full economic value of the property. Id. at 301. The Government moved to dismiss plaintiff's complaint on substantially similar grounds as our motion in the instant case.

Although the Court allowed the later theory to proceed,[7] the plaintiff withdrew its takings claim based upon a vested contract right in light of the Federal Circuit's ruling in Castle, and the Court consequently dismissed the vested contract claim. Id. at 301, 303; see Omaha Public Power District v. United States, 69 Fed. Cl. 237, 239 n.2 (2005) (SNF plaintiff voluntarily withdrew "vested contract" takings claim in light of Federal Circuit's decision in Castle); Commonwealth Edison, 56 Fed. Cl. at 655, n.4 (voluntarily dismissing taking of vested contract rights claim). Similarly, because Consumers retains the full range of contract remedies, Consumers' vested contract claim should be dismissed under the principles articulated in Castle.[8]

B. Consumers Cannot Identify Any Regulation That Has "Taken" Its Alleged Property Interests

Even if Consumers could allege some property interest that is independent of its rights under the Standard Contract, which it cannot, Consumers cannot identify any regulation that has "taken" these alleged interests. Conceding that it cannot establish a physical invasion takings claim, Consumers contends that DOE's failure to begin the acceptance of SNF results in a regulatory taking. Pl. Resp. 9. Yet, as Consumers' acknowledges, a regulatory taking requires a regulation that either "denies the right to exclusive possession" or "that restricts the permissible

---

[7] To the extent that the Court in Detroit Edison held that an SNF plaintiff could maintain a takings claim based upon the storage of its SNF on its property longer than it otherwise would have as a result of DOE's delay in SNF acceptance, we respectfully disagree with that conclusion. As discussed above, the Court in PG&E, Commonwealth Edison, Canal, and Wisconsin have each rejected such a theory.

[8] Consumers contends that its contractual remedies are "directly impaired in this case" because, "[u]nlike an ordinary contract case, Consumers Energy could not have, prior to the Asset Sale, declared the contract in breach and found an alternative permanent storage site for SNF." Pl. Br. 14. The fact that Consumers alleges that it could not use an "alternative permanent storage site" to store its SNF in no way limits Consumers' contractual remedies.

use of property." Pl. Resp. 11. Here, Consumers has failed to identify any regulation that has resulted in a taking of its property.

First, it is beyond dispute that the Government has not physically occupied Consumers' property. Consumers cannot establish that the Government, through regulation or otherwise, forced Consumers to suffer a physical invasion of its nuclear facilities. To the contrary, it is undisputed that Consumers owned the SNF on its property until the sale to Entergy in 2007. In short, Consumers' claim is that it was forced to hold its SNF on its property longer because the Government did not perform its obligations under the Standard Contract. However, this Court has repeatedly rejected the contention, in the SNF context, that a utility which has to store its own SNF on its own property longer that it otherwise would have because of DOE's breach of the Standard Contract may form the basis for a takings claim. See, e.g., PG&E, 70 Fed. Cl. at 778; Canal, 65 Fed. Cl. at 656; Commonwealth Edison, 56 Fed. Cl. at 656; Wisconsin Electric, No. 00-697C, slip. op. at 4.

Second, in its response, Consumers alleges that "the applicable regulatory framework since 1983 prevented Consumers Energy from removing SNF from its facilities except under the procedures contained in the NWPA." Pl. Resp. 12. Analogizing to the Supreme Court's decision in Loretto v. Telepromter Manhattan CATV Corp., 458 U.S. 419 (1982), which involved a physical invasion by the Government, Consumers alleges that it was "effectively required to keep the SNF in approved storage facilities on property owned by Consumers Energy until an unspecified future date," and "[p]art of the acceptance process under the Standard Contract requires the Government to take title to the SNF." Pl. Resp. 11-12 (emphasis added). Consumers' reference to the Standard Contract is significant, as it is an acknowledgment that it

is the Standard Contract, and only the Standard Contract, that creates an obligation in the Government to accept Consumers' SNF.

Although the terms of the Standard Contract were promulgated through notice-and-comment rulemaking in the Federal Register and should, like clauses from the Federal Acquisition Regulation, be interpreted by reference to the rules applicable to regulatory interpretation, see Honeywell, Inc. v. United States, 228 Ct. Cl. 591, 596, 661 F.2d 182, 186 (1981), that rule of interpretation does not change the character of the action here: a claim for a breach of contract affecting rights created by contract. As a result, it is clear that no regulatory action has "taken" Consumers' real property. Instead, Consumers' claim arises from DOE's failure to begin acceptance of SNF under the terms of the Standard Contract, precluding a takings claim.[9]

---

9/ In addition, the Federal Circuit has recognized that "it is rational to attempt to impose the costs inherent in a certain type of business activity on 'those who have profited from the fruits' of the business in question," Branch, 69 F.3d at 1580 (quoting Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 18 (1976)), which, in this case, would be the nuclear power utilities that generated SNF while profiting from their generation and sale of nuclear power. See Nuclear Energy Inst., Inc. v. Environmental Prot. Agency, 373 F.3d 1251, 1259 (D.C. Cir. 2004) ("To finance the creation and operation of such repositories, the NWPA established the Nuclear Waste Fund to ensure that 'the costs of carrying out activities relating to the disposal of [radioactive] waste and spent fuel will be borne by the persons responsible for generating such waste and spent fuel.' 42 U.S.C. § 10131(b)(4) (2000).").

Furthermore, in analyzing the "reasonable investment-backed expectations" prong of the regulatory takings analysis, the Supreme Court has held that "[t]hose who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." Connolly v. Pension Ben. Guar. Corp., 475 U.S. 211, 227 (1986). The "legislative end" of the NWPA is identified in the Act itself: to protect the public health and safety, to establish Federal responsibility and policy for disposal of SNF, and to ensure that the costs of carrying out activities relating to disposal are "borne by the persons responsible for generating such waste and spent fuel." 42 U.S.C. § 10131(b). Because of the important need to ensure the public health and safety, the nuclear industry is heavily regulated, see Rushton v. Nebraska Public Power Dist., 844 F.2d 562, 566 (8th Cir. 1988), weighing heavily against the

II. DISMISSAL OF PLAINTIFF'S TAKINGS CLAIM IS APPROPRIATE

A. The Ultimate Resolution Of The Application Of The "Unavoidable Delays" Clause In The Standard Contract Is Irrelevant In Determining Whether Consumers Has A Takings Claim As A Matter of Law

In its response, Consumers asserts that, because the issue of the Government's ability to invoke the "unavoidable delays" clause of the Standard Contract is pending in the Federal Circuit, it would be inappropriate to dismiss Consumers' takings claim because the invocation of the clause may "potentially limit or eliminate the Government's contract liability in SNF cases." Pl. Resp. 16-17, 20 (citing Nebraska Public Power Dist. v. United States, 73 Fed. Cl. 650 (2006), appeal pending, No. 2007-5083 (Fed. Cir.)). Consumers is mistaken.

The outcome of the Federal Circuit's decision in the Nebraska Public Power case has no bearing upon whether Consumers may maintain a takings claim in this case as a matter of law. Under plaintiff's theory, whenever the Government successfully asserts a defense that limits contract damages, the plaintiff could otherwise recover those same damages by asserting a takings claim. The law does not support such a contention. As the Court held in Detroit Edison, a plaintiff cannot pursue a takings claim "in order to circumvent the limitations inherent in its contractual relationship with the Government." Detroit Edison, 56 Fed. Cl. at 303 (citing Granite Mgmt. Corp. v. United States, 55 Fed. Cl. 164, 165-66 (2003) (rejecting plaintiff's contention that lack of recovery of prejudgment interest under contract requires preserving takings claim from dismissal), Home Sav. of Am., FSB v. United States, 51 Fed. Cl. 487, 495-96 (2002) (lack of a "'complete' contract remedy . . . does not give life to a takings theory"), and Castle v. United States, 48 Fed. Cl. 187, 219-20 (2000) (rejecting plaintiff's contention that

existence of any regulatory taking outside the context of a breach of contract action.

failure to award pre-judgment interest or lost profits under contract constitutes a taking)). As this Court recognized in Klamath Irrigation District v. United States, 67 Fed. Cl. 504, 432 n.46 (2005), "[o]nce the symmetry is established, a finding on the merits that no breach occurred does not break that relationship, but merely reflects that the contract rights that were asserted either never existed or were not adversely affected by the government's actions. Under either scenario, those same contract rights cannot provide the predicate for a takings because the government cannot take what the claimant does not have." Consequently, to the extent the Government can successfully invoke the "unavoidable delays" clause in this case and potentially limit or eliminate any contract damages to Consumers, such an invocation has no effect upon whether Consumers may allege a takings claim in this case.[10]

B. This Court Routinely Has Dismissed Takings Claims As A Matter Of Law For Failure To State A Claim

Finally, in a last-ditch effort, Consumers contends that dismissal of its complaint is inappropriate because takings claims are "fact intensive," and asserts that "[b]oth the nature of the right subject to the taking, and the acts which constitute the taking, are factual and material." Pl. Br. 17, 20. First, the Government has not moved for summary judgment, but rather has moved to dismiss for failure to state a claim, and accepts as true all well-pled facts in

---

[10] Notably, the Federal Circuit's decision in Castle contradicts plaintiff's theory that a takings claim must be allowed where a contract defense otherwise eliminates contract damages recovery. In Castle, the Federal Circuit held that two of the plaintiffs were not entitled to breach of contract damages. 301 F.3d at 1339-41. The Federal Circuit also held that, despite having no viable contract claim, the plaintiffs could not state a viable takings claim based upon the Government's breach of contract, because the plaintiffs retained "the range of remedies associated with the vindication of the contract." Id. at 1341-42. In other words, the fact that the Government may raise defenses that limit or eliminate the amount of damages that Consumers may recover under the Standard Contract does not somehow create a viable takings claim where the alleged SNF acceptance rights otherwise do not exist.

Consumers' complaint.[11] Indeed, other than make vague assertions as to the nature of the rights subject to the taking, and the acts which constitute the taking, Consumers has not identified any factual dispute, much less a factual dispute that warrants denial of the Government's renewed motion to dismiss.

Second, regardless of whether takings claims are "fact intensive," this Court has disposed of numerous takings claims on dispositive motion because they failed to state a claim as a matter of law. See, e.g., Canal Electric, 65 Fed. Cl. at 656; Commonwealth Edison, 56 Fed. Cl. at 656; Granite Mgt. Corp. v. United States, 55 Fed. Cl. 164, 167 (2003) (dismissing takings claim for failure to state a claim); Westfed Holdings, Inc. v. United States, 52 Fed. Cl. 135, 152 (2002) (dismissing takings claim prior to trial for damages on breach of contract); Home Sav. of America, FSB v. United States, 51 Fed. Cl. 487, 494-96 (2002) (same); Franklin Sav. Corp. v. United States, 46 Fed. Cl. 533, 537-38 (2000) (same).[12]

---

[11/] In this regard, the Court should disregard the references that Consumers makes to "facts" that are not contained in its complaint. See Nicholson v. United States, 77 Fed. Cl. 605, 613 (2007) ("When determining whether a complaint should be dismissed for the failure to state a claim upon which relief may be granted, we do not question the accuracy of the factual allegations. Facts are legally irrelevant since the test permits us to determine legal sufficiency under any set of facts."). For example, Consumers' allegations concerning "an analysis of the applicable acceptance queue" for Big Rock and the opinions of Consumers' expert regarding the alleged quantification of the "taking," Pl. Resp. 19, are well beyond the allegations in Consumers' complaint, and should be disregarded for purposes of adjudicating the Government's renewed motion to dismiss.

[12/] In its response, Consumers relies upon the Court's decision denying the Government's motion for summary judgment in Boston Edison Co. v. United States, 64 Fed. Cl. 167 (2005), for the proposition that there exists a factual dispute regarding a takings claim that somehow justifies denial of the Government's motion to dismiss. Pl. Resp. 18. As we explained in our motion, in Boston Edison, the Court concluded that a factual dispute existed as to the origin of plaintiff's rights. Id. at 187. However, in a decision by the Federal Circuit issued shortly after the Court's decision in Boston Edison, the Federal Circuit reaffirmed that the nature of a plaintiff's property interest is a question of law rather than a question of fact. Texas State Bank

As the Court explained in Canal in dismissing another SNF's plaintiff's takings claim as a matter of law, "[r]uling that the parties should conduct discovery on investment-backed expectations or other factual issues as plaintiff has urged would only create delay and waste resources." Canal, 65 Fed. Cl. at 656. In light of the facially deficient nature of Consumers' takings claim as a matter of law, no "factual development" would improve the viability of Consumers' claim. Consequently, dismissal under the circumstances is appropriate.

CONCLUSION

For the foregoing reasons, as well as those addressed in our renewed motion to dismiss, the Government respectfully requests that the Court grant the Government's renewed motion to dismiss Count III of Consumers' complaint for failure to state a claim upon which relief may be granted.

---

v. United States, 423 F.3d 1370, 1379 (Fed. Cir. 2005) (citing Webbs Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980); Cermak v. Babbitt, 234 F.3d 1356, 1361 (Fed. Cir. 2000); Coast Indian Cmty. v. United States, 213 Ct. Cl.129, 550 F.2d 639, 649 (1977)). Further, although the Court in Boston Edison concluded that the voluntariness of the Standard Contract was an issue of fact that precluded granting the Government summary judgment, id. at 187, we respectfully disagree with this conclusion. We do not see how the issue of the voluntariness of the Standard Contract affects whether plaintiffs have stated a legally cognizable takings claim. Potentially, if entry into the contract was not voluntary, plaintiffs could seek to void the contract. However, without a contract, the utilities, not the Government, would be fully responsible for disposal of their own SNF. Similarly, the issue of the reasonableness of the parties' expectations only is relevant once the Court determines that the party has pled a viable takings claim as a matter of law. As discussed above, because Consumers may not maintain a takings claim as a matter of law, the reasonableness of the parties' expectations is irrelevant.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Scott R. Damelin by Joshua E. Gardner
SCOTT R. DAMELIN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-2312
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

STEPHEN FINN
JOSHUA E. GARDNER
Trial Attorneys
Department of Justice
Washington, D.C. 20530

September 26, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 26th day of September 2007, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S RENEWED MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Joshua E. Gardner