**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY, | ) | |
| | ) | |
| | ) | COFC No. 02-1894-C |
| Plaintiff, | ) | (Chief Judge Damich) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING DEFENDANT'S RENEWED MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT**

Thomas O. Mason
Williams, Mullen, Clark & Dobbins
8270 Greensboro Drive, Suite 700
McLean, VA 22102
(703) 760-5200

Jeffrey S. Theuer (P44161)
Loomis, Ewert, Parsley, Davis & Gotting, P.C.
124 West Allegan, Suite 700
Lansing, MI 48933
(517) 482-2400

OF COUNSEL:
James E. Brunner (P28051)
Arunas T. Udrys (P21660)
Consumers Energy Company
212 West Michigan Avenue
Jackson, MI 49201
(517) 788-2151

Harvey J. Messing (P23309)
Miller, Canfield, Paddock & Stone, PLLC
One Michigan Avenue, Suite 900
Lansing, MI 48933
(517) 483-4963
Attorneys for Plaintiff

February 22, 2008

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................ ii

BRIEFING ........................................ 1

LEGAL DISCUSSION ........................................ 2

1. Restrictions on the Ability to Independently Dispose of Spent Nuclear Fuel and High Level Radioactive Waste Under the NWPA Amount to a Taking. ........................................ 2

2. The Elements of Damages For the Breach of Contract and Takings Claim Do Not Uniformly Overlap ........................................ 8

CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

**Case Name.** **Page No.**

*Boston Edison Co. v. United States*,
64 Fed. Cl. 167 (2005) .......... 9

*Cienega Gardens v. United States*,
331 F.3d 1319 (Fed. Cir. 2003) .......... 5

*City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*,
526 U.S. 687, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) .......... 6

*Commonwealth Edison Co. v. United States Dept of Energy*,
877 F.2d 1042 (1989) .......... 3

*Consumers Energy Company v. United States*,
57 Fed. Cl. 278 (2003) .......... 2, 3

*Integrated Logistics Support Sys. Int'l, Inc. v. United States*,
42 Fed. Cl. 30 (1998) .......... 9

*Loretto v. Teleprompter Manhattan CATV Corp.*,
458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) .......... 6, 7

*Lucas v. South Carolina Coastal Council*,
505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) .......... 5, 7

*Maine Yankee Atomic Power Co. v. United States*,
225 F.3d 1336 (Fed. Cir. 2000). .......... 2, 3

*Nollan v. California Coastal Commission*,
483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) .......... 7, 8

*Northern States Power Company v. United States Department of Energy*,
128 F.3d 754 (1997) .......... 3

*Pallazzolo v. Rhode Island*,
533 U.S. 606, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) .......... 5

*Penn Central Transp. Co. v. New York City*,
438 U.S. 104, 98 S.Ct. 2646 (1978) ..................................................................5, 6, 7

*Pennsylvania Coal Co. v. Mahon*,
260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922) ..............................................................5

*Sacramento Municipal Utility District v. United States*,
63 Fed. Cl. 495 (2005) ..................................................................................................9

*System Fuels, Inc. v. United States*,
65 Fed. Cl. 163 (2005) ..................................................................................................9

*United States v. General Motors Corp.*,
323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 (1945) ..............................................................7

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
449 U.S. 155, 101 S.Ct. 446, 66 L.Ed.2d 3558 (1980) ......................................................6

**Statute/Regulation** **Page No.**

10 C.F.R. Part 50 ..........................................................................................................3
10 C.F.R. Part 72 ..........................................................................................................4
10 C.F.R. §72.106 ......................................................................................................2, 4
42 U.S.C. §§2133-2134 ..................................................................................................1
42 U.S.C. § 10222 ..........................................................................................................4
Nuclear Waste Policy Act of 1982, 42 U.S.C. §10101-10270 ..................................1, 2, 3, 4, 6, 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY, | ) | |
| | ) | |
| | ) | COFC No. 02-1894-C |
| Plaintiff, | ) | (Chief Judge Damich) |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING DEFENDANT'S RENEWED MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT**

Plaintiff Consumers Energy Company ("Consumers Energy") submits this Supplemental Brief pursuant to the Court's Order for Supplemental Briefing, dated February 8, 2008.

**ISSUES FOR SUPPLEMENTAL BRIEFING**

The Court requested supplemental briefing on the following issues regarding Plaintiff's real property takings claim:

1. "To what extent do the provisions of the Nuclear Waste Policy Act of 1982 ("NWPA"), 42 U.S.C. §10101-10270, regulating nuclear utilities' ability to independently dispose of spent nuclear fuel and high level radioactive waste ("SNF") amount to a taking given how the Act conditions the issuance or renewal of such utilities' licenses under 42 U.S.C. §§2133-2134 on entry into the Standard Contract or a similar agreement?"

2. "To what extent would a claim for damages stemming from Plaintiff's allegation of a taking of real property overlap with the currently pending claim for damages in regard to Defendant's liability for partial breach of the Standard Contract?"

# LEGAL DISCUSSION

## 1. Restrictions on the Ability to Independently Dispose of Spent Nuclear Fuel and High Level Radioactive Waste Under the NWPA Amount to a Taking.

As noted by this Court previously, Plaintiff's Big Rock Point nuclear plant ("Big Rock") was shut down in August, 1997. *See Consumers Energy Company v. United States*, 57 Fed. Cl. 278, 279 (2003). Big Rock's SNF was transferred to dry cask storage on the site, and the power generation facility was dismantled and removed in 2002 and 2003. All of Consumers Energy's nuclear assets were sold in April, 2007. As of that date the only improvements located on the Big Rock real property were eight (8) dry fuel storage casks located on a small Independent Spent Fuel Storage Installation ("ISFSI"), a small security building used for monitoring and security directly related to the ISFSI, and a road leading the security building. There were at the time approximately 580 acres of wooded property at Big Rock, located directly on the shores of Lake Michigan. One Hundred Three acres were sold with the ISFSI in order to provide a "controlled area". 10 C.F.R. §72.106. Consumers Energy owns the remainder.

The effect of the NWPA regulatory program is that Consumers Energy has been forced to dedicate its' real property to storage of SNF. Entry into the Standard Contract was mandatory. In *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1337 (Fed. Cir. 2000), the Federal Circuit recognized that the regulatory structure of the NWPA was essentially imposed upon nuclear utilities, including Consumers Energy:

> The Act effectively made entry into such contracts mandatory for the utilities by prohibiting the Nuclear Regulatory Commission from issuing licenses to any operator who has not 'entered into a contract with the Secretary' or who 'is [not] actively and in good faith negotiating with the Secretary for a contract.'

*Maine Yankee Atomic Power Co. v. United States*, 225 F.3d at 1337; *see also Consumers Energy Company v. United States*, 57 Fed. Cl. at 282.

The Standard Contract itself is properly viewed as a regulation. *See Commonwealth Edison Co. v. United States Dept. of Energy*, 877 F.2d 1042, 1045 (1989) (". . .we find that the Standard Contract into which the parties entered should be viewed as a regulation."). The D.C. Circuit Court also recognized that the regulatory framework of which the Standard Contract is a part, prevented nuclear utilities such as Consumers Energy from disposing of SNF other than in a manner authorized by the government. *See id.* ("In short, Commonwealth Edison was not free to dispose of its waste in whatever manner it desired; indeed, it had no real choice but to agree to whatever terms the federal government offered."); *see also* 10 C.F.R. Part 50, App. F ("Disposal of high-level radioactive fission product waste material will not be permitted on any land other than that owned and controlled by the Federal Government."). This is also consistent with the D.C. Circuit's explanation of the regulatory program in *Northern States Power*.

In *Northern States Power Company v. United States Department of Energy*, 128 F.3d 754 (1997), the D.C. Circuit Court acknowledged that the NWPA was created in order to confront the "national problem" posed by the accumulation of spent nuclear fuel and radioactive waste. *Id*. at 756. The statute "created a scheme whereby the federal government would have the responsibility to provide for the permanent disposal of the SNF, and the costs of such disposal would be borne by the owners and generators of the waste and spent fuel." *Id*. The Court viewed the Standard Contract as "part of this regulatory program. . . ." *Id*. In other words, the NWPA created a regulatory program under which the disposal of SNF was to be regulated by the government under the terms of the Standard Contract, and all aspects of the acceptance, transportation, and disposal of SNF were to

be controlled by the government. The NWPA itself authorizes only the government to dispose of SNF under this regulatory scheme. 42 U.S.C. §10222(a)(5)(B) (stating "in return for the payment of fees established by this section, the Secretary, beginning not later than January 31, 1998, will dispose of the high-level radioactive waste or spent nuclear fuel involved as provided in this subchapter"). The government has essentially occupied the field with respect to regulation of waste subject to the Standard Contract.

The NWPA authorized the government to make expenditures from the Nuclear Waste Fund in order to develop and construct a permanent storage facility. 42 U.S.C. §10222(d). The government has failed to provide a permanent storage facility for SNF, leaving Consumers Energy to construct its own temporary storage facilities. Those temporary storage facilities are themselves subject to regulation which effectively precludes any other use of the real property upon which they are located. *See, e.g.*, 10 C.F.R. Part 72. For example, Consumers Energy was required to submit a decommissioning plan with respect to its ISFSIs, which was required to be approved by the government before the SNF could be located there. Consumers Energy was required to maintain a "controlled area" around the ISFSI. 10 C.F.R. Part 72.106. Additionally, the proximity of the SNF to Consumers Energy's real property has the effect of depressing its market value, and making it unsuitable for most potential uses. Consumers Energy has submitted the Report of Greenfield Appraisers with its Initial Disclosures, which concludes that the presence of SNF at Big Rock has decreased the value of the adjacent real property owned by Consumers Energy by approximately four million dollars.

The cumulative effect of the government's regulation of SNF has resulted in a taking of Consumers Energy's real property as alleged in the Complaint. The government's regulatory

program has forced Consumers Energy to devote economically valuable real property to the storage of SNF. The government has taken this real property through regulation by denying Consumers Energy its right as an owner to put the real property to other valuable economic uses. Real property rights are constitutionally protected. *See Cienega Gardens v. United States*, 331 F.3d 1319, 1328-31 (Fed. Cir. 2003). The concept of "regulatory taking" of real property was recognized in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922) (if a regulation goes too far it will be recognized as a taking). Case law indicates there is a range of regulation which may rise to the level of a taking.

Where a government regulation deprives a property owner of "all economically beneficial uses" of his or her property, a taking has occurred. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Consumers Energy has asserted in its Complaint that the existence of SNF on its property "has and continues to deprive Consumers Energy of the valuable economic use of those sites, from which SNF cannot be lawfully removed. . . ." Complaint, ¶45. Even if some economically beneficial use did remain, government action which places limitations on real property short of eliminating all economically beneficial uses may also result in a taking. The Supreme Court has determined that where a statute or regulation

> places limitations on land that fall short of eliminating all economically beneficial use, a taking nonetheless may have occurred, depending on a complex of factors including the regulation's economic effect on the landowner, the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action.

*Pallazzolo v. Rhode Island*, 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (citing *Penn Central Transp. Co. v. New York,* 438 U.S. 104, 124, 98 S.Ct. 2646 (1978)).

In this case, the government has forced Consumers Energy to devote its real property to the

storage of SNF pursuant to a regulatory program under the NWPA. This has prevented Consumers Energy "from making productive use of its real property in and around locations on which SNF is being stored." Complaint, ¶44. Under these circumstances, a taking has occurred requiring just compensation. *See Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164, 101 S.Ct. 446, 66 L.Ed.2d 3558 (1980) ("a State by *ipse dixit*, may not transform private property into public property without just compensation."); *City of Monterrey v. Del Monte Dunes at Monterrey, Ltd.*, 526 U.S. 687, 698, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (upholding takings claims where the government engaged in a series of pretextual refusals to allow development over an extended period of time).

Another analogous case is *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). In *Loretto*, a landlord filed suit, asserting that a New York statute requiring a landlord to permit a cable television company to install its CATV facilities on its property was a taking without just compensation. The statute prohibited the landlord from demanding payment from the cable company in excess of an amount determined by a state commission to be reasonable. The state commission had ruled that a one-time one dollar payment fee was a reasonable fee. The landlord was the purchaser of a five story apartment building in New York City upon which the cable company had installed cables serving other buildings as well as tenants of the landlord's building. Significantly, the "physical occupation" authorized by the government was cables which did not belong to the government, but belonged instead to a private cable company. Citing *Penn Central*, the Court ruled that when the character of governmental action is a permanent physical occupation of real property, there is a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit, or has only

minimal economic impact upon the owner. *Loretto*, 458 U.S. at 434-35, 102 S.Ct. at 3175-76. Property rights in a physical thing are defined as the right "to possess, use and dispose of it." *Loretto*, 458 U.S. at 435, 102 S.Ct. 3176, quoting *United States v. General Motors Corp.*, 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945). A government action which occupies physical property effectively destroys each of these rights. *Loretto*, 458 U.S. at 435, 102 S.Ct. at 3176.

In the present case, as in *Loretto*, the governmental regulation, the NWPA, requires SNF subject to the government's regulation to be stored on Consumers Energy's real property indefinitely, until a permanent repository is constructed. Consumers Energy was required to dedicate its real property to the storage of SNF in the same manner that the landlord was required to dedicate its property to hold the cables required by the New York statute. This constitutes a taking of all economically beneficial use under *Lucas*, and certainly constitutes a taking under the *Penn Central* analysis. Plaintiff therefore respectfully requests that Defendant's Motion to Dismiss Count III of the Complaint be denied.

In *Nollan v. California Coastal Commission*, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987), the owners of a beachfront lot were granted a permit to replace a small bungalow on their property with a larger house upon condition that they allow the public an easement for access to the beach across their property. The *Nollan* Court acknowledged that a land use restriction may constitute a taking if not reasonably necessary to the effectuation of a substantial governmental purpose. *Id.* at 834, 107 S.Ct. at 3147. Perhaps the key feature of the *Nollan* decision for purposes of this case is the concept that the governmental regulation must serve the same governmental purpose as the regulatory program it seeks to advance. In other words, there must be an "essential nexus" between the otherwise legitimate state interest, and the regulatory action which is being

challenged as a taking. *Id.* at 836-37, 107 S.Ct. at 3148-49. The legitimate state interest was to provide a continuous strip of publicly accessible beach. The Court acknowledged that the state could, through eminent domain powers, take the Nollan's property for that purpose, so long as it paid for it. However, the use of a restrictive building permit regulation to coerce an easement without payment was improper because the building permit process did not bear sufficient nexus to the state's interest in providing beach access. *Id.* at 841-42, 107 S.Ct. at 3152.

There is some difficulty in applying the concepts of *Nollan* to the present case since *Nollan* involves land use restrictions which are not directly analogous to the present facts. In *Nollan*, the state established a legitimate interest in providing public beach access, but ran afoul of the Takings Clause because it sought to advance that interest through the largely unrelated building permit regulatory process. In the present case, it may be conceded that the government has a legitimate interest in the safe and orderly disposal of SNF in a single permanent repository controlled by the government. However, the effect of that regulatory program is to substantially impair the private property rights of Consumers Energy. Like the plaintiffs in *Nollan*, the effect of the governmental regulation in this case has substantially impaired Consumers Energy's private property rights without just compensation. Consumers Energy therefore respectfully requests that the government's renewed motion to dismiss be denied.

**2. The Elements of Damages For the Breach of Contract and Takings Claim Do Not Uniformly Overlap.**

Even where damages do overlap, Courts have appropriately held that contract and takings claims may be brought concurrently, but if both claims remain viable, recovery of damages under the contract would take precedence. *See, e.g., Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 187-88 (2005); *Integrated Logistics Support Systems International, Inc. v. United States*, 42 Fed. Cl.

30, 34-35 (1998) (plaintiff may plead a takings claim and a breach of contract claim in the alternative). Therefore, even if damages overlapped completely, it is appropriate to maintain both claims until final judgment is rendered. *See System Fuels, Inc. v. United States*, 65 Fed. Cl. 163, 172-73 (2005); *Sacramento Municipal Utility District v. United States*, 63 Fed. Cl. 495, 501 (2005).

In the present case, however, damages under the takings and contract claims do not uniformly overlap. The Report of Plaintiff's expert Greenfield Appraisers, Inc. determines that the market value of the real property owned by Consumers Energy adjacent to the Big Rock ISFSI has been reduced in value as a result of the existence of SNF at the ISFSI site. That is a takings-based damages assessment since it relates directly to the monetary effect of the government's regulatory program requiring SNF to be stored on Consumers Energy's real property. Plaintiff asserts that this damages element also constitutes a foreseeable consequence of the government's breach of the Standard Contract. However, the proofs required for recovery of this element under the contract claim are more burdensome than under the takings claim. Under the breach of contract count, Plaintiff will presumably be required to establish that it was reasonably foreseeable to the government at the time the Standard Contract was entered into in 1983 that if the Standard Contract was breached, it would result in diminished real property value to the area around the ISFSI. Under the takings claim, this element of damages would not require proof as to foreseeability of the injury. It would simply require proof that the diminished property was a natural consequence of the existence of SNF at the Big Rock site. Therefore, this element of damages could potentially be deemed recoverable under the takings count, but not under the breach of contract count. Until final judgment is entered, it cannot be determined whether or to what extent damages may overlap. In order to afford Plaintiff the potential for complete relief (subject of course to proof), Plaintiff's

taking claim should appropriately be allowed at this stage of the litigation.

**CONCLUSION**

For the foregoing reasons, as well as those stated in Plaintiff's Response to Defendant's Renewed Motion to Dismiss Count III of the Complaint, and Plaintiff's Response to Defendant's Motion to Dismiss Counts III and IV of Plaintiff's Complaint filed previously, Consumers Energy respectfully requests that Defendant's Motion and Renewed Motion to Dismiss Count III of the Complaint be denied.

Respectfully submitted,

____s/ Thomas O. Mason_______

Thomas O. Mason
Williams, Mullen, Clark & Dobbins
8270 Greensboro Drive, Suite 700
McLean, VA 22102
(703) 760-5200 (telephone)
(703) 748-0244 (facsimile)

Jeffrey S. Theuer (P44161)
Loomis, Ewert, Parsley, Davis & Gotting, P.C.
124 West Allegan, Suite 700
Lansing, MI 48933
(517) 482-2400
Attorneys for Plaintiff

OF COUNSEL:

James E. Brunner (P28051)
Arunas T. Udrys (P21660)
Consumers Energy Company
212 West Michigan Avenue
Jackson, MI 49201

Harvey J. Messing (P23309)
Miller, Canfield, Paddock & Stone, PLLC
One Michigan Avenue, Suite 900
Lansing, MI 48933

(517) 483-4963
Attorneys for Plaintiff

Dated: February 22, 2008

**CERTIFICATE OF FILING**

I hereby certify that on this 22nd day of February, 2008, a copy of the foregoing "PLAINTIFF'S SUPPLEMENTAL BRIEF REGARDING DEFENDANT'S RENEWED MOTION TO DISMISS COUNT III OF PLAINTIFF'S COMPLAINT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Francis E. Purcell, Jr.