**No. 02-1894C**
**(Chief Judge Damich)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**CONSUMERS ENERGY COMPANY,**

**Plaintiff,**

**v.**

**THE UNITED STATES OF AMERICA,**

**Defendant.**

---

# DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR INTEREST AGAINST THE GOVERNMENT AND FOR ATTORNEY AND EXPERT FEES RELATED TO THIS LITIGATION

---

**GREGORY G. KATSAS**
**Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**HAROLD D. LESTER, JR.**
**Assistant Director**

**SCOTT R. DAMLIN**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department Of Justice**
**Attn: Classification Unit**
**8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tele: (202) 305-2312**
**Fax: (202) 307-2503**

**OF COUNSEL:**

**JANE K. TAYLOR**
**U.S. Department of Energy**
**Office of General Counsel**
**1000 Independence Ave., S.W.**
**Washington, D.C. 20585**

**MARIAN E. SULLIVAN**
**Senior Trial Counsel**

**JOSEPH E. ASHMAN**
**STEPHEN P. FINN**
**SHARON SNYDER**
**Trial Attorneys**
**Commercial Litigation Branch**
**U.S. Department of Justice**

**August 21, 2008**

**Attorneys for Defendant**

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . ii

SUMMARY OF ARGUMENT . . . . . 1

ARGUMENT . . . . . 2

I. CONSUMERS' CLAIM FOR "TIME PRICE DIFFERENTIAL DOLLARS," COST OF FINANCING," "COST OF FUNDS" OR "AFUDC" MUST FAIL BECAUSE THE GOVERNMENT HAS NOT WAIVED ITS SOVEREIGN IMMUNITY AGAINST SUCH CLAIMS FOR INTEREST COSTS . . . . . 2

A. The Government Did Not Waive Its Sovereign Immunity Against Claims For Interest Under the Nuclear Waste Policy Act Or Standard Contract . . . . . 2

B. Despite Consumers' Recharacterization Of Its Claim For "Time Price Differential Dollars," Such Costs Are Still Not Recoverable Against The Goverment . . . . . 3

C. Consumers' Reliance Upon *Wickham* and *TVA* Are Misplaced . . . . . 5

D. The *Winstar* Cases Cited By Consumers Do Not Support Its Claim For Interest Costs Against The Government . . . . . 8

II. CONSUMERS' CLAIM FOR ATTORNEY AND EXPERT WITNESS FEES IS MISPLACED AND SHOULD BE REJECTED . . . . . 9

A. Consumers Cannot Recover Attorney and Expert Witness Fees Allegedly Related To This Litigation . . . . . 9

B. Apart From Lacking A Legal Basis To Recover Its Claimed Fees, Consumers' Broad Assertion That DOE Acted In Bad Faith Lacks Support . . . . . 15

CONCLUSION . . . . . 20

# TABLE OF AUTHORITIES

CASES PAGE(S)


Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,
421 U.S. 240 (1975) .................... 10, 11

Am. Hosp. Ass'n v. Sullivan,
938 F.2d 216 (D.C. Cir. 1991) .................... 14, 15

Applied Cos. v. United States,
No. 97-5085, 1998 WL 265529 (Fed. Cir. May 27, 1998).................... 19

Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.,
976 F.2d 541 (9th Cir. 1992) .................... 10, 13

Avenal v. United States,
33 Fed. Cl. 778 (1995).................... 19

Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.,
731 F.2d 831 (Fed. Cir. 1984).................... 18

Bell v. United States,
404 F.2d 975 (Ct. Cl. 1968) .................... 6, 8

Bluebonnet Savings Bank, F.S.B. v. United States,
266 F.3d 1348 (Fed. Cir. 2001) .................... 8

Brown v. Sullivan,
916 F.2d 492 (9th Cir. 1990) .................... 14

Carolina Power & Light Company and Florida Power Corporation v. United States,
No. 04-37C (Fed. Cl. May 19, 2008) .................... 7

Centex Corp. v. United States,
55 Fed. Cl. 381 (2003) .................... 8

Centex Corp. v. United States,
71 Fed. Cl. 40 (2006) .................... 12

Centex Corp. v. United States,
486 F.3d 1369 (Fed. Cir. 2007) .................... passim

Chambers v. NASCO, Inc.,
501 U.S. 32 (1991) .................... 10

TABLE OF AUTHORITIES (Cont'd)

CASES PAGE(S)

Cordeco Dev. Corp. v. Santiago Vasquez,
539 F.2d 256 (1st Cir. 1976) .......... 10, 11, 13, 14

Detroit Housing Corp. v. United States,
55 Fed. Cl. 410 (2003) .......... 18

District of Columbia v. United States,
67 Fed. Cl. 292 (2005) .......... 3

England v. Contell Advanced Systems, Inc.,
384 F.3d 1372 (Fed. Cir. 2004) .......... 3, 4

Fleischmann Corp. v. Maier Brewing Co.,
386 U.S. 714 [] (1967) .......... 14

Framlau Corp. v. United States,
568 F.2d 687 (Ct. Cl. 1977) .......... 6

Gevyn Constr. Corp. v. United States,
827 F.2d 752 (Fed. Cir. 1987) .......... 6

Hoch v. United States,
31 Fed. Cl. 111 (1994).......... 19

Imperial Tobacco Ltd. v. Philip Morris, Inc.,
899 F.2d 1575 (Fed. Cir. 1990).......... 19

Indiana Michigan Power Co. v. Dep't of Energy,
88 F.3d 1272 (D.C. Cir. 1996) .......... 17

J.D. Hedin Constr. Co. v. United States,
456 F.2d 1315 (Ct. Cl. 1972) .......... 4

Lamb Eng'g & Const. Co. v. Neb. Pub. Power Dist.,
103 F.3d 1422 (8th Cir.1997) .......... 13

Levi Strauss & Co. v. Genesco, Inc.,
742 F.2d 1401 (Fed. Cir. 1984).......... 19

TABLE OF AUTHORITIES (Cont'd)

CASES PAGE(S)

Library of Congress v. Shaw,
478 U.S. 310 (1986) .......... 2, 3

Lujan v. National Wildlife Federation,
497 U.S. 871 (1992) .......... 18

Maritime Management, Inc. v. United States,
242 F.3d 1326 (11th Cir. 2001) .......... 14

Marshall v. United States,
164 F. Supp. 221 (Ct. Cl. 1958) .......... 4

Mingus Constructors, Inc. v. United States,
812 F.2d 1387 (Fed. Cir. 1987) .......... 19

Myerle v. United States,
33 Ct. Cl. 1 (1897) .......... 4

Northern States Power Co. v. United States,
78 Fed. Cl. 449 (2007), appeal pending, Nos. 2008-5037, 2008-5041 (Fed. Cir. docketed Feb. 11, 2008) .......... 5

Northern States Power Co. v. United States Dep't of Energy,
128 F.3d 754 (D.C. Cir. 1997) .......... 17

Pratt v. United States,
50 Fed. Cl. 469 (2001) .......... 18

Quiman S.A. de C.V. v. United States,
39 Fed. Cl. 171 (1997), aff'd, 178 F.3d 1313 (Fed. Cir. 1998) .......... 4

Roadway Express, Inc. v. Piper,
447 U.S. 752 (1980) .......... 10

Sanchez v. Rowe,
870 F.2d 291 (5th Cir. 1989) .......... 13

Sandstrom v. Principi,
358 F.3d 1376 (Fed. Cir. 2004) .......... 3

TABLE OF AUTHORITIES (Cont'd)

CASES PAGE(S)

Shimman v. Int'l Union of Operating Eng'rs,
744 F.2d 1226 (6th Cir. 1984) .......... 13

Singer Co. Librascope Div. v. United States,
568 F.2d 695 (Ct. Cl. 1977) .......... 6

Smith v. Principi,
281 F.3d 1384 (Fed. Cir. 2002) .......... 3, 4

Spezzaferro v. FAA,
807 F.2d 169 (Fed. Cir. 1986) .......... 18

System Fuels, Inc. v. United States,
79 Fed. Cl. 37 (2007), appeal pending, Nos. 2008-5029, 2008-5035 (Fed. Cir. docketed Jan. 9, 2008) .......... 7

Tennessee Valley Authority v. United States,
69 Fed. Cl. 515 (2006) .......... 7

Tornello v. United States,
231 Ct. Cl. (1982) .......... 18

Towerridge, Inc. v. T.A.O., Inc.,
111 F.3d 758 (10th Cir. 1997) .......... 13

Universal Oil Prods. Co. v. Root Ref. Co.,
328 U.S. 575 (1946) .......... 10

Vaughan v. Atkinson,
369 U.S. 527 (1962) .......... 14

Westfed Holdings, Inc. v. United States,
52 Fed. Cl. 135 (2002) .......... 8

Wickham Contracting Co. v. Fisher,
12 F.3d 1574 (Fed. Cir. 1994) .......... 5, 6

Wickham Contracting Co. v. GSA,
GSBCA No. 8675, 92-3 B.C.A. ¶ 25040, 1992 WL 88326 (GSBCA 1992), aff'd, 12 F.3d 1574 (Fed. Cir. 1994) .......... 6

TABLE OF AUTHORITIES (Cont'd)

CASES PAGE(S)

Woods v. Barnett Bank of Fort Lauderdale,
765 F.2d 1004 (11th Cir. 1985) .......... 13

Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.,
313 F.3d 385 (7th Cir.2002) .......... 12

STATUTES

42 U.S.C. § 10221 .......... 16

28 U.S.C. § 2412(b) .......... 9, 10, 11, 14

48 C.F.R. § 43.205 .......... 6

28 U.S.C. § 2516(a) .......... 2, 6, 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSUMERS ENERGY COMPANY,<br>Plaintiff,<br>v.<br>UNITED STATES OF AMERICA,<br>Defendant. | ) | No. 02-1894C<br>(Chief Judge Damich) |

DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR INTEREST AGAINST THE GOVERNMENT AND FOR ATTORNEY AND EXPERT FEES RELATED TO THIS LITIGATION

Defendant, the United States, respectfully submits this reply to the response submitted by plaintiff, Consumers Energy Company ("Consumers"), dated August 4, 2008, to the Government's motion for summary judgment on Consumers' claims for interest costs and attorney and expert witness fees.

SUMMARY OF ARGUMENT

Consumers' claim for interest costs against the Government should be rejected because the Government did not waive its sovereign immunity against this claim. Further, the legal authorities cited by plaintiff in its response brief do not, contrary to Consumers' assertion, support the recovery of interest costs, even if recharacterized as the cost of funds, the cost of financing, or some other term. It remains unrecoverable interest.

Consumers' claim for attorney and expert fees should also be denied. Consumers' assertion of "bad faith" as the purported basis for the recovery of fees in this litigation lacks legal support. The Court should grant the Government's motion for summary judgment concerning plaintiff's claim for fees.

## ARGUMENT

### I. CONSUMERS' CLAIM FOR "TIME PRICE DIFFERENTIAL DOLLARS," "COST OF FINANCING," "COST OF FUNDS" OR "AFUDC" MUST FAIL BECAUSE THE GOVERNMENT HAS NOT WAIVED ITS SOVEREIGN IMMUNITY AGAINST SUCH CLAIMS FOR INTEREST COSTS

#### A. The Government Did Not Waive Its Sovereign Immunity Against Claims For Interest Under the Nuclear Waste Policy Act Or Standard Contract

Contrary to plaintiff's assertion, this issue is governed by 28 U.S.C. §2516(a), and the interest costs that Consumers now claims, no matter how they are characterized by Consumers, are not recoverable against the Government. Section 2516(a) reads: "Interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof."

The Nuclear Waste Policy Act ("NWPA") does not mandate that the United States pay interest on damages claims. There is no provision in the Standard Contract that provides for the payment of interest on damages claims. Neither the NWPA nor the Standard Contract contain any language that would waive, modify, change or nullify the prohibition found in Section 2516(a). There is no waiver of sovereign immunity.

As Consumers admits, "recovery of interest on a claim against the government is barred by 28 U.S.C. § 2516(a) . . . ." Pl. Br. 4.[1] Consumers' assertion that the "recovery of the financing costs paid by a plaintiff as a result of the government's breach is not barred by law," Pl. Br. 4, lacks legal support. As the Supreme Court held, in Library of Congress v. Shaw, 478 U.S. 310 (1986), the no-interest rule can only be waived by specific provision by contract or statute, or express consent of Congress. 478 U.S. at 317.

---

[1] "Pl. Br. __" refers to Consumers' response to the Government's motion for summary judgment on plaintiff's claim for interest and attorney and expert witness fees, dated August 4, 2008.

There was no waiver of the Government's sovereign immunity in this case. It simply did not occur, and plaintiff has, in fact, admitted that there was no waiver. As the Federal Circuit made clear, "[t]he no-interest rule is an aspect of the basic rule of sovereign immunity," and "it has been construed to apply broadly to claims for interest." England v. Contell Advanced Systems, Inc., 384 F.3d 1372, 1379 (Fed. Cir. 2004) (citing Library of Congress, 478 U.S. at 315; Smith v. Principi, 281 F.3d 1384 (Fed. Cir. 2002). Section 2516(a) controls and Consumers' claim for interest costs should fail.

B. Despite Consumers' Recharacterization Of Its Claim For "Time Price Differential Dollars," Such Interest Costs Are Still Not Recoverable Against The Government

Consumers' claim to recover so-called "time price differential dollars" should be rejected. In its response, Consumers alternatively describes the time price differential dollars in its damages claim as the cost of funds, or cost of financing, or Allowance of Funds Used During Construction ("AFUDC"). Pl. Br. 4-5. Consumers' attempt to characterize its claim for interest as something else does not escape the fact that "[t]he United States government . . . pays all judgments and amounts due in what economists call 'nominal dollars' rather than in economic 'real dollars' . . . ." Sandstrom v. Principi, 358 F.3d 1376, 1377 (Fed. Cir. 2004). "[N]o matter what term plaintiff[s] use [ ], compensation for the belated receipt of money violates the no-interest rule absent an express statutory waiver of sovereign immunity from liability for interest." District of Columbia v. United States, 67 Fed. Cl. 292, 341 (2005).

The Federal Circuit set forth a clear rule in Contell: "The [no-interest rule] has been held not only to bar the recovery of interest on substantive claims against the Government [citing Smith v. Principi, 281 F.3d 1384 (Fed. Cir. 2002)] but also interest costs incurred on

money borrowed as a result of the Government's breach or delay in payment." 384 F.3d at 1379.

The Court in Contell relied upon J.D. Hedin Constr. Co. v. United States, 456 F.2d 1315, 1329-32 (Ct. Cl. 1972), which held that, like interest on substantive claims against the Government, interest paid on bank loans made because of financial stringency resulting from a breach by the Government of a contract between it and the borrower is not recoverable. See Marshall v. United States, 164 F. Supp. 221, 224 (Ct. Cl. 1958) ("interest on borrowed money is not recoverable in suits against the Government unless it is called for in the contract itself"); Quiman S.A. de C.V. v. United States, 39 Fed. Cl. 171, 187 (1997) (precluding recovery of financing cost on loans allegedly incurred because of Government's contract breach), aff'd, 178 F.3d 1313 (Fed. Cir. 1998) (table).

This longstanding rule is well-settled, having been discussed by the Court of Claims in its decision in Myerle v. United States, 33 Ct. Cl. 1 (1897), more than 100 years ago:

> As to the interest on borrowed money: The delay [in performance that the Government caused] forced the contractor to borrow money to carry on his contract; for this he was forced to pay interest, an extra expense. The recovery of this sum in this court is forbidden by statute: whether it be claimed in the guise of a damage caused by the delay, or in some other form, it remains in fact a claim for interest and such a claim we are prohibited from allowing. The distinction by plaintiff sought to be made, is one of terms only, not of substance. If plaintiff had used his own money and so lost the interest which it might have earned him, the claim would have been as meritorious, but would not have differed in principle from that now made.

Id. at 25.

C. Consumers' Reliance Upon *Wickham* and *TVA* Are Misplaced

In an effort to escape the grasp of Section 2516(a), Consumers misconstrues a line of cases involving Wickham Contracting Co. v. Fisher, 12 F.3d 1574, 1582 (Fed. Cir. 1994), to support the incorrect proposition that "[r]ecovery of financing costs, or other cost of funds damages such as AFUDC, is not recovery of interest." Pl. Br. 5. Contrary to Consumers' suggestion, the Federal Circuit's holding in Wickham does not somehow change the well-settled no-interest rule dating back to Myerle, and Wickham does not support Consumers' claim to recover interest costs as damages.

In Wickham, the Federal Circuit held in the context of equitable adjustments under the "Changes" clause that is contained in most Federal procurement contracts that, "[a]lthough interest on equity capital is not recoverable, a contractor may recover interest actually paid on funds borrowed because of the government's delay in payments and used on the delayed contract," Wickham, 12 F.3d at 1582, reasoning that the "Changes" clause authorizes such a recovery. In short, the "Changes" clause reflects the limited waiver of sovereign immunity required to avoid the no-interest rule. Wickham does not support Consumers' interest claim because, in the Standard Contract, there is no such "Changes" clause or similar provision that would authorize the recovery of interest paid because of a Government breach or delay.[2]

[2] In another SNF case, Northern States Power Co. v. United States, 78 Fed. Cl. 449 (2007), appeal pending, Nos. 2008-5037, 2008-5041 (Fed. Cir. docketed Feb. 11, 2008), the Court questioned the recoverability of interest against the Government, even where a "Changes" clause exists, noting that the Federal Acquisition Regulation ("FAR") does not appear to waive sovereign immunity with respect to "interest on borrowings." Id. at 472 n.16.

In Bell v. United States, 404 F.2d 975, 984 (Ct. Cl. 1968),[3] the Court emphasized that the "Changes" clause was essential to avoiding the prohibition in 28 U.S.C. § 2516(a). The Court explained that the "Department of Defense – which had previously, as a matter of policy, denied interest as a cost under an equitable adjustment – changed its policy to allow interest on borrowings, as part of equitable adjustments under fixed-price contracts." 404 F.2d at 984 (emphasis added). Again, this limited waiver of sovereign immunity, as part of an equitable adjustment in a fixed-price contract, is absent from this case.

Even in situations where a contract clause authorizes such a recovery, any recoverable interest must have been "actually paid on funds borrowed because of the government's delay in payments and used on the delayed contract." Wickham, 12 F.3d at 1582 (emphasis added). Further, the "changed work either must be directly traced to a specific loan or," for contractors whose business practices include a course of borrowing from lending institutions, "a necessity for increased borrowing must be shown to have been required by extra work or delay caused by the government." Gevyn Constr. Corp. v. United States, 827 F.2d 752, 754 (Fed. Cir. 1987) (emphasis added). "In the latter situation, the allowance of interest depend[s] upon a specific showing that the course of borrowing was affected by the change in question, *i.e.*, that apart from the normal borrowing pattern, there was a necessity to borrow specifically due to the change in question." Singer Co. Librascope Div. v. United States, 568 F.2d 695, 718 (Ct. Cl. 1977); see Framlau Corp. v. United States, 568 F.2d 687, 694 (Ct. Cl. 1977) (to recover interest

[3] Although the Federal Circuit's decision in Wickham does not specifically mention the "Changes" clause, it is clear that a "Changes" clause was included in that Federal procurement contract, pursuant to the mandatory language in the Federal Acquisition Regulation ("FAR") that requires the inclusion of that clause in all contracts subject to the FAR. See FAR § 43.205, 48 C.F.R. § 43.205; see also Wickham Contracting Co. v. GSA, GSBCA No. 8675, 92-3 BCA ¶ 25040, 1992 WL 88326, at *1 (GSBCA 1992) (discussing 110 change orders upon which claims were based), aff'd, 12 F.3d 1574 (Fed. Cir. 1994).

on borrowings necessitated by changed work, plaintiff must "prove what part, if any, of its large borrowings were attributable to compensable changes" and that it was "forced to borrow to perform the changed work"). Without a contract clause authorizing the recovery of interest actually paid on loans incurred because of a Government breach or delay, Consumers has no basis for relying upon the reasoning in Wickham to support a claim for interest.[4]

In multiple spent nuclear fuel ("SNF") cases, the Court has denied plaintiffs' claims for interest. In one prior SNF case, Tennessee Valley Authority v. United States, 69 Fed. Cl. 515, 541-42 (2006) ("TVA"), the plaintiff was allowed to recover interest, in the guise of Allowance of Funds Used During Construction ("AFUDC"). However, Consumers never explains in its response brief that, in another SNF case decided one year later, the same judge who decided TVA rejected SNF plaintiffs' claims for cost of capital, cost of debt, and AFUDC. See System Fuels, Inc. v. United States, 79 Fed. Cl. 37, 70 (2007), appeal pending, Nos. 2008-5029, 2008-5035 (Fed. Cir. docketed Jan. 9, 2008). The Court's analysis in System Fuels, although not explicitly overruling TVA, essentially undercuts the rationale of the Court's decision to award AFUDC costs to the plaintiff in TVA.

To the extent that Consumers relies upon TVA for its contention that the claimed interest costs are recoverable, that case was wrongly decided and has not been followed in other SNF cases. In TVA, the Court determined that the plaintiff could recover AFUDC costs based upon its analysis of Wickham. As previously noted, the contract at issue in Wickham involved

---

[4] In the most recent Court decision involving a plaintiff's damages claim for interest costs allegedly incurred because of DOE's delay in SNF acceptance, the Court once again rejected plaintiff's interest claim. In Carolina Power & Light Company and Florida Power Corporation v. United States, No. 04-37C, slip op. at 42 (Fed. Cl. May 19, 2008), the Court noted that, "[a]s Defendant correctly points out, no provision of the Standard Contract, nor the NWPA or any other act of Congress, provides for the payment of interest on damages claims." Id.

a contract clause – the "Changes" clause contained in most Federal procurement contracts – that has been held to authorize recovery of interest on funds borrowed to address a contract change. Nevertheless, without a "Changes" clause or similar contractual provision, the statutory provision barring recovery of interest from the Government, 28 U.S.C. § 2516(a), "and its policy" continue to "apply to demands for damages in 'breach' claims against the United States . . . ." Bell, 404 F.2d at 984.

D. The *Winstar* Cases Cited By Consumers Do Not Support Its Claim For Interest Costs Against The Government

Finally, to the extent that Consumers asserts that "the cost of funds, such as foreseeable financing costs, can be recovered as an element of expectancy damages," or that its interest costs can be recovered as "interest as a claim," Pl. Br. 5 (citing Centex Corp. v. United States, 55 Fed. Cl. 381, 390 (2003), aff'd, 395 F.3d 1283 (Fed. Cir. 2005), Consumers' reliance upon various Winstar cases is misplaced. Consumers, similar to other SNF plaintiffs, has relied upon Westfed Holdings, Inc. v. United States, 52 Fed. Cl. 135 (2002), for the erroneous proposition that interest is recoverable against the Government. Westfed Holdings is one in a series of cases arising out of the passage of the Financial Institution Reform, Recovery, and Enforcement Act ("FIRREA"). The FIRREA cases primarily rely upon Bluebonnet Savings Bank, F.S.B. v. United States, 266 F.3d 1348 (Fed. Cir. 2001), as support for the idea that "interest *on* a claim" may be recoverable. However, Bluebonnet deals with financing costs arising under a contract the purpose of which was to raise financing to infuse cash into an acquired thrift. The Winstar cases should be viewed as a circumstance of a limited waiver of the Government's sovereign immunity, to the extent that interest costs may even be allowed. It does not support the overbroad assertion that "interest on a claim" is generally recoverable absent a contractual or

statutory provision waiving the Government's sovereign immunity, particularly in light of the well-established binding precedent to the contrary.[5]

## II. CONSUMERS' CLAIM FOR ATTORNEY AND EXPERT WITNESS FEES IS MISPLACED AND SHOULD BE REJECTED

### A. Consumers Cannot Recover Attorney and Expert Witness Fees Allegedly Related To This Litigation

The Government's motion for summary judgment concerning Consumers' claim for attorney and expert witness fees should be granted because Consumers has failed to set forth a valid legal basis to recover its claimed fees related to this litigation. Further, Consumers' sweeping and unsupported assertions of the Government's "bad faith" in performing its obligations under the NWPA and Standard Contract are simply insufficient to support its claim and fail to overcome the Government's motion.

As part of its damages claim, Consumers seeks attorney and expert fees pursuant to the "bad faith" exception to the "American Rule" embodied in 28 U.S.C. § 2412(b), the Equal Access to Justice Act ("EAJA"), see Pl. Br. 15-16, which may allow attorney fees "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."

Although the common law "American Rule" is that each party bears its own attorney and expert fees, the Federal Circuit acknowledged that there are several recognized exceptions to the American Rule, one of which allows fee-shifting when the successful party's opponent has acted in bad faith. Centex Corp. v. United States, 486 F.3d 1369, 1370 (Fed. Cir. 2007)

---

5 Consumers' states that, "[a]t the very least, genuine issues of material fact and law exist regarding whether Plaintiff is entitled to recover its financing costs incurred as a direct result of Defendant's breach of the Standard Contract." Pl. Br. 2. To the contrary, as explained above, the Court can grant summary judgment because Consumers' cannot recover these interest costs as a matter of law, even assuming the characterization of these costs as "financing costs."

(citing Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247 (1975) (recognizing the bad faith exception as an "assertion of inherent power in the courts").

Although in its response brief, Consumers sets forth a general description of the American Rule and certain exceptions to the rule, Consumers fails to proffer a cognizable argument as to precisely how the legal authorities cited actually support its claim of bad faith. In short, to recover fees and expenses for "bad faith" conduct pursuant to 28 U.S.C. § 2412(b), Consumers must demonstrate that the Government abused the judicial process. Centex, 486 F.3d at 1369. Consumers' complaint and its response brief lack any allegation or evidence that the Government abused the judicial process.

Examples of "abuse of the judicial process" include abusive litigation practices in connection with court proceedings, such as practicing fraud upon a court or defiling "the very temple of justice." See id. at 1373-74 (citing with approval and parenthetically explaining Chambers v. NASCO, Inc., 501 U.S. 32 (1991), Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980), and Universal Oil Prods. Co. v. Root Ref. Co., 328 U.S. 575 (1946)). The bad faith exception applies to "actions that led to the lawsuit," see Roadway Express, 447 U.S. at 766, but that phrase has been equated with cases where the action is filed in bad faith. See Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc., 976 F.2d 541, 550 n.12 (9th Cir. 1992) (citing Roadway Express, 447 U.S. at 766).

Indeed, the traditional concept of the bad faith exception authorized an award of fees for bad faith in bringing suit or in the course of litigation. See Cordeco Dev. Corp. v. Santiago Vasquez, 539 F.2d 256, 262-63 (1st Cir. 1976). It is questionable whether the imposition of fee awards for wrongful conduct in the events leading to a suit can be reconciled with the rationale that it is the province of Congress to control changes to the American Rule because, subject to

the traditional judicially fashioned exceptions, Federal courts are not free to award fees to litigants except under the authority of a statute. See id. at 263 & n.11 (citing and discussing Alyeska Pipeline Co. v. Wilderness Society, 421 U.S. 240 (1975)).

Consumers appears to argue that the Department of Energy's performance under the NWPA and Standard Contract was carried out in bad faith, in that the Government "unreasonably avoid[ed] its clear obligations under the Standard Contract," Pl. Br. 14, and that the "government's 'obviate obstinacy' in refusing to address its clear legal obligations to take possession of SNF resulted in this litigation." Pl. Br. 16.

However, as the Federal Circuit in Centex explained, fee awards pursuant to 28 U.S.C. § 2412(b) cannot be assessed based solely upon claims of bad faith "primary conduct" that form the basis for the plaintiff's substantive claim for relief. Centex, 486 F.3d at 1372.

To the extent that the Government's performance under the Standard Contract was delayed, and that the Government did not begin SNF acceptance from the nuclear utilities on January 31, 1998, the potential remedy available to the SNF plaintiffs is to recover incremental SNF storage costs incurred because of the delay, to the extent the plaintiffs can establish forseeability, causation, and reasonable certainty for its claimed damages. Consumers appears to argue that the Government's delay under the Standard Contract, and its inability to date to construct a repository or interim storage facility and to accept SNF from the nuclear utilities (examples of the primary conduct addressed in Centex) are evidence of the Government's "bad faith." Consumers' assertions are simply misplaced and do not support the recovery of its claimed fees.

Interestingly, in its response brief, Consumers did not cite Centex Corp. v. United States, 486 F.3d 1369 (Fed. Cir. 2007), yet referenced the underlying Court of Federal Claims

case, Centex Corp. v. United States, 71 Fed. Cl. 40 (2006). The Federal Circuit affirmed the trial court's decision that rejected plaintiff's claim for attorney fees. In Centex, the Federal Circuit held that an award of attorney fees for "bad faith" conduct was not available when the conduct related to the substantive claim of the party seeking fees. The Federal Circuit upheld the trial court's denial of attorney fees sought by plaintiffs, who argued that the Government acted in bad faith both before and after the enactment of the "Guarini Amendment," which eliminated certain favorable tax treatment that plaintiffs received in exchange for acquiring failing thrifts insured by the government. Centex, 486 F.3d at 1371. The Federal Circuit held that the acquirers were not entitled to attorney fees under bad-faith exception to American Rule.

The trial court held that it could not consider Government agents' pre-1993 conduct because it was extrajudicial, meaning it did not implicate the judicial process. Id. Instead, the "primary conduct" of the Government agents in promoting the Guarini Amendment related to the substantive claim of the plaintiffs. Id. at 1371-72. Awarding attorney fees in that instance, according to the trial court, would frustrate the intent of the American Rule to protect a defendant's right to argue a non-frivolous defense to a claim, even if the claim arose from bad faith conduct. Id. at 1372.

In Centex, the Federal Circuit agreed with the Court of Federal Claims that "authorizing a court to shift fees based solely on bad faith conduct that forms the basis for the substantive claim for relief would undermine the American Rule by penalizing a party who raises good faith defenses to claims of liability for bad faith conduct." 486 F.3d at 1372 (emphasis added).

The Federal Circuit supported its conclusion by explaining that, "in doing so, we align ourselves with eight other circuits that have taken the position that fee awards cannot be assessed based on claims of bad faith primary conduct." Id. (citing Zapata Hermanos

Sucesores, S.A. v. Hearthside Baking Co., 313 F.3d 385, 391 (7th Cir.2002) (holding that "behavior in the litigation itself . . . is the only lawful domain of the relevant concept of 'inherent authority'"); Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 765 (10th Cir.1997) ("[A]n award of attorney fees may not be premised solely on prelitigation conduct."); Lamb Eng'g & Const. Co. v. Neb. Pub. Power Dist., 103 F.3d 1422, 1435 (8th Cir. 1997) ("[A court] may not base an [attorney fees] award solely on the conduct that led to the substantive claim."); Ass'n of Flight Attendants v. Horizon Air Indus., Inc., 976 F.2d 541, 550 (9th Cir.1992) ("[N]o federal appellate authority in or out of the Ninth Circuit has clearly approved an order shifting attorney's fees based solely upon a finding of bad faith as an element of the cause of action presented in the underlying suit. We decline to do so."); Sanchez v. Rowe, 870 F.2d 291, 295 (5th Cir. 1989) ("We hold that the requisite bad faith ... may not be based on a party's conduct forming the basis for [the] substantive claim." (emphasis omitted)); Woods v. Barnett Bank of Fort Lauderdale, 765 F.2d 1004, 1014 (11th Cir. 1985) ("Vexatious conduct inherent in the fraudulent acts that make up the 10b-5 cause of action cannot be the basis for an attorney fee award . . ."); Shimman v. Int'l Union of Operating Eng'rs, 744 F.2d 1226, 1230-33 (6th Cir. 1984) ("We therefore hold that the bad faith exception to the American Rule does not allow an award of attorney fees based only on bad faith in the conduct giving rise to the underlying claim."); Cordeco Dev. Corp. v. Santiago Vasquez, 539 F.2d 256, 262-63 (1st Cir. 1976) (disapproving the position that the bad faith exception extends to bad faith in the events giving rise to litigation).

In Centex, 486 F.3d at 1372 n.1, the Federal Circuit also noted out-of-circuit authority for a "broader conception of the bad faith exception to the American Rule" that "the judicial process is abused by a defendant's bad faith response to a claim for relief after the claim

accrues but before the judicial process is formally invoked." The court noted that, "[u]nder that theory, if a defendant forces the plaintiff to go to court to obtain relief to which the plaintiff is clearly entitled, that conduct can be regarded as a type of bad faith for which a court may shift attorney fees." Id. (citing Am. Hosp. Ass'n v. Sullivan, 938 F.2d 216, 220 (D.C. Cir. 1991)).

The Federal Circuit did not endorse that "broader conception;" it stated only that "[t]he trial court noted that it did not need to decide whether that theory is valid."[6] However, even pursuant to the broader conception, Consumers does not demonstrate entitlement to fees under 28 U.S.C. § 2412(b). Consumers has failed to demonstrate that any action of the Government that did not constitute "primary conduct" nevertheless "abused the judicial process."[7] See Centex, 486 F.3d at 1372-74. The Department of Energy's performance under the NWPA and the Standard Contract was the "primary conduct" related to Consumers' damages claim.

---

6 The Centex court also noted that, in Vaughan v. Atkinson, 369 U.S. 527, 528-34 (1962), "the Supreme Court approved an attorney fee award based not on conduct giving rise to the substantive claim but, rather, on the defendant's 'willful and persistent' bad faith treatment of that claim after it accrued." 486 F.3d at 1373. However, the Federal Circuit appeared to distinguish Vaughan upon the ground that, in that case, the Supreme Court "held that attorney fees are recoverable as damages in an admiralty case, a principle that has long been recognized in admiralty law, notwithstanding the applicability of the American Rule in other contexts." See 486 F.3d at 1373; see also Cordeco, 539 F.2d at 263 n.10 ("But Vaughan was subsequently read, Fleischmann Corp. v. Maier Brewing Co., 386 U.S. 714, 718 [] (1967), as a case affirming attorney's fees as compensable damages under traditional admiralty practice.").

7 Maritime Management, Inc. v. United States, 242 F.3d 1326 (11th Cir. 2001), and Brown v. Sullivan, 916 F.2d 492 (9th Cir. 1990), both cited by Consumers, do not support Consumers' bad faith claim, as both relate to actions in litigation. In Maritime Management, the court noted that the Government filed the same incomplete administrative record to the district court as it had to the General Accounting Office, and "[u]ntil the eleventh hour . . . consistently maintained [to the district court] that it had submitted a complete administrative record." See 242 F.3d at 1328, 1333-35. In Brown, the court pointed to agency conduct during agency proceedings upon remand from the district court, including the failure to produce a transcript of an administrative hearing within the time period ordered by the district court and delay in producing documents. 916 F.2d at 496.

Consumers also cites to American Hospital Association to support its claim for attorney fees based upon "bad faith." However, the Federal Circuit in Centex distinguished this case and rejected it as a basis for plaintiff's bad faith claim. American Hospital involved bad faith conduct during the course of litigation, specifically the violation of a court order. In that case, plaintiff filed a complaint against the Department of Health and Human Services ("HHS"). 938 F.2d at 218. In lieu of a preliminary injunction, HHS entered into a stipulation with plaintiff allowing plaintiff's members to continue to bill liability insurers directly for services provided under Medicare. Id. However, despite the existence of the stipulation, the Secretary of HHS published regulations prohibiting hospitals from billing directly the liability insurers. Id. The D.C. Circuit affirmed the district court's finding that the publication of the regulations directly contradicting the stipulation was done in bad faith, which effectively forced the plaintiff to sue again to "enforce the plain legal rights defined by the stipulation." Id. at 220.

In Centex, the Federal Circuit noted, "[m]oreover, even the more general language in American Hospital about the bad faith exception to the American Rule does not support the plaintiffs. Although the court stated that '[b]ad faith in conduct giving rise to the lawsuit' may allow fee-shifting, that statement appears to have referred to a defendant's refusal to accede to a plaintiff's meritorious claim for relief before litigation, not to bad faith primary conduct." 486 F.3d at 1373 (citing Am. Hosp., 938 F.2d at 220).

B. Apart From Lacking A Legal Basis To Recover Its Claimed Fees, Consumers' Broad Assertion That DOE Acted In Bad Faith Lacks Support

Consumers asserts that "Defendant has a long and well-documented history of unreasonably avoiding its clear obligations under the Standard Contract." Pl. Br. 14. In support of its "bad faith" claim, Consumers' response to the Government's motion for summary

judgment references three Department of Energy documents: (1) the June 1985 Mission Plan for the Civilian Radioactive Waste Management Program, (2) the May 25, 1994 Notice of Inquiry published by the Department of Energy ("DOE"), and (3) the May 3, 1995 "Final Interpretation of Nuclear Waste Acceptance Issues" published by DOE. Pl. Br. 14, 17-18. Despite voluminous testimony developed over years of litigation, dozens of depositions of Government officials, and over ten trials in SNF cases, Consumers fails to cite to any deposition or trial testimony, or to submit any affidavits, to address these documents (and DOE activities related to these three documents), despite the substantial testimony available to address and explain the very documents cited in its brief.

Consumers' citation to the 1985 Mission Plan fails to provide support for its bad faith assertion. The 1985 Mission Plan was issued in accordance with the requirements of 42 U.S.C. § 10221 (1982), which was to "provide an informational basis sufficient to permit informed decisions to be made in carrying out the repository program and the research, development, and demonstration programs required under this chapter." 42 U.S.C. § 10221 (1982). In the 1985 Mission Plan, DOE projected for informational purposes that an initial permanent repository would begin operations in 1998 and that a second permanent repository would commence operations in 2006. The schedules contained in the Mission Plan projected annual SNF generation rates from utilities nationwide through 2007 and noted that these schedules were "only an approximation of how the system may operate and is subject to considerable variation. The DOE will further define and specify the system acceptance parameters as the program progresses." The Mission Plan further advised that, "[i]n 1991, the DOE will begin to publish firm waste-acceptance schedules for individual reactors, including shipment allocations." Consumers offered no evidence that the 1985 Mission Plan supports its bad faith claim.

Consumers also references the 1994 Notice of Inquiry and 1995 Final Interpretation in support of its "bad faith" claim. Consumers reference to bad faith appears to rest upon the United States Court of Appeals for the District of Columbia Circuit's holdings that DOE's obligation to accept SNF under the NWPA and Standard Contract was not conditioned upon the existence of a repository or other facility, and that DOE could not excuse its own delay on the grounds that it had not yet prepared a repository or other facility. See Indiana Michigan Power Co. v. Dep't of Energy, 88 F.3d 1272, 1277 (D.C. Cir. 1996); Northern States Power Co. v. United States Dep't of Energy, 128 F.3d 745, 754 (D.C. Cir. 1997). Of course, in neither case did the D.C. Circuit address or raise any issue of "bad faith" on the part of DOE. It is also important to note there has not been a finding of "bad faith" in any of the SNF cases to date to support an award of attorney and expert fees. Consumers is the only plaintiff to assert a claim for attorney and expert fees, and, as such, the only plaintiff to assert such a claim based upon DOE's purported "bad faith."

The D.C. Circuit, in Northern States, did not grant the petitioner's broad request for a writ of mandamus because "the remedial scheme of the Standard Contract offers a potentially adequate remedy," 128 F.3d at 761, and concluded that the "petitioners must pursue the remedies provided in the Standard Contract in the event that DOE does not perform its duty to dispose of the SNF by January 31, 1998. This conclusion, we should note, comports with our decision in Indiana Michigan. Even though we did not enter a remedy at that time, we suggested that the provisions of the Standard Contract would determine the appropriate remedy for the Department's failure to perform its obligations." 128 F.3d at 759. Consumers is now, in fact, pursuing recovery of damages based upon DOE's delay in performance under the Standard

Contract. Neither the Northern States nor Indiana Michigan decision support or reflect any "bad faith" on the part of DOE, and fail to provide support to Consumers' assertion of bad faith.

Moreover, the Federal Circuit has found that, because government officials are presumed to act in good faith in the discharge of their duties, a plaintiff's burden of proof is exceedingly stringent. Spezzaferro v. FAA, 807 F.2d 169, 173 (Fed. Cir. 1986). Accordingly, "[t]o prevail on a claim for breach of good faith and fair dealing, a plaintiff must allege and prove facts constituting a specific intent to injure plaintiff on the part of a government official." Pratt v. United States, 50 Fed. Cl. 469, 478 (2001) (noting that on "summary judgment the court therefore must examine the record for evidence of malice or intent to injure plaintiff as demonstrated by specific acts of bad faith."); Detroit Housing Corp. v. United States, 55 Fed. Cl. 410, 417 (2003) (citing Tornello v. United States, 231 Ct. Cl. 20, 47 (1982) (explaining that, to satisfy the high burden of proof, plaintiff must present "well-nigh irrefragable proof" that the government acted in bad faith). Consumers' complaint and response lack any evidence of malice or intent to injure, and nothing in the record demonstrates that the government acted in bad faith.

To refute the Government's evidence on summary judgment, Consumers was required to provide, at a minimum, evidence through declaration detailing facts refuting the Government's motion and proposed findings of uncontroverted fact. Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984). As the United States Supreme Court has explained, "the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1992). Further, "it is

well settled that 'a conclusory statement on the ultimate issue does not create a genuine issue of fact.'" Applied Cos. v. United States, No. 97-5085, 1998 WL 265529, at 3 (Fed. Cir. May 27, 1998) (emphasis in original), quoting Imperial Tobacco Ltd. v. Philip Morris, Inc., 899 F.2d 1575, 1581 (Fed. Cir. 1990).

If Consumers had evidence to introduce, it should have introduced it. Conclusory statements that other evidence exists are simply not sufficient to preclude summary judgment. Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987); Levi Strauss & Co. v. Genesco, Inc., 742 F.2d 1401, 1404 (Fed. Cir. 1984) ("Argument and assertion of counsel cannot substitute for factual statements under oath that establish a genuine material issue of fact.").[8] Statements of counsel could not create a material issue of genuine fact precluding summary judgment in the Government's favor.

8 See Avenal v. United States, 33 Fed. Cl. 778, 784 (1995) ("assertions of counsel cannot substitute for factual statements under oath that establish a genuine issue of material fact"), aff'd, 100 F.3d 933 (Fed. Cir. 1996); Hoch v. United States, 31 Fed. Cl. 111, 114 (1994) (counsel's assertions regarding fact at issue are insufficient to preclude summary judgment).

## CONCLUSION

For the reasons outlined above, the Government respectfully requests that the Court enter judgment in the Government's favor upon Consumer's claims for recovery for interest and for attorney and expert witness fees against the Government in this case.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER JR.
Assistant Director

s/Scott R. Damelin
SCOTT R. DAMELIN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department Of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-2312
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
Office of General Counsel
1000 Independence Ave., S.W.
Washington, D.C. 20585

MARIAN E. SULLIVAN
Senior Trial Counsel

JOSEPH E. ASHMAN
STEPHEN P. FINN
SHARON SNYDER
Trial Attorneys
Commercial Litigation Branch
U.S. Department of Justice

August 21, 2008

CERTIFICATE OF FILING

I hereby certify that on this 21st day of August, 2008, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR INTEREST AGAINST THE GOVERNMENT AND FOR ATTORNEY AND EXPERT FEES RELATED TO THE LITIGATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Scott R. Damelin