# In the United States Court of Federal Claims

No. 02-1894 C
(Filed: September 30, 2008)

*********************************************
\*
**CONSUMERS ENERGY COMPANY**,     \*
                                      \*     Fifth Amendment; takings;
                      Plaintiff,     \*     motion to dismiss; RCFC
                                      \*     12(b)(6).
\*
    v.     \*
\*
**THE UNITED STATES,**     \*
\*
                      Defendant.     \*
\*
*********************************************

*Thomas Owen Mason*, Williams, Mullen, Clark & Dobbins, McLean, VA, for Plaintiff, with whom was *Jeffrey S. Theuer*, Loomis, Ewert, Parsley, Davis & Gotting, P.C., Lansing, MI; of counsel were *James E. Brunner, Arunas T. Udrys*, Consumers Energy Company, Jackson, MI, *Harvey J. Messing*, Miller, Canfield, Paddock & Stone, PLLC, Lansing, MI.

*Scott Randy Damelin*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., counsel of record for Defendant, with whom were *Peter D. Keisler*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Harold D. Lester, Jr.*, Assistant Director, United States Department of Justice, Washington, D.C.; of counsel were *Jane K. Taylor*, Office of General Counsel, United States Department of Energy, Washington, D.C., *Stephen Finn* and *Joshua E. Gardner*, Trial Attorneys, United States Department of Justice, Washington, D.C.

---

**OPINION**

---

**DAMICH, Chief Judge.**

**I.     INTRODUCTION**

       This matter is one of several concerning a standardized contract ("the Standard Contract") between nuclear utilities and the United States Department of Energy ("DOE") for disposal of spent nuclear fuel ("SNF") and/or high-level radioactive waste ("HLW"). Plaintiff, Consumers Energy Company ("Consumers Energy"), entered into the Standard Contract with DOE on June

3, 1983. Pursuant to the Standard Contract, DOE was to commence acceptance of SNF and HLW not later than January 31, 1998. As of today, DOE has not yet accepted any SNF or HLW.

On December 16, 2002, Consumers Energy filed a four-count complaint against Defendant, the United States ("the Government"). On July 1, 2003, Count IV, which alleged an illegal extraction of SNF storage costs, was dismissed. Of Consumers Energy's remaining counts, Count I alleges a partial material breach by DOE, Count II asserts that DOE breached its implied covenant of good faith and fair dealing, and Count III claims a taking of its vested contract rights and real property without just compensation.

On April 29, 2005, this Court granted summary judgment in favor of Consumers Energy on the issue of contractual liability. All that remains before the Court is a determination of damages. Currently, before the Court is the Government's renewed motion to dismiss Count III (takings claim) of Consumers Energy's complaint. The Court, having previously held that the Government is liable for its breach of the Standard Contract, holds that Count III–taking without just compensation–does not state a claim upon which relief can be granted; therefore, the Government's motion to dismiss is GRANTED.

## II.     BACKGROUND

On January 7, 1983, Congress enacted the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. §§ 10101-10270 (1982). The NWPA authorized DOE "to enter into contracts with any person who generates or holds title to [HLW] or [SNF] of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel." *Id*. § 10222(a)(1). Pursuant to the NWPA, DOE drafted the Standard Contract[1] providing for the Government's acceptance, transportation, storage, and disposal of SNF and HLW, the costs of which would be borne by the "generators and owners" thereof. *Id*. § 10131(b)(4).

Consumers Energy is a utility company organized and incorporated in Michigan. Compl. ¶ 3. At the time its complaint was filed it owned the shut-down Big Rock Point Nuclear Plant ("Big Rock") in Charlevoix, Michigan and the operating Palisades Nuclear Plant ("Palisades") located near Covert, Michigan. *Id*. Big Rock's SNF is held in on-site dry cask storage and Palisades stores its SNF in its spent fuel pool and in on-site dry storage. *Id*.

After Consumers Energy filed its four-count complaint, the Government then filed a motion to dismiss Consumers Energy's takings (Count III) and illegal extraction (Count IV) claims. Mot. to Dismiss Counts III and IV (Jan. 3, 2003). Briefing on this motion was completed on March 24, 2003. The Court dismissed Consumers Energy's illegal extraction claim (Count IV) on July 1, 2003. *Consumers Energy Co. v. United States*, 57 Fed. Cl. 278

---

[1]"Standard Contract for the Disposal of Spent Nuclear Fuel And/Or High-Level Radioactive Waste," published at 10 C.F.R. § 961.11.

(2003).[2]

Subsequently, the Court found that DOE was liable for partial breach of the Standard Contract and the parties began settlement negotiations. *Consumers Energy Co. v. United States*, 65 Fed. Cl. 364, 373-75 (2005). While the parties attempted to settle this matter the case was stayed. Order (June 9, 2005). At the parties' request, the stay was lifted on June 9, 2006, and a schedule set for discovery on damages. Order (June 9, 2006). On August 9, 2007, the Government filed the instant renewed motion to dismiss Count III (takings). Initial briefing was complete on September 26, 2007; however, upon review the Court determined that supplemental briefing was required. Order for Supplemental Briefing (Feb. 8, 2008). Supplemental briefing was completed on March 7, 2008.

## III.   DISCUSSION

### A.   Standard of Review

The Rules of the United States Court of Federal Claims ("RCFC") allow for dismissal upon a motion for "failure to state a claim upon which relief can be granted . . . ." RCFC 12(b)(6). Here, the threshold issue under RCFC 12(b)(6) is whether Consumers Energy has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (applying Fed. R. Civ. P. 12(b)(6), which is identical to RCFC 12(b)(6)). When evaluating a motion to dismiss the "unchallenged allegations of the complaint should be construed favorably to the pleader." *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The Court must not dismiss a complaint unless it is beyond doubt that a plaintiff can prove no set of facts that would allow for relief. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654 (1999) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

### B.   Takings Law

Any analysis in a case that alleges a taking must begin with the Fifth Amendment, which provides that private property shall not "be taken for public use, without just compensation." U.S. CONST. amend. V. To allege a taking a plaintiff must possess a valid property right affected by government action that purportedly constitutes a taking. *Karuk Tribe of Cal. v. Ammon*, 209 F.3d 1366, 1374 (Fed. Cir. 2000). Because there is no dispute regarding Consumers Energy's ownership of Big Rock Point Nuclear Plant and Palisades Nuclear Plant, this Court is left to

---

[2]The Court only dismissed Count IV, the illegal extraction claim, because on April 16, 2003, six "lead" or "accelerated" cases where identified for resolution of cross-cutting dispositive motions. *Consumers Energy*, 57 Fed. Cl. at 279. The remaining cases were stayed unless affirmatively ordered to proceed by the presiding judge. *Id*. The Court decided to proceed with the motion to dismiss the illegal extraction claim. *Id*. The motion to dismiss the takings claim (Count III) was stayed.

determine if Consumers Energy's property right has been affected by the government such that a taking has actually occurred.³ *Id*.

According to Consumers Energy's two theories of recovery in Count III, DOE's failure to begin acceptance of SNF not later than January 31, 1998, as required by the Standard Contract, constitutes a taking of Consumers Energy's vested contract rights, on the one hand, and its real property, on the other. Compl. ¶ 42. Based on a review of binding precedent, Consumers Energy's allegations of a taking of its vested contract rights and real property must be dismissed. *Strickland v. United States*, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005) (citing *Crowley v. United States*, 398 F.3d 1329, 1335 (Fed. Cir. 2005) (noting that the U. S. Court of Federal Claims is required to follow precedent from the U.S. Court of Appeals for the Federal Circuit)).

### 1. Taking of a vested contract right

According to Consumers Energy, it "obtained a vested contract right to have DOE accept, transport and dispose of SNF in accordance with the terms of the Contract," and DOE's breach of the Standard Contract resulted in a taking of this vested contract right. Pl.'s Resp. at 8-9. Pursuant to the Standard Contract, Consumers Energy does have a right to have its SNF and/or HLW accepted, transported and disposed of by DOE beginning not later than January 31, 1998. *Consumers Energy*, 65 Fed. Cl. at 373-75. The Court holds, however, that Consumers Energy cannot claim as a matter of law a taking of this vested contract right.

Count I and Count II of Consumers Energy's complaint are based on the breach of the Standard Contract. According to *Castle v. United States*, 301 F.3d 1328, 1342 (Fed. Cir. 2002), where plaintiffs retain the full range of remedies associated with a cause of action for breach of contract, any breach of contract does not constitute a taking. ("We agree with the Court of Federal Claims that the plaintiffs retained the full range of remedies associated with any contractual property right they possessed. Consequently, we hold that even assuming the enactment and enforcement of FIRREA [Financial Institutions Reform, Recovery, and Enforcement Act of 1989] breached a contract the government had with Castle and Harlan, it did not constitute a taking of the contract."). The U.S. Court of Appeals for the Federal Circuit has consistently reiterated this principle. *La Van v. United States*, 382 F.3d 1340, 1351-52 (Fed. Cir. 2004) ("[T]his court ruled

---

³Big Rock Nuclear Plant is located in Charlevoix, Michigan and Palisades Nuclear Plant is near Covert Michigan. Pl.'s Resp. at 5. In answering Consumers Energy's complaint the Government denied the description of Consumers Energy's assets "for lack of knowledge and information sufficient to form a belief as to their truth." Am. Answer ¶ 3. The Court has previously accepted these descriptions of Consumers Energy's property as true in dismissing its illegal extraction claim. *Consumers Energy*, 57 Fed. Cl. at 279. On April 11, 2007, Consumers Energy sold the Palisades Nuclear Power Plant and the Big Rock Independent Spent Fuel Storage Installation to Entergy Nuclear Palisades, LLP. Pl.'s Resp. at 5. The Government filed a motion for joinder of Entergy Nuclear Palisades on June 25, 2008. Briefing on the motion was completed on August 29, 2008.

against the takings claim because 'the plaintiffs retained the full range of remedies associated with any contractual property right they possessed.'" (internal citations omitted)).[4]  At least three SNF plaintiffs have voluntarily withdrawn claims for a taking of vested contract rights apparently based on the decision of the Federal Circuit in *Castle*.  See *Omaha Pub. Pwr. Dist. v. United States*, 69 Fed. Cl. 237, 239 n.2 (2005); *Detroit Edison Co. v. United States*, 56 Fed. Cl. 299, 301 (2003);  *Commonwealth Edison v. United States*, 56 Fed. Cl. 652, 654 n.4 (2003).

Not only does Consumers Energy retain the full range of remedies associated with its breach of contract action, the Government has already been found liable for its breach of the Standard Contract.  *Consumers Energy*, 65 Fed. Cl. at 373-75.  Discovery on the issue of damages is scheduled to conclude in May 2009, and this matter will proceed to trial to determine an award of damages, if any, shortly thereafter.  Therefore, Consumers Energy's vested contract rights have not been taken.  Based on the binding precedent articulated above, the portion of Count III of Consumers Energy's complaint that alleges a taking of its vested contract rights shall be dismissed pursuant to RCFC 12(b)(6).

### 2. Taking of real property

A direct government appropriation or physical invasion of private property effects a taking in its most basic form.  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005) (citing *United States v. Pewee Coal Co.*, 341 U.S. 114 (1951) (holding that the federal government's seizure and operation of a coal mine to prevent a coal miners' strike constituted a taking)).  There may also be a regulatory taking.  *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922) (explaining that government regulation of private property may sometimes be so burdensome that it is the same as a direct appropriation).  Regulatory takings are further subdivided into categorical (or per se) takings and non-categorical.  *Lingle*, 544 U.S. at 538.  Regarding its real property, according to Consumers Energy, this case involves both a categorical and a non-categorical regulatory taking.  Pl.'s Resp. at 11.

There are two types of categorical takings.  *Lingle*, 544 U.S. at 538.  In the first type, if a regulation subjects a property owner to a permanent physical invasion of property, no matter how minimal, the government must provide just compensation.  *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) (holding that a New York state law requiring the owner of an apartment building to allow the installation of cable equipment on the building, which amounted to a few wires and a small box on the roof, constituted a taking).  Consumers Energy alleges that "the applicable regulatory requirements since 1983 prevented [it] from removing SNF from its

---

[4]Regarding the *Castle* decision, the U.S. Court of Appeals for the Federal Circuit has specifically stated that it "has consistently reaffirmed this binding precedent." *La Van*, 382 F.3d at 1352 (citing *F.D.I.C. v. United States*, 342 F.3d 1313, 1320 (Fed. Cir. 2003) ("This panel, however, is bound by *Castle* and cannot overrule it."); *Bailey v. United States*, 341 F.3d 1342, 1347 (Fed. Cir. 2003) ("There was no 'regulatory taking because Bailey . . . was not deprived of a contractual remedy for the government's breach to recover the thrift's assets'")).

facilities except under the procedures contained in the NWPA." Pl.'s Resp. at 12. In essence, with regard to the first type of categorical taking, Consumers Energy alleges that because of the regulations contained in the Nuclear Waste Policy Act, SNF cannot be removed from approximately 103 acres at the Big Rock site and the Palisades site, thereby resulting in a permanent physical invasion.

Under the second type of categorical taking, unless "background principles or nuisance and property law" apply, the government must also justly compensate a property owner for imposing regulations that completely deprive the owner of "all economically beneficial us[e]" of property. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1026-32 (1992). Consumers Energy maintains that it is the existence of SNF on the 103 acres at Big Rock site and the Palisades site, as required by the NWPA, that has prevented Consumers Energy from making valuable economic use of its real property, resulting in the second type of categorical taking. Compl. ¶¶ 44, 45; Pl.'s Resp. at 12.

Non-categorical takings fall short of eliminating all economically beneficial use of property. *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001). In reviewing a non-categorical takings claim a court must look to (a) a regulations economic impact on the property owner, (b) the extent to which a regulation interferes with the owner's distinct investment-backed expectations, and (c) the regulations character. *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). Consumers Energy's alternative allegations of a non-categorical taking state that "[e]ven if it were assumed that some marginal economic use remained for the real property presently occupied by SNF, the economic impact and interference with reasonable investment-backed expectations resulting from the regulatory scheme imposed by the NWPA supports a takings claim." Pl.'s Resp. at 13. Consumers Energy also contends that a non-categorical taking has occurred based on the diminished value of the real property it still owns which is adjacent to the Big Rock SNF storage site. Pl.'s Suppl. Br. at 4, 9.

Consumers Energy attempts to maintain its takings claim by alleging both a categorical and non-categorical taking of its real property rights independent of the Standard Contract. Pl.'s Resp. at 20. According to Consumers Energy due to the NWPA it has been forced to "dedicate its' real property to storage of SNF." Pl.'s Suppl. Br. at 2. It is this dedication of its real property to the storage of SNF that, according to Consumers Energy, has resulted in a categorical taking. Further, Consumers Energy alleges that the diminished value of its property adjacent to the Big Rock site is a non-categorical taking. However, even construing all allegations in the complaint, including the factual support for both the categorical and non-categorical taking, favorably to Consumers Energy, the second portion of Count III, the taking of its real property must be dismissed.

The Court's analysis is similar to the one employed regarding the taking of vested contract rights. The Federal Circuit has repeatedly emphasized that a takings claim has limited application when the rights and obligations of the parties have been created by contract, as they have been here. *Hughes Communications Galaxy, Inc. v. United States,* 271 F.3d 1060, 1070 (Fed. Cir.

2001) (quoting *Sun Oil Co. v. United States,* 215 Ct. Cl. 716, 572 F.2d 786, 818 (1978) ("[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim.")); see also *St. Christopher Assocs., L.P. v. United States*, 511 F.3d 1376, 1385-86 (Fed. Cir. 2008); *Bailey v. United States*, 53 Fed. Cl. 251, 256-57 (2002) (Damich, C.J.), *aff'd*, 341 F.3d 1342 (Fed. Cir. 2003). When rights exist independent of a contract the remedies should not be restricted to contract remedies. *See Integrated Logistics Support Sys. Int'l, Inc. v. United States,* 42 Fed. Cl. 30, 34-35 (1998). Here, however, Consumers Energy has no rights to the removal of HLW and/or SNF apart from the Standard Contract.

Consumers Energy's allegation of a taking of real property must be dismissed because the claim is wholly dependent on the Standard Contract and as a matter of law is properly enforced through contract remedies. *Castle*, 301 F.3d at 1342; *La Van*, 382 F.3d at 1340, 1351-52 ("[T]his court ruled against the takings claim because the 'plaintiffs retained the full range of remedies associated with any contractual property right they possessed.'" (internal citations omitted)). Prior to the enactment of the NWPA, which authorized the Standard Contract, utility companies were responsible for the storage of SNF. It was in recognition of the accumulation of SNF and the potential problems that this created that Congress enacted the NWPA "to establish the Federal responsibility, and a definite Federal policy, for the disposal of such waste and spent fuel." 42 U.S.C. § 10131 (b)(2).[5] Before 1983 the government had no obligation to dispose of HLW or SNF. This obligation was created upon the signing of the Standard Contract.[6]

---

[5]Specifically, "the Federal Government has the responsibility to provide for the permanent disposal of high-level radioactive waste and such spent fuel as may be disposed of in order to protect the public health and safety and the environment, the costs of such disposal should be the responsibility of the generators and owners of such waste and spent fuel." 42 U.S.C. § 10131(a)(4).

[6]This is not the first time this Court has held that the NWPA was a "prescription to undertake a contractual duty." In dismissing Consumers Energy's illegal extraction claim, this Court stated:

> While the Court recognizes that the NWPA stipulated the essential terms of the Standard Contract, nevertheless the Act is explicit that the Government's obligation to assume responsibility for storage and disposal of SNF 'beginning not later than January 31, 1998,' was pursuant to '*Contracts* entered into under this section . . .' § 10222(a)(5) (emphasis added). Plaintiff thus has it backwards: rather than the Standard Contract being a recitation of statutory duty, the statute is a prescription to undertake a contractual obligation.

*Consumers Energy Co. v. United States*, 57 Fed. Cl. 278, 280-81.

This court finds very significant the fact that contractual liability has already been determined in this case, so that there is no question of the viability of the contract claim. There is only one SNF case in the Court of Federal Claims in which the court denied the Government's motion to dismiss the takings claim *after* the Government's contractual liability for partial breach of the Standard Contract had been determined, namely, *System Fuels, Inc. v. United States*, 65 Fed. Cl. 163, 172-73 (2005).

In *System Fuels*, Judge Charles F. Lettow based his decision to allow the takings claim to be maintained on his reasoning in an earlier SNF case, *Boston Edison,* although in that case, unlike *System Fuels*, contractual liability had not been determined when the takings claim issue arose. *System Fuels*, 65 Fed. Cl. 167, 172 (citing *Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 187-88). Judge Lettow also cited *Cienega Gardens v. United States,* 331 F.3d 1319, 1345, 1354-55 (Fed. Cir. 2003), *Prudential Ins. Co. of Am. v. United States,* 801 F.2d 1295, 1300 n. 13 (Fed. Cir. 1986), and *Integrated Logistics Support Sys. Int'l, Inc. v. United States,* 42 Fed. Cl. 30, 34-35 (1998). *Cienega Gardens* and *Prudential* are Federal Circuit decisions binding on this court. In *Cienega Gardens*, however, the issue was not a breach of contract claim versus a takings claim. Rather, Congress had *abrogated* a term of a contract and, therefore, the Government was liable for a taking. *Cienega Gardens*, 331 F.3d at 1353 ("These property interests were expressly and deliberately abrogated by ELIHPA [Emergency Low Income Housing Preservation Act] and LIHPRHA [Low-Income Housing Preservation and Resident Homeownership Act]."). In *Prudential*, although the court did not discuss the issue of contract versus takings, in two footnotes it seemed to accept that both claims could be maintained. *Prudential Ins. Co. of Am.*, 801 F.2d 1295, 1296 n.4, 1300 n.13. But in *Prudential*, the Government was holding over on a lease and in actual possession of the Plaintiff's property. *Id*. at 1296. In *Integrated Logistics*, a Court of Federal Claims case, Judge Christine O.C. Miller discussed and clearly held that in the context of a government contract a takings claim could be maintained as well as the breach of contract claim, but the court had not yet determined that a breach of contract occurred. *Integrated Logistics Support Sys. Int'l, Inc.,* 42 Fed. Cl. 30 (1998).

Two other Court of Federal Claims cases, while not exactly on all fours with the case at bar, nevertheless, bear mention, namely, *Sacramento Mun. Util. Dist. v. United States*, 63 Fed. Cl. 495 (2005) (*SMUD*), and *Consol. Edison Co. of N.Y., Inc. v. United States*, 67 Fed. Cl. 285 (2005). In *SMUD*, Judge Susan G. Braden denied the Government's motion to dismiss the takings claim in an SNF case *prior to* a finding of liability. *Sacramento Mun. Util. Dist. v. United States,* 61 Fed. Cl. 438, 443 (2004). But later, in the opinion granting plaintiff's motion for entry of an order that the Government was liable for breach of the Standard Contract, the court returned to the question of the viability of the takings claim, discussing it in terms of standing, an issue that was raised *sua sponte*. *Sacramento Mun. Util. Dist. v. United States*, 63 Fed. Cl. 495, 500-01 (2005) ("To date, the Government has not made an effort to challenge SMUD's standing. Nevertheless, since standing is a component of jurisdiction that the court has authority to raise *sua sponte,* the issue will be addressed . . . . [T]he court also will address SMUD's standing to pursue claims under the Takings Clause of the Fifth Amendment of the United States Constitution."). The court held that the plaintiff had standing to pursue its takings claim, relying on *Cienega Gardens, Lynch*

*v. United States,* 292 U.S. 571 (1934), and *United States Trust Co. of N.Y. v. New Jersey,* 431 U.S. 1 (1977). As in *Cienega Gardens,* however, *Lynch* and *U.S. Trust* concerned the legislative abrogation of a contract term, not a mere breach of a contract. *Cienega Gardens*, 331 F.3d at 1353; *Lynch,* 292 U.S. at 579; *United States Trust Co. of N.Y.,* 431 U.S. at 19 & n.17.

The court in *Consolidated Edison* denied the Government's motion to dismiss Plaintiff's complaint that alleged that the government partially breached the Standard Contract in violation of the implied covenant of good faith and fair dealing, in the same opinion that it maintained the takings claim. Thus, the court did not hold that the Government had breached the Standard Contract. *Consol. Edison Co. of N.Y., Inc. v. United States*, 67 Fed. Cl. 285 (2005). In this opinion, in addition to *Cienega Gardens, Prudential* and *Integrated Logistics* cases, Judge Lettow also cited *Lion Raisins*. *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1370 (Fed. Cir. 2005). The *Lion Raisins* case, however, as *Cienega Gardens*, concerns abrogation of a contract term, not a breach of contract claim. *Id*. ("Because Lion's takings claim was premised on the allegations that the RAC [Raisin Administrative Committee] violated the statute and regulations, the Court of Federal Claims properly dismissed the complaint. We note that this is not a case in which the plaintiffs claim to have a contractual right in the maintenance of a particular calculation of net proceeds. If the party asserting the taking has contracted with the federal government, the contract itself may be a cognizable property interest that, if abrogated by legislation or regulatory action, may form the basis of a takings claim.").

In deciding a motion to dismiss after the Government has been found to be liable under a contract, this Court does not find the reasoning in *System Fuels* to be persuasive. Instead, the court is attracted to the reasoning in *Commonwealth Edison*. After finding the Government liable for a partial breach of the Standard Contract, the takings claim was dismissed. *Commonwealth Edison Co. v. United States,* 56 Fed. Cl. 652, 656 (2003). In *Commonwealth Edison*, Judge Emily C. Hewitt opined: "[A]bsent the contract, plaintiff would have been obligated to conduct the same or similar storage activities that it now asserts create a takings claim. The court finds that plaintiff's claim for a taking is dependent upon the existence of the Standard Contract and therefore plaintiff's rights are enforceable through a contract remedy." *Commonwealth Edison Co.,* 56 Fed. Cl. at 656.

There is no question that at the time of the filing of its complaint SNF and/or HLW were stored on Consumers Energy's real property, but, in the absence of the execution of the Standard Contract in 1983, Consumers Energy would likely be in exactly the same predicament as it is today–storing SNF on its real property. The difference, there would be no claim for damages due to DOE's breach of the Standard Contract pending before this Court. Consumers Energy simply does not point out how it would be able to maintain this action absent DOE's execution and subsequent breach of the Standard Contract.[7] Because Consumers Energy's claims regarding a

---

[7]Consumers Energy does attempt to base its regulatory and non-regulatory takings claim on the argument that the provisions of the NWPA restrict its ability to independently dispose of SNF. The Court is not convinced that the NWPA so limits Consumers Energy and even if it did any claim based on the provisions of the NWPA, which was enacted in 1983, would be barred by

taking of its real property are predicated on the Standard Contract and are enforceable through contract remedies this portion of Count III must be dismissed.

**IV.     CONCLUSION**

It is based on binding precedent that this Court has held that Consumers Energy's claim of a taking of its vested contract rights and real property shall be dismissed. The Court GRANTS Defendant's Renewed Motion to Dismiss Count III of Plaintiff's Complaint.

 

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge

---

the six-year statute of limitations.  *See* 28 U.S.C. § 2501; *Steel Improvement & Forge Co. v. United States*, 174 Ct. Cl. 24, 29-30 (1966) (holding that a "cause of action for an unconstitutional taking accrues at the time the taking occurs").