# In the United States Court of Federal Claims

No. 02-1894 C

(Filed: November 26, 2008)

```
*************************************************
                                            *
CONSUMERS ENERGY COMPANY,                   *          Motion for summary
                                            *          judgment; RCFC 56;
                     Plaintiff,             *          28 U.S.C. § 2516; interest;
                                            *          attorney and expert fees.
                                            *
          v.                                *
                                            *
THE UNITED STATES,                          *
                                            *
                     Defendant.             *
                                            *
*************************************************
```

*Thomas Owen Mason*, Williams, Mullen, Clark & Dobbins, McLean, VA, for Plaintiff, with whom were *Jeffrey S. Theuer*, Loomis, Ewert, Parsley, Davis & Gotting, P.C., Lansing, MI, and *Harvey J. Messing*, Miller, Canfield, Paddock & Stone, PLLC; of counsel were *James E. Brunner* and *Arunas T. Udrys*, Consumers Energy Company, Jackson, MI.

*Scott Randy Damelin*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., counsel of record for Defendant, with whom were *Gregory G. Katsas*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Harold D. Lester, Jr.*, Assistant Director, United States Department of Justice, Washington, D.C.; of counsel were *Jane K. Taylor*, Office of General Counsel, United States Department of Energy, Washington, D.C., and *Stephen Finn*, Trial Attorney, United States Department of Justice, Washington, D.C.

---

## OPINION

---

**DAMICH, Chief Judge**

## I.      INTRODUCTION

On January 7, 1983, Congress enacted the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. §§ 10101-10270 (1982), which authorized the United States Department of Energy ("DOE") "to enter into contracts with any person who generates or holds title to high-level radioactive waste [HLW], or spent nuclear fuel [SNF], of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel." *Id.* § 10222(a)(1).

Pursuant to the NWPA, DOE drafted the Standard Contract[1] providing for the Government's acceptance, transportation, storage, and disposal of SNF and HLW, the costs of which would be borne by the "generators and owners" thereof.  *Id.* § 10131(b)(4).  Plaintiff, Consumers Energy Company ("Consumers Energy"), entered into the Standard Contract with DOE on June 3, 1983. DOE was required by the Standard Contract to commence acceptance of SNF and/or HLW not later than January 31, 1998.  As of today, DOE has not yet accepted any SNF or HLW.

Currently before the Court is the Government's motion for summary judgment on Consumers Energy's claims for interest and attorney and expert fees.  This Court holds that Consumers Energy is impermissibly seeking interest on a claim against the United States in contravention of 28 U.S.C. § 2516(a).  Additionally, this Court holds that Consumers Energy's claim for attorney and expert fees is not permitted under binding case law.  For the reasons set forth below, the Government's motion for partial summary judgment is GRANTED.

## II.   BACKGROUND

Consumers Energy is a utility company organized and incorporated in Michigan.  Compl. ¶ 3.  At the time the complaint was filed Consumers Energy owned the shut-down Big Rock Point Nuclear Plant ("Big Rock") in Charlevoix, Michigan and the operating Palisades Nuclear Plant ("Palisades") located near Covert, Michigan.  *Id.*  Big Rock's SNF is held in on-site dry cask storage and Palisades stores its SNF in its spent fuel pool and in on-site dry cask storage. *Id.*

On April 29, 2005, this Court found DOE liable for partial breach of the Standard Contract; therefore, the only remaining issue before the Court is a determination of damages. *Consumers Energy Co. v. United States*, 65 Fed. Cl. 364, 375 (2005).  According to the instant motion for partial summary judgment, Consumers Energy's claim for an additional $17.6 million for "time price differential dollars" is prejudgment interest which is prohibited by statute.  Def.'s Mot. at 3-4.  Consumers Energy counters that it is claiming the financing costs incurred to construct and operate the Independent Spent Fuel Storage Installations (ISFSI) and to fabricate and load dry storage casks.  Pl.'s Resp. at 3.  The parties also dispute whether or not Consumers Energy is entitled to claim attorney and expert fees as damages.  Def.'s Mot. at 4; Pl.'s Resp. at 4.

The damages at issue are found in Consumers Energy's expert report by James M. Speyer of CRA International, Inc.  Def.'s Mot. App. A (Speyer Rep.).  According to Mr. Speyer, because DOE did not commence acceptance of SNF on or before January 31, 1998, Consumers Energy has incurred increased costs at both Big Rock and Palisades.  *Id.* at A5; Defendant's Proposed Findings of Uncontroverted Fact ("DPFUF") ¶ 1.

As a result of DOE's partial breach, Mr. Speyer concluded that Consumers Energy incurred increased costs through April 11, 2007, of $145.7 million in as-spent dollars and $163.3

---

[1]"Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste," published at 10 C.F.R. § 961.11.

million in time price differential dollars.  Speyer Rep. at A5, A6; DPFUF ¶¶ 1, 2.  It is the methodology used to calculate time price differential dollars, as well as the underlying reason for the calculation, that are essential to this Court in deciding the instant motion.

As-spent dollars were calculated by determining the difference between Consumers Energy's cash flows in the "no-breach" world and "breach" world.  Speyer Rep. at A7; DPFUF ¶ 5.  The as-spent dollars were then converted to time price differential dollars by "restat[ing] . . . as-spent dollars *by adjusting for inflation* using the GDP implicit price deflator indices published by the U.S. Government."  Speyer Rep. at A7 (emphasis added).  Mr. Speyer converted as-spent dollars into time price differential dollars to "place [Consumers Energy] in the same financial position that it would have been in had the breach of contract not taken place."  *Id*. at A6.  Mr. Speyer's further explains that time price differential dollars "account for the fact that the plaintiff would not receive compensation until after the time it has incurred the damages."  *Id*. at A7; DPFUF ¶ 6.  Notably, there is no information regarding any borrowing in Mr. Speyer's report.  Consumers Energy's calculation of time price differential dollars is simply as-spent dollars adjusted for inflation by Mr. Speyer to account for the fact that Consumers Energy would not receive a judgment, if any, until after it incurred its expenses.  Speyer Rep. at A7.  Included in Consumers Energy's damages are attorney and expert fees. *Id*. at A12, A26.  Like his increased cost calculations, Mr. Speyer also calculates attorney and expert fees in both as-spent and time price differential dollars.  *Id*. at A25, A26.  Mr. Speyer also "reserve[s] the right to adjust the price-differential dollars to the date of trial" because time price differential dollars could only be calculated up to the first quarter of 2008–the last quarter the Government published GDP price deflator data prior to the filing of the expert report.  *Id*. at A7, A8.

## III.   DISCUSSION

### A.   Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Rule 56(c)(1) of the Rules of the United States Court of Federal Claims ("RCFC"); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) ("Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").[2]  The Court's function is not to weigh the evidence, but rather to determine whether there is a genuine issue as to a material fact that would necessitate trial. *Id*. at 249.  "A material fact is one that might affect the outcome of the litigation." *Agwiak v. United States*, 64 Fed. Cl. 203, 208 (2005) (citing *Anderson*, 477 U.S. at 248).  Such a genuine issue of material

---

[2]RCFC 56 was amended on November 3, 2008, after the parties completed briefing on this motion.  According to the Rules Committee Notes, "[t]he language of RCFC 56 has been amended to conform to the general restyling of the FRCP [Federal Rules of Civil Procedure]."  The changes to RCFC 56 had no effect on the disposition of the Government's pending motion.

fact exists if the evidence is such that a reasonable trier of fact could find for the non-moving party. *Anderson*, 477 U.S. at 248. The party seeking summary judgment may prevail by demonstrating the absence of issues of material fact or by showing the absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the burden shifts to the non-movant to demonstrate that there is an issue of material fact. *Id.* at 324. If no material facts are in dispute, and the subject of a motion for summary judgment can be decided based only on an issue of law, trial is unnecessary and summary judgment is appropriate. *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1337 (Fed. Cir. 2005) (stating that where no material facts are in dispute, judgment on the law is appropriate); *see also Anderson*, 477 U.S. at 249 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (citation omitted)).

### B.    Interest

In reviewing any claim for interest the Court must first look to 28 U.S.C. § 2516, which states that:

> (a) Interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof. (b) Interest on a judgment against the United States affirmed by the Supreme Court after review on petition of the United States is paid at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 2516 (2000) (originally enacted as Act of March 3, 1863, ch. 92, 12 Stat. 765).

Early cases seem to advance the theory that interest, whether it is on a claim or as a claim, is not recoverable. For example, *Myerle v. United States*, states:

> As to the interest on borrowed money: The delay forced the contractor to borrow money to carry on his contract; for this he was forced to pay interest, an extra expense. The recovery of this sum in this court is forbidden by statute: whether it be claimed in the guise of a damage caused by delay, or in some other form, it remains in fact a claim for interest, and such a claim we are prohibited from allowing.

*Myerle v. United States*, 33 Ct. Cl. 1, 17 (1897). However, recent cases demonstrate that there are exceptions to an absolute prohibition on an award of interest.

In *Wickham Const. Co.*, the Federal Circuit made a distinction between the recovery of interest "on equity capital" and "interest actually paid on funds borrowed because of the

government's delay in payments and used on the delayed contract."[3]  *Wickham Const. Co. v. Fischer*, 12 F.3d 1574, 1582-83 (Fed. Cir. 1994) (citing *Gevyn Constr. Corp. v. United States*, 827 F.2d 752, 754 (Fed. Cir. 1987) ("[28 U.S.C. §] 2516(a) does not bar an interest award as part of an equitable adjustment under a fixed-price contract if the contractor has actually paid interest because of the government's delay in payment")); *see also Bluebonnet Sav. Bank, FSB v. United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001) (allowing the recovery of the "increase of financing costs" caused by a breach of contract).  In an attempt to recover time price differential dollars, Consumers Energy makes two arguments: that it seeks to recover interest on borrowing that it was forced to undertake as a result of DOE's breach, and/or its request for time price differential dollars could also be characterized as a request to recover Allowance of Funds Used During Construction ("AFUDC").  These arguments will be addressed in turn.

> **1.      Consumers Energy's assertion that it is claiming interest on borrowed funds**.

Consumers Energy seeks to define its claim for time price differential dollars as a request to recover interest incurred through borrowing used specifically to mitigate the Government's breach.  To recover under *Wickham Const. Co. v. Fischer*, there must be some showing that the funds borrowed were used in connection with the type of mitigation.  *Wickham Const. Co.*, 12 F.3d at 1583.  This is not to say that there must be a one-to-one correspondence between a debt instrument and a specific capital project.  In *Tennessee Valley Authority v. United States*, ("*TVA*"), Judge Charles F. Lettow did not require a one-to-one correspondence between the utilities debt and its mitigation project, and rejected the Government's argument that because *TVA* could not show a correspondence between specific debt instruments and a specific capital project recovery should not be allowed.  *Tennessee Valley Authority v. United States*, 69 Fed. Cl. 515, 542 ("Thus, the government's contention that *Wickham* and *Gevyn Construction* should be extended by requiring a match between capital expenditures and specific debt instruments is rejected.").[4]  Subsequent cases have taken a slightly more stringent view than *TVA*.  *See, e.g.*, *Carolina Power & Light v. United States*, 82 Fed. Cl. 23, 54 (2008) (finding it unnecessary to determine if *Wickham* applies because plaintiff failed to provide any evidence tying borrowed funds to any specific mitigation project); *System Fuels, Inc. v. United States*, 79 Fed. Cl. 37, 70 (2007) (finding that System Fuels failed to establish that its claimed financing costs were directly

---

[3]The Government argues that the Federal Circuit's holding in *Wickham* is limited to the context of equitable adjustments under the 'Changes' clause that is contained in most federal procurement contracts.  Def.'s Reply at 8.  While it may be true that the contract at issue in *Wickham* contained a changes clause, the holding in the case does not seem to be so limited.

[4]In *TVA*, there was overlap between a claim for interest on a borrowing and AFUDC. *TVA* calculated AFUDC using 18 C.F.R. pt 101 each month and then sought to recover this amount.  *TVA*, 69 Fed. Cl. at 541.  Judge Lettow then reviewed this portion of the damages claim under *Wickham*.  *Id.*  In *Carolina Power*, plaintiff also sought to recover AFUDC; however, Judge Thomas C. Wheeler never reached the question of the applicability of *Wickham* because the evidence presented was insufficient.

related to required borrowing through specific debt instruments); *Northern States Power Co. v. United States*, 78 Fed. Cl. 449, 471 (2007) (holding that plaintiff failed to demonstrate beyond the existence of debt to augment its capital structure that any of the funds were used to mitigate DOE's partial breach).

A specific correspondence between the loan instrument and the SNF storage project may not be required; however, more is required than the mere assertion that Consumers Energy entered into short and long-term financing to pay for working capital needs and to pay for capital expenditures. *Gevyn Constr. Corp. v. United States*, 827 F.2d at 754 (explaining that interest on bank borrowings for changed work would be permissible either if it was directly traced to a specific loan or a necessity for increased borrowing is shown to have been required by extra work or delay caused by the government) (citations omitted). Attached to Consumers Energy's response is the Affidavit of John J. Murphy, Executive Director for Corporate Finance for Consumers Energy. Pl.'s Resp. Ex. B. (Murphy Aff.). In his affidavit, Mr. Murphy listed the short- and long-term financing mechanisms Consumers Energy used to address the "working capital needs and to pay for capital expenditures," and "for general corporate purposes." Murphy Aff. ¶¶ 7, 9. Mr. Murphy then generally claimed that in 1999 Consumers Energy entered into dry fuel cask loading campaigns and the loading campaigns were part of Consumers Energy's capital costs. *Id.* ¶ 6. Mr. Murphy also stated that in 2002-2004, Consumers Energy engaged in dry fuel storage activities, including construction of a second ISFSI at Palisades and an ISFSI at Big Rock. *Id.* ¶ 8. Mr. Murphy's affidavit was filed only after the Government filed the instant motion for summary judgment. There is no reference to any of the financing mechanisms listed by Mr. Murphy in Consumers Energy's claim for damages. There was no attempt, either by Mr. Murphy or Mr. Speyer, to break down the cost of financing and then relate that financing to ISFSI construction or dry cask loading campaigns. Consumers Energy's claim for time price differential dollars lacks any evidence of a correspondence between its general borrowing and its mitigation efforts. Additionally, there has been no showing of a necessity for increased borrowing as a result of DOE's partial breach. Consumers Energy has merely taken its as-spent damages and then made an upward adjustment for inflation using the GDP implicit price deflator. In short, there is absolutely no correlation between Consumers Energy's capital financing and its claim for damages.

Any attempt to escalate damages in nominal dollars to real dollars will go unrewarded. *See, e.g.*, *Sandstrom v. Principi*, 358 F.3d 1376, 1377 (Fed. Cir. 2004) ("Because in the absence of a clear, explicit waiver of sovereign immunity from liability for interest, the United States government ('the government') pays all judgments and amounts due in what economists call 'nominal dollars' rather than in economic 'real dollars,' and because Congress has not statutorily waived the government's sovereign immunity from interest payments . . . we affirm."); *Indiana Michigan Power Co. v. United States*, 60 Fed. Cl. 639, 660 (2004), *aff'd.*, 422 F.3d 1369 (Fed. Cir. 2005) (finding that a request for "average after-tax cost of capital" was equivalent to a request for prejudgment interest, and rejecting the request). Despite Consumers Energy's allegations to the contrary, damages which are adjusted from the date incurred until the time of trial for inflation cannot properly be described as interest incurred on a borrowing. This Court holds that Consumers Energy's claim for time price differential dollars is an impermissible claim

6

for interest according to 28 U.S.C. § 2516(a).  *Library of Congress v. Shaw,* 478 U.S. 310, 321 (1986) ("[T]he character or nature of 'interest' cannot be changed by calling it 'damages,' 'loss,' 'earned increment,' 'just compensation,' 'discount,' 'offset,' or 'penalty,' or any other term, because it is still interest and the no-interest rule applies to it.") (citing *United States v. Mescalero Apache Tribe,* 518 F.2d 1309, 1322 (Ct. Cl. 1975).

**2.      Consumers Energy's assertion that it is claiming AFUDC.**

Consumers Energy asserts that its claim for time price differential dollars could also be termed a claim for AFUDC;[5] however, based on a review of Mr. Speyer's expert report, this Court finds that the claim for time price differential dollars is not a claim for AFUDC. Consumers Energy seeks to recover its increased costs in time price differential dollars, which is calculated using the GDP implicit price deflator from 1997 to the first quarter of 2008.

---

[5]AFUDC is a specific method by which utilities regulated by the Federal Energy Regulatory Commission calculate the costs of funds used in construction projects and later used to determine rates.  Pl.'s Resp. at 7.  18 C.F.R. pt. 101 specifically states:

> Allowance for funds used during construction (Major and Non-major Utilities) includes the net cost for the period of construction of borrowed funds used for construction purposes and a reasonable rate on other funds when so used, not to exceed, without prior approval of the Commission, allowances computed in accordance with the formula prescribed in paragraph (a) of this subparagraph. No allowance for funds used during construction charges shall be included in these accounts upon expenditures for construction projects which have been abandoned.  (a) The formula and elements for the computation of the allowance for funds used during construction shall be:

> $$Ai=s(S/W)+d(D/D+P+C)(1-S/W)Ae=[1-S/W][p(P/D+P+C)+c(C/D+P+C)]$$

> Ai=Gross allowance for borrowed funds used during construction rate.
> Ae=Allowance for other funds used during construction rate.
> S=Average short-term debt.
> s=Short-term debt interest rate.
> D=Long-term debt.
> d=Long-term debt interest rate.
> P=Preferred stock.
> p=Preferred stock cost rate.
> C=Common equity.
> c=Common equity cost rate.
> W = Average balance in construction work in progress plus nuclear fuel in process of refinement, conversion, enrichment and fabrication, less asset retirement costs (See General Instruction 25) related to plant under construction.

18 C.F.R. pt 101.

Additionally, Consumers Energy reserves the right to adjust this recovery up to the time of trial. According to Mr. Speyer, the calculation of time price differential dollars is designed to place Consumers Energy in the same financial position that it would have been absent DOE's breach and to account for the fact that compensation would not be received until after the time the damages were incurred.  Speyer Rep. at A6, A7; DPFUF ¶ 6.  In an attempt to clarify the damages sought, Mr. Speyer claims that his use of time price differential dollars could be alternatively labeled cost of funds or AFUDC.  Pl.'s Resp. Ex. A.  (Speyer Aff.) at ¶ 4.  Mr. Speyer's belated attempt to characterize time price differential dollars as AFUDC is not persuasive to this Court.

It is clear that Consumers Energy's damages do not contain a claim for AFUDC. AFUDC is specifically defined and calculated according to 18 C.F.R. pt 101.  *See supra* note 5. The equation used to calculate AFUDC requires the input of average short-term debt, short-term debt interest rate, long-term debt, and long-term debt interest rate.  Mr. Speyer's report contains no mention of any short or long term debt and no mention of any interest rate.  There is no calculation of AFUDC using Consumers Energy's loan instruments and the formula found in 18 C.F.R. pt. 101.   It is only after the filing of the Government's instant motion for partial summary judgment that Consumers Energy attempted to describe this claim as AFUDC.

Consumers Energy submitted no evidence beyond the mere conclusory statements by Mr. Murphy and Mr. Speyer that the claim for time price differential dollars could be considered a claim for AFUDC.  According to the Federal Circuit, "[a]s this court has frequently said in connection with motions for summary judgment, a conclusory statement on the ultimate issue does not create a *genuine* issue of fact."  *Imperial Tobacco Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1581 (Fed. Cir. 1990) (citations omitted).  Consumers Energy's claim for time price differential dollars is not a claim for AFUDC.  Rather, it is interest on a claim which is expressly prohibited by statute.  28 U.S.C. § 2516(a).  The Court holds that with respect to the claim that time price differential dollars could be considered AFUDC there is no genuine issue of material fact and the Government is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247.

## C.     Attorney Fees

As part of its damages claim Consumers Energy seeks expert and attorney fees which are seen in Mr. Speyer's report in both as-spent and time price differential dollars.  In an effort to overcome the long-standing American Rule, that each party is expected to bear its own attorney fees, Consumers Energy attempts to argue the bad faith exception.  Pl.'s Resp. at 13.   According to Consumers Energy, DOE's conduct in performing its obligations under the NWPA and the Standard Contract constitutes bad faith.  *Id*. at 13-15.  Consumers Energy specifically alleges that DOE's "bad faith in breaching the Standard Contract is clear."  Pl.'s Resp. at 17.

Fee shifting is allowed when a prevailing party's opponent has acted in bad faith.  *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975).  Consumers Energy advocates the position that the bad faith conduct is not limited to conduct during the litigation but

can be found in the opposing party's actions leading up to litigation.  Pl.'s Resp. at 13. According to Federal Circuit precedent, which is binding on this Court, fee shifting based solely on conduct that is the basis for the claim would undermine the American Rule.  *Centex Corp. v. United States*, 486 F.3d 1369, 1372 (Fed. Cir. 2007).[6]

An allegation of bad faith in DOE's partial breach of the Standard Contract cannot form the basis for the exception to the American Rule that each party bears its own fees.  *Centex Corp.*, 486 F.3d at 1375 ("Fee-shifting is not permitted for bad faith conduct that precedes the accrual of the claim in question.").  Additionally, the Federal Circuit has held that government officials are presumed to carry out their duties in good faith.  *Spezzaferro v. F.A.A.*, 807 F.2d 169, 173 (Fed. Cir. 1986) ("Government officials are presumed to carry out their duties in good faith.  Petitioners have not provided any credible evidence to overcome that presumption.  Unsubstantiated suspicions and allegations are not enough.  The proof must be almost 'irrefragable.'") (citing *Sanders v. United States Postal Service,* 801 F.2d 1328, 1331 (Fed. Cir. 1986); *Gonzales v. Defense Logistics Agency,* 772 F.2d 887, 889 (Fed. Cir. 1985); *Hayes v. Department of the Navy,* 727 F.2d 1535, 1537 (Fed. Cir. 1984); *Poschl v. United States,* 206 Ct. Cl. 672, 692 (1975)).  This Court holds that with respect to Consumers Energy's claim that the bad faith exception allows for recovery of attorney fees there is no genuine issue of material fact and the Government is entitled to judgment as a matter of law.  RCFC 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247.

## IV.     CONCLUSION

It is based on the prohibition of an award of interest found in 28 U.S.C. § 2516(a), and the binding precedent regarding attorney fees that this Court GRANTS the Government's motion for partial summary judgment on Consumers Energy's claims for interest and attorney fees.


s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge

---

[6]The Federal Circuit specifically stated:

We agree with the trial court that authorizing a court to shift fees based solely on bad faith conduct that forms the basis for the substantive claim for relief would undermine the American Rule by penalizing the party who raises good faith defenses to claims of liability for bad faith conduct.  In so doing, we align ourselves with eight other circuits that have taken the position that fee awards cannot be assessed based on claims of bad faith primary conduct.

*Centex Corp.,* 486 F.3d at 1372 (citations omitted).